# CERTIFICATION OF RECORD

INDIVIDUALS WITH DISABILITIES EDUCATION ACT (IDEA) 20 USC § 1400

## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
### *STUDENT HEARING OFFICE*
#### SPECIAL EDUCATION

In the Matter RE:      **B████, T██████ vs. DCPS & Mary Bethune Academy**

Case Information:    Hearing Dates: **01/17/2007 & 03/23/2007**
Held at: **District of Columbia Public Schools Headquarters**
      **825 N. Capitol Street, N.E.**
      **Washington, D.C. 20002**
Student Identification Number: **9051948**
Student's Date of Birth: **04/03/1995**
Attending School: **Mary Bethune Academy**
Managing School: **Ludlow-Taylor Elementary School**
Hearing Request Date(s): **10/31/2006**

## CERTIFICATION OF RECORD

I, **Shawnta Maddox, Legal Assistant of the Student Hearing Office**,

DO HEREBY CERTIFY that the attached Record of Proceeding is the entire record in

the above entitled matter as of this date, consisting of all letters, pleadings, orders,

exhibits and depositions.

    I FURTHER CERTIFY that the materials forwarded herewith are the true copy

of the original documents submitted in this matter.

EXECUTED this Thursday, July 05, 2007.

**LEGAL ASSISTANT**
**STUDENT HEARING OFFICE**

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
ENFORCEMENT AND INVESTIGATION DIVISION

SPECIAL EDUCATION DUE PROCESS HEARING

CONFIDENTIAL

## HEARING OFFICER'S DETERMINATION ON COMPENSATORY EDUCATION

STUDENT: T██████ B████        DATE OF BIRTH: 4/3/95

ADDRESS: 5412 C Street, S.E.
Washington, D.C. 20019

PRESENT SCHOOL ATTENDING: Bethune Academy
HOME SCHOOL: Same

DATE OF HEARING: January 17, 2007
DATE OF HOD: January 26, 2007
MOTION FOR RECONSIDERATION: Feb. 6, 2007
DATE OF HEARING ON COMP. ED.: March 23, 2007
SUPPLEMENTAL DISCLOSURE: April 3, 2007

TESTIFIED AT THE HEARINGS ON January 17th and March 23rd 2007:

| | |
|---|---|
| Corey Hamilton | Educational Advocate |
| Terri Bland | Mother |
| Golnar Abedin | Special Education Coordinator |
| Dr. Richard Fleitas* | Clinical Psychologist |
| (* Testified by telephone) | |

Student's Representative: Roberta Gambale, Esq.
Address: 1220 L Street, N.W.
Washington, D.C. 20005
FAX: 202-742-2098

Bethune Academy's Representative: Kathryn McAuliffe, Esq., Paul Dalton, Esq.
Address: 1008 Pendleton Street
Alexandria, Va. 22314
FAX : 703-739-2323

2007 APR -9 AM 10: 46
DC PUBLIC SCHOOL SYSTEM

2

**INTRODUCTION:**

A hearing was held at the District of Columbia Public Schools (DCPS), 825 N. Capitol Street, N.E., Washington, D.C. 20002, on January 17, 2007, at the request of Roberta Gambale, counsel for the parent and the student. Paul Dalton represented Bethune Academy, the other party to this hearing. Counsel for both of the above parties agreed to dismiss DCPS from this proceeding. Counsel for Bethune Academy filed a Motion for Reconsideration on February 6, 2007 of the Hearing Officer's Determination of January 26, 2007. The Motion for Reconsideration was denied on February 9, 2007. A hearing to give Bethune Academy an opportunity to present their case upon the denial of their Motion for a Directed Verdict on the compensatory education issue was held on March 23, 2007. Counsel for Bethune Academy submitted the current educational testing of the student on April 3, 2007.

**JURISDICTION:**

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq; further reauthorized as the IDEA Improvement Act of 2004 (P.L. 108-446); and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300 and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

**DOCUMENTS SUBMITTED INTO EVIDENCE BY STUDENT:**

**TB-1-TB-44**

**DOCUMENTS SUBMITTED INTO EVIDENCE BY BETHUNE ACADEMY:**

**MM-1-MM-13**

**ADDITIONAL DOCUMENT SUBMITTED PURSUANT TO HEARING OFFICER'S REQUEST ON CURRENT EDUCATIONAL TESTING:**

**MM-14**

**FINDINGS OF FACT:**

1.  The student is currently in the fifth grade at Mary Bethune Academy Public Charter School.

2.  On March 29, 2007, the special education teacher administered the Qualitative Reading Inventory, 4th Edition to the student. From this

assessment, the special education teacher concluded that the student is reading at approximately a third grade level. (MM-14)

3. The student's current IEP of December 11, 2006 showed that the student was at 2.5-3rd grade equivalence on reading comprehension, reading basic, written expression and math reasoning based on testing data available on that date. (MM-8)

4. A psycho-educational evaluation of November 17, 2005 concluded: "His general cognitive ability, as estimated by the WISC-IV, is in the Borderline range…T██████'s academic proficiency as tested by the WIAT-II, places him in the Extremely Low to the Low Average range. His scores in reading and written expression are within the extremely low range and suggest that he needs significant academic help in those areas." His standard score on Reading was 66 and in Written Language 69. The student's scores place in the lowest range of exceeding approximately 1% of children his age. The grade equivalence on the subtests in word reading was 1.9; in reading comprehension at 1.5; in written expression at 2.6 and in math reasoning at 2.6 (MM-1)

5. The student's IEP of March 10, 2006 called for 15 hours a week of specialized instruction in a general education setting. (TB-17)

6. The student's current IEP of December 11, 2006 again requires 15 hours a week of specialized instruction to be split in the general education and special education setting provided jointly by the special education teacher and the general education teacher. (MM-8) The MDT Notes state: "Math specialized instruction for a half hour a day, 1.5 hours of specialized instruction in language arts, and 1 hour individualized reading instruction." (MM-7)

7. The special education coordinator at Bethune Academy testified that the student only receives five hours a week of specialized instruction in reading from the special education teacher in one-on-one tutoring. The student does not receive any other specialized instruction by a special education teacher even though his IEP calls for 15 hours a week of specialized instruction. The general education teacher provides instruction in math and written expression to the general education class including this student. There was no special education teacher providing services to this student in December 2006. There are 12 -15 special education students at Bethune in five different grades with one special education teacher providing direct instruction to these students. (Testimony of Ms. Abedin)

8.  The student's fifth grade report card for the first advisory shows the student failing in reading, language arts, mathematics and science with below 70 scores. (TB-38)

**DISCUSSION AND CONCLUSIONS OF LAW:**

In *Reid v. District of Columbia*, 401 F. 3d. 516 (D.C. Cir. 2005), the United States Court of Appeals for the District of Columbia held in calculating a compensatory education award:

> In every case, however, the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.

In this case, the student's current IEP and last IEP called for fifteen hours a week of specialized instruction. The special education coordinator at Bethune testified that the student only received five hours a week of specialized instruction in reading by a special education teacher in one on one tutoring. The remaining ten hours were provided in the general education classroom by the general education teacher who is not certified in special education. The recent reading assessment submitted by Bethune shows the student is reading on the third grade level, but is currently in fifth grade in a general education classroom using a fifth grade curriculum. The student is failing in all his major courses and is two to two and half years below grade level in reading, written expression and math at the current time. *IDEA* states: "Special Education means specially designed instruction, at no cost to parents, to meet the unique needs o a child with a disability...Specially designed instruction means adapting, as appropriate to the needs of an eligible child under this part, the content, methodology, or delivery of instruction to address the unique needs of the child that result from the child's disability." *34 C.F.R. Section 300.39* Bethune Academy did not provide the specialized instruction required by his IEPs. This hearing officer concludes that the student is owed compensatory education services for the failure to implement the student's IEPs by not providing ten hours a week of specialized instruction since March 2006 and for not providing any specialized instruction for the month of December 2006. Bethune Academy P.C.S denied a FAPE to the student by failing to implement his current IEP and his last IEP.

It is hereby **ORDERED** that:

**The student is awarded three hundred and seventy-five (375) hours of compensatory education to be provided in the form of individual tutoring. Bethune Academy Public Charter School shall provide this individual tutoring beginning in fifteen (15) school days from issuance of this Hearing Officer's Determination. If Bethune Academy fails to commence the tutoring within the above time frame, Bethune**

4

Academy shall fund private independent tutoring.  The parent is the prevailing party in this action on the compensatory education issue.

This is the final administrative decision in this matter.  Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

Seymour DuBow, Esq.
Impartial Hearing Officer                    Date filed: April 9, 2007

Date Issued:

STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA
STATE ENFORCEMENT AND INVESTIGATION DIVISION (SEID)
SPECIAL EDUCATION PROGRAMS

| | | |
|---|---|---|
| Terri Bland, on behalf of | ) | |
| T██████ B████ | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Hearing Officer Seymour DuBow |
| v. | ) | |
| | ) | |
| Mary McLeod Bethune Day Academy PCS | ) | |
| ("MMB"), | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## RESPONDENT'S PRAECIPE AND SUPPLEMENTAL DISCLOSURE

COMES NOW, the Respondent, by and through counsel, and pursuant to the Hearing Officer's request at the Hearing held on March 23, 2007, submits the following documents:

MM-14[1]          Results of Educational Testing          3/29/07

The Respondent submits this additional document pursuant to the Hearing Officer's request. According to the results of the latest educational testing, the student is currently reading at a third grade level. According to the student's last Psycho-Educational Evaluation, which is in evidence as MM-01 and TB-16, on November 11, 2005 the student scored a 1:6 grade equivalent in reading comprehension on the Wechsler Individual Achievement Test - 2nd Edition (WIAT-II).[2] Therefore, in one and a half years at MMB he has made approximately one and a half years progress.

---

[1] Numbering of exhibits picks up from the Respondent's 5-day disclosure, which is documents MM-01 through MM-13.

[2] See MM-01; TB-16 at 4.

According to the standard set by the court in *Reid v. District of Columbia*[3], in order to receive compensatory education, the Petitioner bears the burden of showing (1) that as a result of the violation, the student suffered an educational deficiency, (2) that but for the violation, he would have progressed to a certain academic level, and (3) that there exists a type and amount of compensatory education services that would bring him to the level he would have been but for the violation. The inquiry must be fact-specific and the ultimate award must "be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place."[4]

The Petitioner in this case failed to satisfy her burden. The Petitioner called only two witnesses, the parent and the education advocate, in support of her case at the hearing. Neither of these witnesses discussed, nor were they even qualified to discuss, what, if any, educational deficiency the student had suffered. Both also failed to identify the type or amount of compensatory education services needed to remedy any alleged deficiency.

The Hearing Officer asked Respondent to submit educational testing so that he may determine whether compensatory education is appropriate. The Petitioner failed to submit any evidence to support her case. The Respondent, however, submits the enclosed results in accordance with the Hearing Officer's request. Given the progress this student has made at MMB, and the failure of the Petitioner to meet her burden, Respondent respectfully requests that the Hearing Officer dismiss this case with prejudice.

---

[3]401 F.3d 516 (D.C. Cir. 2005)

[4]Id at 524.

2

March 30, 2007                                   Respectfully Submitted,

                                                Kathryn T. McAuliffe, Esq.
                                                Counsel for Respondent
                                                Dalton, Dalton, & Houston, P.C.
                                                1008 Pendleton Street
                                                Alexandria, Virginia 22314
                                                703-739-4300
                                                703-642-2323 – fax

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document and exhibit was filed with Hearing Officer
Seymour DuBow via facsimile at 202-442-5556, and sent to Roberta Gambale, Esq., counsel for
the Parent at fax 202-742-5098 on this 30th day of March, 2007.

Kathryn T. McAuliffe, Esq.
Counsel for Respondent

3



**Mary McLeod Bethune Day Academy**
**Public Charter School**

253 42nd St. N.E.
Washington, DC 20019
(202) 397-3044 fax (202) 397-3046

5413 16th St., N.W.
Washington, DC 20011
(202) 723-5800 fax (202) 723-5820

March 29, 2007

To Whom It May Concern:

On March 29, 2007, I administered the QRI-IV (Qualitative Reading Inventory, 4th Ed.) to T████ B████. This assessment measures a student's ability to read and comprehend short passages on a variety of topics. He was given a third grade passage and a fourth grade passage to read silently, and was then asked questions about what was read. He had the opportunity to recall information from memory, and also to look back at the passage to locate answers.

On the third grade passage, T█████ scored at an instructional level. This is defined as the level at which a student can successfully read and understand a text with teacher instruction and support. From memory, he was able to recall 18 out of 55 main points of the story. He was able to successfully use the text to answer 7 out of 8 comprehension questions correctly. This included three questions that required him to make inferences about what he had read, which is a skill that is essential for critical thinking. On the fourth grade passage, T█████ scored at the frustration level, which indicates that a text is above the level at which a student can successfully comprehend a passage with support. T█████ answered 4 out of 8 questions correctly, and again, successfully used the text to locate answers. He did, however, finish the passage rather quickly, which was noticeable because the vocabulary was higher-level than the first text.

From this assessment, I believe T█████ is reading at approximately a third grade level. His testing was conducted in a quiet room that was free from distractions, and he appeared to put effort into the task. Therefore, these results may be considered valid.

Respectfully,

Adrienne Larsen-Silva

Adrienne Larsen-Silva
Special Education Teacher,
Mary McLeod Bethune PCS

10

MM-14

**FAX TRANSMISSION COVER SHEET**
**Dalton, Dalton & Houston P.C.**
**Attorneys at Law**
**1008 Pendleton Street**
**Alexandria, Virginia 22314-1837**
**(703) 739-4300**
**FAX (703)739-2323**

**DATE:**    March 30, 2007

**TO:**    Hearing Officer Seymour DuBow

**AT FAX:**    202-~~742-5095~~ 442-5556

**FROM:**    Kathryn T. McAuliffe, Esq.

**RE:**    T█████ B████

**NUMBER OF PAGES INCLUDING THIS PAGE:**    5

**COMMENTS:**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE PRIVILEGED PURSUANT TO THE
ATTORNEY CLIENT PRIVILEGE AND ATTORNEY WORK PRODUCT DOCTRINE. IF THE READER OF THIS
MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE
RECEIVED THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS
COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE
ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernández! |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Roxanne D. Neloms |
| Christopher L. West | Telephone: (202) 742-2000 | Omar Karram |
| | Facsimile: (202) 742-2098 | Christie Fontaine-Covington |
| ----------------------------------- | e-mail: Admin@Jeblaw.biz | ----------------------------- |
| | | ! DC Bar Special Legal Consultant |
| | | + Admitted in Bolivia |

March 16, 2007

**Hand Delivery**
Office of General Counsel
District of Columbia Public Schools
825 North Capitol Street, NE, 9th Floor
Washington, DC 20002

**Re: Supplemental Five-Day Disclosure for T█████ B███ / DOB: 4/3/95**

Dear Counsel:

For the upcoming hearing scheduled for **March 23, 2007 at 1:00 p.m.** or any subsequent hearing regarding this student and pursuant to 34 C.F.R. 300.509 (a)(3); Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35872 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. MUN. REGS. tit. 5, § 3031.2 (2003), and in addition to any documents and witnesses that the District of Columbia Public Schools ("DCPS") may disclose, the parent may rely on the following documents and witnesses:

## Witnesses

1.      Terri Bland, Mother;
2.      T█████ B███, Student;
3.      Corey Hamilton, Educational Advocate, or designee;
4.      K.M. Stokes, Director, Sylvan or designee;
5.      Ms. Younger, Special Education Teacher, Mary Mcleod PCS or designee;
6.      Yamileth Amaya, Paralegal or designee.

---

Witnesses' names, addresses, and phone numbers:

1, 2, 3, and 6-- Witnesses can be reached at James E. Brown & Associates, PLLC, 1220 L Street NW, Suite 700 Washington, DC 20005; 202-742-2000
4 and 5- Mary Mcleod PCS, 253 42nd Street, N.E. Washington, D.C. 20019- 202-397-3044

Page Two
Supplemental 5-Day Disclosure for T██████ B████
March 16, 2007

## Documents

| | |
|---|---|
| TB-1 | DCPS Hearing Date Notice 12/4/06 and 11/29/06; |
| TB-2 | Due Process Complaint 10/31/06; |
| TB-3 | Scheduling Memorandum from DCPS 10/31/06; |
| TB-4 | Notice to Appear Ms. Younger, Special Education Coordinator 12/15/06; |
| TB-5 | Fax communication/confirmation to Dr. Fleitas 12/6/06; |
| TB-6 | Correspondence to Mary Mcleod PCS from attorney 12/1/06; |
| TB-7 | Correspondence to Mary Mcleod PCS from attorney 11/17/06; |
| TB-8 | Fax communication/confirmation to Mary Mcleod PCS 11/20/06; |
| TB-9 | Correspondence to Mary Mcleod PCS from advocate 11/7/06; |
| TB-10 | Clinical/ADHD Evaluation/Classroom Observation 12/7/06; |
| TB-11 | Social History Evaluation 12/6/06; |
| TB-12 | Psycho-Educational Evaluation 12/19/03; |
| TB-13 | Neuropsychological Evaluation 3/5/04; |
| TB-14 | NeuroDevelopmental Pediatric Evaluation 5/28/03; |
| TB-15 | MDT Meeting Notes 2/9/04; |
| TB-16 | Psycho-Educational Evaluation 11/17/05; |
| TB-17 | Individualized Educational Program 3/10/06; |
| TB-18 | Occupational Therapy Evaluation 12/16/05; |
| TB-19 | Correspondence from Sylvan Director 10/2/06; |
| TB-20 | Summary of Diagnostic Assessment 9/29/06; |
| TB-21 | Individualized Educational Program and Meeting Notes 2/9/04; |
| TB-22 | Individualized Educational Program and Meeting Notes 5/3/04; |
| TB-23 | Advocate Meeting Notes 2/10/04; |
| TB-24 | Advocate Meeting Notes 5/11/04; |
| TB-25 | Social Work Evaluation 1/23/04; |
| TB-26 | Parent Weekly Communication Note 10/2/06; |
| TB-27 | Correspondence to parent from School 10/2/06; |
| TB-28 | Progress Report 10/3/06; |
| TB-29 | Correspondence to attorney from Mary Mcleod PCS 11/7/06; |
| TB-30 | 3rd Grade Report Card SY03-04; |
| TB-31 | Teacher Comments SY03-04; |
| TB-32 | Attendance Record Card; |
| TB-33 | Correspondence to Mary Mcleod PCS from attorney 1/9/07; |
| TB-34 | Draft Individualized Educational Program and Meeting Notes 12/11/06; |
| **TB-35** | **DCPS Revised Hearing Date Notice 3/5/07;** |
| **TB-36** | **Interim Order 3/5/07;** |
| **TB-37** | **Hearing Officer's Determination 1/26/07;** |
| **TB-38** | **Fifth Grade Report Card SY 2006-2007;** |
| **TB-39** | **Parent Weekly Communication Note 10/9/06;** |
| **TB-40** | **Parent Weekly Communication Note 11/13/06;** |
| **TB-41** | **Parent Weekly Communication Note 11/27/06;** |
| **TB-42** | **Correspondence to parent from teacher 11/27/06;** |
| **TB-43** | **Parent Weekly Communication Note 12/4/06;** |
| **TB-44** | **Correspondence to parent from teacher 12/4/06.** |

* Witnesses may testify via telephone

Parent reserves the right to rely on any documents presented by DCPS that the parent deems relevant in this case.

Additionally, parent reserves the right to introduce any and all witnesses and/or documents for the purpose of impeachment and rebuttal.

If you should have any questions or wish to discuss any aspect of this case before the hearing, please contact me at (202) 742-2000.

Sincerely,

Roberta Gambale, Esq.

Attachments
cc:    Sharon Newsome, Hearing Coordinator

14

# Exhibit 35

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



*X REVISED COPY*

### HEARING NOTICE

| MEMORANDUM VIA: ☑ FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:   Parent (or Representative): *R. GAMBALE / P. DALTON*   Fax No.: *742-2098*
   *(703) 739-2323*

   LEA Legal Counsel: *OGC*

RE:   B█████ T█████   and (LEA) DOB: _____
   Student's Name

FROM:   **SHARON NEWSOME**
   Special Education Student Hearing Office Coordinator

DATE SENT: _____ *3/5/07* _____

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

   DATE: _____ *3/23/07* _____   *Can't f*
   TIME: _____ *1:00 PM* _____   *2/23/07*
   AT:   825 North Capitol Street, NE, Washington, DC
      8th Floor

   ASSIGNED HEARING OFFICER: _____

[ ] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made ***exclusively*** by the Hearing Officer, and cannot be made by SHO administrative staff. Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[☒] THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates. If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure of evidence and witnesses to the opposing party is required at least ***five business days*** prior to the hearing with copies to the Special Education Student Hearing Office.

16

# Exhibit 36

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
FAX: (202) 442-5556



## *FACSIMILE SHEET*

Date: 3/5/07

TO:  R · GAMBALE        742 - 2098

FROM: STUDENT HEARING OFFICE

RE:  I/0        T. B■■■■

TOTAL NUMBER OF PAGES, INCLUDING COVER: 2

COMMENTS:

*CONFIDENTIALITY NTOICE*: The information accompanying this facsimile is intended only for the use of the individual or entity named above. If you arc not the intended recipient, you arc hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the content of this telccopied information is strictly prohibited.

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**

T~~████~~ V~~████~~
     **Petitioner**

Vs.

D C P S + Mary McLeod-Bethune
     **Respondent** p c s

    )
    )
    )
    )
    )
    )

**BEFORE A INDEPENDENT
SPECIAL EDUCATION HEARING
OFFICER OF THE
STATE ENFORCEMENT
&
INVESTIGATIVE DIVISION**

## INTERIM ORDER

**ON THIS DAY** came to be heard _Respondent_'s Motion for Continuance in the above styled cause. After hearing the evidence and the argument of counsel, the Motion for Continuance is:

_____ **DENIED**
___✓___ **GRANTED The hearing is reset for** ___1___ A.M. (P.M.) on _3 - 23 - 07_ **and**
___✓___ **75 DAY TIME LINE WAIVED**

## CONFIRM THE NEW DATE & TIME WITH THE HEARING OFFICE COORDINATOR

### The Hearing Officer finds that there is good cause to grant the continuance because:

_____ The parties have agreed to this continuance and the parent waived the right to receive a final decision within 75 days.
_____ Petitioner's legal representation is unavailable. (PLEASE CIRCLE ONE) Diligent efforts have/have not been made to avoid or eliminate the scheduling conflict;
_____ Assigned DCPS attorney advisor is unavailable (PLEASE CIRCLE ONE) DCPS has/has not made a diligent effort to have a replacement attorney advisor available;
_____ Witness(s) is/are unavailable. (PLEASE CIRCLE ONE) The party has/has not made diligent efforts to secure the witness(s);
_____ Parent or student unavailable.
_____ Conflict in the schedule of the assigned Hearing Officer. The SHO has/has not made a diligent effort to secure a replacement and no other Hearing Officer is available.
_____ Insufficient time allotted for the hearing. (PLEASE CIRCLE ONE)
          A.) Parent
          B.) Student Hearing Office
_____ Hearing room unavailable.
_____ Movant did not receive Prior Notice of the Hearing.
___✓___ Other: (Explanation) _p c s not available_
_____
_____
_____
_____

**SIGNED THIS DATE:** _3-5-07_

**ISSUE DATE:** _3/5/07_

_____
**Independent Special Education Hearing Officer**

Original to SHO – Hearing File
Copy to:  Parent/Student or Rep: _Roberta Gambale_
         DCPS: _Dee_
         Charter School: _Paul Dallas_

Revised 11/01/2006 SHO

19

# Exhibit 37

# District of Columbia Public Schools
## *State Enforcement Investigative Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
FAX: (202) 442-5556



## *FACSIMILE SHEET*

Date:  January 26, 2007

TO:  Roberta Gambale

FROM:  STUDENT HEARING OFFICE

RE:  B█████, T█████████

TOTAL NUMBER OF PAGES, INCLUDING COVER: 6

COMMENTS:

**CONFIDENTIALITY NTOICE:** The information accompanying this facsimile is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the content of this telecopied information is strictly prohibited.

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**ENFORCEMENT AND INVESTIGATION DIVISION**

**SPECIAL EDUCATION DUE PROCESS HEARING**

**CONFIDENTIAL**

**HEARING OFFICER'S DETERMINATION**

**STUDENT: T█████ B████**          **DATE OF BIRTH: 4/3/95**

**ADDRESS: 5412 C Street, S.E.**
**Washington, D.C. 20019**

**PRESENT SCHOOL ATTENDING: Bethune Academy**
**HOME SCHOOL: Same**

**DATE OF HEARING: January 17, 2007**

**TESTIFIED AT THE HEARING:**

| | |
|---|---|
| **Corey Hamilton** | **Educational Advocate** |
| **Terri Bland** | **Mother** |

**Student's Representative: Roberta Gambale, Esq.**
**Address: 1220 L Street, N.W.**
**Washington, D.C. 20005**
**FAX: 202-742-2098**

**Bethune Academy's Representative: Paul Dalton, Esq.**
**Address: 1008 Pendleton Street**
**Alexandria, Va. 22314**
**FAX : 703-739-2323**

**INTRODUCTION:**

A hearing was held at the District of Columbia Public Schools (DCPS), 825 N. Capitol Street, N.E., Washington, D.C. 20002, on January 17, 2007, at the request of Roberta Gambale, counsel for the parent and the student. Paul Dalton represented Bethune Academy, the other party to this hearing. Counsel for both of the above parties agreed to dismiss DCPS from this proceeding.

**JURISDICTION:**

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq; further reauthorized as the IDEA Improvement Act of 2004 (P.L. 108-446); and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300 and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

**ISSUES:**

1.      **Did Bethune Academy deny a Free Appropriate Public Education (FAPE) to the student by failing to conduct a Vineland and Speech and Language Evaluations?**

2.      **Did Bethune Academy deny a FAPE to the student by not providing sufficient compensatory education?**

**DOCUMENTS SUBMITTED INTO EVIDENCE BY BETHUNE ACADEMY:**

**BA-1-BA-13**

**DOCUMENTS SUBMITTED INTO EVIDENCE BY STUDENT:**

**TB-1-TB-34**

**FINDINGS OF FACT:**

1.      The student is an eleven-year-old male who has been found eligible for special education services by the Mary McLeod Bethune Academy, its own LEA charter school, with the disability classification of multiple disabilities-Learning Disabled and Other Health Impaired (ADHD).(BA-7 & 8)

2.      A December 7, 2006 Clinical/ADHD Evaluation/Classroom Observation Report done by Psychological Assessment Solutions stated the student

was referred for a clinical evaluation, a classroom observation and the Vineland Adaptive Behavior Scales. The independent evaluators found: "Based on a review of previous assessments, interviews with the student's teacher and his mother, and this evaluator's own observation and interaction with T▇▇▇▇, it was decided that the Vineland-II is not an appropriate or necessary measure for the evaluation. There was no indication that T▇▇▇▇ has ever had noteworthy difficulty in either communication or in functions of daily living." The evaluator also did not recommend a speech and language assessment. The evaluator found: "His diagnosis of ADHD does qualify for him to receive classification as Multiply Disabled with a Learning Disability and Other Health Impaired (OHI). The final determination as to his eligibility for Special Education Services is, however, a decision to be made by the multidisciplinary team, after considering data from all sources."(BA-6, TB-10)

3.   A psycho-educational evaluation was done in November 2005. The evaluator tested his oral language skills and found: "T▇▇▇▇ performed much better on tasks that assessed his capability to generate words within a category, describe scenes, and give directions (Oral Expression standard score=96)...T▇▇▇▇'s skills in Oral Expression are within the Average range, and exceeds that of approximately 39% of children his age." The evaluator did not recommend a speech and language assessment. (BA-1, TB-16)

4.   On March 10, 2006, an IEP was developed for the student that was signed and agreed to by the parent that called for fifteen (15) hours a week of specialized instruction by a teacher/tutor and forty five (45) minutes a week of occupational therapy. The IEP stated that the student's disability classification was learning disabled (LD). (TB-17)

5.   On December 11, 2006 an MDT meeting convened at Bethune Academy with the parent and educational advocate in attendance. The MDT team found the student eligible for special education services as a student with the disability classification of multiple disabilities: learning disabled and Other Health Impaired (ADHD). The IEP developed provided for fifteen hours a week of specialized instruction including one hour a week of individualized tutoring and one hour a week of occupational therapy. The parent did not sign agreement with this IEP and did not give consent to implementation of the services in the IEP. (BA-8, TB-34) The MDT Meeting Notes state: "Specialized instruction should continue with tutoring in reading (decoding and comprehension as a result)...Mom raised questions regarding the inclusion model and how that would address his reading problems-mom wants a one on one tutoring help. The team has agreed to include 1 hr. of individualized tutoring in reading in order to compensate for his additional needs. Continue O.T. services...Math specialized instruction for a half hour a day, 1.5 hours of

3

specialized instruction in language arts, and 1 hour individualized reading instruction." (BA-7) The MDT Meeting Notes do not have a specific discussion of compensatory education for missed services. The educational advocate testified there was no discussion of compensatory education at the MDT meeting. (Testimony of Mr. Hamilton)

6.  On January 9, 2007 counsel for the parent faxed a letter to the special education coordinator at Bethune Academy that stated: "I am in receipt of the draft IEP developed 12/11/06. While parent authorizes the Charter School to implement the IEP, she is not in agreement that the IEP is appropriate and/or complete. She maintains the same concerns about the proposed 12/06 IEP that had about the prior IEP. Furthermore, all of the testing has yet to be completed." (TB-33)

**DISCUSSION AND CONCLUSIONS OF LAW:**

At the close of counsel for the parent's case, counsel for Bethune Academy moved for a Directed Verdict on the two issues of 1) evaluations and 2) compensatory education. Counsel for the parent has not met her burden of proof as to the necessity of the Vineland and Speech and Language Assessments. This hearing officer has reviewed the current clinical evaluation and psycho-educational evaluation and as found in Findings of Fact #2 & #3 the professional evaluators in the clinical evaluation specifically rejected the need for a Vineland and the clinical evaluation's findings on communication and the psycho-educational evaluation's findings on oral language did not lead them to recommendation for a speech and language assessment. This hearing officer therefore **GRANTS** the Motion for a Directed Verdict on the above evaluation issue.

On the second issue of compensatory education, counsel for Bethune Academy concedes the student is entitled to compensatory education for the failure to provide IEP services, but argues the one hour a week of individualized tutoring provided in the December 11, 2006 IEP is that compensatory education award. A reading of the MDT Notes state that the one hour of individual tutoring is "to compensate for his additional needs." That is not the same as a compensatory education award for missed services. The IEP also contains the same fifteen hours of specialized instruction as the previous March IEP, but includes in the December IEP that one hour of those fifteen hours shall be individualized tutoring in reading. This hearing officer concludes that is not a compensatory education award. Moreover, the MDT Notes do not contain a specific discussion of compensatory education and the education advocate stated there was no discussion of compensatory education at the December MDT meeting. The Motion for a Directed Verdict on the compensatory education issue is therefore **DENIED.**

4

It is hereby **ORDERED** that:

1.  Counsel for Bethune Academy's Motion for Directed Verdict on the evaluation issue is GRANTED, but his Motion for a Directed Verdict on the compensatory education issue is DENIED.

2.  The case will be rescheduled to take testimony from Bethune Academy on the compensatory education issue.

This is the final administrative decision in this matter.  Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

Seymour DuBow, Esq.
Impartial Hearing Officer                    Date filed: January 26, 2007

Date Issued:  01|26|07

5

# Exhibit 38

# Fifth Grade Report Card
## Mary McLeod Bethune Day Academy Public Charter School

| Student | T B | School | 253 42nd Street, NE  WDC 20019 |
|---|---|---|---|
| Teacher | Ms. De Graffinreidte | Year | 2006-2007 |

| Academic Key | | | | | Work Habits | |
|---|---|---|---|---|---|---|

**Academic Key**

| A+ | 97-100 | B+ | 87-89 | C+ | 77-79 | |
|---|---|---|---|---|---|---|
| A | 93-96 | B | 83-86 | C | 73-76 | N Below 70 |
| A - | 90-92 | B - | 80-82 | C - | 70-72 | |

**Work Habits**

| O | Outstanding | | |
|---|---|---|---|
| S | Satisfactory | U | Unsatisfactory |
| I | Inconsistent | N/A | Not Assessed |

### Subcategories

| 4: Excelling | 3: Proficient | 2: Emerging/ Developing | 1: Area of Concern | N/A |
|---|---|---|---|---|
| Consistently exceeds grade level standards for this grading period | At grade level standards for this grading period | Limited proficiency of grade level standards for this grading period | Below grade level standards for this grading period | Not assessed this marking period |

| Quarter | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **Reading** | N | | | |
| Comprehension | 1 | | | |
| Vocabulary | 1 | | | |
| Related skills | 1 | | | |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **Language Arts** | N | | | |
| Organization and expression of written ideas | 1 | | | |
| Grammar/sentence structure | 1 | | | |
| Capitalization/punctuation | 1 | | | |
| Learns and applies spelling words | 1 | | | |
| Paragraph construction | 1 | | | |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **Mathematics** | N | | | |
| Computational skills | 1 | | | |
| Solving word problems | 1 | | | |
| Knows math facts | 1 | | | |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **Social Studies** | C | | | |
| Understand and applies information, vocabulary and concepts | 2 | | | |
| Uses maps, charts, graphs to analyze data and draw conclusions | 2 | | | |

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **Science** | N | | | |
| Understand and applies information, vocabulary and concepts | 1 | | | |
| Uses scientific method in investigations | NA | | | |
| Works cooperatively in labs | 2 | | | |

Student        T████ B████

| Work Habits/Behavior | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Shows effort | S | | | |
| Follows directions | S | | | |
| Completes assignments on time | S | | | |
| Exhibits good listening skills | I | | | |
| Works neatly and carefully | I | | | |
| Uses time efficiently | S | | | |
| Is organized and prepared for class | I | | | |
| Works cooperatively | I | | | |
| Works independently | U | | | |
| Follows classroom and school rules | I | | | |
| Exhibits appropriate self control | I | | | |

| Quarters | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Absences | 0 | | | |
| Tardy | 1 | | | |

Grade:                    Next year's teacher:

### Teacher Comments

**First Marking Period:** T████ is working towards his IEP goals and showing progress.

**Second Marking Period:**

**Third Marking Period:**

**Fourth Marking Period:**

# Exhibit 39



# Parent Weekly Communication Note

Student T̶̶̶ B̶̶̶     Week of **October 9, 2006**

Teacher **Ms. De Graffinreidte**

| | | | |
|---|---|---|---|
| Reading | 88 ☺ | Spelling | 100 |
| Writing | 70 | Mathematics | 50 — *See note* |
| Science | 80 | Social Studies | |

☐ Poor tests performance   ☑ Needs to study more   ☑ Needs to take notes

100-93= A/Advanced   92-85= B/Proficient   84-78= C/Basic  77-70= D/Needs Improvement
69-0= F/Below Basic/Failure

---

*See note*

**Behavior**    2    ☐ Inappropriate language   ☐ Cant' follows class rules

☐ Disrespectful   ☑ Fighting/hitting/playing   ☐ Uses Beatitudes

☐ Cannot remain silent in the cafeteria   ☐ Eating/chewing gum/throwing food

☐ Not prepared for class   ☑ Cannot follow line rules inside/outside

**Homework**    1

☐ Does none to little homework   ☑ Does some homework  → *Pls let me know that he not completing Homework assign*

☐ Does most homework   ☐ Does all homework

**Class work**    2

☐ Peer interaction (talking)   ☐ Misuse of class time (not on task)   ☐ Assists peers

☐ Focused and on task   ☐ Incomplete class work   ☑ Completes class work

↓ *can you help him stay organized thru out his Day*

DCPS Truancy Policy: Your child is truant if s/he is absent from school without a written excuse. Thus, 3 tardies equals 1 unexcused absence; 5 unexcused absences will warrant a parent/teacher conference; 10 unexcused absences during an advisory will warrant immediate referral to Child and Family Services and failure of the advisory; 15 unexcused absences will warrant a court referral, and 40 unexcused absences equals failure of grade.)

**Attendance**    3    3=Excellent   2=Very good   1=Satisfactory   0=Unsatisfactory

0 Tardiness                    0 Absences

# Exhibit 40



# Parent Weekly Communication Note

Student  T█████ B█████          Week of  November 13, 2006
Teacher  Ms. De Graffinreidte

| | | | |
|---|---|---|---|
| Reading | F | Spelling | 70% |
| Writing | D | Mathematics | F |
| Science | 72% | Social Studies | C |

☒ Poor tests performance   ☒ Needs to study more   ☐ Needs to take notes

100-93= A/Advanced  92-85=B/Proficient  84-78=C/Basic 77-70=D/Needs Improvement
69-0=F/Below Basic/Failure

---

Behavior ____2____   ☐ Inappropriate language   ☐ Cant' follows class rules
   ☐ Disrespectful   ☐ Fighting/hitting/playing   ☐ Uses Beatitudes
   ☐ Cannot remain silent in the cafeteria   ☐ Eating/chewing gum/throwing food
   ☐ Not prepared for class   ☒ Cannot follow line rules inside/outside

Homework ____2____
   ☐ Does none to little homework   ☒ Does some homework
   ☐ Does most homework   ☐ Does all homework

Class work ____1____
   ☐ Peer interaction (talking)   ☐ Misuse of class time (not on task)   ☐ Assists peers
   ☐ Focused and on task   ☒ Incomplete class work   ☐ Completes class work

DCPS Truancy Policy: Your child is truant if s/he is absent from school without a written excuse. Thus, 3 tardies equals 1 unexcused absence; 5 unexcused absences will warrant a parent/teacher conference; 10 unexcused absences during an advisory will warrant immediate referral to Child and Family Services and failure of the advisory; 15 unexcused absences will warrant a court referral, and 40 unexcused absences equals failure of grade.)

Attendance ____3____   3=Excellent   2=Very good   1=Satisfactory   0=Unsatisfactory
   O Tardiness                                    O Absences

_____          _____

mDG

33

# Exhibit 41



# Parent Weekly Communication Note

Student **T̶̶̶̶ B̶̶̶**                          Week of  <u>November 27, 2006</u>

Teacher  <u>Ms. De Graffinreidte</u>

Reading        **35**              Spelling

Writing        **D**               Mathematics

Science        **67**              Social Studies

☒ Poor tests performance    ☒ Needs to study more    ☐ Needs to take notes

100-93= A/Advanced   92-85=B/Proficient   84-78=C/Basic 77-70=D/Needs Improvement
69-0=F/Below Basic/Failure

---

Behavior          **1**          ☒ Inappropriate language    ☒ Cant' follows class rules

☐ Disrespectful    ☒ Fighting/hitting/playing    ☐ Uses Beatitudes

☒ Cannot remain **seated** ~~in~~ in the cafeteria    ☒ Eating/chewing gum/throwing food

☒ Not prepared for class    ☒ Cannot follow line rules inside/outside

Homework        ◯

☒ Does none to little homework    ☐ Does some homework

☐ Does most homework    ☐ Does all homework

Class work        ◯

☒ Peer interaction (talking)    ☒ Misuse of class time (not on task)    ☐ Assists peers

☐ Focused and on task    ☒ Incomplete class work    ☐ Completes class work

DCPS Truancy Policy: Your child is truant if s/he is absent from school without a written excuse. Thus, <u>3</u> tardies equals I unexcused absence; <u>5</u> unexcused absences will warrant a parent/teacher conference; <u>10</u> unexcused absences during an advisory will warrant immediate referral to Child and Family Services and failure of the advisory; <u>15</u> unexcused absences will warrant a court referral, and <u>40</u> unexcused absences equals failure of grade.)

Attendance        **3**      3=Excellent      2=Very good      1=Satisfactory      0=Unsatisfactory

◯ Tardiness                              ◯ Absences

_____          _____

©DDG

# Exhibit 42

Please sign and return <u>this page</u> on Tuesday, Thank you!

Week of: <u>November 27, 2006</u> - TB

Dear Parents or Guardians:

Your child will be required to bring this form home every week so that you are kept up-to-date on his/her progress. I will send this report home on Monday and it is to be signed by you and returned by the student on Tuesday. Please review the report and if you have any questions or concerns, please indicate that you would like to have a conference. I want this year to be as successful as possible for your child and I appreciate any comments that you think would help me in accomplishing this goal.

Educationally yours,

Ms. De Graffinreidte

Teacher Comments <u>This is the first progress report for the second quarter.</u>

~~████~~ did not complete his book reports for this advisory and ten more are due this advisory. Since he has not been on his medication, he has been very energetic and off-task. It has been difficult for him to focus. He is trying to keep focused which I appreciate!!!...

Comments from Parents/Guardians

He is try to progress toward his IEP ~~goals~~ goals.

©DDG

# Exhibit 43



# Parent Weekly Communication Note

Student T████ B████                    Week of  December 4, 2006

Teacher  Ms. De Graffinreidte

| | | | |
|---|---|---|---|
| Reading | ✓ | Spelling | ✓ |
| Writing | D | Mathematics | 50 |
| Science | 70 | Social Studies | D |

☑ Poor tests performance    ☑ Needs to study more    ☐ Needs to take notes

100-93= A/Advanced   92-85=B/Proficient   84-78=C/Basic  77-70=D/Needs Improvement
69-0=F/Below Basic/Failure

---

Behavior        /        ☑ Inappropriate language    ☑ Cant' follows class rules
    ☐ Disrespectful    ☑ Fighting/hitting/playing    ☐ Uses Beatitudes
    ☑ Cannot remain ~~silent~~ seated in the cafeteria    ☐ Eating/chewing gum/throwing food
    ☑ Not prepared for class    ☑ Cannot follow line rules inside/outside

Homework        O
    ☑ Does none to little homework    ☐ Does some homework
    ☐ Does most homework    ☐ Does all homework

Class work        O
    ☑ Peer interaction (talking)    ☑ Misuse of class time (not on task)    ☐ Assists peers
    ☐ Focused and on task    ☑ Incomplete class work    ☐ Completes class work

DCPS Truancy Policy: Your child is truant if s/he is absent from school without a written excuse. Thus, 3 tardies equals 1 unexcused absence; 5 unexcused absences will warrant a parent/teacher conference; 10 unexcused absences during an advisory will warrant immediate referral to Child and Family Services and failure of the advisory; 15 unexcused absences will warrant a court referral, and 40 unexcused absences equals failure of grade.)

Attendance        3    3=Excellent        2=Very good        1=Satisfactory        0=Unsatisfactory

    O  Tardiness                                O  Absences

_____                    _____

©DDG

# Exhibit 44

Please sign and return this page on Tuesday, Thank you!

Week of:  December 4, 2006 - TB

Dear Parents or Guardians:

Your child will be required to bring this form home every week so that you are kept up-to-date on his/her progress.  I will send this report home on Monday and it is to be signed by you and returned by the student on Tuesday.  Please review the report and if you have any questions or concerns, please indicate that you would like to have a conference.  I want this year to be as successful as possible for your child and I appreciate any comments that you think would help me in accomplishing this goal.

Educationally yours,

Ms. De Graffinreidte

Teacher Comments  Your child MUST do a science project because it will count towards 25% of the science grade for the third advisory.

T⬛⬛⬛ is progressing towards his IEP goals. Another week without his medication has made it difficult for T⬛⬛⬛ to focus but he is trying which I appreciate!

Comments from Parents/Guardians _____

_____

_____

_____

©DDG

```
TRANSMISSION VERIFICATION REPORT
```

```
                              TIME  : 03/07/2007 14:04
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : BROE6J471573
```

```
DATE,TIME           03/07  14:04
FAX NO./NAME        97422097
DURATION            00:00:22
PAGE(S)             01
RESULT              OK
MODE                STANDARD
                    ECM
```

2007 MAR -7 PM 4:15
OFFICE OF THE GENERAL COUNSEL

# District of Columbia Public Schools
## State Enforcement & Investigation Division
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



X REVISED COPY

HEARING NOTICE

MEMORANDUM VIA: [✓] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:   Parent (or Representative): R. GAMBALE/P. DALTON   Fax No.: 742 -2098
                                                                  (703) 739-2323
      LEA Legal Counsel: OGC

RE:   B_____ T_____                    and (LEA) DOB: _____
      Student's Name

FROM:  SHARON NEWSOME
       Special Education Student Hearing Office Coordinator

DATE SENT: 3/5/07

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

       DATE:  3/23/07                        can't f
       TIME:  1:00 pm                        2/23/07
                              42

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 03/07/2007 14:05
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : BROE6J471573
```

```
DATE,TIME           03/07  14:05
FAX NO./NAME        97037392323
DURATION            00:00:18
PAGE(S)             01
RESULT              OK
MODE                STANDARD
                    ECM
```

# District of Columbia Public Schools
### *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8ᵀᴴ Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



*X REVISED COPY*

2007 MAR -7 PM 4: 16
OFFICE OF THE
GENERAL COUNSEL

### HEARING NOTICE

| MEMORANDUM VIA: [✓] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |

TO:    Parent (or Representative): _R. GAMBALE / P. DALTON_   Fax No.: _742 -2098_
       LEA Legal Counsel: _OGC_                                        _(703) 739 2323_

RE:    B▇▇▇ T▇▇▇▇▇              and (LEA) DOB: _____
       Student's Name

FROM: __SHARON NEWSOME__
       Special Education Student Hearing Office Coordinator

DATE SENT: ___3/5/07___

▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪ ▪

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

DATE: _3/23/07_                          _Can't f_

TIME: _1:00 Pm_          43                _3/23/07_

**FAX TRANSMISSION COVER SHEET**
**Dalton, Dalton & Houston P.C.**
**Attorneys at Law**
**1008 Pendleton Street**
**Alexandria, Virginia 22314**
**(703) 739-4300**
**FAX (703) 739-2323**

**DATE:**     February 5, 2007

**TO:**       Sharon Newsome

**AT FAX:**   202-442-5556

**FROM:**     Paul S. Dalton, Esq.

**RE:**       T. B███- Motion for Reconsideration

**NUMBER OF PAGES INCLUDING THIS PAGE:**     5

**ADDITIONAL INFORMATION:**

PLEASE DELIVER ASAP.

***********************************************************************

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNI-
CATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELE-
PHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE
ABOVE ADDRESS.
***********************************************************************

2007 FEB -6 AM 8 12
DC PUBLIC SCHOOL SYSTEM

**STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA**
**STATE ENFORCEMENT AND INVESTIGATION DIVISION (SEID)**
**SPECIAL EDUCATION PROGRAMS**

| | |
|---|---|
| Terri Bland on behalf of | ) |
| T⬛⬛⬛ B⬛⬛ | ) |
| | ) |
| v. | ) |
| | )      Hearing Officer Seymour DuBow |
| | ) |
| Mary McLeod Bethune Day Academy | ) |
| Public Charter School | ) |
| | ) |

## BETHUNE'S MOTION FOR RECONSIDERATION

COMES NOW, Bethune, by and through counsel, and hereby submits its Motion

for Reconsideration.

1.      The Hearing Officer ruled that, based on the evidence submitted at the hearing,

the Petitioner failed to meet her burden in proving the necessity of the Vineland and

Speech and Language Assessments.  *See* HOD at 4.  Bethune's Motion for a Directed

Verdict on the evaluation issue, therefore, was granted.

2.      The Hearing Officer, however, denied Bethune's Motion for a Directed Verdict on

the compensatory education issue.  At the hearing, Bethune conceded that the student

is entitled to compensatory education, but contended that the one hour a week of

individualized tutoring provided in the December 11, 2006 IEP is that compensatory

education award.  The Hearing Officer ruled, however, that the tutoring was not a

compensatory education award.  *See* HOD at 4.

3.      The Hearing Officer made his ruling based on the language of the December 11,

2006 MDT meeting notes, as well as the recollection of the education advocate.

However, if there was some confusion or disagreement as to the intention of Bethune to

offer the tutoring as a compensatory education award, the parent had ample opportunity to clarify the issue prior to the hearing. Specifically, counsel for Bethune contacted the education advocate three times via email prior to the hearing to confirm that all issues in the complaint had been resolved. *See* MM-09, MM-10, MM-11. When the advocate did not respond, counsel for Bethune contacted parent's counsel via letter reiterating the attempts to resolve all issues and asking that the complaint be withdrawn and any questions be directed to counsel's office. *See* MM-12. Parent's attorney responded to this letter via letter to Ms. Abedin at Bethune, stating only that the parent was not in agreement with the IEP and that testing had not been completed. Parent's counsel did not mention a lack of compensatory education among her concerns. *See* TB-33.

4.    Under *Reid v. District of Columbia*[1], if the LEA violates IDEIA, the Petitioner may be eligible for compensatory education services. The Petitioner must, however, first meet the burden of showing (1) that as a result of the violation, the student suffered an educational deficiency, (2) that but for the violation, he would have progressed to a certain academic level, and (3) that there exists a type and amount of compensatory education services that would bring him to the level he would have been but for the violation. The inquiry must be fact-specific and the ultimate award must "be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place".[2]

5.    While Bethune conceded at the hearing that the student is entitled to compensatory education, it also asserted that the one-on-one tutoring was sufficient to compensate for any educational deficiencies. Parent's counsel failed to notify Bethune

[1]401 F.3d 516 (D.C. Cir. 2005)
[2]*Id.* at 524.

before the hearing that she did not believe compensatory education services were adequately discussed.

6.      More importantly, Petitioner failed to satisfy her burden under *Reid* at the hearing that any compensatory education was warranted. At hearing, parent's counsel called only two witnesses: the parent and the education advocate. Neither of those witnesses discussed, or were even qualified to discuss, what, if any, educational deficiency the student had suffered, nor the type or amount of compensatory education services needed to remedy that deficiency.

7.      Bethune is ready, willing, and able to provide the compensatory education services of one-on-one tutoring offered at the December 11, 2006 meeting. Parent's counsel did not meet her burden in proving that additional compensatory education services are warranted in this case. Since parent's counsel did not meet her burden, compensatory education cannot be granted.

WHEREFORE, Bethune respectfully requests the Hearing Officer to reconsider the HOD as issued on January 26, 2007, and grant Bethune's Motion for Directed Verdict on the compensatory education issue.

DATE:      February 5, 2007              Respectfully Submitted,

for Paul S. Dalton, Esq.
Dalton, Dalton, & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
703-739-4300
703-642-2323 – fax

## Certificate of Service

I certify that a copy of this motion was faxed to Roberta Gambale, Esq. At 202-742-2098 on February 5, 2007.

*Kathryn T. Wickliffe*

for Paul S. Dalton, Esq.
Counsel for Bethune

```
┌─────────────────────────────────────────┐
│   TRANSMISSION VERIFICATION REPORT       │
└─────────────────────────────────────────┘
                              TIME  : 01/29/2007 14:03
                              NAME  :
                              FAX   :
                              TEL   :
                              SER.# : BROE6J471573
```

2007 JAN 30 AM 9: 19

```
DATE,TIME            01/29  14:03
FAX NO./NAME         97422097
DURATION             00:00:17
PAGE(S)              01
RESULT               OK
MODE                 STANDARD
                     ECM
```

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



✗ *REVISED COPY*

HEARING NOTICE

| MEMORANDUM VIA: [ ✓ ] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |

TO:   Parent (or Representative): *R. GAMBALE / P. DALTON*   Fax No.: 742-2098

LEA Legal Counsel: *OGC*                                    (703) 739-2323

RE:   B██████, T██████ _____ and (LEA)  DOB: _____
         Student's Name

FROM:   SHARON NEWSOME
         Special Education Student Hearing Office Coordinator

DATE SENT:   1/29/07

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

DATE:   2/23/07                                      *Con't f*

TIME:   9:00 AM                    49               *1/26/07*

TRANSMISSION VERIFICATION REPORT

TIME : 01/29/2007 14:04
NAME :
FAX :
TEL :
SER.# : BROE6J471573

2007 JAN 30 AM 9: 19

| | |
|---|---|
| DATE,TIME | 01/29  14:04 |
| FAX NO./NAME | 97037392323 |
| DURATION | 00:00:18 |
| PAGE(S) | 01 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# District of Columbia Public Schools
## State Enforcement & Investigation Division
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



✗ REVISED COPY

HEARING NOTICE

| MEMORANDUM VIA: [✗] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO: Parent (or Representative): _R. GAMBALE/P. DALTON_   Fax No.: _742 -2098_
_(703) 739-2323_

LEA Legal Counsel: _OGC_

RE: _B_____, T_____ _____ and (LEA) DOB: _____
Student's Name

FROM: __SHARON NEWSOME__
Special Education Student Hearing Office Coordinator

DATE SENT: ___1/29/07___

▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪▪

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

DATE: ___2/23/07___

TIME: ___9:00 AM___                    50

Con't f
1/26/07

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS

_____ )
**Petitioner** )
)
Vs. )
)
)
_____ )
**Respondent** )

**BEFORE A INDEPENDENT
SPECIAL EDUCATION HEARING
OFFICER OF THE
STATE ENFORCEMENT
&
INVESTIGATIVE DIVISION**

## INTERIM ORDER

**ON THIS DAY** came to be heard _____ 's Motion for Continuance in the above styled
cause. After hearing the evidence and the argument of counsel, the Motion for Continuance is:

_____ **DENIED**

_____ **GRANTED** The hearing is reset for _____ A.M. / P.M on _____ and

_____ **75 DAY TIME LINE WAIVED**

## CONFIRM THE NEW DATE & TIME WITH THE HEARING OFFICE COORDINATOR

**The Hearing Officer finds that there is good cause to grant the continuance because:**

_____ The parties have agreed to this continuance and the parent waived the right to receive a
final decision within 75 days.

_____ Petitioner's legal representation is unavailable. **(PLEASE CIRCLE ONE)** Diligent efforts have/have
not been made to avoid or eliminate the scheduling conflict;

_____ Assigned DCPS attorney advisor is unavailable **(PLEASE CIRCLE ONE)** DCPS has/has not made a
diligent effort to have an attorney advisor available;

_____ Witness(s) is/are unavailable. **(PLEASE CIRCLE ONE)** The party has/has not made diligent efforts
to secure the witness(s);

_____ Parent or student unavailable.

_____ Conflict in the schedule of the assigned Hearing Officer. The SHO has/has not made a diligent
effort to secure a replacement and no other Hearing Officer is available.

_____ Insufficient time allotted for the hearing. **(PLEASE CIRCLE ONE)**

A.) Parent
B.) Student Hearing Office

_____ Hearing room unavailable.

_____ Movant did not receive Prior Notice of the Hearing.

_____ Other: (Explanation) _Denied Motion for Directed Verdict in part_
_& need to reschedule for_
_additional evidence pursuant to HOD_

**SIGNED THIS DATE:** 1/26/07

**ISSUE DATE:** _____

_____
**Independent Special Education Hearing Officer**

Original to SHO – Hearing File
Copy to:     Parent/Student or Rep: _Roberta Gambale_
DCPS:
Charter School: _Paul Dalton_

Revised 11/01/2006 SHO

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
ENFORCEMENT AND INVESTIGATION DIVISION

SPECIAL EDUCATION DUE PROCESS HEARING

CONFIDENTIAL

HEARING OFFICER'S DETERMINATION


**STUDENT: T██████ B████**          **DATE OF BIRTH: 4/3/95**

**ADDRESS: 5412 C Street, S.E.**
**Washington, D.C. 20019**

**PRESENT SCHOOL ATTENDING: Bethune Academy**
**HOME SCHOOL:  Same**

**DATE OF HEARING: January 17, 2007**

**TESTIFIED AT THE HEARING:**

| | |
|---|---|
| **Corey Hamilton** | **Educational Advocate** |
| **Terri Bland** | **Mother** |


**Student's Representative: Roberta Gambale, Esq.**
**Address: 1220 L Street, N.W.**
**Washington, D.C. 20005**
**FAX: 202-742-2098**


**Bethune Academy's Representative: Paul Dalton, Esq.**
**Address: 1008 Pendleton Street**
**Alexandria, Va. 22314**
**FAX : 703-739-2323**

**INTRODUCTION:**

A hearing was held at the District of Columbia Public Schools (DCPS), 825 N. Capitol Street, N.E., Washington, D.C. 20002, on January 17, 2007, at the request of Roberta Gambale, counsel for the parent and the student. Paul Dalton represented Bethune Academy, the other party to this hearing. Counsel for both of the above parties agreed to dismiss DCPS from this proceeding.

**JURISDICTION:**

The hearing was held and this decision was written pursuant to the Individuals with Disabilities Education Act (IDEA) (P.L. 101-476), reauthorized as the IDEA Improvement Act of 1997 (P.L. 105-17) 20 U.S.C. 1400 Et. seq; further reauthorized as the IDEA Improvement Act of 2004 (P.L. 108-446); and their current regulations, specifically the Code of Federal Regulations at 34 CFR Part 300 and District of Columbia Municipal Regulations, Chapter 30, Education Handicapped, Title V, Sections 3000-3099.

**ISSUES:**

1. **Did Bethune Academy deny a Free Appropriate Public Education (FAPE) to the student by failing to conduct a Vineland and Speech and Language Evaluations?**

2. **Did Bethune Academy deny a FAPE to the student by not providing sufficient compensatory education?**

**DOCUMENTS SUBMITTED INTO EVIDENCE BY BETHUNE ACADEMY:**

**BA-1-BA-13**

**DOCUMENTS SUBMITTED INTO EVIDENCE BY STUDENT:**

**TB-1-TB-34**

**FINDINGS OF FACT:**

1. The student is an eleven-year-old male who has been found eligible for special education services by the Mary McLeod Bethune Academy, its own LEA charter school, with the disability classification of multiple disabilities-Learning Disabled and Other Health Impaired (ADHD).(BA-7 & 8)

2. A December 7, 2006 Clinical/ADHD Evaluation/Classroom Observation Report done by Psychological Assessment Solutions stated the student

was referred for a clinical evaluation, a classroom observation and the Vineland Adaptive Behavior Scales. The independent evaluators found: "Based on a review of previous assessments, interviews with the student's teacher and his mother, and this evaluator's own observation and interaction with T⬛⬛, it was decided that the Vineland-II is not an appropriate or necessary measure for the evaluation. There was no indication that T⬛⬛ has ever had noteworthy difficulty in either communication or in functions of daily living." The evaluator also did not recommend a speech and language assessment. The evaluator found: "His diagnosis of ADHD does qualify for him to receive classification as **Multiply Disabled with a Learning Disability and Other Health Impaired (OHI).** The final determination as to his eligibility for Special Education Services is, however, a decision to be made by the multidisciplinary team, after considering data from all sources."(BA-6, TB-10)

3.  A psycho-educational evaluation was done in November 2005. The evaluator tested his oral language skills and found: "T⬛⬛ performed much better on tasks that assessed his capability to generate words within a category, describe scenes, and give directions (Oral Expression standard score=96)…T⬛⬛'s skills in Oral Expression are within the Average range, and exceeds that of approximately 39% of children his age." The evaluator did not recommend a speech and language assessment. (BA-1, TB-16)

4.  On March 10, 2006, an IEP was developed for the student that was signed and agreed to by the parent that called for fifteen (15) hours a week of specialized instruction by a teacher/tutor and forty five (45) minutes a week of occupational therapy. The IEP stated that the student's disability classification was learning disabled (LD). (TB-17)

5.  On December 11, 2006 an MDT meeting convened at Bethune Academy with the parent and educational advocate in attendance. The MDT team found the student eligible for special education services as a student with the disability classification of multiple disabilities: learning disabled and Other Health Impaired (ADHD). The IEP developed provided for fifteen hours a week of specialized instruction including one hour a week of individualized tutoring and one hour a week of occupational therapy. The parent did not sign agreement with this IEP and did not give consent to implementation of the services in the IEP. (BA-8, TB-34) The MDT Meeting Notes state: "Specialized instruction should continue with tutoring in reading (decoding and comprehension as a result)…Mom raised questions regarding the inclusion model and how that would address his reading problems-mom wants a one on one tutoring help. The team has agreed to include 1 hr. of individualized tutoring in reading in order to compensate for his additional needs. Continue O.T. services…Math specialized instruction for a half hour a day, 1.5 hours of

specialized instruction in language arts, and 1 hour individualized reading instruction." (BA-7)  The MDT Meeting Notes do not have a specific discussion of compensatory education for missed services.  The educational advocate testified there was no discussion of compensatory education at the MDT meeting. (Testimony of Mr. Hamilton)

6.  On January 9, 2007 counsel for the parent faxed a letter to the special education coordinator at Bethune Academy that stated: "I am in receipt of the draft IEP developed 12/11/06.  While parent authorizes the Charter School to implement the IEP, she is not in agreement that the IEP is appropriate and/or complete.  She maintains the same concerns about the proposed 12/06 IEP that had about the prior IEP.  Furthermore, all of the testing has yet to be completed." (TB-33)

**DISCUSSION AND CONCLUSIONS OF LAW:**

At the close of counsel for the parent's case, counsel for Bethune Academy moved for a Directed Verdict on the two issues of 1) evaluations and 2) compensatory education.  Counsel for the parent has not met her burden of proof as to the necessity of the Vineland and Speech and Language Assessments.  This hearing officer has reviewed the current clinical evaluation and psycho-educational evaluation and as found in Findings of Fact #2 & #3 the professional evaluators in the clinical evaluation specifically rejected the need for a Vineland and the clinical evaluation's findings on communication and the psycho-educational evaluation's findings on oral language did not lead them to recommendation for a speech and language assessment.  This hearing officer therefore **GRANTS** the Motion for a Directed Verdict on the above evaluation issue.

On the second issue of compensatory education, counsel for Bethune Academy concedes the student is entitled to compensatory education for the failure to provide IEP services, but argues the one hour a week of individualized tutoring provided in the December 11, 2006 IEP is that compensatory education award.  A reading of the MDT Notes state that the one hour of individual tutoring is "to compensate for his additional needs."  That is not the same as a compensatory education award for missed services.  The IEP also contains the same fifteen hours of specialized instruction as the previous March IEP, but includes in the December IEP that one hour of those fifteen hours shall be individualized tutoring in reading. This hearing officer concludes that is not a compensatory education award.  Moreover, the MDT Notes do not contain a specific discussion of compensatory education and the education advocate stated there was no discussion of compensatory education at the December MDT meeting.  The Motion for a Directed Verdict on the compensatory education issue is therefore **DENIED.**

4

It is hereby **ORDERED** that:

1. Counsel for Bethune Academy's Motion for Directed Verdict on the evaluation issue is GRANTED, but his Motion for a Directed Verdict on the compensatory education issue is DENIED.

2. The case will be rescheduled to take testimony from Bethune Academy on the compensatory education issue.

   This is the final administrative decision in this matter.  Appeals on legal grounds may be made to a court of competent jurisdiction within 90 days of the rendering of this decision.

Seymour DuBow, Esq.
**Impartial Hearing Officer**          Date filed: January 26, 2007

Date Issued:

5

56

**ATTENDANCE SHEET**

STUDENT'S NAME: T██████ B██████

SCHOOL OF ATTENDANCE: _____

D.O.B: _____

HEARING DATE: 1/17/07    ROOM: 815T    TIME: 9:36 (A.M.) P.M.

| PARTICIPANT NAME: | ON BEHALF OF DCPS OR STUDENT: | TITLE: |
|---|---|---|
| Rashida Wilson | DCPS | Atty-Advisor |
| Paul S Marcsch | M.M.Bethune | Attorney |
| Golnar Abedin | Mary Mcleod Bethune | Special Ed. Coordinator |
| Darlene De Graffinreidte | MM Bethune | Educator |
| Kathryn McAuliffe | Bethune | Attorney |
| Corey Hamilton | Student | Advocate |
| Terri Bland | Child. | Parent. |
| Roberta Gambale | Student | Parent's Attorney |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Impartial Hearing Officer _____

Revised 10/17/2006

57

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez!+ |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Roxanne D. Neloms |
| Christopher L. West | Telephone: (202) 742-2000 | Omar Karram |
| | Facsimile: (202) 742-2098 | Christie Fontaine-Covington |
| ------------------------------------ | e-mail: Admin@Jeblaw.biz | ------------------------------------ |
| | | ! DC Bar Special Legal Consultant |
| | | + Admitted in Bolivia |

January 9, 2007

**Hand Delivery**
Office of General Counsel
District of Columbia Public Schools
825 North Capitol Street, NE, 9th Floor
Washington, DC 20002

Re: Five-Day Disclosure for T█████ B██ / DOB: 4/3/95

Dear Counsel:

For the upcoming hearing scheduled for January 17, 2007 at 9:00 a.m. or any subsequent hearing regarding this student and pursuant to 34 C.F.R. 300.509 (a)(3); Assistance to States for the Education of Children with Disabilities, 70 Fed. Reg. 35782, 35872 (June 21, 2005) (to be codified at 34 C.F.R. pt. 300); and D.C. MUN. REGS. tit. 5, § 3031.2 (2003), and in addition to any documents and witnesses that the District of Columbia Public Schools ("DCPS") may disclose, the parent may rely on the following documents and witnesses:

### Witnesses

1. Terri Bland, Mother;
2. T█████ B██, Student;
3. Corey Hamilton, Educational Advocate, or designee;
4. K.M. Stokes, Director, Sylvan or designee;
5. Ms. Younger, Special Education Teacher, Mary Mcleod PCS or designee;
6. Yamileth Amaya, Paralegal or designee.

---

Witnesses' names, addresses, and phone numbers:

1, 2, and 6– Witnesses can be reached at James E. Brown & Associates, PLLC, 1220 L Street NW, Suite 700 Washington, DC 20005; 202-742-2000
4 and 5– Mary Mcleod PCS, 253 42nd Street, N.E. Washington, D.C. 20019- 202-397-3044

Page Two
5-Day Disclosure for T██████ B███
January 9, 2007

## Documents

| | |
|---|---|
| TB-1 | DCPS Hearing Date Notice 12/4/06 and 11/29/06; |
| TB-2 | Due Process Complaint 10/31/06; |
| TB-3 | Scheduling Memorandum from DCPS 10/31/06; |
| TB-4 | Notice to Appear Ms. Younger, Special Education Coordinator 12/15/06; |
| TB-5 | Fax communication/confirmation to Dr. Fleitas 12/6/06; |
| TB-6 | Correspondence to Mary Mcleod PCS from attorney 12/1/06; |
| TB-7 | Correspondence to Mary Mcleod PCS from attorney 11/17/06; |
| TB-8 | Fax communication/confirmation to Mary Mcleod PCS 11/20/06; |
| TB-9 | Correspondence to Mary Mcleod PCS from advocate 11/7/06; |
| TB-10 | Clinical/ADHD Evaluation/Classroom Observation 12/7/06; |
| TB-11 | Social History Evaluation 12/6/06; |
| TB-12 | Psycho-Educational Evaluation 12/19/03; |
| TB-13 | Neuropsychological Evaluation 3/5/04; |
| TB-14 | NeuroDevelopmental Pediatric Evaluation 5/28/03; |
| TB-15 | MDT Meeting Notes 2/9/04; |
| TB-16 | Psycho-Educational Evaluation 11/17/05; |
| TB-17 | Individualized Educational Program 3/10/06; |
| TB-18 | Occupational Therapy Evaluation 12/16/05; |
| TB-19 | Correspondence from Sylvan Director 10/2/06; |
| TB-20 | Summary of Diagnostic Assessment 9/29/06; |
| TB-21 | Individualized Educational Program and Meeting Notes 2/9/04; |
| TB-22 | Individualized Educational Program and Meeting Notes 5/3/04; |
| TB-23 | Advocate Meeting Notes 2/10/04; |
| TB-24 | Advocate Meeting Notes 5/11/04; |
| TB-25 | Social Work Evaluation 1/23/04; |
| TB-26 | Parent Weekly Communication Note 10/2/06; |
| TB-27 | Correspondence to parent from School 10/2/06; |
| TB-28 | Progress Report 10/3/06; |
| TB-29 | Correspondence to attorney from Mary Mcleod PCS 11/7/06; |
| TB-30 | 3rd Grade Report Card SY03-04; |
| TB-31 | Teacher Comments SY03-04; |
| TB-32 | Attendance Record Card; |
| TB-33 | Correspondence to Mary Mcleod PCS from attorney 1/9/07; |
| TB-34 | Draft Individualized Educational Program and Meeting Notes 12/11/06. |

\* Witnesses may testify via telephone

Parent reserves the right to rely on any documents presented by DCPS that the parent deems relevant in this case.

Additionally, parent reserves the right to introduce any and all witnesses and/or documents for the purpose of impeachment and rebuttal.

If you should have any questions or wish to discuss any aspect of this case before the hearing, please contact me at (202) 742-2000.

Sincerely,

Roberta Gambale, Esq.

Attachments
cc:     Sharon Newsome, Hearing Coordinator

# Exhibit 1

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



*X REVISED COPY*

### HEARING NOTICE

| MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:  Parent (or Representative): _R. GAMBALE / P. DALTON_  Fax No.: _742-2098_
_(703) 739-2323_

LEA Legal Counsel: _OGC_

RE:  _B████, T████_  and (LEA)  DOB: _____
Student's Name

FROM:  **SHARON NEWSOME**
Special Education Student Hearing Office Coordinator

DATE SENT:  _12/4/06_

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

DATE:  _1/17/07_            _Cin't f_
TIME:  _9:00 Am_           _12/21/06_

AT:  825 North Capitol Street, NE, Washington, DC
8th Floor

ASSIGNED HEARING OFFICER: _____

[ ] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made _**exclusively**_ by the Hearing Officer, and cannot be made by **SHO** administrative staff. Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[X] THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates. If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure of evidence and witnesses to the opposing party is required at least **five business days** prior to the hearing with copies to the Special Education Student Hearing Office.

# District of Columbia Public Schools
## State Enforcement & Investigation Division
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



**HEARING NOTICE**

MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY

TO:  Parent (or Representative): _R. GAMBALE / P. DALTON_  Fax No.: _742-2098_
_(703) 739-2323_

LEA Legal Counsel: ___OGC___

RE:  ~~B        T        ~~  and (LEA) DOB: _4/3/95_
Student's Name

FROM:  **SHARON NEWSOME**
Special Education Student Hearing Office Coordinator

DATE SENT: ___11/29/06___

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on _10/30/06_. Please be advised that the hearing has been scheduled for:

DATE: ___12/21/06___
TIME: ___9:00 Am___

AT:  825 North Capitol Street, NE, Washington, DC
8th Floor

ASSIGNED HEARING OFFICER: _____

[ ] THIS IS A FINAL NOTICE OF HEARING: If you wish to request a continuance of this hearing, you must submit your request to the Special Education Student Hearing Office at the above address, or by fax at 202 442-5556. All decisions regarding continuances are made **exclusively** by the Hearing Officer, and cannot be made by SHO administrative staff. Unless you receive notice that the Hearing Officer has granted your request for a continuance, you must appear for the hearing as scheduled above.

[X] THIS IS A PROVISIONAL NOTICE OF HEARING: The SHO was unable to accommodate any of your proposed dates. If you are unavailable for the above date, you must inform the SHO in writing (letter or fax) that the date is unavailable and specify times during the next four business days when you are either available or unavailable for a teleconference with the Hearing Officer. If the SHO does not receive a response from you within three business days of your receiving this provisional notice, the notice becomes a final notice of hearing that may be modified with only a request for a continuance.

Failure to appear for a properly scheduled hearing may result in dismissal of the case or a default judgment against you. Disclosure of evidence and witnesses to the opposing party is required at least **five business days** prior to the hearing with copies to the Special Education Student Hearing Office.

# Exhibit 2

*Sta.  Ea  ation Agency for the District of C  un.  a*
**State Enforcement and Investigation Division (SEID)**
**Special Education Programs**



### *Due Process Complaint Notice*

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. **A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Act**

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting **(called a "Resolution Session")** with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings**.

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

**A.    INFORMATION ABOUT THE STUDENT:**

Name of the Student: **T&#9608;&#9608; D. B&#9608;&#9608;**    Date of Birth **4/3/95**
Ad&#9608;&#9608; **5412 C Street SE, Washington, D.C. 20019**
Ho&#9608;  &#9608; hool: **Mary McLeod Bethune Academy**
Pr&#9608;  &#9608;hool of Attendance: **Same**

1

Is this a charter school? _Yes_          (If yes, you must also provide a copy of this notice to the charter school principal or director)

Parent/Guardian of the Student: **Ms. Terri D. Bland**
Address (if different from the student's above): underline(same)

B.    **Legal Representative/Attorney:**

Name: **Roberta L. Gambale, Esq. ( James Brown and Associates, PLLC)**
Address: 1220 "L" Street, Suite 700, Washington, DC 20005
Phone: (w) (202)742-2000 (ext. 2021) (Fax) (202) 742-2098        (e-mail)
Rgambale@jeblaw.biz

Will attorney / legal representative attend the resolution session?    **X** Yes        ☐ No

C.    **Complaint Made Against (check all that apply):**

**X** Mary McLeod Bethune Academy

D.    **Resolution Session Meeting Between Parent/Representative and LEA:**

I understand that it is my right to have a resolution meeting to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution meeting to avoid having this meeting.)

The parent, by and through counsel, wishes to waive the Resolution Session Meeting for this process.

E.    **Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

**I am requesting an administrative due process hearing only.**

F.    **Facts and Reasons for the Complaint:**

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions (attach additional pages if needed):

2

## I. Nature of the problem.

## Background

T██████ D. B████ ( Hereinafter "T.B.")is an eleven (11) year old  student who currently attends the Mary McLeod Bethune Academy, a Charter School in the District of Columbia. He was first evaluated for Special Education Services during the 2003/2004 school year while attending Robert Brent Elementary School and an initial Individualized Educational Program ("IEP") was developed for the student on or about February 9, 2004.   Due to Robert Brent's failure to implement the IEP, the parent enrolled T.B. in a Christian School for the 2004/2005 school year and then in Mary McLeod Bethune Public Charter School for the 2005/2006 school year.   The parent provided a copy of the IEP to the school upon registration.

T█████ was partially re-evaluated during the 2005/2006 school year when a psycho-educational evaluation and an occupational therapy evaluation were completed.  According to the psycho-educational evaluation completed this student has made limited progress since he was evaluated in 2003.   His IQ scores were in the borderline range of academic functioning.

## Issues

1.        **Mary McLeod Bethune Day Academy ("MMBDA")  failed to convene a meeting to revise the student's  2/9/04 Individualized Educational Program ("IEP") in a timely manner.**

Mary McLeod Bethune Day Academy ("MMBDA") a Public Charter School located within the District of Columbia,  failed to convene a meeting to review and revise this student's   Individualized Educational Program ("IEP") in a timely manner.   The student was enrolled in MMBDA from the commencement of the 2005/2006 school year.  When the student began attending, his IEP had already expired. MMBDA did not convene a meeting until March 2006 to review and revise this student's program and a full team was not present at the March 2006 meeting.

According to the Individuals with Disabilities Education Improvement [1]the local education agency, which in this case would be the charter school, is required to identify students with a disability in need of services, convene a meeting to address eligibility,  develop an Individualized Educational Program ("IEP") that contains : 1) a statement of the child's present level of academic achievement and functional performance, 2) a statement of the student's measurable annual goals, 3) a description of how the child's progress toward meeting the annual goals described in paragraph (2) of this subsection will be measured, and 4) any statement of the special education needs and related services and supplementary aides for a student and begin implementation of that program as soon as possible and ensure that the student's IEP is revised annually.  The Charter School, as the LEA, has the obligation to ensure that

---

[1] S██ ██ C.F.R. § 300.111, 300.306, 300.308, 300. 320

3

the SEA is pro...ly ...tified in the event that they are ...ab... to meet the student's needs.[2] See 20 U.S.C. 1412(a)(1), 1412(a)(12)(A)(i), 1414(d)(3), (4)(B) and (7) and 1414(e).[3] Because the IEP is the mechanism through which a free and appropriate public education ("FAPE") is delivered to disabled students, failure to develop an appropriate IEP amounts to a denial of FAPE. See <u>Board of Education of the Hendrick Hudson Central School District v. Westchester County, et al v. Rowley</u>, 458 U.S. 276,102 S .Ct. 3034 (1982)[4]

By failing to convene a meeting to revise the student's IEP, the charter school has denied this student a Free and Appropriate Public Education ("FAPE").

2.    <u>Mary McLeod Bethune Day Academy ("MMBDA") failed to fully implement either the 2/9/04 and/or the 310/06 Individualized Educational Program ("IEP")</u>

Mary McLeod Bethune Day Academy ("MMBDA") a Public Charter School located within the District of Columbia,    failed to fully implement this student's Individualized Educational Program ("IEP") dated February 9, 2004 and/or the IEP developed in March 2006

The student was enrolled in MMBDA from the commencement of the 2005/2006 school year. Between the commencement of the 2005/2006 school year and April 2006 the student received no services and was enrolled in a regular education program.

After the March 10, 2006 IEP was developed, the only services that were provided were occupational therapy services and reading instruction from the school's reading specialist on a weekly basis. Services in other academic areas were not received.

The student was re-enrolled in MMBDA for the 2006/2007 school year. Parent was instructed by T.B.'s classroom teacher that he was not receiving specialized instruction due to a staffing problem at the school.

. The Charter School, as the LEA, has the obligation to ensure that the student's educational program is being implemented and if they are unable to implement the IEP that the SEA is promptly notified in the event that they are unable to meet the student's needs.[5] See 20 U.S.C. 1412(a)(1), 1412(a)(12)(A)(i), 1414(d)(3), (4)(B) and (7) and 1414(e).[6] Since the IEP is the mechanism through which a free and appropriate public education ("FAPE") is delivered to disabled students, failure to develop an appropriate IEP amounts to a denial of FAPE. See <u>Board of Education of</u>

---

[2] <u>See</u>  D.C. MUN. REGS. tit. 5, § 3011 (2003).

[3] Section 300.324

[4] Id at 18? " "*The free appropriate public education required by the Act is tailored to the unique needs of the handicapped child by means of an Individualized Educational Program ("IEP")* "

[5] <u>See</u>  D.C. MUN. REGS. tit. 5, § 3011 (2003).

[6] Section 300.324

4

the Hendrick H. o.  entral School District v. Westche. r. nty, et al v. Rowley, 458 U.S. 276,102 S. Ct. 3034 (1982)[7]

### 3.      Mary McLeod Bethune Day Academy ("MMBDA") failed to provide comprehensive evaluations for this student

Mary McLeod Bethune Day Academy ("MMBDA") a Public Charter School located within the District of Columbia, failed to provide comprehensive evaluations for this student. T.B. was enrolled in MMBDA at the commencement of the 2005/2006 school year. Re-evaluations were conducted for T.B. on or about November 2005 and indicate that the student was performing significantly below level in reading, language arts, written expression, math and spelling. His scores fell within the borderline range of academic functioning. When compared with prior testing completed in 2003, no academic progress could be demonstrated. Despite this, further testing was not conducted as would be appropriate such as a Vineland Adaptive Scale, a Speech and Language Assessment, a Social History and/or any testing to follow up on the prior ADHD diagnosis  Pursuant to 20 U.S.C. 1414(b)(1)-(3), 1412(a)(6)(B)[8] the public agency has an obligation to ensure that s student is comprehensively evaluated in all areas of suspected disability and so as to identify all instructional and/or related service needs. .  As a result, this student has been denied a Free and Appropriate Public Education ("FAPE").

### 4.      Mary McLeod Bethune Day Academy ("MMBDA") failed to develop an appropriate Individualized Educational Program ("IEP") for this student on or about March 10, 2006.

Mary McLeod Bethune Day Academy ("MMBDA") a Public Charter School located within the District of Columbia, failed to develop an appropriate Individualized Educational Program ("IEP") for this student on or about March 10, 2006. The public agency has an obligation to ensure that the Individualized Educational Program ("IEP") for each student is revised not less than annually pursuant to 20 U.S.C 1412 (a)(1), 1412 (a)(12)(A)(i), 1414(d)(3), (4)(B) and (7) and 1414(e)).[9] In the case at hand, DCPS has failed to develop an appropriate  IEP  for this student. According to    20 U.S.C 1412 (a)(1), 1412 (a)(12)(A)(i), 1414(d)(3), (4)(B) and (7) and 1414(e)).[10]

The local  education agency, is to make certain that each IEP for each student must contain a statement of the child's present level of academic achievement and functional performance, 1)) a statement of the student's measurable annual goals, 2) a description of how the child's progress toward meeting the annual goals described in paragraph (2) of this subsection will be measured, and 3) any statement of the

---

[7] Id  182  " "*The free appropriate public education required by the Act is tailored to the unique needs of the handicapped child by means of an Individualized Educational Program ("IEP") "*
[8] Cit. a 300.303
[9] Sec. 300 '24
[10] Sec. 300. 324

5

SEE   d 7/01/05

special educai. .i .ls and related services and supple. .nt  y aids for a student to advance properly toward attaining the annual goals.

The IEP for T.B. is inappropriate because it fails to provide him with the level of services that he requires based upon his academic functioning and fails to address the impact of a prior ADHD diagnosis and/or is based upon incomplete evaluations and/or drafted by an incomplete IEP team.[11]

### 5.    Mary McLeod Bethune Day Academy ("MMBDA") failed to convene an appropriate Individualized Educational Program ("IEP") team on or about March 10, 2006.

Mary McLeod Bethune Day Academy ("MMBDA") a Public Charter School located within the District of Columbia, failed to convene a complete and/or appropriate Individualized Educational Program ("IEP") team for this student on or about March 10, 2006. The public agency has an obligation to ensure that the Individualized Educational Program ("IEP") for each student is revised not less than annually pursuant to 20 U.S.C 1412 (a)(1), 1412 (a)(12)(A)(i), 1414(d)(3), (4)(B) and (7) and 1414(e)).[12]   The IEP team was incomplete due to the lack of a special education teacher. The only teacher participating on the team was the student's regular education teacher.

## II. Issues presented.

1. Whether Mary McLeod Bethune Day Academy  failed to convene a meeting to review and revise the student's expired IEP in a timely manner?

2. Whether Mary McLeod Bethune Day Academy  failed to fully implement either the 2004 IEP and/or the 2006 IEP for this student?

3. Whether Mary McLeod Bethune Day Academy  failed to  develop an appropriate IEP on or about March 10, 2006?

4. Whether Mary McLeod Bethune Day Academy  failed to comprehensively evaluate the student so as to identify all areas of suspected disability and all related service and/or instructional needs?

5. Whether Mary McLeod Bethune Day Academy  failed to  convene an appropriate Individualized Educational Program ("IEP") team on or about March 10, 2006?

6. Whether this student has been denied a Free and Appropriate Education ("FAPE")?

---

[11] Furn. .more, the IEP indicates that it is an initial IEP, despite the fact that the student came to MMBDA with a pro .r . dated 2004 and provided a copy of the program to the school upon enrollment.
[12] S. .. .o .24

6

### III. To the extent known to you at this time, how can this problem be resolved?

**WHEREFORE**, the guardian, by and through counsel, requests the following relief:

1. A finding that the Charter School denied T.B. a FAPE ;

2. That the Charter School shall immediately convene a meeting review and revise the student's Individualized Educational Program ("IEP") as appropriate

3. That the Charter School shall conduct and/or fund any additional evaluations required by this student on an expedited basis such as a Vineland Adaptive Scale, a Social History, a Speech and Language Evaluation and a Clinical Evaluation, as well as a Classroom Observation;

4. That Charter  School shall promptly notify District of Columbia Public Schools ("DCPS") of any inability on the part of the Charter School to provide services as set forth for this student in his program and/or a setting conducive to provision of FAPE;

5. The parent's right to  address compensatory education for denials of FAPE is reserved;

6.  That the Charter School agrees to pay counsel for the parent's reasonable attorney's fees in an amount not to exceed Four Thousand Dollars and Zero Cents ($4,000.00), as full payment of attorneys' fees and related costs incurred in the matter;

7. All meetings shall be scheduled through counsel for the parent, Roberta L. Gambale, Esq., in writing, via facsimile, at 202-742-2097 or 202-742-2098;

8. Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the Charter Schools' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

9. Provide counsel for the parent with copies, pursuant to 5 DCMR 3021.8, of all evaluation reports and all educational records on the student no later than sixteen (16) business hours prior to the convening of any meeting;

10. 19.. The Charter School shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation (5 DCMR 3000.3), and Other related services as are defined at 34 C.F.R. 300.24, designed to meet this student's unique needs and preparation for employment and independent living;

11. That Charter School within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L.  No. 108-446, Sec. 101, § 615(c)(2)(B), provide the parent's representative, Roberta L. Gambale, Esq., via facsimile, at 202-742-2097 or 202-

7

SFID DPCS  Rev'd. 7/01/05

742-2098, the following: i) an explanation of why a. School proposed or refused to take the action raised in the complaint; ii) a description of other options that the IEP team considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

12. That Charter School, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of Charter School, for their desire to have a Resolution Session Meeting, and the guardian's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

13. That Charter School's failure to comply with the Individuals with Disabilities Education Improvement Act of 2004  and allege any insufficiency of the administrative due process complaint, will constitute waiver on the part of Charter School to make such argument at any later date and time.

14. That Charter School, pursuant to 20 U.S.C. 1415(f)(1)(B)[13]  within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2097 or 202-742-2098, to schedule and convene a Resolution Session Meeting;

15. That Charter School convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint.  That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student shall include the following persons:  1) the student's special education teacher, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a person who can interpret the data, 5) any person(s) who conducted any assessments on the student and/or would be qualified to conduct the  evaluations requested in the parent's complaint.

16. That Charter School's failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified in 20 U.S.C. !415(f)(1)(B) constitute joint waiver between DCPS and the guardian to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

17. A finding that the parent is the prevailing party in this action.

8

**G.**    **Accommodations and Assistance Needed**:

- N/A

Dated this 31st Day of October,  2006

Roberta L. Gambale, Esq.,
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
202-742-2021

**Mail, fax or deliver this complaint notices to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC  20002**
**Fax number: 202/442-5556**

9

```
***********************
***   TX REPORT   ***
***********************


TRANSMISSION OK

TX/RX NO            4407
RECIPIENT ADDRESS   94425556
DESTINATION ID
ST. TIME            10/31 15:55
TIME USE            01'33
PAGES SENT          10
RESULT              OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC

### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown<br>Domiento C.R. Hill<br>Roberta Gambale<br>Miguel A. Hull<br>Christopher L. West | Attorneys at Law<br>1220 L Street, NW<br>Suite 700<br>Washington, DC 20005<br>Telephone: (202) 742-2000<br>Facsimile: (202) 742-2098<br>e-mail: Admin@Jeblaw.biz | Juan J. Fernandez!+<br>Tilman L. Gerald<br>John A. Straus<br>Roxanne D. Neloms<br>Omar Karram<br>Christie Fontaine |

--------------------------------                                              ------------------------------

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# FAX COVER SHEET

DATE:        **October 31, 2006**

TO:          **Ms. Sharon Newsome, DCPS Student Hearing Office Coordinator**

FAX NO.:     **(202)442-5556**

FROM:        **Roberta L. Gambale, Esq.**

SUBJECT:     **Due Process Hearing Complaint for T██████ B████, DOB: 4/3/95**

NUMBER OF PAGES INCLUDING COVER SHEET: 10

COMMENTS:

# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

----------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine

--------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# FAX COVER SHEET

DATE:            **October 31, 2006**

TO:              **Ms. Sharon Newsome, DCPS Student Hearing Office Coordinator**

FAX NO.:         **(202)442-5556**

FROM:            **Roberta L. Gambale, Esq.**

SUBJECT:         **Due Process Hearing Complaint for T██████ B████, DOB: 4/3/95**

NUMBER OF PAGES INCLUDING COVER SHEET:  10

COMMENTS:

The information is **CONFIDENTIAL** and is intended only for the use of the addressee(s) named above. If the reader of this is not the intended recipient(s) or the employee or agent responsible for delivering the message to the intended please note that any dissemination, distributions or copying of this communication is strictly prohibited. Anyone who communication in error should notify us immediately by telephone and return the original message to us at the above U.S. Mail.

# Exhibit 3

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556



# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney:Roberta Gambale, Esq.**
**Parent: Terri Bland**

Telephone Number: **(202) 742-2000**          Pages: **3**
Fax Number: **(202) 742-2098**              Date: **October 31, 2006**

---

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: T▮▮▮▮▮▮ B▮▮▮
School:  **Attending Mary McLeod Bethune Academy**

The Complaint Intake Unit is responsible for providing parties with information notice that a Due Process Complaint has been filed with the Student Hearing Office.  If you have questions about the attached Notice, please contact the Complaint Intake Unit at (202) 724-6556.  Otherwise, if you have questions about the content of the compliant you should contact your legal counsel for further advice.

                                        **Thank You**
                                        **Marica Brown**

The document(s) accompanying this telecopy transmission contains confidential information that is legally privileged.  The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| B███, T.            Petitioner | ) | HEARING OFFICER |
| | ) | |
| Vs. | ) | |
| | ) | |
| DCPS | ) | |
| Attending Mary McLeod Bethune Academy | ) | DISTRICT OF COLUMBIA |
| | | |
| Respondent | ) | PUBLIC SCHOOLS |

# SCHEDULING MEMORANDUM

1.    A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint within 15 calendar days of receiving notice of the parents' complaint. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings.**

2.    The complaint notice was filed on **October 31, 2006**

3.    The deadline for the resolution meeting is **November 15, 2006** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A.    *Prior Written Notice Not Issued by the Local Educational Agency.* If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, within 10 days of receiving the complaint, send to the parent a response that shall include:

1.    An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;

2.    A description of other options that the IEP Team considered and the reasons why those options were rejected;

3.    A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and

4.    A description of the factors that is relevant to the agency's proposal or refusal.

7/6/05

B.    Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **November 10, 2006**.

C.    *Deficiency Notice*. A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, within 15 days of receiving the notice of the complaint, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.    The deadline for filing a deficiency notice is **November 15, 2006**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence. A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice. The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law. The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

Rev'd 7/6/05

79

# Exhibit 4

Fax number: 202/442-5556

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

In the matter of: §
§
T____ B____ §
_Petitioner_ §
§
vs. §
§
Mary Mcleod Bethune PCS §
_Respondent_ §
§

BEFORE A SPECIAL EDUCATION

HEARING OFFICER

DC PUBLIC SCHOOLS

## NOTICE TO APPEAR

To: Ms. Younger - Special Education Teacher

This is to notify you that you are required to appear and under oath to give testimony as a witness at the Special Education Due Process Hearing in the above styled cause. The hearing is scheduled for:

Date: January 17, 200 7

Time: 9:00 a.m.

Place: Special Education Student Hearing Office
825 North Capitol St., NE
8th Floor
Washington, DC 20002

This Notice to Appear is issued under the authority of the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(h)(2), 5 D.C.M.R. § 3031.1(b), and § 800.1(4), Student Hearing Office Standard Operating Procedures. Any party to a special education administrative hearing has the right to present evidence and compel the attendance of witnesses who have knowledge of relevant facts or whose opinions are important for reaching an appropriate disposition on the merits of this case.

The exact time of your testimony cannot be determined prior to the date of the hearing. Under the hearing rules please be advised that you might be excluded from the hearing room prior to your testimony. You are welcome to bring reading material or such other activities as you may need to pass the time while waiting.

Your appearance has been requested by:

Name: Roberta Gambale, Esq.

Address: 1220 L Street, N.W.
Suite 700
Washington, DC 20005
47

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

81

Phone: 202 - 742-2021

Signed this 15 day of December, 2006.

_____
ATTORNEY

_____
SPECIAL EDUCATION HEARING OFFICER

## PROOF OF SERVICE

This will certify that a true and correct copy of this Notice to Appear was served on:

Name of witness: Ms. Younger Special Education Coordinator

Date: January 17, 2007

Time: 9:00 a.m.

Manner of Service:

_____ Certified mail, return receipt requested

✓ Fax transmission

_____ Hand delivery

By: Yamileth Amaya
(Person executing service)

Date: 12/15/06

48

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine-Covington

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:      December 15, 2006

TO:         Sharon Newsome, Coordinator, Student Hearing Office

PHONE:    202-442-4800

FAX NO:    202-442-5556

FROM:      Yamileth Amaya, Paralegal

Subject:   T━━━ B━━
DOB:       4/3/95

NUMBER OF PAGES INCLUDING COVER SHEET: 3

COMMENTS: Please find attached Motion to Compel Witness Ms. Younger, Special

Education Teacher for the above mentioned student.

BROWN & Associates    002

**Fax number: 202/442-5556**

## STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| In the matter of: | § | BEFORE A SPECIAL EDUCATION |
| | § | |
| T█████ B██ | § | |
| *Petitioner* | § | |
| | § | HEARING OFFICER |
| vs. | § | |
| | § | |
| Mary Mcleod Bethune PCS | § | |
| *Respondent* | § | DC PUBLIC SCHOOLS |

## NOTICE TO APPEAR

To:    Ms. Younger - Special Education Teacher

This is to notify you that you are required to appear and under oath to give testimony as a witness at the Special Education Due Process Hearing in the above styled cause. The hearing is scheduled for:

Date:    January 17, 2007

Time:    9:00 a.m.

Place:    Special Education Student Hearing Office
825 North Capitol St., NE
8th Floor
Washington, DC 20002

This Notice to Appear is issued under the authority of the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(h)(2), 5 D.C.M.R. § 3031.1(b), and § 800.1(4), Student Hearing Office Standard Operating Procedures. Any party to a special education administrative hearing has the right to present evidence and compel the attendance of witnesses who have knowledge of relevant facts or whose opinions are important for reaching an appropriate disposition on the merits of this case.

The exact time of your testimony cannot be determined prior to the date of the hearing. Under the hearing rules please be advised that you might be excluded from the hearing room prior to your testimony. You are welcome to bring reading material or such other activities as you may need to pass the time while waiting.

Your appearance has been requested by:

Name:    Roberta Cambale, Esq.

Address    1220 L Street, N.W.
Suite 700
Washington, DC 20005
47

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

84

Phone:    202 - 742-2021

Signed this 15 day of December , 2006.

_____
ATTORNEY

_____
SPECIAL EDUCATION HEARING OFFICER

## PROOF OF SERVICE

This will certify that a true and correct copy of this Notice to Appear was served on:

Name of witness:    Ms. Younger  Special Education Coordinator

Date:    January 17, 2007

Time:    9:00 a.m.

Manner of Service:

_____ Certified mail, return receipt requested

✓ Fax transmission

_____ Hand delivery

By:    Yamileth Amaya
(Person executing service)

Date:    12/15/06

48

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine-Covington

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

**DATE:**    December 15, 2006

**TO:**    Sharon Newsome, Coordinator, Student Hearing Office

**PHONE:**    202-442-4800

**FAX NO:**    202-442-5556

**FROM:**    Yamileth Amaya, Paralegal

**Subject:**    T██████ B████

**DOB:**    4/3/95

NUMBER OF PAGES INCLUDING COVER SHEET: 3

COMMENTS: Please find attached Motion to Compel Witness Ms. Younger, Special Education Teacher for the above mentioned student.

Fax number: 202/442-5556

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the matter of: | § | BEFORE A SPECIAL EDUCATION |
| | § | |
| T██████ B██████ | § | |
| *Petitioner* | § | |
| | § | HEARING OFFICER |
| vs. | § | |
| | § | |
| Mary McLeod Bethune PCS | § | |
| *Respondent* | § | DC PUBLIC SCHOOLS |

## <u>NOTICE TO APPEAR</u>

To: **Ms. Younger - Special Education Teacher**

This is to notify you that you are required to appear and under oath to give testimony as a witness at the Special Education Due Process Hearing in the above styled cause. The hearing is scheduled for:

**Date:** January 17, 2007

**Time:** 9:00 a.m.

**Place:** Special Education Student Hearing Office
825 North Capitol St., NE
8th Floor
Washington, DC 20002

This Notice to Appear is issued under the authority of the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(h)(2), 5 D.C.M.R. § 3031.1(b), and § 800.1(4), Student Hearing Office Standard Operating Procedures. Any party to a special education administrative hearing has the right to present evidence and compel the attendance of witnesses who have knowledge of relevant facts or whose opinions are important for reaching an appropriate disposition on the merits of this case.

The exact time of your testimony cannot be determined prior to the date of the hearing. Under the hearing rules please be advised that you might be excluded from the hearing room prior to your testimony. You are welcome to bring reading material or such other activities as you may need to pass the time while waiting.

Your appearance has been requested by:

Name: Roberta Gambale, Esq.

Address: 1220 L Street, N.W.
Suite 700
Washington, DC 20005

47

Standard Operating Procedures
Special Education Student Hearings and Appeals
Effective June 30, 2006

Phone: _202 - 742-2021_____

Signed this _15_ day of _December_, 2006.

_____
ATTORNEY

_____
SPECIAL EDUCATION HEARING OFFICER

## PROOF OF SERVICE

This will certify that a true and correct copy of this Notice to Appear was served on:

Name of witness: _Ms. Younger Special Education Coordinator_

Date: _January 17, 2007_____

Time: _9:00 a.m._____

Manner of Service:

_____ Certified mail, return receipt requested

___✓___ Fax transmission

_____ Hand delivery

By: _Yamileth Amaya_____
(Person executing service)

Date: _12/15/06_____

48

```
**********************
***    TX REPORT    ***
**********************


TRANSMISSION OK

TX/RX NO              0957
CONNECTION TEL                    94425556
CONNECTION ID
ST. TIME             12/15  14:25
USAGE T              00'25
PGS. SENT               3
RESULT               OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine-Covington

--------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:      December 15, 2006

TO:        Sharon Newsome, Coordinator, Student Hearing Office

PHONE:     202-442-4800

FAX NO:    202-442-5556

FROM:      Yamileth Amaya, Paralegal

Subject:   T██████ B██████
DOB:       4/3/95

NUMBER OF PAGES INCLUDING COVER SHEET: 3

COMMENTS: Please find attached Motion to Compel Witness Ms. Younger, Special Education Teacher for the above mentioned student.

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO              0990
CONNECTION TEL                      97235830
CONNECTION ID
ST. TIME             12/15 16:00
USAGE T              00'50
PGS. SENT               3
RESULT               OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine-Covington

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:  December 15, 2006

TO:    Ms. Younger, Special Education Teacher, Mary McLeod Bethune Day Academy

FROM:  Yamileth Amaya, Paralegal

PHONE NO: (202) 397--3044

FAX NO: 202) 397-3046

SUBJECT:  T██████ B████
DOB: 4/3/95

NUMBER OF PAGES, INCLUDING FAX COVER SHEET: **3**

COMMENTS:  Please find attached Motion to Compel Witness .

## JAMES E. BROWN & ASSOCIATE, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

------------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine-Covington

--------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:  December 15, 2006

TO:    Ms. Younger, Special Education Teacher, Mary McLeod Bethune Day Academy

FROM:  Yamileth Amaya, Paralegal

PHONE NO: (202) 397--3044

FAX NO: 202) 397-3046

SUBJECT:  T████ B███
DOB: 4/3/95

NUMBER OF PAGES, INCLUDING FAX COVER SHEET: **3**

COMMENTS:  Please find attached Motion to Compel Witness .

-----------------------------------------------------------------

-----------------------------------------------------------------

**STATEMENT OF CONFIDENTIALITY:**
The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information.  If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

## JA. R. E. BROWN & ASSOCIATE ., LLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

------------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine-Covington

---------------------------------

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# *FAX COVER SHEET*

DATE:    December 15, 2006

TO:    Sharon Newsome, Coordinator, Student Hearing Office

PHONE:    202-442-4800

FAX NO:    202-442-5556

FROM:    Yamileth Amaya, Paralegal

Subject:    T█████ B████
DOB:    4/3/95

NUMBER OF PAGES INCLUDING COVER SHEET: 3

COMMENTS:  Please find attached Motion to Compel Witness Ms. Younger, Special

Education Teacher for the above mentioned student.

92

# Exhibit 5

```
*********************
***   TX REPORT   ***
*********************

TRANSMISSION OK

TX/RX NO            0668
CONNECTION TEL                    93275453
CONNECTION ID
ST. TIME           12/06 16:00
USAGE T            04'37
PGS. SENT          15
RESULT             OK
```

## JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez!+ |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Roxanne D. Neloms |
| Christopher L. West | Telephone: (202) 742-2000 | Omar Karram |
| | Facsimile: (202) 742-2098 | Christie Fontaine-Covington |

------------------------------

e-mail: Admin@Jeblaw.biz

------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# FAX COVER SHEET

DATE:          December 6, 2006

TO:            Dr. Fleitas

FAX NO:        (202) 327-5453

FROM:          Yamileth Amaya

SUBJECT:       T███████ B█████

NUMBER OF PAGES INCLUDING COVER SHEET:      **15**

_____ N. S: Please find attached The Children's Hospital Neurodevelopment Evaluation and
_____ ological Evaluation from Howard University as well as meeting notes indicating
_____ public agency.

94

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine-Covington

-----------------------------------

e-mail: Admin@Jeblaw.biz

-------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# FAX COVER SHEET

DATE:            December 6, 2006

TO:              Dr. Fleitas

FAX NO:          (202) 327-5453

FROM:            Yamileth Amaya

SUBJECT:         T██████ B███

NUMBER OF PAGES INCLUDING COVER SHEET:        **15**

COMMENTS: Please find attached The Children's Hospital Neurodevelopment Evaluation and Neuropsychological Evaluation from Howard University as well as meeting notes indicating received by public agency.

...... ....mation is **CONFIDENTIAL** and is intended only for the use of the addressee(s) named above. If the reader of this ...... ....the intended recipient(s) or the employee or agent responsible for delivering the message to the intended ...... ....note that any dissemination, distributions or copying of this communication is strictly prohibited. Anyone who ...... ....unication in error should notify us immediately by telephone and return the original message to us at the above ...... ....U.S. Mail.

95

# Exhibit 6

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine

### December 1, 2006

**Via Facsimile Only**
Ms. Abedin, Special Education Coordinator
Mary Mcleod Bethune Day Academy
7600 Georgia Avenue, N.W. # 204
Washington, D.C. 20011

Re:    Student- T▬▬ B▬, DOB: 4/3/95
Attending School: Mary McLeod Bethune

Dear Ms. Abedin:

My client, Ms. Teri Bland, recently contacted me regarding communication she has received from your school psychologist, who has indicated that he will be initiating testing for T▬▬. Apparently the psychologist was unaware of the prior ADHD diagnosis and wanted the parent to advise him as to when the school was first notified of the diagnosis.

The initial notification was back in 2003 and is documented on page 5 of the psycho-educational assessment completed by District of Columbia Public Schools ("DCPS"). The MDT that convened just prior to her enrollment at Mary McLeod recommended that his records should be forwarded to Dr. Taylor Davis for review. There has been no further follow up on the prior ADHD diagnosis and the impact that it is having on T▬ academically, though T▬ is on medication under the supervision of his medical doctor. All of the initial evaluations- including the initial reports from Children Hospital that diagnosis T▬ with developmental delays and blindness in one eye should be part of his permanent record.

Again, the parent would request that notices of proposed testing be provided to this office in a timely manner.    Please feel free to call me if you have any questions or concerns. I may be reached at 202-742-2000 (ext. 2021).

Yours truly,

Roberta L. Gambale, Esq.

CC·    Parent

* *Admitted Only in Virginia. Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.*

```
*********************
***   TX REPORT   ***
*********************


TRANSMISSION OK

TX/RX NO              0339
RECIPIENT ADDRESS     96732233
DESTINATION ID
ST. TIME              12/01  11:20
TIME USE              00'18
PAGES SENT            1
RESULT                OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez!+ |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | 'John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Roxanne D. Neloms |
| Christopher L. West | Telephone: (202) 742-2000 | Omar Karram |
| | Facsimile: (202) 742-2098 | Christie Fontaine |

**December 1, 2006**

**Via Facsimile Only**
Ms. Abedin, Special Education Coordinator
Mary Mcleod Bethune Day Academy
7600 Georgia Avenue, N.W. # 204
Washington, D.C. 20011

Re:   Student- T██████ B████, DOB: 4/3/95
Attending School: Mary McLeod Bethune

Dear Ms. Abedin:

My client, Ms. Teri Bland, recently contacted me regarding communication she has received from your school psychologist, who has indicated that he will be initiating testing for T█████. Apparently the psychologist was unaware of the prior ADHD diagnosis and wanted the parent to advise him as to when the school was first notified of the diagnosis.

The initial notification was back in 2003 and is documented on page 5 of the psycho-educational assessment completed by District of Columbia Public Schools ("DCPS"). The MDT that convened just prior to her enrollment at Mary McLeod recommended that his records should be forwarded to Dr. Taylor Davis for review. There has been no further follow up on the prior ADHD diagnosis and the impact that it is having on T█████ academically, though T█████ is on medication under the supervision of his medical doctor. All of the initial evaluations- including the initial reports from Children Hospital that diagnosis T█████ with developmental delays and blindness in one eye should be part of his permanent record.

Again, the parent would request that notices of proposed testing be provided to this office in a timely manner. Please feel free to call me if you have any questions or concerns. I may be reached at 202-742-2000 (ext. 2021).

# Exhibit 7

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez!+ |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Roxanne D. Neloms |
| Christopher L. West | Telephone: (202) 742-2000 | Omar Karram |
| | Facsimile: (202) 742-2098 | Christie Fontaine |

**November 17, 2006**

**Via Facsimile Only**
Ms. Abedin, Special Education Coordinator
Mary Mcleod Bethune Day Academy
7600 Georgia Avenue, N.W. # 204
Washington, D.C. 20011

            **Re: Request for Hearing Date**
            **Student- T███████ B████ , DOB: 4/3/95**
            **Attending School: Mary McLeod Bethune**

Dear Ms. Abedin:

      I have recently had an opportunity to speak with my client, Ms. Teri Bland, regarding the outcome of the resolution meeting that was held the other day.   While no resolution was reached, Ms. Bland still invites the school to move forward with the testing that was deemed to be warranted. She is also fully willing to participate in a Multidisciplinary Team  meeting for her child should one be scheduled by the school.

      However, since the matter has not been resolved to parent's satisfaction, the parent is requesting that her case proceed to hearing and a date be set.

      Please feel free to call me if you have any questions or concerns.  I may be reached at 202-742-2000 (ext. 2021).

            Yours truly,

            Roberta L. Gambale, Esq.

CC:    Parent
       Student Hearing Office
       Advocate

+ Admitted Only in Virginia. Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.

HP Fax Series 900
Plain Paper Fax/Copier

Fax History Report for

(202) 742-2099
Nov 17 2006 5:42pm

<u>Last Fax</u>

| <u>Date</u> | <u>Time</u> | <u>Type</u> | <u>Identification</u> | <u>Duration</u> | <u>Pages</u> | <u>Result</u> |
|------|------|------|----------------|----------|-------|--------|
| Nov 17 | 5:40pm | Sent | 97238416 | 1:31 | 2 | OK |

Result:
   OK - black and white fax

## JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

------------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine

---------------------------------

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# FAX COVER SHEET

DATE:             **November 17, 2006**

TO:               **Ms. Abedin, SEC- Mary McLeod Bethune PCS**

FAX NO.:          **(202)723-5820**

FROM:             **Roberta L. Gambale, Esq.**

SUBJECT:          **Request for Hearing Date- T███████ B███, DOB: 4/3/95**

NUMBER OF PAGES INCLUDING COVER SHEET:

COMMENTS:         *parent is requesting that a hearing date be set.*

The attached information is **CONFIDENTIAL** and is intended only for the use of the addressee(s) named above. If the reader of this is not the intended recipient(s) or the employee or agent responsible for delivering the message to the intended recipient, please note that any dissemination, distributions or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us at the above address via the U.S. Mail.

```
*********************
***  TX REPORT  ***
*********************

TRANSMISSION OK

TX/RX NO              4989
RECIPIENT ADDRESS     94425556
DESTINATION ID
ST. TIME              11/17 17:27
TIME USE              00'21
PAGES SENT            2
RESULT                OK
```

## JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez!+ |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Roxanne D. Neloms |
| Christopher L. West | Telephone: (202) 742-2000 | Omar Karram |
| | Facsimile: (202) 742-2098 | Christie Fontaine |
| ------------------------ | e-mail: Admin@Jeblaw.biz | ------------------------ |

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# FAX COVER SHEET

DATE:           **November 17, 2006**

TO:             **Ms. Sharon Newsome, DCPS Student Hearing Office Coordinator**

FAX NO.:        **(202)442-5556**

FROM:           **Roberta L. Gambale, Esq.**

SUBJECT:        **Request for Hearing Date- T██████ B████, DOB: 4/3/95**

NUMBER OF PAGES INCLUDING COVER SHEET:

COMMENTS:       ***No Resolution was reached and parent is requesting that a hearing date
be set.***

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

-----------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine

--------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# FAX COVER SHEET

DATE:                  **November 17, 2006**

TO:                    **Ms. Sharon Newsome, DCPS Student Hearing Office Coordinator**

FAX NO.:               **(202)442-5556**

FROM:                  **Roberta L. Gambale, Esq.**

SUBJECT:               **Request for Hearing Date- T██████ B███, DOB: 4/3/95**

NUMBER OF PAGES INCLUDING COVER SHEET:

COMMENTS:       *No Resolution was reached and parent is requesting that a hearing date be set.*

This enclosed information is **CONFIDENTIAL** and is intended only for the use of the addressee(s) named above. If the reader of this message is not the intended recipient(s) or the employee or agent responsible for delivering the message to the intended recipient, please note that any dissemination, distributions or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us at the above address via the U.S. **Mail.**

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

... .. Brown
. ...... C.R. Hill
I ..... Gambale
..quel A. Hull
Christopher L. West

--- ... ----------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine

--------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# FAX COVER SHEET

**DATE:**        **November 17, 2006**

**TO:**          **Ms. Sharon Newsome, DCPS Student Hearing Office Coordinator**

**FAX NO.:**     **(202)442-5556**

**FROM:**        **Roberta L. Gambale, Esq.**

**SUBJECT:**     **Request for Hearing Date- T█████ B███, DOB: 4/3/95**

NUMBER OF PAGES INCLUDING COVER SHEET:

**COMMENTS:**     *No Resolution was reached and parent is requesting that a hearing date be set.*

. ... ... ....mation is **CONFIDENTIAL** and is intended only for the use of the addressee(s) named above. If the reader of this
. ... .. .nc the intended recipient(s) or the employee or agent responsible for delivering the message to the intended
. ... .se note that any dissemination, distributions or copying of this communication is strictly prohibited. Anyone who
.... .. ...unication in error should notify us immediately by telephone and return the original message to us at the above
... . ... S. Mail.

105

# Exhibit 8

# JAMES E. BROWN & ASSOCIATES, PLLC
### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez!+ |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Roxanne D. Neloms |
| Christopher L. West | Telephone: (202) 742-2000 | Omar Karram |
| | Facsimile: (202) 742-2098 | Christie Fontaine-Covington |
| ---------------------------------- | e-mail: Admin@Jeblaw.biz | -------------------------------- |
| | | ! DC Bar Special Legal Consultant |
| | | + Admitted in Bolivia |

# *FAX COVER SHEET*

TO:     Ms. Abedin, SEC- Mary McCloud Bethune

FROM:  Roberta L. Gambale, Esq.

DATE:  11/20/06

FAX NO: (202) 673-2233

SUBJECT:  T███████ B████- Consent for Evaluation

NUMBER OF PAGES, INCLUDING FAX COVER SHEET:  2

COMMENTS:    Please find attached a consent for evaluation form signed by the parent on October 10, 2006.  If this is not sufficient please let  me know and the parent will come to the school  and sign a consent form there.

**STATEMENT OF CONFIDENTIALITY:**

The information contained in this electronic message and any attachments to this message are intended for the exclusive use of the addressee(s) and may contain confidential or privileged information.  If you are not the intended recipient, please notify James E. Brown and Associates, PLLC immediately at (202) 742-2000, and destroy all copies of this message and any attachments.

* Admitted Only in Virginia.  Practicing Pursuant to Rule 49(c) (8); Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.

HP Fax Series 900
Plain Paper Fax/Copier

Fax History Report for

(202) 742-2099
Nov 20 2006 4:01pm

Last Fax

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Nov 20 | 4:00pm | Sent | 96732233 | 1:03 | 2 | OK |

Result:
  OK - black and white fax

# Exhibit 9

# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

------------------------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine-Covington

----------------------------------
! DC Bar Special Legal Consultant
+ Admitted in Bolivia

November 07, 2006

**VIA FACSIMILE**
Ms. G. Abedin, SEC
Mary McLeod Bethune CS
253 42nd Street, NE
Washington, DC 20019

            **Re: T██████ B███**

Dear Ms. Adedin:

    I am writing in regards to the above referenced-student, T████ B███. As of close of business today we have not yet received a copy of the recent evaluations that were conducted for T█████. I would appreciate it if we are supplied a copy of these documents so that we parent is able to review before meeting. Please contact me if you have any questions or concerns regarding this matter.

Sincerely

Corey Hamilton

110

Series 900
Plain Paper **Fax/Copier**

Fax History Report for

(202) 742-2099
Jan 10 1970 1:51am

Fax

| Date | Time | Type | Identification | Duration | Pages | Result |
|------|------|------|----------------|----------|-------|--------|
| Jan 10 | 1:50am | Sent | 92447482 | 0:43 | 2 | OK |

Result:
OK · black and white fax

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James    Brown                      Attorneys at Law              Juan J. Fernandez!+
Domien    P. Hill                   1220 L Street, NW             Tilman L. Gerald
Roberta    dale                     Suite 700                     John A. Straus
Miguel A. full                      Washington, DC 20005          Roxanne D. Neloms
Christopher L. West                 Telephone: (202) 742-2000     Omar Karram
                                    Facsimile: (202) 742-2098     Christie Fontaine-Covington

----------------------------------          e-mail: Admin@Jeblaw.biz        -------------------------------
                                                                            ! DC Bar Special Legal Consultant
                                                                            + Admitted in Bolivia

# FAX COVER SHEET

**DATE:**          **12/07/06**

**TO:**            **Ms. Gomar Abedin**

**FAX NO.:**       **202-723-5820**

**FROM:**          **Corey Hamilton, Education Advocate**

**SUBJECT:**       NUMBER OF PAGES INCLUDING COVER SHEET:2

**COMMENTS**       T█████ B███

...mation is **CONFIDENTIAL** and is intended only for the use of the addressee(s) named above. If the reader of this
... the intended recipient(s) or the employee or agent responsible for delivering the message to the intended
... note that any dissemination, distributions or copying of this communication is strictly prohibited. Anyone who
...munication in error should notify us immediately by telephone and return the original message to us at the above
... U.S. Mail.

# Exhibit 10

Phone: 202.327.5452
Fax: 202.327.5455
http://www.dcpas.com

**V V V** Psychological
Assessment
Solutions, LLC

1025 Connecticut Ave. NW
Suite 1000
Washington, DC 20036

## CONFIDENTIAL

## CLINICAL/ADHD EVALUATION/CLASSROOM OBSERVATION

**Student Name:** T██████ B██        **DOB:** April 3, 1995
**Student Id #:** 9051948              **Gender:** Male
**Age at Assessment:** 11 years, 7 months    **Examiner:** Richard P. Fleitas, Psy.D.
**Date(s) of Evaluation:** 11/30/06, 12/1/06   **Date of Report:** 12/07/06
**School:** Mary McLeod Bethune Day Academy PCS

### REASON FOR REFERRAL

T█████ B███, an 11-year-old boy, was referred for a clinical evaluation, a classroom observation, and the Vineland Adaptive Behavior Scales. Based a review of previous assessments, interviews with the student's teacher and his mother, and this evaluator's own observation and interaction with T██████, it was decided that the Vineland-II is not an appropriate or necessary measure for the evaluation. There was no indication that T██████ has ever had noteworthy difficulty in either communication or in functions of daily living. Given T██████'s past diagnosis of Attention Deficit Hyperactivity Disorder, additional measures were added to specifically evaluate for the symptoms of ADHD. The purpose of the assessment is to determine whether T██████ meet's the eligibility criteria under IDEA as a student with an emotional disturbance and/or Other Health Impaired in addition to the Learning Disabled classification that he currently holds.

### TESTS ADMINISTERED & COLLATORAL DATA SOURCES

Student Interview with T██████ B███
Children's Depression Inventory (CDI)
Millon Pre-Adolescent Clinical Inventory (M-PACI)
Conners' Teacher Rating Scales Revised (S)
Behavior Assessment System for Children - 2 (BASC-2), Teacher-Report Scales
Behavior Assessment System for Children - 2 (BASC-2), Parent-Report Scales
Integrated Visual and Auditory (IVA) Continuous Performance Test
Incomplete Sentences
Projective Drawings
Roberts Apperception Test for Children: 2 (Roberts-2)
Psychoeducational Evaluation (DCPS, Deidra Alexander), dated 12/19/03
Psychoeducational Evaluation (Interdynamics, Gerald Augustin, Psy.D.), dated 11/17/05
Children's National Medical Center, Neurodevelopmental Pediatric Eval, 5/28/03
Howard University Hospital Neurology Note, 3/5/04
Interview with teacher, Ms. DeGraffinreidte, 12/1/06
Interview with student's mother, Ms. Bland, 12/5/06, 12/6/06
School Records

114

## CLASSROOM OBSERVATION

T━━ was observed on 11/30/06 for 45 minutes during his first class of the day which was a reading class with his teacher Ms. DeGraffinreidte and her assistant, Mr. Rivera. T━━ was not made unaware that he was being observed. Prior to the start of the class, Ms. DeGraffinreidte reported to this examiner that T━━'s mother had told her that morning that T━━ had run out of his stimulant medication and that he might be more hyperactive than normal. During the class, T━━ was appropriate with his teachers and the other students in the class. T━━ was seated on the side of the class adjacent to the room divider that separates his class from the next one over. Despite the noise coming from the other class, T━━ appeared attentive to his own class and engaged in the assignment of reading a news story from the morning paper. T━━ raised his hand to answer questions and he gave the right answers when called on.

While seated at his desk, T━━ was observed to sit still and remain focused on the task at hand. He was, however, observed to get up from his desk on multiple occasions throughout the class and walk across the room to retrieve items from his cubbyhole where student's personal materials are stored. When an assignment was completed, T━━ was given the responsibility of going around the room with a stamp to mark his classmates finished work. He completed the task without incident. There were eleven students in the classroom including T━━.

## BEHAVIORAL OBSERVATIONS/STUDENT INTERVIEW

T━━ B━━ is an 11-year-old boy, currently in the 5th grade at Mary McLeod Bethune Day Academy Public Charter School. It is his second year at the school. T━━ appeared his age and he was casually dressed and appropriately groomed on both mornings of the evaluation. T━━ is right handed and he wears eyeglasses. He walked with a normal gait and no unusual mannerisms were observed. T━━ maintained appropriate eye-contact throughout the interview and the assessment. He appeared to be relaxed during the testing and rapport was easily established. As the assessment went on the first day of testing, T━━ became more and more fidgety. He remained attentive to the task at hand, but he kicked his legs around frequently and moved about in his chair. He also became noticeably more silly, often answering questions in a sing-song voice. His drawings were rather rushed and sloppy and picture features were immature for his age.

T━━ was fully oriented and his thought content was observed to be normal. In general, T━━ appeared very open and comfortable talking about things that bother him. His mood during the testing and interview appeared euthymic and his affect was appropriate to content. He denied any suicidal or homicidal ideation. T━━ also denied ever having experienced physical or sexual abuse and he reported that he has never used alcohol, cigarettes, or drugs.

During the second morning of the assessment, while taking the continuous performance test on the computer, it was observed that T━━ often became distracted, e.g., taking his eyes off the screen for moments at a time. This was despite having affirmed that he understood the directions and the need to remain focused on both the auditory and visual components of the measure.

This examiner informed T█████ of the limits of confidentiality and he affirmed that he understood. He was fully cooperative throughout the testing and the results of this evaluation are considered to be a valid assessment of his current emotional functioning.

## HISTORY/BACKGROUND INFORMATION

*The following background information was obtained from review of earlier assessments, school records, IEP meeting notes, and through parent, student, and teacher interviews. Additional background information can be found on the social history report.*

T█████ was born weighing 6 pounds, 2 ounces at 37 weeks gestation. Records indicate that Ms. Bland had a complicated pregnancy, with fibroids and a prolapsing uterus. T█████ had asthma from eight weeks of age until he was 5-years old. His mother reported that he not had any subsequent medical conditions. She reported that he met all developmental milestones in an appropriate timeframe.

T█████ lives at home with his mother and his father. He is an only child. The Bland's have a tight-knit extended family, many of whom live in their same neighborhood, including a grandmother, aunts, and cousins. T█████ frequently spends time with family members and his mother reported that he has many friends who spend a good deal of time at their house. When asked about his social relationships outside of school, Ms. Bland reported that her son is "well loved" by his peers.

At home, Ms. Bland reported that her son can be lazy at times but that she is strict with him and he follows her rules in the home. He is responsible for a number of chores at home, including: cleaning the bathroom, cleaning his room, making his bed, taking out the trash, and he also helps his father mow the lawn. T█████'s father works in construction and landscaping and his mother runs a daycare out of the home. T█████ said that he enjoys his homelife and especially likes playing with his dog and following the Redskins on TV with his parents. T█████ reported that he goes to his father when he needs help and that he also feels closest with his mother. Ms. Bland reported that, emotionally, her son appears to be normal with typical issues for a boy his age.

Ms. Bland reported that T█████ was doing well in school up until the 2nd grade, when she observed that he was falling behind, especially in reading. She said that that he could read individual words by sight, but was unable to read complete sentences. The school at the time was utilizing a *PACE* system where the students were taught to be self-motivated through independent learning. Despite being on the honor roll at the time, Ms. Bland advocated for her son by illustrating to the school staff that her could not read at grade level and that he was compensating by reading questions first and then searching throughout a paragraph for an answer without real comprehension of the material. T█████ was brought for evaluation to both Children's National Medical Center and Howard University Hospital for evaluation. T█████ was diagnosed with ADHD and he was placed on Concerta, a stimulant medication. Through subsequent school based evaluation, he was also diagnosed a learning disability. A neurology note from Howard also commented that T█████ was observed to have "motor clumsiness and a mild congenital right hemiparesis which interferes with his handwriting skills but does not need

12/07/06

therapeutic intervention." Later occupational therapy testing indicated that he did, in fact, need help and T▬▬ currently receives occupational therapy services weekly.

Ms. DeGraffinreidte, T▬▬'s classroom teacher, explained that his teacher last year had reported that he had a number of disruptive problems in the classroom and would often distract other students. This year, however, she indicated that T▬▬ is very appropriate in the class with the exception of sometimes answers questions in a silly voice. She noted that he has trouble sitting still and explained how he needs to get up from his desk and frequently move around. It was for this reason that she decided to give T▬▬ responsibilities in the classroom like stamping students completed work, so as to give him the opportunity to move around in a socially acceptable and productive manner. Ms. DeGraffinreidte explained that, although a special education teacher had been unavailable this year, she adjusts the books that T▬▬ reads and gives him lower level reading in accordance with his abilities. She said that he completes all his homework and appears to try hard in the classroom. She indicated that math is T▬▬'s stronger area and reading his weakest.

T▬▬ is involved in athletic extracurricular activities, both at school and at the Boys and Girls Club. T▬▬ explained that he especially likes football and that he most named Most Valuable Player (MVP) on the team this year.

Previous Testing

*12/19/03 Psychoeducational Evaluation (DCPS, Deidra Alexander)*

While in the 3rd grade at Brent Elementary School, T▬▬ was given a psychoeducational assessment. At this time he was given the WISC-III, WIAT-II, and a VMI. He received a Full Scale IQ of 71, in the Borderline range, with no significant differences between his Verbal IQ (SS=76) and his Performance IQ (SS=71).

On the WIAT-II Test of Achievement, T▬▬ scored in the Low Average range in Word Reading (SS=82), and in the Deficient range in both Reading Comprehension (SS=54) and in Written Expression (SS=66). His Math Calculation (78) was in the Borderline range and Math Reasoning (SS=80) was in the lower bounds of the Low Average range. His VMI score (SS=81) found his visual-motor integration abilities in the Low Average range.

*11/17/05 Psychoeducational Evaluation (Interdynamics, Gerald Augustin, Psy.D.)*

During his first year at Mary McLeod Bethune, T▬▬ had another psychoeducational assessment. He was given the WISC-IV, WIAT-II, and a VMI. He received a Full Scale IQ of 77, in the Borderline range. His Verbal Comprehension Composite (SS=83), Working Memory (SS=83), and his Processing Speed (SS=85) were all in the Low Average Range. His Perceptual Reasoning Composite score (SS=77) was in the Borderline range.

On the WIAT-II Test of Achievement, T▬▬ scored in the Extremely Low range in Reading (SS=66) and Written Language Composite scores (SS=82), the upper bounds of the Borderline

range in Mathematics (SS=79), and in the Low Average range in Oral Language. His VMI score (SS=85) found his visual-motor integration abilities in the Low Average range.

## TEST RESULTS AND INTERPRETATION

### Behavior Rating Scales & ADHD Measures

The Behavior Assessment System for Children - 2 (BASC-2) is a set of rating scales for describing the behaviors and emotions of children and adolescents that was filled out Ms. Bland and by T█████'s teacher, Ms. DeGraffinreidte. Ms. Bland, T█████'s mother, rated him as having clinically significant problems on only one scale - Hyperactivity (T=72). In the "At Risk" range were the scales of Aggression (T=64), Conduct Problems (T=65), and Attention Problems (T=69). Ms. Bland's responses indicated that T█████ sometimes has problems with acting out and aggression but that these symptoms are not pervasive. Ms. DeGraffinreidte's ratings on the BASC-2 revealed no symptoms in the clinical range and in the "At Risk" range were: Hyperactivity (T=63), Attention Problems (T=61), and School Problems (T=60).

Ms. DeGraffinreidte also filled out the Conners' Teacher Rating Scales Revised (S), a checklist used to identify symptoms of oppositionality, hyperactivity, and inattention. On the Oppositionality scale (T=45), no symptoms were endorsed. Cognitive Problems/Inattention (T=63), Hyperactivity (T=64), and The Conners' ADHD Index (T=66), were all in "Mildly Atypical" range. It is important to note that the majority of Ms. DeGraffinreidte's experience with T█████ has been while he has been taking a prescription of stimulant medication.

The Integrated Visual and Auditory (IVA) Continuous Performance Test (CPT) was administered to further assess T█████'s symptoms of Attention-Deficit/Hyperactivity Disorder (ADHD). The IVA/CPT is a computerized, standardized test developed for the assessment of response inhibition and attention problems. This test is unique in that it tests for auditory as well as visual distractibility. It is important to note that T█████ had not had his stimulant medication on the morning of this measure nor the day before.

T█████'s Full Scale Response Control Quotient and his Full Scale Attention Quotient could not be computed. T█████'s responses to the visual stimuli were such that a valid score could not be made for this domain. As noted in the behavioral observations, T█████ was frequently seen looking away from the computer screen, at the wall or towards his lap, unable to determine when the visual stimulus was being presented. He appeared more focused on just the auditory component of the test. As this measure integrates Auditory and Visual, his approach to the test resulted in incomplete scores.

There was a significant discrepancy between T█████'s auditory scores in that his Response Control Auditory Quotient score (SS=91) was in the Average range and his Auditory Attention Quotient (SS=49) was in the Extremely Low range. This indicates that although T█████ was able to inhibit responding to inappropriate stimulus (i.e., he would inhibit appropriately when he was supposed to), he often missed stimulus cues (failed to respond when he should have). T█████'s highest score on the scales was on the Auditory Stamina Scale (SS=102) in the Average range, indicating that T█████, on the auditory portion of the measure, was able to sustain a consistent effort over time.

His lowest score among the scales was on the Auditory Vigilance Scale (SS=17), indicating that a high number of omissions under low-demand conditions which is indicative of inattention. His focus on the auditory instead of the visual can possibly be attributed to his attempt to be selectively attentive to only one sensory input in an effort to perform better on that component of the test. However, even his auditory response scores were in the clinical range for inattention. T█████ commented that he tends to be more hyperactive in the afternoon, "when my medicine wears off."

## Emotional Functioning

Throughout T█████'s past evaluations and during the current assessment, he did not display a significant number of behavior or emotional difficulties. Throughout the testing and clinical interview, T█████ seemed upbeat and positive. When he was asked about his mood he reported that he is "happy most of the time." He responded that he sometimes gets angry when he does not get his way and he is sad when he loses his privileges. T█████ had an unusual way of responding to various aspects of the clinical evaluation. He would endorse significant symptoms that would require further inquiry and then, on follow-up questioning, he would reveal that he had misinterpreted the question. For example: when asked if he had ever had thoughts of self-harm or had ever tried to hurt himself he responded affirmatively. He later went on to explain that he was angry about making a mistake during a football play and hit himself once with his fist on the head. During the M-PACI, T█████ endorsed that he hears voices. Later follow-up explained that he meant that he hears a voice inside his head, "my thoughts - when I am choosing to do something good or bad," i.e., his conscience.

T█████ reported that he has difficulty controlling his anger and that he frequently has temper tantrums. This was not supported by reports from his teacher who said that when T█████ does get upset, he "just as quickly calms himself down." Ms. Bland also reported that T█████ does not have frequent behavior problems and that he tends to abide by her strict house rules. When T█████ was asked what he does when he gets frustrated with other students, he reported that he uses humor, tells jokes or pokes fun, i.e. "joning." He said that people think he is funny and then he stops being angry. T█████ said that most of the trouble he had behaviorally occurred last year when he would get into trouble for cursing or fighting.

T█████'s score on the CDI, a depression index, was in the average range (Total T=50) and only one scale, Anhedonia, was mildly elevated yet still not to a clinical range (T=60). His responses to the incomplete sentence measure were unremarkable and typical for a boy his age. He did remark that the "The worst thing about me is...*my attitude.*" He later explained that he gets easily frustrated when things do not go his way. When T█████ was asked to draw pictures of a house, a tree, and some people (projective drawings that often represent an individual's view of themselves and their relationship with parental figures), he seemed to rush through his work. His drawings were immature for his age and the faces he drew seemed distorted. During the inquiry portion of the test he described his drawings in optimistic and upbeat ways. His characters were described as "happy" and his drawing of his family depicted him and his parents enjoying watching a football game together.

On the Roberts Apperception Test for Children, T█████ was asked to tell stories based on pictures that are ambiguous to some extent and portray emotion and thought without specifying

T██████ B███
Page 7 of 9                                                                     12/07/06

details. His approach to the stories was rather unique and he spoke for the characters as if he was acting out their parts. His stories tended to discuss people having difficulties, yet usually overcoming then. His last story was connected to his first one creatively and was resolved with a happy ending.

On the M-PACI, it seemed as though T██████ responded to the measure in a consistent pattern depicting a child experiencing significant identity concerns. He responded to many of the questions with a bravado and toughness that does not appear, by anyone's report, to actually be the way he presents to adults and peers. The profile was one of an unpredictable, volatile, and impulsive child with pre-delinquent traits. The fact that this appears to be far from his reality seems to speak to a degree of conflict or ambiguity he feels with his situation. He seemed to be especially hard on himself for past mistakes and behavior problems that he had last year. It appears that the context in which he answered many questions was one that represents his worst case scenario, i.e., those times when he has behaved the worst.

## SUMMARY

T██████ B███ is an 11-year-old boy in the 5th grade at Mary McLeod Bethune Day Academy Public Charter School. This is his second year at the school. He is an only child who lives with both parents. He also has frequent interaction with his extended family who live in his same neighborhood. He is currently classified as Learning Disabled and his current IEP states that he should receive 15 hours of specialized instruction and 45 minutes of Occupational Therapy weekly. T██████'s difficulties in reading first became apparent when he was in the second grade. He continues to be reading below grade level and his latest psychoeducational evaluation indicated that there continues to be a discrepancy between his cognitive abilities and current academic achievement.

T██████ was diagnosed with ADHD in 2003. This current assessment reaffirms that this disorder is still present. Both parent and teacher reports indicate both significant hyperactive and inattentive symptoms which continue to occur while he is taking his prescribed stimulant medication. The results of the IVA-CPT were not complete due to an unusually high number of inconsistent responding to the visual stimuli. This pattern can be found in individuals who have difficulty attending to both stimuli and attempt to overcome this by focusing on just one component of the test. However, the fact that even his auditory response scores were in the clinical range for inattention suggests that he more resembles a clinical population for the disorder.

The behavior problems that T██████ had the previous year appear to be absent this school year. He is said to have many friends and both at home and at school he behaves appropriately with his peers. He seems to be struggling with identity issues and in response to certain parts of the evaluation he displayed a style of bravado and toughness that is absent in his actual interpersonal dealings with family and friends. His scores and responses on the behavior and emotional portions of the test indicate that he is a relatively well adjusted boy who continues to struggle with his academics, most notably in reading. His symptoms of ADHD continue to present in the classroom and at home and may likely be interfering with his making adequate progress.

As far as his strengths, T██████ has a good sense of humor and a pleasant demeanor. He reportedly maintains a substantial number of friendships with peers and he gets along well with his family members. He is involved in extracurricular activities and earned the honor of MVP for his football team this year.

## Diagnostic Impression:

Axis I:    315.9    Learning Disorder, Not Otherwise Specified (By History)
           314.01   Attention-Deficit/ Hyperactivity Disorder, Combined Type
Axis II:   V71.09   No diagnosis
Axis III:  None reported
Axis IV:   Academic Problems
Axis V:    Current GAF: 60

It is the determination of this evaluation is that T██████ does not meet the eligibility criteria under IDEA as a student with an emotional disturbance. His diagnosis of ADHD does qualify for him to receive classification as Multiply Disabled with a Learning Disability and Other Health Impaired (OHI). The final determination as to his eligibility for Special Education services is, however, a decision to be made by the multidisciplinary team, after considering data from all sources.

## RECOMMENDATIONS

Based on the results of this evaluation, the following recommendations are suggested:

1. A multi-disciplinary conference will be held to evaluate T██████'s current level of functioning and to plan appropriate educational placement.

2. T██████ appears to attend well in a classroom with a small class size. Given his symptoms of ADHD, it is advised that more effective seating arrangement for him would one that is away from the classroom divider so that he would be less likely to be distracted by the adjacent class.

3. T██████ appears to be accustomed to his medication, but as with any psychopharmacologic treatment, he should be carefully monitored and, were things to change, he should be referred to a psychiatrist for a reevaluation.

4. During the classroom observation it was clear that T██████ has some degree of difficulty with organization, as seen by his frequent to his cubbyhole. This is a common symptom of children with ADHD. It will be important for both his mother and his teachers to monitor him and assist him in making sure he has the required materials that he needs for his school work easily accessible so that he will have less distraction.

5. T██████'s parents might benefit by exploring the wealth of information available online for families of children with ADHD, i.e., www.CHADD.org (Children and Adults with Attention Deficit/Hyperactivity Disorder)

6. Specialized instruction and tutoring in reading should remain in T██████'s IEP so that he can be assisted in his work towards age and grade equivalent academic abilities.

1025 Connecticut Ave. NW, Suite 1000 Washington, DC 20036 (202) 327-5452. www.depas.com

T█████ B████                                                    12/07/06
Page 9 of 9

7. Given his difficulty with reading, whenever possible, T██████ should be provided reading material geared to his reading level as well as his interests. His mother and father should try, as much as possible, to establish a time at home for "fun reading" about topics that would be engaging for T██████.


Richard P. Fleitas, Psy.D.                    Paul D. Frey, Ph.D.
Resident in Psychology                        Supervisor D.C. License #0170

# Psychological Assessment Solutions, LLC

1025 Connecticut Ave. NW
Suite 1000
Washington, DC 20036
Phone: 202.327.5452
Fax: 202.327.5453

# Facsimile

**To:** Cory Hamilton

**From:** Dr. Richard P. Fleitas

**Company:** Brown & Associates

**Sender's Phone:** 202-327-5452

**Phone:** 202-7422000

**Sender's Fax:** 202-327-5453

**Fax:** 202-742-2098

**Date:** 12-8-06

**Re:** T██████ B███ case (MM Bethune PCS)

**Number of Pages:** 9 to follow

## Notes:

The social history will arrive by fax today as well.

http://www.dcpas.com

This communication may contain privileged and/or confidential information. It is intended solely for the use of the addressee. If you are not the intended recipient, you are hereby notified that any disclosing, copying, distributing or using any of this information. If you received this communication in error, please contact the sender and destroy the material in its entirety, whether electronic or hard copy. This communication may contain nonpublic information about individuals and businesses subject to the restrictions of the Gramm-Leach-Bliley Act and HIPAA. You may not directly or indirectly reuse or redisclose such information for any purpose other than to provide the services for which you are receiving the information.

# Exhibit 11

Dawn                    301-559-5465                    P.2



Phone: 202.327.5452
Fax: 202.327.5453
http://www.dcpas.com

1025 Connecticut Ave. NW
Suite 1000
Washington, DC 20036

## SOCIAL HISTORY REPORT

**Date of Interview:** 12/6/06                    **Interviewer:** Dawn Bryant, LICSW
**Person Interviewed:** Terri Bland
**Relationship to Child:** Biological Mother

**Child's Name:** T▓▓▓▓ B▓▓                    **Father's Name:** Willie E. Bland
**Date of Birth:** 4/13/95                         **Mother's Name:** Terri Bland
**Age:** 11
**Grade:** 5th
**Address:** 5412 C Street, SE, Washington, DC 20019
**Home Phone Number:** 202-584-0959
**Emergency Contact Person:** Terri Bland

**Family/Household Composition:**

| Name | Age | Relationship | Occupation |
|------|-----|-------------|------------|
| Terri Bland | 44 | Mother | Licensed Child Care Provider |
| Willie E. Bland | 45 | Father | Landscaping |
| T▓▓▓▓ B▓▓ | 11 | Self | Student |

### Reason for Referral
Terri Bland is requesting testing and assessment for her son, T▓▓▓▓ B▓▓ to determine appropriate placement and service delivery. She reported that the social history is one of several assessments tools to assist in finding out what is challenging her son academically.

### Background Information
According to Mrs. Bland, T▓▓▓▓ is currently experiencing academic frustrations as he appears to be unable to keep up with his peers. T▓▓▓▓ suffers from learning difficulties and was reportedly diagnosed as Learning Disabled by a neurologist at the end of the 2nd grade. Moreover, Mrs. Bland reported that though T▓▓▓▓ is currently in the 5th grade, his academic functioning is that of a 2nd grader.

### Family History
T▓▓▓▓ is the only child of Willie E. and Terri Bland. He and his parents have lived at their current home since T▓▓▓▓ was 8 months old, where Mrs. Bland reported that the neighborhood is pleasant.

Mrs. Bland reportedly worked for Georgetown Hospital as a billing specialist until T▓▓▓▓ was 3 years old. At which time, she began her in home day care services. She reported that T▓▓▓▓'s grandmother assisted in taking care of him until Mrs. Bland left the hospital position.

125

T██████ has a male cousin who is nine months older than he. Mrs. Bland reported that the two get along very well and communicate frequently. She also, described how T██████ enjoys spending time with his parents but he is at the age where he increasingly desires to spend more time with his age appropriate peers.

## Developmental and Medical History
According to Mrs. Bland, she had a high risk pregnancy and required assistance while delivering T██████. She reported T██████ had an increased heart rate and initially required a vacuum for the first 45 minutes of delivery. However, the vacuum was not helpful so the doctors used forceps to successfully deliver him. T██████ had fluid drained from his head as a result of the complicated delivery. Also, Mrs. Bland reported that T██████ developed asthma from 8 weeks old to 3 years of age.

Most developmental milestones were met within normal limits. T██████ reportedly walked by his first birthday and was potty trained by 18 months. He talked and made age appropriate sentences by 2 years of age. However, Mrs. Bland reported that T██████ was crossed eyed at birth and by 18 months he was given a vision test. T██████ has worn glasses since he was 2 years old.

Mrs. Bland also reported that T██████ was "babified" as a toddler, requesting to be carried around significantly more than typical children his age. She believed that his behavior was a result of having older parents and being around his grandmother who cared for him.

T██████ was enrolled in a head start program when he was 3 years old. However, Mrs. Bland reported that that environment was too fast so she took him out and placed him in a family day care program. He reportedly did well in this environment.

Mrs. Bland reported that T██████ has no current medical problems.

## Trauma History
Mrs. Bland reported that T██████'s maternal grandfather passed away in May 2006. Though T██████ was very close to his grandfather, he chose not to attend the funeral services. Mrs. Bland also reported that T██████'s cousin has been instrumental in assisting him with the grieving process.

## Legal History
The Bland family is currently receiving legal services in order to assist them with obtaining proper placement and services for T██████'s education.

## Psychiatric History
T██████ reportedly received individual and group counseling at Mary McLeod Bethune as a part of a volunteer program the school offered.

No individual or family history of psychiatric evaluations or hospitalization.

## Educational History
As previously stated, T██████ is experiencing academic challenges. Consequently, he is reportedly getting discouraged with the educational process and is experiencing teasing by his peers.

1025 Connecticut Ave. NW. Suite 1000 Washington, DC 20036 (202) 327-5452. www.dcpas.com

126

Report Date: 12/7/06

Mrs. Bland reported that T██████'s educational placements were as follows: The Way of the Cross (PreK); Holy Temple Christian Academy (K-2 Grade), Robert Brent Elementary School (3rd Grade); God Christian International Church (4th Grade); and Mary McLeod Bethune (4th Grade-Present).

The Way of the Cross was reportedly a "learn through play" program. Mrs. Bland stated that T██████ was slow with recognizing his alphabet, confused with his colors and wanted to play too frequently. While at Holy Temple Christian Academy, it appeared that T██████ was getting on track academically. He learned his basic sight words, colors, and shapes. However, Mrs. Bland began to notice that T██████ had difficulty with his fine motor skills. She admitted that T██████ appeared to be a natural left handed student but she made him use his right hand. No physical or occupational therapy assessments were made at that time.

Also, Mrs. Bland reportedly expressed her concern to T██████'s teacher that he appeared to have lost most of the information he'd learned in 1st grade over the summer before beginning 2nd grade. Mrs. Bland stated that the teacher assured her that that was typical, especially with male students. Despite maintaining an honor roll status, by the middle of the 2nd grade, Mrs. Bland reported that T██████ did not appear to catch up academically. The teachers continued to tell her that he would catch up in his own time.

By the end of the 2nd grade, Mrs. Bland reportedly spoke with T██████'s pediatrician regarding her concerns for his academic challenges and particularly about the type of curriculum (Abeca and Pace) at the two previous schools and the fact that T██████ could not retain the information he had previously learned. The pediatrician referred Mrs. Bland to a neurologist who reportedly assessed and diagnosed T██████ as Learning Disabled.

T██████ was removed from the private schools due to Mrs. Bland's concerns for how the school handled T██████'s challenges. She and her husband decided to place T██████ in a public school (Robert Brent E.S.) for the 3rd grade. While at this school, Mrs. Bland reported that T██████ continued to have difficulty specifically because he wasn't used to the new style of teaching/learning. Mrs. Bland reportedly informed the school of her concerns and requested testing. The teachers gathered information and determined that T██████ would better benefit from special services. It was at this point that Mrs. Bland contacted her legal team to get help for services she believed should have been identified several years prior. Her attorneys were reportedly successful in getting T██████ into a special education program. However, Mrs. Bland reported that this is when T██████ began to get teased by his peers for his reading challenges.

Mrs. Bland took T██████'s IEP to the God Christian International Church and explained to them his educational history. However, as he matriculated through the school year, Mrs. Bland failed to see the academic results she desired. Consequently, the schools principal suggested that T██████ would benefit from a small public charter school.

Lastly, Mrs. Bland identified a public charter school she thought would be a good fit for T██████ (Mary McLeod Bethune). T██████ attended Mary McLeod Bethune's summer program but when the school year came around, Mrs. Bland decided to retain T██████ in the 4th grade as she felt he wasn't ready for promotion and the previous schools erroneously passed him along.

Student Name: T████ B████
Page 4 of 5

Report Date: 12/7/06

However, Mrs. Bland expressed her concern because, she reports, according to DCPS, Mary McLeod Bethune does not have any documented services provided to T████ on file. Furthermore, Mrs. Bland reported that the teacher who was supposed to provide special education services quit working for the school. At the time of this report, Mrs. Bland reported that T████ has not yet received any special education services at Mary McLeod Bethune.

Mrs. Bland expressed her frustrations with T████'s academic experiences. She and her husband have reportedly had T████ assessed at Sylvan Learning Center and she is reportedly contemplating paying for services to get him back on track.

## Social and Behavioral Characteristics
The following is a list of characteristics Mrs. Bland identified that best describes T████:

__x__ Flexible
_____ Lacks self-control
_____ Bed wetting
__x__ Consistent Short attention span
__x__ Excessive inconsistency in behavior
_____ Usually aggressive towards others
_____ Cooperative
_____ Nightmares
__x__ Difficulty completing jobs and activities
__x__ Temper tantrums
_____ Difficulty with changes in routine
_____ Unreasonable fears
__x__ Gets ideas quickly
_____ Unusually shy and withdrawn
__x__ Difficulty telling time
__x__ Frequently tells lies
_____ Enjoys reading (being read to)
__x__ Difficulty understanding questions/directions
_____ Frequently talks to self
_____ Difficulty using numbers
__x__ Concentration difficulties
__x__ Difficulty making and keeping friends
__x__ Difficulty with organization
__x__ Gets along with peers
__x__ Prefers to watch television/ video games

__x__ Creative
__x__ Outgoing
_____ Frequent changes in mood
_____ Thumb sucking
__x__ Day dreaming
__x__ Nail biting
_____ Mechanical
__x__ Overactive
__x__ Athletic
__x__ Musical
_____ Rocking
_____ Fantasies
_____ Under active
__x__ Avoids reading
_____ Artistic
__x__ Self-confident (in sports)
__x__ Avoids homework

_____ Frequently late
_____ Uncooperative
_____ Sleep walking
__x__ Lacks motivation
_____ Prefers to play alone
__x__ Demanding
__x__ Likes to be in control
__x__ Other: Chews on object (pencils, straws, etc)

## Strengths and Interests
According to Mrs. Bland, T████ is a pleasant and respectful child who exhibits appropriate manners. He loves sports and always puts his best foot forward.

## Personal Functioning
T████ is able to complete age-appropriate personal care activities without monitoring and supervision. He is independent and self-sufficient in getting ready for school and daily activities.

Student Name: T██████ B████
Page 5 of 5

## Assessment and Recommendations

T██████ B████ is an 11 year old, African American male, who resides with his mother and father in South East Washington, DC. He is a 5th grade student at Mary McLeod Bethune Public Charter School. He has a long history of academic difficulties that have been diagnosed by a neurologist as a Learning Disability. Mr. and Mrs. Bland are eager to obtain assistance as it relates to T██████'s academic challenges.

It is recommended that:

1. The Bland family continues to pursue an academic placement that has the resources to implement the services necessary to execute T██████'s IEP goals.

2. T██████ receive an Occupational therapy assessment to rule out ongoing fine motor challenges.

3. T██████ resume individual counseling to allow him to process his thoughts and feelings associated with his academic challenges as well as the subsequent teasing that he has endured.

Dawn N Bryant, LICSW
Licensed Independent Clinical Social Worker

12/7/06
Date

# Fax

| | | | |
|---|---|---|---|
| **To:** | _Corey Hamilton_ | **From:** | _Dawn Byrd_ |
| **Fax:** | _2/740-2098_ | **Pages:** | _6_ |
| **Phone:** | | **Date:** | _12/8/06_ |
| **Re:** | ~~Bo T_____ b_____~~ | **cc:** | |

☑ **Urgent** ☐ **For Review** ☐ **Please Comment** ☐ **Please Reply** ☐ **Please Recycle**

_Social History_

_Report_

_Confidential_

# Exhibit 12



**DISTRICT OF COLUMBIA**
**PUBLIC SCHOOLS**

825 North Capitol Street, N.E., 6ᵗʰ Floor
Washington, D.C. 20002-4232
202-442-4800, fax: 202-442-5518

www.k12.dc.us

## PSYCHO EDUCATIONAL EVALUATION REPORT

NAME: T████-B████             DATE OF EVALUATION: 12/15/03

BIRTH DATE: 04/03/95             DATE OF REPORT: 12/19/03

SCHOOL: Brent Elementary School             ID NUMBER: 9051948

AGE: 8-8             TEACHER: Ms. Mingari

GRADE: 3

EVALUATOR: Deidra Alexander, School Psychologist

---

ASSESSMENT INSTRUMENTS USED

- Wechsler Intelligence Scale for Children 3rd Edition (WISC-III)
- Wechsler Individual Achievement Test Second Edition (WIAT-II)
- The Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI)

REASON FOR REFERRAL:

T████ was referred for a psycho educational evaluation due to academic difficulties.

The nature of a psycho educational evaluation/review is to assess the child's current cognitive and educational functioning and make recommendations to improve academic success.

BACKGROUND INFORMATION:

This is T████s first year at Brent Elementary. He transferred from Holy Temple Christian Academy, which is also in Washington, DC.

Teacher Assistance Team documentation prepared by T████'s teacher stated that he is having trouble with writing, spelling, math and geography.

T████ is involved in the 21ˢᵗ Century after school tutoring and enrichment program on

132

a daily basis. It was observed that he is slow to finish assignments due to hyperactivity and distractibility. He often has trouble with peers due to "joning" and excessive playing. T██████ is frequently redirected to keep him on task during the program.

T██████ stated that he took medication in the past to "calm him down". He stated that the medication was helpful however, he no longer takes it.

PHYSICAL HEALTH AND DEVELOPMENT:

T██████ was observed to be of average height and weight. No medical issues were reported.

T██████ currently wears glasses.

TEST CONDITIONS AND BEHAVIOR:

T██████was tested under standard conditions.

T██████ was retrieved for testing during the morning hours of school. He was neatly dressed in his uniform. Rapport was easily established and maintained with T██████. His attitude toward testing was positive and his level of motivation was high. T██████ required frequent breaks throughout testing to ensure that his lack of attention did not effect his test scores.

INTELLECTUAL FUNCTIONING:

The WISC-III is used to test the general thinking and reasoning skills of students aged six through sixteen. This test has three main scores: a Verbal score, a Performance score, and a Full-Scale score. The Verbal score indicates how well T██████ performed on tasks that required listening to questions and giving spoken answers. These tasks evaluate skills in understanding verbal information, thinking with words, and expressing thoughts in words. The Performance score indicates how well T██████ performed on tasks that required examining and thinking about things such as designs, pictures, and puzzles and to solve problems without using words. These tasks evaluate skills in solving nonverbal problems, sometimes using eye-hand coordination, and working quickly and efficiently with visual information. The Verbal and Performance scores are combined into the Full-Scale score. The WISC-III Full-Scale score is one way to view T██████ 's overall thinking and reasoning skills. Moreover, the assessment of T██████ on 12/15/03 is considered valid.

| Subtest | Scaled Score | Classification | Ability Description | |
|---|---|---|---|---|
| Information | 5 | deficient | Assesses factual knowledge and memory. | |
| Similarities | 9 | average | Assesses language development, abstract thinking and verbal conceptualization. | |
| Arithmetic | 4 | deficient | Assesses mental control, attention, concentration and mathematical ability. | |

133

| Vocabulary | 7 | Below average | Assesses word knowledge, verbal skills and language development. | |
|------------|---|---------------|-----------------------------------------------------------------|--|
| Comprehension | 4 | deficient | Assesses social awareness, common sense and social judgment. | |
| Picture Completion | 6 | deficient | Assesses concentration, attention to detail and perception. | |
| Coding | 5 | deficient | Assesses visual motor dexterity, concentration, memory and visual motor coordination. | |
| Picture Arrangement | 7 | Below average | Assesses visual organization, sequencing, planning ability and alertness to detail. | |
| Block Design | 4 | deficient | Assesses visual motor spatial integration, eye hand coordination, and perceptual organization. | |
| Object Assembly | 4 | deficient | Assesses visual motor organization and part- whole relationship ability. | |

| Subtest | IQ Score | Percentile | Classification |
|---------|----------|------------|----------------|
| Verbal IQ | 76 | 5 | borderline |
| Performance IQ | 71 | 3 | borderline |
| Full Scale IQ | 71 | 3 | borderline |

Verbal

T█████ performed in the borderline range regarding the verbal tasks presented. Educationally, T█████ will benefit from reading the newspaper and discussing current events in complete sentences to improve abilities in verbal comprehension and overall range of knowledge. Because of T█████ attention problems, he is forgetful and does not listen attentively to information. He should play memory games to help strengthen his concentration and memory. Mathematical drills, practice with mathematical word problems and math tutoring will help T█████ with his arithmetic ability and ability to "think of his feet". Lastly, his most significant weakness was in the area of comprehension. He should role-play real life situations that involve mainstream customs, mores and values to help improve social comprehension.

Performance

T█████ performed in the borderline range regarding nonverbal/performance tasks presented. Educationally, T█████ will benefit from completing word find puzzles to develop attention to detail and alertness. Memory games and exercises are also

recommended to develop T████'s attention, concentration and memory. He should regularly complete puzzles of varying difficulty or use Lego toys to help develop visual motor spatial integration and motor activity. Having T████ engage in story completion exercises while discussing alternative behaviors and endings should develop development of sequential thought processes and forethought. He should play games involving codes or "Morse code" to improve visual motor coordination. It is also recommended that T████ frequently use maps and graphs in order to gain information to develop visual organization skills.

## ACADEMIC ACHIEVEMENT

The WIAT-II is a comprehensive and individually administered assessment that measures the achievement of students from pre kindergarten to 16 years of schooling. T████ was assessed in the areas of reading, mathematics, and language. Results are expressed in standard scores, percentiles, grade equivalency as well as predicted achievement regarding T████'s IQ scores. The assessment of T████ on the 12/15/03 was considered valid.

| Subtest | Standard Score | Predicted Score | Grade Equivalent | Percentile |
|---|---|---|---|---|
| Word Reading | 82 | 81 | 1:9 | 12 |
| Reading Comp. | 54 | 80 | <1:0 | 1.0 |
| Word Decoding | 73 | 84 | 1:6 | 4 |
| Math Calculation | 78 | 81 | 1:8 | 7 |
| Math Reasoning | 80 | 76 | 1:8 | 9 |
| Spelling | 81 | 83 | 1:8 | 10 |
| Written Expression | 66 | 83 | K:0 | 1 |
| | | | | |

### Reading

T████ performed lower than intellectually expected in the areas of basic reading, reading comprehension and word decoding. His performance was in the deficient range with a reading composite score of 66 and on the 1st grade level. In respect to basic reading, T████ was low average in reading sight words but had difficulty decoding unfamiliar words. It was also noticed that he read very slowly, confused letters, and often lost his place while reading. T████'s reading comprehension was his most significant area of difficulty. T████ trouble with reading words coupled with his difficulty remaining on task resulted in a very low reading comprehension score. T████s word decoding was also below average. He displayed difficulty using phonetic awareness to decode nonsense words.

### Mathematics

T████'s performance in mathematics was below average with a composite score of ██. Academic performance was below grade level by averaging first grade eight-month. T████ was competent in the addition of basic facts. Difficulty was with regrouping,

renaming, subtraction, multiplication and division. T████'s math reasoning skills were slightly higher than his computation skills. T████ was able to solve problems using patterns, grids and graphs. His difficulty was with telling time on a standard clock, solving problems using money, and solving word problems using addition, subtraction and multiplication.

## Written Language

T████'s written language achievement was below average with a composite standard score of 71. Although spelling achievement was low average, T████ displayed difficulty spelling one and two syllable words in the spelling subtest. Difficulty was directly correlated with difficulties reading and decoding words. Performance was on the first grade eighth month grade level. Regarding written expression, T████ displayed significant difficulty. T████ displayed difficulty spontaneously listing certain words in a certain time frame. Timed tasks seem to intimidate T████ and add to his difficulty completing assignments. When asked to compose well-written sentences from smaller sentences, T████ displayed punctuation and spelling errors in this task. T████ also had difficulty composing a well-written paragraph about his favorite game.

## VISUAL-MOTOR/PERCEPTUAL FUNCTIONING:

The Beery-Buktenica Developmental Test of Visual-Motor Integration (VMI) is a 27-item instrument used to assess visual perceptual and motor (finger/hand movements) in children and adults. This assessment asks the individual to imitate and copy a series of geometric forms. The VMI is mot timed and described as being culture free in design.

Out of the 27 items presented, he student made 13 errors. Based on that performance, T████ achieved a VMI raw score of 14 yielding a standard score of 81. The age equivalency associated with this standard score is 6 years 2 months, which is lower than his current chronological age. T████'s score of 81 score falls within the low range and the 10th percentile compared to other student's age and grade level. Based on these scores, T████ is having visual motor difficulty. However, his score is commensurate with his intellectual ability.

## SUMMARY AND RECOMMENDATIONS:

T████ is an 8-year-old child who completed the WISC-III, WIAT-II, and VMI. Performance was in the borderline range of cognitive ability as measured by the full-scale IQ score of 71. Regarding achievement, T████ displayed weaknesses in reading, written language and mathematics. T████'s visual motor integration was considered low with a standard score of 81 and an age equivalency lower than his chronological age. Moreover, T████'s psycho educational profile revealed a severe discrepancy between the intellectual functioning (FSIQ = 71) and academic achievement in reading. This means that T████ is not working up to proven ability in reading and spelling and warrants academic help in these areas. Recommendations are as follows:

- The MDT team should consider the disability of Learning Disabled for T████. It is recommended that T████ receive academic goals in reading, math and language arts.
- The MDT team should discuss T████'s visual motor integration scores and decide in an Occupational Therapy Evaluation is warranted.
- The MDT team should discuss and prior diagnoses of Attention Deficit Disorder with the parents.

- T██████ should receive a visual examination by his family eye care provider to determine if T██████ needs a stronger prescription for glasses.


_Deidra E. Alexander_
_School Psychologist_
_District of Columbia Public Schools_
_Certification Number-01990_

# Exhibit 13

1040

①

Ped. Neurology
2041 Georgia Avenue, N.W.     202/865-6100
Washington, D.C. 20060       202/745-3731 fax
202- 865- 1546.
Fax 202- 865- 4395

**HUH**
HOWARD
UNIVERSITY
HOSPITAL

3- 5- 04.

To The Teacher / Principal
Robert Brent Magnet School of Arts

Re: T‑‑‑‑ B‑‑‑‑
DOB: 4- 3- 95.

I evaluated T‑‑‑‑ today for a neurological examination at the request of Dr. Tharakan because of academic and behavior problems at school and home. T‑‑‑‑ has been noted to be very active quite early as an infant but he did not have significant problems till the I grade. He had a lot of difficulty in the II grade. Even though this was a small class, it was open with 2 groups of students and T‑‑‑‑ did not do well. He is in the III grade with 20 children in the class and has been placed in a setting giving him 2 periods or 1½ hours of special education about 20% of his school day. My examination reveals increased activity, decreased attention and impulsivity all consistent with ADHD. He is easily distracted, interrupts conversations, talkative, has difficulty completing tasks, is fidgety, makes many mistakes, and has trouble completing assignments. He was tested at school and his psychological testing gave him a Verbal IQ of 76, Performance of 74 and Full Scale 71 but his speech & language evaluation gave him much better verbal expressive skills some reaching his age level - there is some discrepancy in these 2 findings. Today he expresses himself well but he has trouble with word sounding, reading, reading comprehension, spelling, written and abstract calculations. He has mild visual perceptual problems and his subjective R-L orientation as well as abstractions are fair. His academic function is at the I grade level. These findings are of a Learning Disability (Dyslexia). He also has motor clumsiness and a mild congenital right hemiparesis which interferes with his handwriting skills but does not need therapeutic intervention.

(over)

139

②



2041 Georgia Avenue, N.W.
Washington, D.C. 20060

202/865-6100
202/745-3731 fax

HOWARD
UNIVERSITY
HOSPITAL

<u>Neurology Note</u>   continued.

He has ADHD, L.D and motor clumsiness.
With his academic function about 2 grades below
his grade level and his ADHD he will not be
able to make adequate progress in his present
setting with 20 children and 1½ toms of special
education. I am recommending placement in
a small, structured class with greater teacher to
student ratio (ideally 1:5) and all day remedial
education. I am also starting him on a
non-stimulant medication for control of attention
g and behavior- Strattera 18 mg daily to begin with
The effects of this may not be seen for 4 to 5
weeks. I would like a feedback on attention
and behavior at school after 6 weeks prior to
his visit with me in 2 months.

Sincerely
Joyce Sirulto

Copy to Dr. Sona Thacalean.

140

# Exhibit 14

# Children's
## National Medical Center.

*Serving Children and Their Families Since 1870*

111 Michigan Avenue, N.W.
Washington, D.C. 20010-2970
(202) 884-5000

**Center of Neuroscience
and Behavioral Medicine**

**Division of Developmental
Pediatrics**
14800 Physician's Lane
Suite 231
Rockville, MD 20850

Appt:    (301) 838-8787
Admin:  (301) 838-8794
Fax:      (301) 838-8789

Chuck J. Conlon, M.D.
Neurodevelopmental
Pediatrician, Division Chief

Susan J. Coniglio, M.D.
Developmental Pediatrician

Ronda Franke, CRNP
Pediatric Nurse Practitioner

**NEURODEVELOPMENTAL PEDIATRIC PROGRAM**

May 29, 2003

DR. CHENYERE AMAZU
3924 MINNESOTA AVENUE, NE
WASHINGTON, DC   20019

RE:   B█████, T████████ D
MR:   020138672
EN:   0309400265
DOV:  05/28/03
DOB:  04/03/95

Dear Dr. Amazu:

It was my pleasure to evaluate T████████ in the developmental program at Children's Hospital.  He came with his mother who has been very concerned about T██████'s learning style.  He has a short attention span.  He has difficulty retaining information that he has already learned and his reading skills are below grade level.

Mother became concerned this year.  She took him to the Sylvan Learning Center in March and April of 2003.  He had an educational assessment in the area of reading and is at the 1.7 grade level.  He received tutoring two hours a week during the month of March and April.

T██████'s attends the Holy Temple Christian Academy, he is a second grade student.  His teachers are Brother Alston and Sister Wood.  He also receives support with reading on a one-to-one basis with Sister Brown.

Mother says that his grades have been B.

The mother says he has a very short attention span, easily distracted and quite bouncy.  He gets distracted by anything in the classroom, even rattling papers.

T████████ does not have behavior problems.  He gets along well with the other students and teachers.

**HEALTH HISTORY:** T████████ was born at 37 weeks gestation with a birth weight of 6 pounds 2 ounces.  Mother had a complicated pregnancy with fibroids and prolapsing uterus.  She was placed on bedrest.  He was delivered using forceps, head first.  He stayed in the hospital four days.  He had assisted delivery with vacuum extraction.  He had a "cone" on his head.

At eight weeks of age until five years of age he had asthma with hospitalization.

T██████ vision has been assessed, he wears glasses.  His immunizations are up-to-date.

The G████ ██ ███ington University
School ██ ███ ███ce and Health Sciences
Depar████ ███ █████rics

Name: B███,  ████████ Enc: 0309400265 MRN: 020138672 T█ ██BLAN5T



**Children's**
National Medical Center.                    *Serving Children and Their Families Since 1870*

**EARLY MILESTONES:** T████████ sat up at 7 months, crawled at 7-8 months, stood alone at 9 months, walked at 9-1/2 months, is riding a tricycle at age 3 and a bicycle at age 5. He was speaking two word phrases between 1-1/2 and 2 years of age. Full sentences between 2 and 3. He was bladder and bowel trained before age 2.

T████████'s mother considers him to be hyperactive, fidgety, and impulsive. He has a hard time focusing, gets distracted easily and is very disorganized.

Dr. Tan, at the pediatric office, assessed him with Teacher and Parent Questionnaires and diagnosed him with attention deficit hyperactivity disorder. He has been placed on Concerta 18 mg a day, starting this week. The mother noticed today that he seems calmer on the medication.

**FAMILY HISTORY:** Mother and father are both 41 years old and in good health. Family history is negative for developmental disorders.

**PHYSICAL EXAMINATION:** Pulse 85, blood pressure 111/58, height 125.9 cm, weight 29.8 kg. General appearance: T████████ has his glasses on. He was cooperative and he was able to focus on a one-to-one basis. Head normal shape. Eyes full range of motion. Ears were well-formed. Nose clear. Oral cavity normal. Neck supple, no enlarged thyroid. Heart regular rhythm, no murmurs. Lungs clear. Abdomen soft, no organomegaly. Neurological: Tone normal. Reflexes normal. Cerebellar signs are negative.

**ACADEMIC SCREENING:** T██████ was given academic tasks. He had difficulty reading a second grade paragraph.

He struggled with longer words and he was not able to read fluently. He did well with simple addition, but adding two numbers was somewhat of a challenge. He did well with his handwriting, but had difficulty in writing a simple sentence at the second year level.

**IMPRESSION:** T██████ is a second grade student. He has been diagnosed with attention deficit hyperactivity disorder through his pediatrician's office following Teacher and Parent Questionnaires and was started on a trial of medication with Concerta. He had academic under achievement and has been receiving tutoring through the Sylvan Learning Center and now is getting support through the school.

Mother is reporting that he is going to go into a public charter school next fall. I recommend that she have a meeting with the school and develop a 504 plan. She should also request that he should have testing to rule out a learning disability.

T████████ should continue with his medication trial and have his teachers monitor benefits and monitor for side-effects. Follow up with his pediatrician.

I would like to see parents back in the fall for reassessment.

**Children's**
National Medical Center.

*Serving Children and Their Families Since 1870*

Sincerely,

_____

ELLIOT S. GERSH, M.D.
Neurodevelopmental Pediatrician

D:05/28/2003  12:04    T:05/29/2003  19:16           Dig #:60408

MEDQ-DULLES


cc:  Dr. Chenyere Amazu
     3924 Minnesota Avenue, NE
     Washington, DC  20019
cc:  Terri Bland
     5412 C Street, SE
     Washington, DC  20019


✍Electronically signed by Elliot S. Gersh on Monday June 02, 2003 at 08:36:00 AM✍

# Exhibit 15




DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP) MDT
MEETING NOTES

STUDENT T___ B___    SCHOOL Brent Elementary    DATE: 2/9/04

**PARTICIPANTS:**

Terri Bland
Demetria Gordon
Ms. Keeling Miagari
Jacqueline Alexander
Connie Cowley
Ms. Alexander
Ms. Keeling
Ms. Gilyard
Cheron Sitton-Brock

**PARTICIPANTS: (Sign Name)**

Terri Bland
John Miagan
Jacqueline Britton-Pharr
Connie Cowley
Audra Alexander
Denise O'Kelyz LICSW
Joyce W. Gilyard
Cheron Sitton-Brock

**DISCIPLINE**

Parent
Special Ed Teacher
General Ed Teacher
LEA Representative
Principal or Designee
~~Student~~ School Psych.
School Social Worker
Speech
Advocate

---

a  The MDT met to review:

o Observations/assessments/recommedations of School psychologist, Diedra Alexander. ___ ability was in the borderline range as measured by his verbal IQ of 76, performance IQ of 71 and full scale IQ of 71. Academically, ___ reading composite was 46, math composite was 71, and written language composite was 71. His visual motor integration score revealed difficulties with a low score of 81. ___ fit the criteria for services as a learning disabled student.



DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

INDIVIDUALIZED EDUCATION PROGRAM
(IEP) MPT
MEETING NOTES



STUDENT _____     SCHOOL Brent Elementary     DATE: 2/9/04

**PARTICIPANTS:**

_____

Demetria Gordon

_____

Jacqueline Alexander

_____

_____

_____

_____

**PARTICIPANTS: (Sign Name)**

_____

_____

_____

_____

_____

_____

_____

_____

**DISCIPLINE**

Parent

Special Ed Teacher

General Ed Teacher

LEA Representative

Principal or Designee

Student

---

a   The MPT noted:

○ Parent stated there has been a change in the perscription of ▮▮▮▮▮'s glasses. It has been not there are signs of glaucoma in the left eye. She stated things have improved and new glasses would be provided in about a week.

○ Parent noted a physician (Dr. Tan) recommended the use of certa. Children's Hospital also completed a neurodevelopmental pediatric program.

○ Parent noted signs of depression from the medicine.

---

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.



INDIVIDUALIZED EDUCATION PROGRAM
(IEP) MDT



MEETING NOTES

STUDENT T█████ B█████    SCHOOL Brent Elementary    DATE: 2/9/04

**PARTICIPANTS:**

Terri Bland

Demetria Gordon

JoAnn Mingari

Jacqueline Alexander

_____

Ms. Gilyard

Ms. Keeling

**PARTICIPANTS: (Sign Name)**

D Son

JoAnn Mingari

_____

_____

_____

Joyce W. Gaillard

Denise L. Kelly, LTEN

**DISCIPLINE**

Parent

Special Ed Teacher

General Ed Teacher

LEA Representative

Principal or Designee

Student

Speech

School Social Worker

---

① The MDT met to:
o determine the need for OT assessments.
  The team recommend OT asses
o discuss speech reports reviewed
  by Ms. Gilyard
CELF-4 - 91SS. EOWPVT - 88SS. ROWPVT - 106. T█████ achieved
language scores in the average range and vocabulary scores in the
average range. Speech/language services are not indicated at this time.
                                    Joyce W. Gaillard, MS, SLP.
o review classroom observations by
  Ms. Mingari
- Test results are indicative of T█████'s performance in the
classroom. He struggles with written expression, reading comprehension,
reading fluency, and higher-order thinking skills in mathematics.
T█████'s lack of focus and attentive-ness most likely contribute to his
                                    performance.

# Exhibit 16





interdynamics, inc.

Evaluations and Therapy

## PSYCHOEDUCATIONAL EVALUATION

Name:          T██████ B██          DOB: 04/08/95      Age: 10-6
Date of Evaluation: 11/03/05        Date of Report:    11/17/05
Examiner:      Gerald Augustin, Psy.D.    Title:       Licensed Psychologist

### REASON FOR REFERRAL:

T██████ was referred for a psychoeducational evaluation to assess his cognitive ability and academic achievement to assist in the determination of appropriate academic intervention.

### RELEVANT BACKGROUND INFORMATION:

T██████ is a 10 year old boy who attends the fourth grade at Mary Mcleod Elementary School. T██████ does not present with significant behavior problems in school. Academically, he reported that he finds reading to be harder for him than mathematics. His IEP reveals that he is receiving specialized instructions for ten hours weekly. T██████ related that he lives at home with his mother and father. He related that he gets along well with them. He reported that he takes medication in the morning to help "make me focus," however, he admitted that the medication wears off around lunch time. There is no available report to suggest that T██████ has had a history of significant mental health difficulty.

### SOURCES OF DATA:

Wechsler Individual Achievement Test – Second Edition (WIAT-II)
Wechsler Intelligence Test for Children: Fourth Edition (WISC-IV)
The Beery-Buktenica Developmental Test of Visual Motor Integration (VMI)
Interview with T██████
Review of Records

### TESTING OBSERVATIONS:

T██████ is a 10 year old boy who appeared his stated age. He was appropriately groomed and dressed for his age. T██████'s mood was reported as "good" and his affect was appropriate. T██████ made spontaneous conversations and responded to questions appropriately. He did not appear to have any difficulty understanding questions and directions. He wore glasses and reported that he did not have any difficulty seeing the test items. T██████ did not demonstrate any restlessness, hyperactivity or inattention during the evaluation. He made adequate eye contact with the examiner. T██████

10001 Derekwood Lane, Suite #120, Lanham, Maryland 20706   Phone: 301.306.4590   Fax: 301.306.4591   Web: www.interdynamicsinc.cc

150

T█████ B████ Psychoeducational Evaluation                                      2

attempted all tasks presented to him. T█████ denied hallucinations and delusions and there were no indications that he was responding to internal stimuli. The results of this evaluation are considered valid and indicate his current level of functioning.

**TESTS RESULTS:**

**Wechsler Intelligence Test for Children:  Fourth Edition (WISC-IV)**

**SUBTESTS**

(Subtest scores have a mean of 10 and a Standard Deviation of 3.)

**Composite Scores Summary**

| Scale | Composite Score | Percentile Rank | Confidence Interval | Qualitative Description |
|---|---|---|---|---|
| Verbal Comprehension (VCI) | 83 | 13 | 77-91 | Low Average |
| Perceptual Reasoning (PRI) | 77 | 6 | 71-86 | Borderline |
| Working Memory (WMI) | 83 | 13 | 77-92 | Low Average |
| Processing Speed (PSI) | 85 | 16 | 78-96 | Low Average |
| Full Scale (FSIQ) | 77 | 6 | 73-83 | Borderline |

**Verbal Comprehension Subtest Scores Summary**

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Similarities | 14 | 7 | 8:2 | 16 |
| Vocabulary | 23 | 6 | 7:10 | 9 |
| Comprehension | 18 | 8 | 8:6 | 25 |

**Perceptual Reasoning Subtest Scores Summary**

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Block Design | 14 | 5 | 6:6 | 5 |
| Picture Concepts | 14 | 7 | 7:10 | 16 |
| Matrix Reasoning | 17 | 7 | 8:6 | 16 |

**Working Memory Subtest Scores Summary**

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Digit Span | 14 | 9 | 8:10 | 37 |
| Letter-Number Sequencing | 10 | 5 | 6:10 | 5 |

**Processing Speed Subtest Scores Summary**

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Coding | 34 | 7 | 8:2 | 16 |
| Symbol Search | 18 | 8 | 8:6 | 25 |

T████ B███ Psychoeducational Evaluation

**WISC-IV Results**

T█████'s general cognitive ability as tested by the WISC-IV is within the Borderline range of intellectual functioning. His overall thinking and reasoning abilities exceed those of approximately 6% of children his age (FSIQ = 77; 95% confidence interval = 73-83). T██████ may experience difficulty in keeping up with his peers in a wide variety of situations that require age-appropriate thinking and reasoning abilities. He performed slightly better on verbal than on nonverbal reasoning tasks, but there is no significant meaningful difference between T██████'s ability to reason with and without the use of words.

T██████'s verbal reasoning abilities as measured by the Verbal Comprehension Index are in the Low Average range and above those of only 13% of his peers (VCI = 83; 95% confidence interval = 77-91). The Verbal Comprehension Index is designed to measure verbal reasoning and concept formation. T██████ performed comparably on the verbal subtests contributing to the VCI, suggesting that these verbal cognitive abilities are similarly developed. He obtained a low average score in his understanding of social norms and mores; a borderline score in his word knowledge (Vocabulary) and abilitiy to understand the relationship between two related objects or ideas (Similarities)

T██████'s nonverbal reasoning abilities as measured by the Perceptual Reasoning Index are in the Borderline range and above those of only 6% of his peers (PRI = 77; 95% confidence interval = 71-86). The Perceptual Reasoning Index is designed to measure fluid reasoning in the perceptual domain with tasks that primarily assess nonverbal fluid reasoning and perceptual organization abilities. T██████ performed within the borderline range on tasks that tapped visual-spatial abilities.

T██████'s ability to sustain attention, concentrate, and exert mental control is in the Low Average range. He performed better than approximately 13% of his age-mates in this area (Working Memory Index = 83; 95% confidence interval 77-92). T██████ performed much better on the Digit Span subtest (Scaled Score = 9) than on the Letter–Number Sequencing subtest (Scaled Score = 5). A direct assessment of T██████'s short-term auditory memory, performance on the Letter–Number Sequencing subtest requires attention, concentration, and mental control and can be influenced by the ability to correctly sequence information. Mental control is the ability to attend to and hold information in short-term memory while performing some operation or manipulation with it and then to correctly produce the transformed information. T██████'s difficulty in recalling long spans of digits backward is evidence of weak mental control likely associated with his difficulty with attention. This weakness may impede the processing of complex information for him and slow new learning.

T██████'s ability in processing simple or routine visual material without making errors is in the Low Average range when compared to his peers. He performed better than approximately 16% of his peers on the processing speed tasks (Processing Speed Index = 85; 95% confidence interval 78-96). He performed within the borderline to low average range on tasks requiring visual scanning ability and hand-eye coordination and fine-motor control.

T██████ B██████ Psychoeducational Evaluation                                    4

## ACADEMIC TEST ADMINISTERED

The Wechsler Individual Achievement Test-2nd Edition (WIAT-II) was administered to evaluate T██████'s academic skills and knowledge. Scores on the WIAT-II are compared with grade-level norms. T██████'s performance fell within the Extremely Low to the Low Average range of academic functioning.

**Summary of WIAT-II Composite and Total Scores**

| COMPOSITES | STD | 95% INTERVAL | PR |
|---|---|---|---|
| Reading | 66 | 63- 69 | 1 |
| Mathematics | 79 | 72- 86 | 8 |
| Written Language | 69 | 61- 77 | 2 |
| Oral Language | 82 | 71- 93 | 12 |
| Total | 71 | 67- 75 | 3 |

**Summary of WIAT-II Subtest Scores**

| SUBTESTS | STD | 95% INTERVAL | PR | AGE EQU | GRADE EQU |
|---|---|---|---|---|---|
| Word Reading | 66 | 62- 70 | 1 | 7:4 | 1:9 |
| Reading Comprehension | 65 | 59- 71 | 1 | 6:8 | 1:5 |
| Pseudoword Decoding | 78 | 74- 82 | 7 | 6:4 | 1:7 |
| Numerical Operations | 87 | 76- 98 | 19 | 9:4 | 3:8 |
| Math Reasoning | 75 | 68- 82 | 5 | 8:0 | 2:6 |
| Spelling | 69 | 62- 76 | 2 | 7:0 | 1:8 |
| Written Expression | 74 | 61- 87 | 4 | 7:8 | 2:6 |
| Listening Comprehension | 76 | 62- 90 | 5 | 7:0 | 1:8 |
| Oral Expression | 96 | 84- 108 | 39 | 9:0 | 4:2 |

**Reading**

T██████ performed much better on tasks that assessed his capability to correctly apply phonetic decoding rules when reading a series of nonsense words (Pseudoword Decoding standard score = 78), than on tasks that required him to correctly read a series of printed words (Word Reading standard score = 66) and read sentences and paragraphs and answer questions about what was read (Reading Comprehension standard score = 65). His Pseudoword Decoding subtest score is higher than only approximately 7% of his peers, placing these skills in the Borderline range. T██████'s performance in Reading Comprehension and Word Reading are within the Extremely Low range and exceed approximately 1% and 1%, respectively, of children his age. T██████ demonstrated difficulty reading words such as "know, wrong and enough." He substituted other words at times, for example, reading "during" as "drinking" and "wrong" as *Wright*." Due to his difficulty with simple words, he was not able to understand what he read in a series of short passages.

### Mathematics

In overall mathematics skills Tⁱⁱⁱⁱⁱⁱ performed in the Borderline range, as indicated by his Mathematics Composite standard score (79). His skills in this area exceed that of only approximately 8% of students his age. Tⁱⁱⁱⁱⁱ's performance on tasks that required him to add and subtract one- to three-digit numbers and multiply and divide two-digit numbers (Numerical Operations standard score = 87) is comparable to his performance on tasks that requires him to understand number, consumer math concepts, geometric measurement, basic graphs, and solve one-step word problems (Math Reasoning standard score = 75). Solving mathematical problems without pencil and paper requires mental control and as previously mentioned, Tⁱⁱⁱⁱⁱ has difficulty with mental control. During the math reasoning tasks, he attempted to solve all the problems mentally and never used the scratch paper provided to him. As a result, he performed significantly worse on than on the numerical operations section.

### Oral Language

Tⁱⁱⁱⁱⁱ performed much better on tasks that assessed his capability to generate words within a category, describe scenes, and give directions (Oral Expression standard score = 96) than on tasks that required him to identify the picture that best represents an orally presented descriptor or generate a word that matches the picture (Listening Comprehension standard score = 76). His Listening Comprehension subtest score is higher than only approximately 5% of his peers, placing these skills in the Borderline range. Tⁱⁱⁱⁱⁱ's skills in Oral Expression are within the Average range, and exceeds that of approximately 39% of children his age.

### Written Language

In overall written language skills, Tⁱⁱⁱⁱⁱ performed in the Extremely Low range, as indicated by his Written Language Composite standard score (69). His achievement in this area is better than of only approximately 2% of students his age. Tⁱⁱⁱⁱⁱ's performance on tasks that required him to generate words within a category, generate sentences to describe visual cues, combine sentences, and compose an organized paragraph (Written Expression standard score = 74) is comparable to his performance on tasks that required him to correctly spell verbally presented words (Spelling standard score = 69). He was not able to spell words such as "too" which he spelled "to" and "charge" which he spelled "chareg."

## PERCEPTUAL MOTOR FUNCTIONING:

To assess his visual/motor abilities Tⁱⁱⁱⁱⁱ was administered the Berry-Buktenica Development Test of Visual-Motor Development (VMI). This instrument is a developmental sequence of geometric forms to be copied with paper-and-pencil. Tⁱⁱⁱⁱⁱ was required to copy increasingly complex designs, thus evaluating both fine-motor control and motor planning skills. His drawn replications are scored for precision and accuracy. On the VMI, Tⁱⁱⁱⁱⁱ obtained a standard score of 85 which corresponds to a percentile rank of 16. He committed both errors of distortion and integration. Tⁱⁱⁱⁱⁱ's performance on the VMI is within the Low Average range and above his performance on

the WISC-IV Perceptual Reasoning (SS = 77). His overall performance is basically commensurate with perceptual-motor ability.

**SUMMARY:**

T█████ is a 10-year-old child who completed the WISC-IV and the WIAT-II. His general cognitive ability, as estimated by the WISC-IV, is in the Borderline range. T██████'s general verbal comprehension abilities were in the Low Average range (VCI = 83), and general perceptual reasoning abilities were in the Borderline range (PRI = 77). Perceptual motor skills were noted to be within the Low Average range but generally commensurage with WISC-IV perceptual reasoning index.

T██████'s academic proficiency as tested by the WIAT-II, places him in the Extremely Low to the Low Average range. His scores in reading and written expression are within the extremely low range and suggest that he needs significant academic help in those areas. His mathematics abilities are a relative strength, but are within the borderline range. The multidisciplinary team should consider this report in determining the appropriate services to help T██████ succeed.

**RECOMMENDATIONS:**

T██████ would benefit from intensive individualized instruction daily in reading, spelling, writing and math. It is critical that work with reading and spelling be integrated so that he is learning to read and spell the same phonetic concept simultaneously. Each new phonetic concept should be introduced individually while continuing to reinforce the old one. He should also be introduced to syllable patterns. Spelling rules and generalizations should also be introduced individually and with much reinforcement. Flash cards can be used to learn new words. Have T██████ look at the word, say the word, then spell the word aloud while he is looking at it.

Work with written expression should begin with sentence writing and move on to sentence expansion. The application of appropriate mechanics including capitalization and punctuation should be incorporated. T██████ should have a daily log, expressing his thoughts in complete sentences. Have him write step-by-step directions (e.g., steps to make a cake) so he can practice sequencing events. The more he writes, the easier such tasks are likely to become for him.

Directions need to be read aloud and repeated/restated so that T██████ has clarity of directions and instructions that are given for each assignment.

Gerald Augustin, Psy.D
VA, DC, MD Licensed Clinical Psychologist

# Exhibit 17

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP  Page 1 of 4
Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last **B████████**  First **T███████**  MI

Student ID **9051948**  Soc. Sec. No.  Age:  Grade

Gender ☐ M ☐ F  Date of Birth **4/08/95**  Ethnic Group **BLK**

Address **5412  C STREET  SE**
Home No.  Street Name  Quadrant  Apartment #
**WASHINGTON  DC  20019**
City  State  Zip Code

☐ Non-attending  **MARY MCLEOD**  Home School
Attending School  **BETHUNE P.C.S**

☑ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent **TERRI and WILLIE BLAND**
Address of (if different from student):  ☐ Parent ☐ Guardian ☐ Surrogate
Home No.  Street Name  Quad  Apt. No.  City  State  Zip Code
Telephone: Home  Work

## II. CURRENT INFORMATION

Date of IEP Meeting: **3/10/06**

Date of Last IEP Meeting:

Date of Most Recent Eligibility Decision:

Purpose of IEP Conference:
☑ Initial IEP  ☐ Review of IEP
☑ Requested Eval.  ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: **III**

**ADDENDA TO BE ATTACHED AS NEEDED**
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
|----------|----------------|
| ESY | TRANSITION |

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used in Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---------------|----------|------------------------------|------------------------------|----------------------------|------------------------------------------|
| Student | ENGLISH | ENGLISH | ENGLISH | | Oral _____ |
| Parent | ENGLISH | ENGLISH | ENGLISH | | Rdg./ Written _____ |
| Home | ENGLISH | ENGLISH | ENGLISH | | Instrument: _____ |
| | | | | | Date: _____ |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # weeks/mos |
|----------|---------|---|-----------|---|--------------------------|---------------------------|----------|
| | GenEd | SpEd Total | Hr./ Min | D/W/M. | | | |
| OCCUPATIONAL THERAP | | ✓ | 45 MIN | WK | THERAPIST | 03/08/06 | 10 MOS |
| SPECIALIZED INSTR | | ✓ | 15 HR | WK | TEACHER/TUTOR | 03/18/06 | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| TOTAL | | 15 45 | Hours Per Week | | | | |

## V. Disability(ies)
**LD**

☑ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%  ☑ 21-60%  ☐ 61-100%

Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of the IEP)

_Print and sign your name below._

PRINCIPAL  _LEA Martin Carela_
LEA REP
TERRI BLAND  _Terri Bland_
LIA SESSOMS Teacher  _Lia Sessoms_
O/T THERAPIST  _Denquele OTH_

I AGREE with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in this IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

X _Terri Bland_  Date **3/10/06**
Parent/Guardian Signature

District of Columbia Public Schools  07-02-2001  Division of Special Education  Appendix - A  IEP Page 1 of 4

Mary Mcleod Bethune Day Academy Public Charter School

## SUMMARY OF PRESENT LEVELS OF PUPIL'S EDUCATIONAL

Student Name: T██████ B███ Date of Meeting: 03/10/2006____

Describe present levels of performance in terms of general education expectations. Scores alone are not sufficient. Include specific strengths and weaknesses from the results of all evaluations including state and/or districtwide assessments as appropriate, as well as classroom performance. Areas of performance affected by the student's disability must be addressed in IEP; if not, provide rationale.

**Parent/Student Educational Concerns and Comments:**

T██████ was referred to the special education program process because he was having difficulty academically. He is performing below level in reading and mathematics. He is having difficulty staying on task and completing assignments. His IEP, 02/09/04, classified him as LD, to receive Occupational therapy and 10 hrs.of specialized instruction. The evaluation and determination determined that specialized services and related services were still needed for academic achievement.

| Cognitive Functioning | Self Care/Independent Living |
|---|---|
| T█████ was administered the WISC-IV. <ul><li>verbal comprehension "-low average"/(pr)- 13</li><li>perceptual reasoning-(pr)-6/borderline</li><li>working memory-(pr)-low average</li><li>full scale IQ- (pr)-borderline</li></ul> | T██████ does not exhibit any difficulty in self care/independent living. |

| Academic and Pre-Academic Skills | Communication Skills |
|---|---|
| The WIATII was administered to assess T██████'s current academic functioning in Reading, Math, Written Language and Oral Language.<br>Word Reading- GE -1.9<br>Reading Comprehension – GE-1.5<br>Math Reasoning-GE2.6<br>Spelling-GE-1.8<br>Written Expression-GE2.6<br>Listening comprehension-GE-1.8<br>Oral Comprehension GE-4.2 | T██████ is talkative and asks questions appropriate for his chronological age. |

| Vocational Skills/Community Access | Health Status |
|---|---|
| | Hearing:      Date: _____<br>□ Passed □ Failed<br>Vision:    Date: _____  □ Passed □<br>Failed<br>Corrective Lenses: □ Yes □ No<br>Medication: □ Yes □ No Describe: _____ |

| Motor Abilities | Social/Emotional Functioning |
|---|---|
| Tests administered:<br><ul><li>Beery Developmental Test VMI w/ Visual Perception and Motor Coordination – Average Performance SS 96, Age Equivalent-9.8</li><li>Evaluation Tool of Children's handwriting-Cursive- "deficit with his ability to accurately produce cursive letters and words.</li><li>Motor-Free Visual Perception Test 3rd Edition- SS 69, Perceptual age 6.2</li></ul> | T██████ does not present any significant behavior problems in school. |



| Student Name | ▮▮▮▮▮ B▮▮▮ | | Managing School | MARY MᶜCᴀᴏᴜᴅ BETHᴜɴᴇ | DCPS-ISF Page 2 of 4 |
| Student ID Number | | DOB 04/9/95 | Attending School | | |

Goal Number: _____

**VIII. SPECIALIZED SERVICES**    Additional Comments:

Area addressed by goal: VISUAL – PERCEPTUAL MOTOR-SKILLS

**ANNUAL GOAL: (including mastery criteria.)**

1. T▮▮▮▮▮ WILL INCREASE HIS VISUAL-PERCEPTUAL MOTOR SKILLS TO AND "AGE" APPROPRIATE LEVEL FOR GREATER SUCCESS IN THE CLASSROOM.

2. T▮ WILL ↑ HIS HANDWRITING SKILLS TO AN AGE APPROPRIATE LEVEL (80%.)

Provider(s): OCCUPATIONAL THERAPIST

| Consider audience, behavior, condition, degree and evaluation. SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1.1 T▮▮▮▮ WILL COMPLETE VISUAL MOTOR ACTIVITIES (IE WORKSHEETS, PUZZLES, STRUCTURED THINKING GAMES, ETC) AT AND AGE APPROPRIATE LEVEL. 80% OF TRIALS. | | QUARTERLY |
| 1.2 T▮▮▮▮ WILL BE ABLE TO PROCESS AND IDENTIFY VISUAL PATTERNS WITH IMPROVED ACCURACY 80% OF TRIALS | | QUARTERLY |
| 2.1 T▮▮▮▮ WILL BE ABLE TO WRITE SHORT SENTENCES WITH GREATER ACCURACY. 80% OF TRIALS | | QUARTERLY |
| 2.2 T▮▮▮▮ WILL BE ABLE TO WRITE WORDS AND SENTENCES USING PROPER SIZING, SPACING, AND BASELINE ORIENTATION. 80% OF TRIALS | | QUARTERLY |
| 2.3 T▮▮▮ WILL FORM CURSIVE LETTERS AND WORDS WITH IMPROVED ACCURACY. 80% OF TRIALS. | | QUARTERLY |
| | | |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

159

| ...dent Name: T_____ B_____ | DOB 04/03/1995 Student ID No. 9051948 | DCPS Page 3 of 4 |

## VII. SPECIALIZED SERVICES

ANNUAL GOAL: (Including mastery criteria)        Area addressed by goal: __Reading Comprehension__

| T_____ will increase comprehension of a variety of printed materials by 10 months of growth as measured by performance assessment and written reports. | QUARTERLY RESULTS See report cards & Progress Summary | |
| --- | --- | --- |
| | DATE | PROGRESS |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks)        Provider(s): _Teacher_

| | | EVALUATION | |
| --- | --- | --- | --- |
| 1. Locate information and clarify meaning by skimming, scanning, reading carefully, and using other reading strategies. | End Date | | |
| 2. Clarify meaning by skimming, and reading carefully. | | Procedures ___ | Schedul |
| 3. Review text to locate information and clarify meaning by skimming, scanning, reading carefully, and using other reading strategies. | | Portfolio ___ Log ___ Chart ___ | |
| 4. use word attack strategies to locate specific words, phrases, word patterns and recognize sight words when returning to familiar text. | | Test ___ Documentation & Observation Report ___ Other ___ | |

Student Name: T_____ B____          DOB  04/03/1995     Student ID No. 9051948

## VII. SPECIALIZED SERVICES

ANNUAL GOAL: (Including mastery criteria)          Area addressed by goal:  Reading Comprehension

| | QUARTERLY RESULTS See report cards & Progress Summary | |
|---|---|---|
| T_____ will increase comprehension of a variety of printed materials by 10 months of growth as measured by performance assessment and written reports. | **DATE** | **PROGRESS** |
| | | |
| | | |
| | | |
| | | |
| | | |

SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks)          Provider(s):  Teacher

| SHORT-TERM OBJECTIVES | End Date | EVALUATION | |
|---|---|---|---|
| 1. Locate information and clarify meaning by skimming, scanning, reading carefully, and using other reading strategies. | | | |
| 2. Clarify meaning by skimming, and reading carefully. | | Procedures ___ | Schedul |
| 3. Review text to locate information and clarify meaning by skimming, scanning, reading carefully, and using other reading strategies. | | Portfolio ___ | |
| | | Log ___ | |
| | | Chart ___ | |
| 4. use word attack strategies to locate specific words, phrases, word patterns and recognize sight words when returning to familiar text. | | Test ___ | |
| | | Documentation & Observation | |
| | | Report ___ | |
| | | Other ___ | |

| Student Name | T█████ B█ | Managing School | MARY McGLOIA BETHUNG | DCPS-IEP Page 5 of 2 |
| Student ID Number | | DOB 04/9/95 | Attending School | |

**VIII. SPECIALIZED SERVICES**    Additional Comments:    Goal Number: ___

Area addressed by goal: VISUAL - PERCEPTUAL MOTOR SKILLS

ANNUAL GOAL: (including mastery criteria.)

1. T█████ WILL INCREASE HIS VISUAL PERCEPTUAL MOTOR SKILLS TO AND AGE APPROPRIATE LEVEL FOR GREATER SUCCESS IN THE CLASSROOM.

2. T█████ WILL ↑ HIS HANDWRITING SKILLS TO AN AGE APPROPRIATE LEVEL. (80%)

Provider(s): OCCUPATIONAL THERAPIST

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
| --- | --- | --- |
| 1.1 T█████ WILL COMPLETE VISUAL MOTOR ACTIVITIES (IE WORKSHEETS, PUZZLES, STRUCTURED THINKING GAMES, ETC) AT AN AGE APPROPRIATE LEVEL. 80% OF TRIALS. | | QUARTERLY |
| 1.2. T█████ WILL BE ABLE TO PROCESS AND IDENTIFY VISUAL PATTERNS WITH IMPROVED ACCURACY 80% OF TRIALS | | QUARTERLY |
| 2.1 T█████ WILL BE ABLE TO WRITE SHORT SENTENCES WITH GREATER ACCURACY. 80% OF TRIALS | | QUARTERLY |
| 2.2. T█████ WILL BE ABLE TO WRITE WORDS AND SENTENCES USING PROPER SIZING, SPACING, AND BASELINE ORIENTATION. 80% OF TRIALS | | QUARTERLY |
| 2.3. T█████ WILL FORM CURSIVE LETTERS AND WORDS WITH IMPROVED ACCURACY. 80% OF TRIALS. | | QUARTERLY |
| | | |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page

162

| | DCPS<br>Page 3 of 4 |
|---|---|
| Student Name: T██████ B████     DOB   04/03/1995     Student ID No. 9051948 | |

## VII. SPECIALIZED SERVICES

ANNUAL GOAL: (Including mastery criteria)        Area addressed by goal:  _Reading Comprehension_

| T██████ will increase comprehension of a variety of printed materials by 10 months of growth as measured by performance assessment and written reports. | QUARTERLY RESULTS<br>See report cards & Progress Summary | |
|---|---|---|
| | DATE | PROGRESS |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks)        Provider(s): _Teacher_

| | End Date | EVALUATION | |
|---|---|---|---|
| 1. Locate information and clarify meaning by skimming, scanning, reading carefully, and using other reading strategies.<br>2. Clarify meaning by skimming, and reading carefully.<br>3. Review text to locate information and clarify meaning by skimming, scanning, reading carefully, and using other reading strategies.<br>4. use word attack strategies to locate specific words, phrases, word patterns and recognize sight words when returning to familiar text. | | Procedures ___<br>Portfolio ___<br>Log ___<br>Chart ___<br>Test ___<br>Documentation &<br>Observation<br>Report ___<br>Other ___ | Schedul |

λ

Student Name: T_____ B_____
Student ID Number: _____
DOB: 04/8/95

Managing School: MARY McLEOD BETHUNE
Attending School: _____

OCPS IEP
Page 2 of __

**VIII. SPECIALIZED SERVICES**    Additional Comments: _____

Goal Number: _____

Area addressed by goal: VISUAL - PERCEPTUAL MOTOR-SKILLS

**ANNUAL GOAL: (including mastery criteria.)**

1. T_____ WILL INCREASE HIS VISUAL-PERCEPTUAL MOTOR SKILLS TO AND AGE APPROPRIATE LEVEL FOR GREATER SUCCESS IN THE CLASSROOM.

2. T_____ WILL ↑ HIS HANDWRITING SKILLS TO AN AGE APPROPRIATE LEVEL. (80%.)

Provider(s): OCCUPATIONAL THERAPIST

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1.1 T_____ WILL COMPLETE VISUAL MOTOR ACTIVITIES (i.e. WORKSHEETS, PUZZLES, STRUCTURED THINKING GAMES, ETC) AT AND AGE APPROPRIATE LEVEL. 80% OF TRIALS | | QUARTERLY |
| 1.2 T_____ WILL BE ABLE TO PROCESS AND IDENTIFY VISUAL PATTERNS WITH IMPROVED ACCURACY 80% OF TRIALS | | QUARTERLY |
| 2.1 T_____ WILL BE ABLE TO WRITE SHORT SENTENCES WITH GREATER ACCURACY. 80% OF TRIALS | | QUARTERLY |
| 2.2 T_____ WILL BE ABLE TO WRITE WORDS AND SENTENCES USING PROPER SIZING, SPACING, AND BASELINE ORIENTATION. 80% OF TRIALS | | QUARTERLY |
| 2.3 T_____ WILL FORM CURSIVE LETTERS AND WORDS WITH IMPROVED ACCURACY. 80% OF TRIALS. | | QUARTERLY |
| | | |

**EVALUATION PROCEDURE(S)**

Portfolio    Log    Chart    Test    Documented Observation    Report    Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page

164

Student Name: T█████ █████    DOB  04/03/1995    Student ID No. 9051948

## VII. SPECIALIZED SERVICES

**ANNUAL GOAL: (Including mastery criteria)**    Area addressed by goal: ___Writing___

T█████ will increase writing skills to 4th grade level in the areas of word choice, organization, and conventions, as measured by analysis of writing samples, spelling inventory and grade level report cards.

| QUARTERLY RESULTS See report cards & Progress Summary | |
| --- | --- |
| DATE | PROGRESS |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks)**    Provider(s):_Classroom Teacher_

T█████ will:

1. Write a main idea with some supporting details on a topic.
2. Research and write to convey understanding of a topic using at least one resource.
3. Write clear, focused main ideas and supporting details on a topic.
4. Write a multiparagraph passage to develop a topic using details, examples, and illustrations.
5. Revise writing so that the paper has an order that makes sense, including details, idea sentences, time sequence and paragraphs.

| End Date | EVALUATION | |
| --- | --- | --- |
|  | Procedures ___ | Schedul |
|  | Portfolio ___ |  |
|  | Log ___ |  |
|  | Chart ___ |  |
|  | Test ___ |  |
|  | Documentation & ___ |  |
|  | Observation ___ |  |
|  | Report ___ |  |
|  | Other ___ |  |

| | | | DCPS |
|---|---|---|---|
| Student Name: T█████ B█████ | DOB 04/03/1995 | Student ID No. 9051948 | Page 3 of 4 |

VII. SPECIALIZED SERVICES

ANNUAL GOAL: (Including mastery criteria)    Area addressed by goal: ____ mathematics ____

| T█████ will perform computational problems at the 4ᵗʰ grade level with 75% accuracy as measured by tests, portfolio documentation, and chart. $2.6$ | QUARTERLY RESULTS See report cards & Progress Summary | |
|---|---|---|
| | DATE | PROGRESS |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks)    Provider(s): __Teacher/Tutor__

| | End Date | EVALUATION | | |
|---|---|---|---|---|
| 1. Identify which operation to use. 2. Perform addition and subtraction operations using a calculator. 3. Perform addition and subtraction operations using manipulatives. 4. Perform addition and subtraction operations using pencil and paper. 5. Perform multiplication and division operations using paper and pencil. 6. choose and apply mental, manual, and calculator processes to problem solving strategies. (factor) | | Procedures ___ Portfolio ___ Log ___ Chart ___ Test ___ Documentation & Observation ___ Report ___ Other ___ | | Schedul |

166

DCPS
Page 3 of 4

Student Name: T_____ B____    DOB 4/03/1995    Student ID No. 9051948

## VII. SPECIALIZED SERVICES

**ANNUAL GOAL:** (Including mastery criteria)    Area addressed by goal: _Language_

| Develop and apply strategies and skills to comprehend text that is read, heard, and viewed. | QUARTERLY RESULTS See report cards & Progress Summary | |
|---|---|---|
| | DATE | PROGRESS |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**SHORT-TERM OBJECTIVES** (Include mastery criteria or benchmarks)    Provider(s): Teacher/ _Tutor_

| SHORT-TERM OBJECTIVES | End Date | EVALUATION | |
|---|---|---|---|
| | | Procedures | Schedul |
| • Demonstrate sense of story (e.g., beginning, middle, end, characters, details and setting). | | Portfolio ___ | |
| • Demonstrate familiarity with a variety of types of books and selections | | Log ___ | |
| • (e.g., picture books, caption books, short informational texts, nursery | | Chart ___ | |
| rhymes, word plays/finger plays, puppet plays, reenactments of familiar stories). | | Test ___ Documentation & | |
| • Use preparation strategies to activate prior knowledge and experience before and during the reading of a text. | | Observation ___ Report ___ | |
| • Formulate questions that a text might answer before beginning to read | | Other ___ | |
| • (e.g., what will happen in this story, who might this be, where do you think this happens). | | | |
| • Predict possible events in texts before and during reading. | | | |
| • Understand and follow oral-graphic directions. | | | |
| • Demonstrate understanding of literary language; e.g., "once upon a time" and other vocabulary specific to a genre. | | | |
| • Distinguish fantasy from reality when reading text. | | | |
| • Identify the sequence of events in a story. | | | |

*(handwritten left margin: Book Report / Chur Wh)*

167

| | DCPS<br>Page 3 of 4 |
|---|---|

Student Name Terrance Bland    DOB 4/03/1995    Student ID No. 9051948

## VII. SPECIALIZED SERVICES

ANNUAL GOAL: (Including mastery criteria)    Area addressed by goal: __Language Arts__

**Make connections through the use of oral language, written language, and media and technology.**

| QUARTERLY RESULTS<br>See report cards & Progress<br>Summary | |
|---|---|
| DATE | PROGRESS |
| | |
| | |
| | |
| | |
| | |
| | |

SHORT-TERM OBJECTIVES (Include mastery criteria or benchmarks)    Provider(s): __Classroom teacher__

- Connect information and events in text to experience.
- Discuss concepts and information in a text to clarify and extend knowledge.
- Associate target words with prior knowledge and explore an author's choice of words.
- Use speaking and listening skills and media to connect experiences and text:
- listening to and re-visiting stories.
- discussing, illustrating, and dramatizing stories.
- discovering relationships.

| | End<br>Date | EVALUATION | |
|---|---|---|---|
| | | Procedures ___ | Schedul |
| | | Portfolio ___ | |
| | | Log ___ | |
| | | Chart ___ | |
| | | Test ___ | |
| | | Documentation & Observation ___ | |
| | | Report ___ | |
| | | Other ___ | |

168

DCPS - IEP

Student Name
Student ID Number                                    Attending School

**Additional Comments:**

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
### SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?    (Yes)    No

Explanation for removal out of regular education classroom.

*[handwritten]* Wiggins/Whitley

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| *[handwritten]* | 15 | 1/5 | 15 | 15/hr | | Classroom teacher Occupational therapist | |
| *[handwritten]* | | | | | | | |

Check and list modifications and/or accommodations for testing:    None needed

Timing/Scheduling: *[handwritten]*
Setting: *[handwritten]*
Presentation: *[handwritten]*
Response:
Equipment:

## XI. STATE AND DISTRICT ASSESSMENTS:

Level I    Tested with non-disabled peers under standard conditions without accommodations.

Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

Level V    Portfolio

Level II    (Describe accommodations for level II) Tested under standard conditions with special accommodations.

Level IV    (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

Modifications:

| | | |
|---|---|---|
| Reading ✓ | Physical/Sensory | Transition |
| Mathematics ✓ | Social Emotional | Vocational |
| Written Expression ✓ | Physical Development | Independent Living |
| Other: *[handwritten]* | | Speech/Language |
| None | | |

Language Arts/English
Social Sciences
Biological & Physical Sciences
Fine Arts

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| *[handwritten]* | accept | |
| | | |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Location for Services *[handwritten]* Mary McLeod Bethune Day Academy

| Student Name | | Managing School _Ai Ai Bethune PCS_ | DCPS - IEP |
|---|---|---|---|
| Student ID Number | DOB | Attending School | Page 4 of 4 |

**Additional Comments:**

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?  (Yes)  No

Explanation for removal out of regular education classroom.

_handwritten text_ reading _Wiggins / Whitley_

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| _handwritten_ | | | _15_ | _45/wk_ | | _Classroom teach_ | |
| _handwritten_ | | | | | | _Occupational therapist_ | |

Check and list modifications and/or accommodations for testing:      None needed

| | |
|---|---|
| Timing/Scheduling: | _handwritten_ |
| Setting: | _handwritten_ |
| Presentation: | _handwritten_ |
| Response: | |
| Equipment: | |

## XI. STATE AND DISTRICT ASSESSMENTS:

Level I  Tested with non-disabled peers under standard conditions without accommodations.

(Level III) (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

Level V Portfolio:

Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.

Level IV  (Describe the alternative assessment)

Modifications:

## XII. Areas Requiring Specialized Instruction and Related Services:

| | | |
|---|---|---|
| Reading ✓ | Physical/Sensory | Language Arts/English |
| Mathematics ✓ | Social Emotional | Social Sciences |
| Written Expression ✓ | Physical Development | Biological & Physical Sciences |
| Other: _handwritten_ | Transition | Fine Arts |
| None | Vocational | |
| | Independent Living | |
| | Speech/Language | |

Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| _General ed setting_ | _accept_ | |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Location for Services _Mary McLeod Bethune Day Academy_

# Exhibit 18



# interdynamics, inc.

### Evaluations and Therapy

### Occupational Therapy Evaluation Report

## Student Identifying Information:

| | |
|---|---|
| **Student Name:** | T███████ B████ |
| **D. O. B.:** | 4/3/1995 |
| **C.A.:** | 10 years, 8 months |
| **School Name:** | Mary McLeod Bethune Public Charter School |
| **Therapist Name:** | Marchelle Putney, OTR/L |
| **Date of Evaluation:** | 12/16/2005 |

## Reason For Referral

T██████ B████ is a 10-year-old male student in the 4th grade at Mary McLeod Bethune Public Charter School. He was recommended to be evaluated for School-Based Occupational Therapy services to determine if services are indicated.

## Background/History

T██████'s current Individualized Educational Plan (IEP) dated 9/27/05 states that he has a disability category of Learning Disabled and he is receiving Specialized Instructions for 10 hours per week. Per record review, T██████ was recommended to receive a Psycho-educational and Occupational Therapy evaluation. There were no further indications of the goals and objectives that are being addressed by special education to improve T██████'s academic performance. Lastly, per record review, T██████ does not have history of receiving any School-Based Occupational Therapy services.

## Behavioral Observations

T██████ approached the testing room accompanied by this OT without hesitation. He cooperatively engaged in conversation during rapport establishment and gave good eye contact. T██████ worked diligently to complete all tasks that were presented to him and did not demonstrate any signs of poor attention or focus to table top tasks for completion during this evaluation. When offered a break, he would politely refuse and request to continue working. Overall, it is felt that this testing and observations are an accurate reflection of T██████'s current skill level in the areas tested.

## Assessments Administered

- Beery Developmental Test of Visual Motor Integration- (VMI) with the Visual Perception and Motor Coordination supplemental tests
- Evaluation Tool of Children's Handwriting-Cursive (ETCH-C)
- Motor-Free Visual Perception Test- 3rd Edition (MVPT-3)
- Teacher Consultation
- Clinical Observations

Page 2- Occupational Therapy Report
T███████ B████

## Assessment Results

**It should be noted that the numerical scores for these tests are based on children without developmental delays. The Age Equivalents, although easily understood, are often not the best measure of a child's growth from year to year. The standardized score, which is not dependent on age, but the number of correct responses given out of all the possible answers, may be more accurately used for comparison purposes.

**Beery Developmental Test of Visual Motor Integration (VMI)-** The VMI is a test that measures a child's motor, perceptual and visual skills by having them copy a series of increasingly complex lines, shapes, and designs. There are 30 items in which there are a "one point" or "no point" score given. On the Visual Perceptual subtest, the child is asked to match different lines and shapes without the motor component. On the Motor Coordination subtest, the child is asked to reproduce various lines and shapes within 1/4th and 1/8th inch borders. T███████'s performance scores are recorded at the top of the next page.

| Raw Scores | VMI | Visual | Motor Coordination |
|---|---|---|---|
| Raw Scores | 23 | 24 | 9 |
| Standard Scores | 96 | 94 | Too Low to Scale |
| Age Equivalents | 9-8 | 9-6 | 3-0 |
| Verbal Descriptions | Average | Average | Very Low |

On the VMI, T███████ demonstrated average performance. He demonstrated the ability to reproduce simple pre-handwriting strokes such as horizontal/vertical lines, a circle, cross, an X, and other intersecting and overlapping shapes and lines. He, however, had some difficulty with accurately reproducing age appropriate intersecting and overlapping lines and shapes such as a cross with directional arrows, an eight-dot circle, overlapping circles and other 2- and 3-dimensional shapes. On the Visual Perception supplemental test, T███████ also demonstrated average performance by accurately matching shapes with like characteristics and details when presented with up to 7 similar shapes for answer choices. On the Motor Coordination subtest, T███████ demonstrated a lot of difficulty due to demonstrating very low performance. He omitted a lot of line strokes within the test items as well as demonstrated unsmooth and uncoordinated line strokes within 1/4th and 1/8 borders. Overall, T███████'s scattered scores on the this test indicates that while he has average ability to process and perceive letters, numbers and symbols presented to him, he has low ability to coordinate his pencil to motorically produce them. Even though he demonstrated average scores on the VMI and Visual Perception tests, they are still 1 year to 1 year 2 months below his age range which is 10 years, 8 months. With that said T███████ may still have some difficulty with accurately accessing and producing his work that is presented to him in class.

**Motor-Free Visual Perception Test-3rd Edition (MVPT-3)** – The MVPT-3 is a 65 item (items 1-40 are assessed to children 4 to 11 years of age) multiple choice test that assesses an individual's visual (their ability to see) and perceptual (their interpretation of the material presented) skills without the motor component. The examinee is required to either point or verbally indicate the letter of the four alternatives that he or she feels is the correct response.

The five areas in the test are:

1- **Visual Discrimination** – being able to tell the dominant features in objects: i.e., shapes, colors, letter-like forms.

173

**Page 3- Occupational Therapy Report**
T████ B████

2- **Figure Ground** – being able to distinguish the object from the background: i.e., find the "hidden" object.
3- **Visual Memory** – the ability to recall the dominant features of one object, or remember the sequence of several items.
4- **Visual Closure**- the ability to identify figures when fragments of the figure are presented.
5- **Spatial Relationships** – how objects are perceived in relation to one another or oneself: i.e., which one is "different"?

Scoring for the MVPT-3 is based on the number of correct responses (raw score). T█████'s scores are as listed below.

| | |
|---|---|
| **Raw Score** | 27 |
| **Standard Score** | 69 |
| **Perceptual Age** | 6-2 |
| **Verbal Descrip.** | Very Low |

T█████ demonstrates visual perceptual skills that are equivalent to a child who is 6 years, 2 months old, which is very low for his age. Overall, T█████ demonstrated strength in the area of visual discrimination (identifying the differences between 2 similar items). On the other hand, T█████ has difficulties in all the other assessed perceptual areas of form constancy for shapes that are presented in different ways (i.e., smaller, larger, darker or turned on its side); figure-ground (i.e., identifying hidden items from the background), visual memory; and visual closure of identifying incompletely revealed shapes. While T█████'s performance on this assessment is inconsistent with the VMI- Visual Perception supplemental test he demonstrated performance that is 1 year and 2 months below his age range. Moreover, T█████'s performance the MVPT-3 indicates that he inaccurately perceives processes and interprets what is presented to him in the book and/or on the chalkboard thus impacting his ability to access this educational program.

X **Evaluation Tool of Children's Handwriting (ETCH)**- The Evaluation Tool of Children's Handwriting is designed to evaluate manuscript and cursive handwriting skills of children in grades 1 through 6 who are experiencing difficulty with written communication. The primary focus of the ETCH is to assess a child's legibility and speed of handwriting in writing tasks that are similar to those required of students in the classroom.

The seven tasks that assessed T█████'s cursive performance are listed as the following:

**Task I Writing Alphabet from Memory:** This task measures the child's ability to write the letters of the alphabet in sequencing memory involving both the lower-case and upper-case cursive.
**Task II Writing Numerals from Memory:** This task measures the child's ability to produce numerals 1 through 20 written from memory.
**Task III Near-Point Copying:** This task measures the child's ability to copy a short sentence from a nearby cursive model.
**Task IV Far-Point Copying:** This task assess the child's capacity to copy another short sentence from a distant cursive model.
**Task V Manuscript to Cursive Transition:** This task involves having the child write one sentence in cursive from a nearby manuscript model.

I

174

Page 4- Occupational Therapy Report
T██████ B█████

**Task VI Dictation:** Three nonsense words and one zip code dictated to the child are evaluated in this task.
**Task VII Sentence Composition:** This task measures the child's ability to generate a written sentence.

Overall, T██████'s total cursive legibility scores were: words 41% accuracy; letters 56%; and numerals 80%. Most children T██████'s age are writing between 75 to 80% accuracy, which indicates that he has a deficit with his ability to accurately produce cursive letters and words. In writing the lowercase cursive alphabet letters from memory, T██████ had a lot of difficulty, scoring 50% accuracy for lower-case cursive letters and 46% for upper-case cursive letters. He demonstrated 50% case substitution while producing the uppercase cursive alphabet and required a lot of time on average 2 and a half minutes to produce each the upper- and the lowercase cursive alphabet. In other tasks, T██████'s word legibility ranged from 0% to 60% with far-point copying and near-point copying. In contrast, his letter legibility ranged from as low as 30% on the Dictation to as high as 69% for far-point copying. His low scores for word legibility are primarily due to inadequate spacing between the letters as well as letter formation and sizing. In addition, T██████ demonstrates writing speed that ranges from as high as 24 letters per minute to as low as 16 letters per minute, this is low when compared to peers his age which is on average 28 letters per minute. T██████ used his right hand for writing and regularly demonstrated a lateral tripod pencil grasp with shifting his thumb from being opposed to over his index finger on the pencil. He also demonstrated an open web space in his hand while writing with his fingers in mid-range while holding the pencil and writing. He consistently stabilized his paper. When observing in-hand manipulation tasks (movements performed within one hand), T██████ demonstrated the ability to perform simple and complex rotation as evidenced by his ability to rotate his pencil in order to erase. In addition, he was able to shift his pencil proficiently (walk his fingers up and down the pencil). Overall, T██████ demonstrated average hand skills with pencil use and low cursive handwriting skills that are usually well-developed in children his age and may be contributing to his inability to write efficiently and successfully in school.

**Teacher Consultation**
T██████'s classroom teacher, Ms. Sessoms reported that T██████ is a very good student. He does not demonstrate any behavior or attention problems in class, however she has to give him a lot of one on one and small group time to understand and complete his work. In addition, she uses cursive handwriting within her class program and he demonstrates difficulty with accessing and completing his work in cursive with subsequent additional assistance and extra time given by her. Overall, Ms. Sessoms believes that he will benefit from receiving the necessary support services to optimize his ability to access his daily educational program.

**Clinical Observations**
**Upper Extremity Function:** T██████ demonstrated appropriate muscle strength in his arms and legs for his age. His range of motion (degree of movement in his joints) was normal.

**Visual Skills/Sensory Processing:** This skill area focuses on the student's ability to organize and interpret sensory input needed for an appropriate adaptive response and interaction with the environment. T██████ was noted to have some smooth eye movement to locate objects either stationary or moving (tracking). His eyes were noted to come together `````````` for near and far point copying (up close and board ````````

Page 5- Occupational Therapy Report
T██████ B█████

work tasks). T█████ ..as noted to wear eyeglasses. Additionally, he was noted to adapt to the environment with appropriate sensory processing abilities by not under-/over responding to the textures and colors of the test protocol papers, pencils, table top, walls, floor, and distractions (i.e., a person entering and exiting the testing room and children walking in the hallways and talking).

**Handwriting Skills:** Clinical observations were made of T█████'s hand dominance, grasp pattern, writing pressure, alphabet and number reproduction, spacing/alignment, directionality/reversals, and stabilization of written work. T█████ is right handed and used a standard size pencil. He demonstrated a lateral tripod pencil grasp on his writing utensils and was noted to apply appropriate pressure during handwriting. As stated earlier in the report, T█████ demonstrated illegible production of age-appropriate cursive letters and words per the ETCH-C. He, however, demonstrated good ability to write his name in cursive onto a line stimulus. In addition, T█████demonstrated average performance with number production of 80% per the ETCH-C. Overall, T█████ demonstrates low cursive handwriting skills when compared to peers his age which is impacting on his ability to accurately access his daily educational program.

**Self-Care Skills:** T█████ demonstrated that he can tie his shoelaces independently. Additionally, he and his teacher reported that he is independent with performing the Activities of Daily Living- ADL/Self-care skills necessary for him to perform in the school environment (e.g., going to the bathroom, putting on/taking off her shoes, coat and book bag, as well as eating/feeding lunch). Overall, T█████ demonstrates independence with his self-care performance in the school environment.

## SUMMARY
T█████ is a 10-year-old male student in the 4th grade at Mary McLeod Bethune Public Charter School. He was evaluated for School-Based Occupational Therapy services with the Test of Visual Motor Integration (VMI) and the two supplemental tests: Visual Perception and Motor Coordination tests, the Motor-Free Visual Perceptual Test- 3rd Edition (MVPT-3), the Evaluation Tool of Children's Handwriting-Cursive (ETCH-C), as well as, clinical observations. Although he demonstrated average performance on the VMI and Visual Perception supplemental test his performance is still 1 year to 1 year and 2 months below age range. Additionally, his scores on the Motor Coordination supplemental test were very low which is consistent with his low performance of demonstrating illegible cursive handwriting on the ETCH-C. Moreover, T█████ demonstrated very low visual perception skills in 4 out of 5 assessed perception skill areas. Furthermore, T█████'s teacher reports that his low cursive performance is impacting on his ability to access his work in class. Overall, T█████ was a very pleasant and cooperative student during this evaluation session.

## RECOMMENDATIONS
It is my professional opinion that T█████ will benefit from Direct School-Based Occupational Therapy services for 1 time a week for 45 minutes in conjunction with his daily educational program to improve his fine motor coordination, perception and cursive handwriting skills. Occupational Therapy should include the following:
1) Consultation with classroom staff as needed.
2) Provide T█████ with daily opportunities to practice copying and producing cursive lowercase and uppercase alphabet onto line paper with visual prompts to appropriately size, form and space his letters.

# Exhibit 19



# SYLVAN®

SYLVAN
LEARNING CENTER
Learning feels good.™

## Welcome Letter

October 2, 2006

Dear Terri Bland,

Congratulations!  You've made the right choice by choosing Sylvan at District Heights.

We are excited about working with you and T██████.

At Sylvan Learning Center, our students and their academic progress are our highest priority.  Sylvan is proud of our record of helping more than a million students and families.  At Sylvan, students improve their skills, become more motivated and gain greater self-confidence.  We are pleased to have the opportunity to help your child.

We are here for you.  We will keep you updated on T█████'s progress, stay in close contact with T█████'s school, and be available to discuss your questions when they arise.  We believe in the importance of partnership, with you and the school, to ensure T█████'s ongoing success.

We look forward to working with you and your child.  We know that your time at Sylvan District Heights will be productive and enjoyable.

Academically Yours,

K. M. Stokes
Center Director
Sylvan at District Heights

PP: Welcome Letter
Sylvan neither sanctions nor practices any form of bias or prejudice in its admissions or operations
(C) 2005 Sylvan Learning, Inc. - This form may ONLY be reproduced for use in Sylvan Learning Centers. -    9.27.05

# Exhibit 20



# Summary of Diagnostic Assessment
## Sylvan Academic Reading assessed on 09/29/2006
Te—— Bl——, DOB 04/03/1995
**Current Age: 11 Years 5 Months, Current Grade: 5.1**
**Report Date: Monday, October 02, 2006**

**SYLVAN**
**LEARNING CENTER®**
*Learning feels good*

## General Assessments
**Age When Assessed:**   11 years - 5 months
**Receptive Vocabulary:**
Comprehensive Receptive and Expressive Vocabulary Test
Percentile Rank:          2
Age Equivalent:           6 Years 6 Months
Standard Score:           70 (Poor)

**Learning Channel Preferences:**
Visual Style              34.6%
Auditory Style            35.6%
Haptic (Tactile) Style    29.8%

## Gray Oral Reading Test 3 - GORT 3

|                        | %ile | GE* | Rating    |
|------------------------|------|-----|-----------|
| Rate                   | <1   | 2.3 | Very Poor |
| Accuracy               | 2    | 2.5 | Poor      |
| Passage                | 1    | 2.3 | Very Poor |
| Comprehension          | 5    | 2.8 | Poor      |
| Oral Reading Quotient  | 64   |     | Very Poor |

## California Achievement Test

**CAT/5:Form A - Level 15 Grade Equivalents\***

Target Grade: 5.9



Vocabulary GE:2.8 %ile:11

Comprehension GE:1.6 %ile:1

Total GE:2.2 %ile:4

| 0.0 | 1.0 | 2.0 | 3.0 | 4.0 | 5.0 | 6.0 |

\* SLC administers standardized tests on an individual basis for
placement within a Sylvan program.  Results reported as grade
equivalent are not expected to equal the classroom grade level.

©1995-2006 Sylvan Learning Systems, Inc. No part of this report may be reproduced without permission.

180



**SYLVAN**
**LEARNING CENTER®**
*Learning feels good.*

# Summary of Diagnostic Assessment
## Sylvan Academic Reading assessed on 09/29/2006
### T██████ B███, DOB 04/03/1995
Current Age: 11 Years 5 Months, Current Grade: 5.1
Report Date: Monday, October 02, 2006

## Vocabulary

| Vocabulary Acquisition | 2 | 3 | 4 |
|---|---|---|---|
| Vocabulary From Texts | NA | NA | |
| Vocabulary Development | A | | |
| **Vocabulary Building Strategies** | **2** | **3** | **4** |
| Mult. Meaning Words | A | | |
| Synonyms | A | | |
| Antonyms | | | |
| Homonyms | A | | |
| Concrete Context Clues | | | |
| Inferential Context Clues | | | |
| Context: Mixed | | | |
| Analogies: Descriptive | | | |
| Analogies: Comparative | | | |
| Analogies: Categorical | | | |
| Analogies: Serial | | | |
| Analogies: Causal | | | |
| Analogies: Mixed | | | |

## Comprehension

| Base Skills | 2 | 3 | 4 |
|---|---|---|---|
| **Reading for the Main Idea** | | | |
| Main Idea: Categorizing | | | |
| Main Idea: Stated | | | |
| Main Idea: Implied | | | |
| **Reading for Patterns** | | | |
| Signal and Question Words | | | |
| Facts and Details | NA | | |
| Sequence | | | |
| Compare and Contrast | | | |
| Cause and Effect | | | |
| **Reading to Evaluate** | | | |
| Drawing Conclusions | | | |

## Comprehension

| Mastery Skills | 2 | 3 | 4 |
|---|---|---|---|
| **Critical Reading / Reasoning** | | | |
| Reality and Fantasy | | | NA |
| Predicting Outcomes | | | |
| Fact and Opinion | | | |
| Figurative Language | NA | | |
| Persuasion | NA | | |
| Deductive Reasoning | | | |
| **Literary Analysis** | | | |
| Literary Forms | | | |
| Character Analysis | | | |
| Story Structure | | | |
| Author's Purpose | NA | NA | |
| **Integrated Skills** | **2** | **3** | **4** |
| Reading Fiction and Narrative | | | |
| Reading Factual Text | | | |

## Application & Extension

| | | | |
|---|---|---|---|
| Reading Tools | | | |
| Oral Reading | | | |
| Spelling Development | | | |

## Comments:

_____

_____

_____

Parent Signature     _____

Director Signature   _____

| A - Assigned | B - Begun | C - Closed |
|---|---|---|
| NT - Not Tested | NA - Not Applicable | DA - Mastered on Test |
| Shaded - Needs Instruction | | |

**Sylvan Plan for Success**
**Sylvan Academic Reading**

Case 1:07-cv-01223-AK   Document 9-4   Filed 10/15/2007   Page 29 of 31

**S Y L V A N**
LEARNING CENTER®
*Learning feels good*

Current Age: 11 rs 5 Months, Current Grade: 5.1
Report Date: Monday, October 02, 2006

DOB 04/03/1995

## Long-Term Family Needs for T████:

---
---

## Long-Term Academic Goals for T█████:

### In Word Analysis, T█████ will:
- XXXbuild sight vocabulary through review and repetition.
- improve and apply phonics skills (for example, long vowel sounds).
- learn how word structure affects meaning (for example, add "pre" to mean before).

### In Vocabulary, T██████ will:
- develop a larger working vocabulary for reading.
- practice strategies for analyzing unknown words.
- work successfully at the 1st, 2nd, 3rd, and 4th, etc, vocabulary level by the completion of the program.

### In Comprehension, T██████ will:
- apply literal and critical thinking skills to comprehend text.
- learn how reading factual text differs from reading fiction.
- develop active reading strategies and self-checking techniques.
- work successfully at the 1st, 2nd, 3rd and 4th, etc, comprehension level by the completion of the program.

## Estimated length of program: 200 or more Hours

**Foundation**
- Assess learner development
- Close skill gaps
- Build self-confidence
- Provide a foundation for continued success

**Application**
- Enrich existing skills
- Build a pattern of success
- Heighten self-motivation

**Mastery**
- Develop critical thinking skills
- Develop self study skills
- Apply learning strategies

Sylvan Plan for Success : Initial
Center #12315
©1995-2006 Sylvan Learning Systems, Inc. No part of this report may be reproduced without permission.

182



**Sylvan Plan for Success**
**Sylvan Academic Reading**
T████ B████, DOB 04/03/1995
Current Age: 11 Years 5 Months, Current Grade: 5.1
Report Date: Monday, October 02, 2006

SYLVAN
LEARNING CENTER®
*Learning feels good.*

## Long-Term Family Needs for T█████:

_____

_____

## Long-Term Academic Goals for T█████:

**In Word Analysis, T█████ will:**
- XXXbuild sight vocabulary through review and repetition.
- improve and apply phonics skills (for example, long vowel sounds).
- learn how word structure affects meaning (for example, add "pre" to mean before).

**In Vocabulary, T█████ will:**
- develop a larger working vocabulary for reading.
- practice strategies for analyzing unknown words.
- work successfully at the 1st, 2nd, 3rd, and 4th, etc, vocabulary level by the completion of the program.

**In Comprehension, T█████ will:**
- apply literal and critical thinking skills to comprehend text.
- learn how reading factual text differs from reading fiction.
- develop active reading strategies and self-checking techniques.
- work successfully at the 1st, 2nd, 3rd and 4th, etc, comprehension level by the completion of the program.

## Estimated length of program: 200 or more Hours

**Foundation**
- Assess learner development
- Close skill gaps
- Build self-confidence
- Provide a foundation for continued success

**Application**
- Enrich existing skills
- Build a pattern of success
- Heighten self-motivation

**Mastery**
- Develop critical thinking skills
- Develop self study skills
- Apply learning strategies

Sylvan Plan for Success : Initial
© 1995-2006 Sylvan Learning Systems, Inc. No part of this report may be reproduced without permission.

Center #12315

183



**SYLVAN**
LEARNING CENTER®
*Learning feels good.*

# Summary of Diagnostic Assessment

### Sylvan Academic Reading assessed on 09/29/2006
**T█████ B███, DOB 04/03/1995**
Current Age: 11 Years 5 Months, Current Grade: 5.1
Report Date: Monday, October 02, 2006

## Vocabulary

| Vocabulary Acquisition | 2 | 3 | 4 |
|---|---|---|---|
| Vocabulary From Texts | NA | NA | |
| Vocabulary Development | A | | |
| **Vocabulary Building Strategies** | **2** | **3** | **4** |
| Mult. Meaning Words | A | | |
| Synonyms | A | | |
| Antonyms | | | |
| Homonyms | A | | |
| Concrete Context Clues | | | |
| Inferential Context Clues | | | |
| Context: Mixed | | | |
| Analogies: Descriptive | | | |
| Analogies: Comparative | | | |
| Analogies: Categorical | | | |
| Analogies: Serial | | | |
| Analogies: Causal | | | |
| Analogies: Mixed | | | |

## Comprehension

| Base Skills | 2 | 3 | 4 |
|---|---|---|---|
| **Reading for the Main Idea** | | | |
| Main Idea: Categorizing | | | |
| Main Idea: Stated | | | |
| Main Idea: Implied | | | |
| **Reading for Patterns** | | | |
| Signal and Question Words | | | |
| Facts and Details | | | |
| Sequence | NA | | |
| Compare and Contrast | | | |
| Cause and Effect | | | |
| **Reading to Evaluate** | | | |
| Drawing Conclusions | | | |

## Comprehension

| Mastery Skills | 2 | 3 | 4 |
|---|---|---|---|
| **Critical Reading / Reasoning** | | | |
| Reality and Fantasy | | | NA |
| Predicting Outcomes | | | |
| Fact and Opinion | | | |
| Figurative Language | NA | | |
| Persuasion | NA | | |
| Deductive Reasoning | | | |
| **Literary Analysis** | | | |
| Literary Forms | | | |
| Character Analysis | | | |
| Story Structure | | | |
| Author's Purpose | NA | NA | |
| **Integrated Skills** | **2** | **3** | **4** |
| Reading Fiction and Narrative | | | |
| Reading Factual Text | | | |

## Application & Extension

| | | | |
|---|---|---|---|
| Reading Tools | | | |
| Oral Reading | | | |
| Spelling Development | | | |

## Comments:

_____

_____

_____

Parent Signature   _____

Director Signature _____

| A - Assigned | B - Begun | C - Closed |
|---|---|---|
| NT - Not Tested | NA - Not Applicable | DA - Mastered on Test |
| Shaded - Needs Instruction | | |

**Sylvan Plan for Success**



## Summary of Diagnostic Assessment
### Sylvan Math Essentials assessed on 09/29/2006
T̶e̶m̶m̶a̶s̶ B̶r̶w̶n̶, DOB 04/03/1995
Current Age: 11 Years 5 Months, Current Grade: 5.1
Report Date: Monday, October 02, 2006

**SYLVAN LEARNING CENTER®**
*Learning feels good*

### General Assessments
Age When Assessed:    11 years - 5 months
**Receptive Vocabulary:**
Comprehensive Receptive and Expressive Vocabulary Test
Percentile Rank:                2
Age Equivalent:                6 Years 6 Months
Standard Score:                70 (Poor)

**Learning Channel Preferences:**
Visual Style                34.6%
Auditory Style                35.6%
Haptic (Tactile) Style        29.8%

### California Achievement Test
CAT/5:Form A - Level 15  Grade Equivalents*

Target Grade: 5.9



Computation GE:3.5 %ile:13

Concepts & Appl. GE:2.9 %ile:13

Total GE:3.2 %ile:12

0.0    1.0    2.0    3.0    4.0    5.0    6.0
Grade Equivalent

### Sylvan Math Essentials Strand

| Level | | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|
| Numeration | (N) | | ■ | | | |
| Addition and Subtraction | (A/S) | ■ | | | | |
| Multiplication and Division | (M/D) | | | | | |
| Fractions | (F) | | ■ | | | |
| Decimals | (D) | | | | | |
| Integers | (IN) | | | | | |
| Algebraic Reasoning | (AR) | | ■ | | | |
| Time and Money | (TM) | | | ■ | | |
| Measurement | (M) | | | ■ | ▨ | |
| Geometry | (GE) | | | ■ | ▨ | |
| Area, Perimeter and Volume | (APV) | | | | | |
| Graphing | (GR) | | | | | |
| Ratio, Proportion and Percent | (RPP) | | | | ▨ | |
| Probability and Statistics | (PR) | | | | | |
| Problem Solving | (PS) | | | | | |

■ Needs instruction     ▨ Pre-assess During Instruction

* SLC administers standardized tests on an individual basis for placement within a Sylvan program. Results reported as grade equivalent are not expected to equal the classroom grade level.

Center #12315

Summary of Diagnostic Assessment
©1995-2006 Sylvan Learning Systems, Inc. No part of this report may be reproduced without permission.

Page 1



**SYLVAN**
**LEARNING CENTER**
*Learning feels good.*

**Sylvan Plan for Success**
**Sylvan Math Essentials**
**T██████ B████, DOB 04/03/1995**
Current Age: 11 Years 5 Months, Current Grade: 5.1
Report Date: Monday, October 02, 2006

## Long-Term Family Needs for T██████:

_____

_____

## Long-Term Academic Goals for T██████:

**By completion of his program:**

**In Fact Fluency, T██████ will:**
- increase efficiency and accuracy of recalling <addition, subtraction, multiplication, and division> facts.

**In Content Knowledge, T██████ will:**
- master and apply all identified skill gaps below level 5.0.
- master and apply on and above level skills through level 4.9.
- work successfully above level on level {target grade} skills.

**Problem Solving**
- develop confidence, skills, and strategies for solving word problems.
- demonstrate proficiency at applying knowledge of mathematics to solve problems.

**Communication**
- communicate precisely and accurately his knowledge of mathematical skills and concepts both orally and in writing.

**Next Steps:**
- Move T██████ into <insert program name>.

## Estimated length of program: 108 or more Hours

**Foundation**
- Assess learner development
- Close skill gaps
- Build self-confidence
- Provide a foundation for continued success

**Application**
- Enrich existing skills
- Build a pattern of success
- Heighten self-motivation

**Mastery**
- Develop critical thinking skills
- Develop self-study skills
- Apply learning strategies

Sylvan Plan for Success : Initial          Center #12315
©1995-2006 Sylvan Learning Systems, Inc. No part of this report may be reproduced without permission.



**SYLVAN**
**LEARNING CENTER**
*Learning feels good*

# Sylvan Plan for Success
### Sylvan Math Essentials
T▇▇▇ B▇▇, DOB 04/03/1995
Current Age: 11 Years 5 Months, Current Grade: 5.1
Report Date: Monday, October 02, 2006

## T▇▇▇ will work on the following skills during his first 12 hours of instruction:

- Subtract 2- and 3-digit numbers with no regrouping; check with addition at level 2.
- Subtract a 1-digit number from a 2-digit number with regrouping at level 2.
- Subtract 2- or 3-digit numbers with single regrouping; check with addition at level 2.
- Identify the place value and value of each digit in numbers through the hundred-thousands at level 3.

## Director's Comments:

_____

_____

## Parent's Comments:

_____

_____

_____     _____     _____
Director's Signature    Date        Student's Signature    Date        Parent's Signature    Date



# SYLVAN
**LEARNING CENTER**
*Learning feels good.*

## Summary of Diagnostic Assessment
### Sylvan Academic Writing assessed on 09/29/2006
Te████ Bl████, DOB 04/03/1995
Current Age: 11 Years 5 Months, Current Grade: 5.1
Report Date: Monday, October 02, 2006

## General Assessments
**Age When Assessed:**    11 years - 5 months
**Receptive Vocabulary:**
Comprehensive Receptive and Expressive Vocabulary Test
Percentile Rank:             2
Age Equivalent:            6 Years 6 Months
Standard Score:            70 (Poor)

### Learning Channel Preferences: (Optional)
Visual Style              34.6%
Auditory Style            35.6%
Haptic (Tactile) Style    29.8%

## California Achievement Test (Optional)
CAT/5:Form A - Level 15

| Section | GE* | %ile |
|---------|-----|------|
| Vocabulary | 2.8 | 11 |
| Spelling | 1.2 | 1 |

## Writing Sample: Elementary

| | |
|---|---|
| Ideas | 3 / 4 |
| Organization | 1 / 4 |
| Word Choice | 2 / 4 |
| Mechanics | 1 / 4 |
| Total Score | 7 / 16 |

Note: Refer to Evaluation Rubric for additional
comments on the Writing Sample.

## Grammar Pretest: Elementary

| | |
|---|---|
| Parts of Speech | 3 / 8 |
| Subjects and Verbs | 1 / 8 |
| Fragments | 0 / 1 |
| Run-ons and Comma Splices | 0 / 2 |
| Subject/Verb Agreement | 0 / 6 |
| Pronoun Use | 1 / 7 |
| Modifiers | 1 / 6 |
| Capitalization | 0 / 9 |
| Commas | 1 / 8 |
| Semicolons | 1 / 2 |
| Colons | 0 / 1 |
| Parentheses | 0 / 1 |
| Dashes | 0 / 1 |
| Apostrophes | 0 / 4 |
| Quotation Marks | 1 / 2 |
| Total Score | 9 / 66 |

\* SLC administers standardized tests on an individual basis
for placement within a Sylvan program. Results reported as
grade equivalent are not expected to equal the classroom
grade level.

©1995-2006 Sylvan Learning Systems, Inc. No part of this report may be reproduced without permission.

188



**SYLVAN**
LEARNING CENTER®
*Learning feels good*

# Sylvan Plan for Success
## Sylvan Academic Writing
T████ B████, DOB 04/03/1995
Current Age: 11 Years 5 Months, Current Grade: 5.1
Report Date: Monday, October 02, 2006

## Long-Term Family Needs for T████:

## Long-Term Academic Goals for T████:
### By completion of his program, T████ will:

- learn how to use an organized writing process.
- learn how to apply composition techniques to writing assignments.
- compose composition assignments like those commonly given in school.
- learn from a variety of text-based projects commonly assigned in school.
- be able to compose written work with vocabulary, grammar, and spelling at least at grade level.

## Estimated length of program: 100 or more Hours

**Foundation**
- Assess learner development
- Close skill gaps
- Build self confidence
- Provide a foundation for continued success

**Application**
- Enrich existing skills
- Build a pattern of success
- Heighten self motivation

**Mastery**
- Develop critical thinking skills
- Develop self-study skills
- Apply learning strategies

## T████ will work on the following skills during his first 12 hours of instruction:
- Identifying Parts of Speech: adjectives.
- Identifying Parts of Speech: helping verbs.
- Identifying Parts of Speech: nouns.
- Identifying Parts of Speech: pronouns.



**SYLVAN**
LEARNING CENTER®
*Learning feels good*

## T_____ will work on the following skills during his first 12 hours of instruction:

- Vocabulary Development at level 2
- Mult. Meaning Words at level 2
- Synonyms at level 2
- Homonyms at level 2

## Director's Comments:

_____

_____

_____

## Parent's Comments:

_____

_____

_____

| Director's Signature | Date | Student's Signature | Date | Parent's Signature | Date |



# Summary of Diagnostic Assessment

## Sylvan Academic Reading assessed on 09/29/2006

Te▓▓▓▓ B▓▓▓, DOB 04/03/1995

Current Age: 11 Years 5 Months, Current Grade: 5.1

Report Date: Monday, October 02, 2006

**SYLVAN LEARNING CENTER**

*Learning feels good.*

## Vocabulary

| Vocabulary Acquisition | 2 | 3 | 4 |
|---|---|---|---|
| Vocabulary From Texts | NA | NA | |
| Vocabulary Development | A | | |
| **Vocabulary Building Strategies** | **2** | **3** | **4** |
| Mult. Meaning Words | A | | |
| Synonyms | A | | |
| Antonyms | | | |
| Homonyms | A | | |
| Concrete Context Clues | | | |
| Inferential Context Clues | | | |
| Context: Mixed | | | |
| Analogies: Descriptive | | | |
| Analogies: Comparative | | | |
| Analogies: Categorical | | | |
| Analogies: Serial | | | |
| Analogies: Causal | | | |
| Analogies: Mixed | | | |

## Comprehension

| Base Skills | 2 | 3 | 4 |
|---|---|---|---|
| **Reading for the Main Idea** | | | |
| Main Idea: Categorizing | | | |
| Main Idea: Stated | | | |
| Main Idea: Implied | | | |
| **Reading for Patterns** | | | |
| Signal and Question Words | | | |
| Facts and Details | | | |
| Sequence | NA | | |
| Compare and Contrast | | | |
| Cause and Effect | | | |
| **Reading to Evaluate** | | | |
| Drawing Conclusions | | | |

## Comprehension

| Mastery Skills | 2 | 3 | 4 |
|---|---|---|---|
| **Critical Reading / Reasoning** | | | |
| Reality and Fantasy | | | NA |
| Predicting Outcomes | | | |
| Fact and Opinion | | | |
| Figurative Language | NA | | |
| Persuasion | NA | | |
| Deductive Reasoning | | | |
| **Literary Analysis** | | | |
| Literary Forms | | | |
| Character Analysis | | | |
| Story Structure | | | |
| Author's Purpose | NA | NA | |
| **Integrated Skills** | **2** | **3** | **4** |
| Reading Fiction and Narrative | | | |
| Reading Factual Text | | | |

## Application & Extension

| | | | |
|---|---|---|---|
| Reading Tools | | | |
| Oral Reading | | | |
| Spelling Development | | | |

### Comments:

_____

_____

_____

Parent Signature  _____

Director Signature  _____

| A - Assigned | B - Begun | C - Closed |
|---|---|---|
| NT - Not Tested | NA - Not Applicable | DA - Mastered on Test |
| Shaded - Needs Instruction | | |

Summary of Diagnostic Assessment
©1995-2006 Sylvan Learning Systems, Inc. No part of this report may be reproduced without permission.

Center #12315

191



**Sylvan Plan for Success**
Sylvan Academic Reading
T████ B████, DOB 04/03/1995
Current Age: 11 Years 5 Months, Current Grade: 5.1
Report Date: Monday, October 02, 2006

**SYLVAN**
LEARNING CENTER®
*Learning feels good*

**T████ will work on the following skills during his first 12 hours of instruction:**

- Vocabulary Development at level 2
- Mult. Meaning Words at level 2
- Synonyms at level 2
- Homonyms at level 2

**Director's Comments:**

_____

_____

_____

**Parent's Comments:**

_____

_____

_____

| Director's Signature | Date | Student's Signature | Date | Parent's Signature | Date |

©1995-2006 Sylvan Learning Systems, Inc. No part of this report may be reproduced without permission.

192



# Sylvan Plan for Success
## Sylvan Academic Writing
T█████ B████, DOB 04/03/1995
Current Age: 11 Years 5 Months, Current Grade: 5.1
Report Date: Monday, October 02, 2006

## Director's Comments:

_____

_____

_____


## Parent's Comments:

_____

_____

_____


_____    _____    _____
Director's Signature    Date      Student's Signature    Date      Parent's Signature    Date

Sylvan Plan for Success : Initial
© 1995-2006 Sylvan Learning Systems, Inc. No part of this report may be reproduced without permission.
Center #12315

193

# Exhibit 21

**DRAFT**

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP  Page 1 of 4

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

Student Name: Last B████     First T██████     MI

Student ID 9051948     Soc. Sec. No.     Age: 8     Grade 03

Gender ☒ M ☐ F     Date of Birth 04/03/1995     Ethnic Group B

Address 5412    C Street    SE
House No.    Street Name    Quadrant    Apartment #
Washington    DC    20019
City    State    Zip Code

☐ Non-attending

Attending School Brent Elementary     Home School

☒ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent  Ms. Bland

Address of (if different from student): ☒ Parent ☐ Guardian ☐ Surrogate

House No.    Street Name    Quad    Apt. No.    City    State    Zip Code
Telephone: Home     Work

### II. CURRENT INFORMATION

Date of IEP Meeting: 02/09/2004
Date of Last IEP Meeting:
Date of Most Recent Eligibility Decision: 02/09/2004
Purpose of IEP Conference:
☒ Initial IEP     ☐ Review of IEP
☐ Requested Eval.     ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: III

**ADDENDA TO BE ATTACHED AS NEEDED**
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
| ESY | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | English | | Oral |
| Parent | English | English | English | | Rdg./ Written |
| Home | English | English | English | | Instrument: |
| | | | | | Date: |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd SpEd Total | | | FREQUENCY Hr./ Min    D/W/M. | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos |
|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 0.00 | 10.00 | 10.00 | Hrs | Week | Special Education Teacher | 02/10/2004 | 10 Month |
| | | | 0.00 | | | | | |
| | | | 0.00 | | | | | |
| | | | 0.00 | | | | | |
| | | | 0.00 | | | | | |
| | | | 0.00 | | | | | |
| | | | 0.00 | | | | | |
| | | | 0.00 | | | | | |
| TOTAL | 0.00 | 10.00 | 10.00 | Hours Per Week | | | | |

## V. Disability(ies)  Learning Disabled

Percent of time in Specialized Instruction and Related Services
☐ 0-20% ☒ 21-60% ☐ 61-100%

☐ (Check if setting is general Ed.)     Percent of time NOT in a General Education Setting 367 %

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

| | |
|---|---|
| Terri and Willie Bland — Parent | |
| Ms. Gordon — Special Ed Teacher | Student Deidra Alexander  School Psych  Diedre Alexander |
| Ms. Mingari — General Ed Teacher | Joyce W. Gaillard MS SEP  Joyce W. Gaillard, MS SEP |
| Ms. Pharr — LEA Representative | Denise O. Keeling  Denise O. Keeling, LEA |
| Ms. Connie Cowley — Principal or Designee | Cheron Sutton Brock  |

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature     Date 2/9/04

DRAFT

02/09/2004

| Student Name  T██████  B████ | Managing School  Brent Elementary | DCPS - IEP |
|---|---|---|
| Student ID Number 9051948    DOB 04/03/1995 | Attending School  Brent Elementary | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

**Additional Comments:** ☐

**Academic Areas: (Evaluator)** School Psychologist , D. Alexander

**Score(s) When Available**

Math Cal. *SS = 78*
Math Rea. *SS = 80*

**Math Strengths:**

*█████ is able to identify numbers and add numbers.*

See goal page: 1

**Impact of disability on educational performance in general education curriculum:**

*b T█████ confuses the plus and minus sign.*
*He also has problems subtracting and regrouping.*

Date: ~~02/09/2004~~ 12/15/03

Rdg. Com *SS = 54*
Rdg. Basic *SS = 82*
Written Ex. *SS = 66*

**Reading Strengths:**

*T█████ can id letters and read first grade sight words.*

See goal page: 2

**Impact of disability on educational performance in general education curriculum:**

*T█████ has trouble with decoding and comprehension*

Date: 12/15/03

**Communication (Speech & Language) (Evaluator)**

**Score(s) When Available**
Exp. Lang. _____ _____
Rec- Lang. _____ _____
Artic _____ _____

**Strengths:**

Voice _____ _____
Fluency _____ _____
Exp. Voc. _____ _____

**Impact of disability on educational performance in general education curriculum:**

Rec. Voc. _____ _____
See goal page: _____
Date: _____

**Motor/Health (Evaluator)**

**Score(s) /Results When Available**

**Strengths:**

_____ _____
_____ _____

**Impact of disability on educational performance in general education curriculum:**

_____ _____
See goal page: _____
Date: _____

**Social Emotional Behavioral Areas: (Evaluator)** School Psych., D. Alexander

**Score(s) When Available**

**Strengths:**

VIQ = _____
PIQ = _____
FSIQ = _____

**Impact of disability on educational performance in general education curriculum:**

See goal page: _____
Date: _____

**Cognitive/Adaptive Behavior: (Evaluator)**

**Score(s) When Available**

**Strengths:**

_____ _____
_____ _____

**Impact of disability on educational performance in general education curriculum:**

_____ _____
See goal page: _____
Date: _____

**Prevocational Skills: (Evaluator)**

**Score(s) When Available**

**Strengths:**

_____ _____

**Impact of disability on educational performance in general education curriculum:**

_____ _____
See goal page: _____
Date: _____

| Student Name  T_____ B_____ | Managing School  Brent Elementary | DCPS - IEP |
|---|---|---|
| Student ID Number 9051948     DOB 04/03/1995 | Attending School  Brent Elementary | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**     Additional Comments: ☐     Goal Number: | 1 |

Area addressed by goal: Academic Areas: Reading

**ANNUAL GOAL:** (including mastery criteria.)

The student will improve in the area of Reading Comprehension to the 80% accuracy level on short term objectives.

Provider(s): Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| a  The student will define, identify and use vocabulary on the 2/3 grade level. | | Weekly |
| a  The student will make predictions and inferences of text. | | Weekly |
| The student will read required text and answer corresponding how, who, what, when and where questions | | Weekly |
| The student will identify basic Dolch sight words for the 1st grade level | | Weekly |
| The student will identify and use phonetics (blends, short/long vowels + prefixes and suffixes) | | Weekly |
| The student will use word attack and decoding skills | | Weekly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio   ☐ Log   ☐ Chart   ☒ Test   ☒ Documented Observation   ☐ Report   ☐ Other _____

DRAFT

| Student Name ▓▓▓▓ B▓▓▓▓ | Managing School Brent Elementary | DCPS - IEP Page 3 of 4 |
|---|---|---|
| Student ID Number 9051948    DOB 04/03/1995 | Attending School Brent Elementary | |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: ☐ |
|---|---|---|

Area addressed by goal: Academic Areas: ~~Reading~~ Math

**ANNUAL GOAL: (including mastery criteria.)**

The Student will improve in the area of mathematical computation and reasoning to the 80% accuracy level.

Provider(s): Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| a The student will compute (3 to 4) × (3 to 4) digit addition and subtraction 100% w/ & w/o regrouping | | Weekly |
| a The student will complete elapsed time problems. | | Weekly |
| The student will identify place values from 1 to 100,000. | | Monthly |
| The student will learn 2x to 12x tables | | Weekly |
| The student will evaluate tables, graphs, charts | | Monthly |
| The student will identify the appropriate order of operation need for word problems. | | Weekly |

| **EVALUATION PROCEDURE(S)** |
|---|
| ☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____ |

District of Columbia Public Schools        07-02-2001        Division of Special Education        Appendix - A        IEP Page 3 of 4

(DRAFT)

| Student Name | ████████ B██████ | Managing School | Brent Elementary | DCPS - IEP Page 3 of 4 |
|---|---|---|---|---|
| Student ID Number 9051948 | DOB 04/03/1995 | Attending School | Brent Elementary | |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: 1 |
|---|---|---|

Area addressed by goal: Academic Areas : _Language Arts_

**ANNUAL GOAL: (including mastery criteria.)**

The student will improve in the area of Language Arts to the 80% accuracy level on short term objectives

Provider(s): Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will identify nouns, verbs, adjectives and prepositional phases. | | Weekly |
| The student will write simple sentences based upon the intended topic | | Weekly |
| The student will write a summary of 2/3 sentences based upon a story. | | Monthly |
| The student will identify and use antonyms and synonyms. | | Monthly |
| The student will define and spell words from 2/3 Grade spelling lists | | monthly |
| The student will write using appropriate grammer (capitalization, punctuation) | | Weekly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools      07-02-2001      Division of Special Education      Appendix - A      IEP Page 3 of 4

199

02/09/2004

| Student Name | T_____ D_____ | Managing School | Brent Elementary | DCPS - IEP |
| Student ID Number | 9051948 | DOB 04/03/1995 | Attending School | Brent Elementary | Page 4 of 4 |

**Additional Comments:** ☐

DRAFT

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
## SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in general education? ☐ Yes ☒ No

Explanation for removal out of regular education classroom.

Student requires small structured environment to accommodate disabilities

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | GenEd | SpEd | Total | Hr./Min | D/W/M. | | |
| N/a | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing: ☐ None needed

| | |
| --- | --- |
| Timing/Scheduling: | Extended time, Breaks, varied activities, opportunity to move |
| Setting: | Special seating/proximity to monitor |
| Presentation: | Clarification of directions |
| Response: | repetition of response |
| Equipment: | |

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I  Tested with non-disabled peers under standard conditions without accommodations.

☒ Level III  (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V  Portfolio:

☐ Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV  (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

| | | | | Modifications: |
| --- | --- | --- | --- | --- |
| ☒ Reading | ☐ Physical/Sensory | ☐ Transition | | ☒ Language Arts/English |
| ☒ Mathematics | ☐ Social Emotional | ☐ Vocational | | ☐ Social Sciences |
| ☐ Written Expression | ☐ Physical Development | ☐ Independent Living | | ☐ Biological & Physical Sciences |
| ☐ Other: | | ☐ Speech/Language | | ☐ Fine Arts |
| ☐ None | Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above. | | | |

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
| --- | --- | --- |
| In General Education Classroom Setting | Rejected | Continued school failure |
| Combination General Education and Resource Classroom | Accepted | Impact on self-esteem |
| Out of General Education Classroom | Rejected | Exposure to general education curriculum |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Participation in non-academic subjects with non-disabled peers

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.



**INDIVIDUALIZED EDUCATION PROGRAM**
**(IEP)**
**MEETING NOTES**

STUDENT ██████ ██████     SCHOOL Brent Elementary     DATE: 2|9|04

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Terri Bland | Terri Bland | Parent |
| Demetria Gordon | | Special Ed Teacher |
| JoAnn Mingari | JoAnn Mingari | General Ed Teacher |
| Jacqueline Alexander | Jacqueline Batton-Phar | LEA Representative |
| Annie Coe | Annie Coe | Principal or Designee |
| Deidra Alexander | Deidra Alexander | ~~Student~~ School Psych. |
| Denise O. Keeling | Jennifer Keeling, LCSW | Social Worker |
| Cheron Sutton-Brock | | Advocate |
| Joyce W. Gaillard | Joyce W. Gaillard | Speech Therapist |

---

a  The MDT met to :

o discuss and review observations / evaluations provided by Ms. Keeling, school social worker

██████ is aware of his reading difficulties but is sensitive to being teased by his peers. He has some difficulty with concentration as he is being assessed for ADHD. ██████ is active in Tae Kwon Do + plays 2 weeks and is very good at video games. ██████ has been wearing glasses for nearsightedness since he was 18 months old. He is being watched also for glaucoma in his left eye. ██████ enjoys school and wants to read like his peers.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.



### INDIVIDUALIZED EDUCATION PROGRAM
### (IEP)
### MEETING NOTES

STUDENT █████████ ██████   SCHOOL Brent Elementary   DATE: _____

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Terri Bland | _____ | Parent |
| Demetria Gordon | _____ | Special Ed Teacher |
| _____ | _____ | General Ed Teacher |
| Jacqueline Alexander | _____ | LEA Representative |
| _____ | _____ | Principal or Designee |
| _____ | _____ | Student |

a   The MDT met to:
- o determine the student will recieve 10 hours of specialized instruction per week in a combination general ed resource room
- o provide procedural safeguards to the parent
- o discuss and review assessments/observations made by the MDT.
- o it was determined based upon the evaluations and team recommendations that T███████ has been found eligible for special education as a learning disabled student.
- o the parent signed for eligibility
- o ~~Peteem~~ the team reviewed drafted & the IEP.

# Exhibit 22

**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**WASHINGTON, D.C.**
**INDIVIDUALIZED EDUCATIONAL PROGRAM**

DCPS - IEP  Page 1 of 4
Additional Comments:

## I. IDENTIFICATION INFORMATION

Student Name: Last B̶▨▨▨    First T̶▨▨▨▨    MI

Student ID 9051948    Soc. Sec. No.    Age: 8    Grade 03

Gender [X] M [ ] F   Date of Birth 04/03/1995   Ethnic Group B

Address  5412  C Street    SE
House No.   Street Name    Quadrant   Apartment #
Washington    DC    20019
City    State    Zip Code

[ ] Non-attending

Attending School  Brent Elementary    Home School  C. W. Harris

[X] Elem. [ ] Mid/JHS [ ] SHS [ ] CWS /

Parent  Ms. Bland

Address of (if different from student):    [X] Parent  [ ] Guardian  [ ] Surrogate

House No.   Street Name    Quad   Apt. No.   City   State   Zip Code
Telephone: Home 202-584-0957  Work 202 607-9404 (c)

## II. CURRENT INFORMATION

Date of IEP Meeting: 05/03/04
Date of Last IEP Meeting:
Date of Most Recent Eligibility Decision: 2/9/2004

Purpose of IEP Conference:
[X] Initial IEP    [ ] Review of IEP
[ ] Requested Eval.  [ ] 3yr ReEval.

Indicate Level of Standardized Assessment:
Level III

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
|---|---|
| ESY | TRANSITION |

## III. LANGUAGE

| | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements |
|---|---|---|---|---|
| Student | English | English | English | |
| Parent | English | English | English | |
| Home | English | English | English | |

To be completed by Office of Bilingual Education
English and Math Proficiency Assessment
Oral
Rdg./ Written
Instrument:
Date:

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr./Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # | wks./mos |
|---|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | 0.00 | 12.00 | 12 | Hrs | Week | Special Education Teacher | 05/4/04 | 10 | Month |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| | | | 0.00 | | | | | | |
| TOTAL | 0.00 | 12.00 | 12.00 | Hours Per Week | | | | | |

## V. Disability(ies) Learning Disabled

Percent of time in Specialized Instruction and Related Services
[X] 0-20% [ ] 21-60% [ ] 61-100%

[ ] (Check if setting is general Ed.)

Percent of time NOT in a General Education Setting   15%

## VI. IEP TEAM (Participants in the development of the IEP)

Terri and Willie Bland
Parent
Ms. Gordon
Special Ed Teacher
Ms. Mingari
General Ed Teacher
Ms. Pharr
LEA Representative
Ms. Connie Cowley
Principal or Designee

Print and sign your name below:

Deidra Alexander — Student, School Psych.
JoAnn Mingari
Jacqueline Belton-Pharr
Cheron Sutton-Brock, Advocate

Lucia Alexander
Demetria Gordon
JoAnn Mingari
Jacqueline Belton Pharr

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature    Date

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 1 of 4

02/09/2004

| Student Name | T██████ B██████ | Managing School | Brent Elementary | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number 9051948 | DOB 04/03/1995 | Attending School | Brent Elementary | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

**Additional Comments:**

**Academic Areas:** (Evaluator) School Psychologist , D. Alexander

**Math Strengths:**

█████ is able to identify numbers and add numbers.

**Impact of disability on educational performance in general education curriculum:**

b T███████ confuses the plus and minus sign.
He also has problems subtracting and regrouping.

**Reading Strengths:**

T████ can id letters and read first grade sight words.

**Impact of disability on educational performance in general education curriculum:**

T█████ has trouble with decoding and comprehension.

**Score(s) When Available**

Math Cal. SS = 78
Math Rea. SS = 80
See goal page: 1
Date: ~~02/09/2004~~ 12/15/03

Rdg. Com SS = 54
Rdg. Basic SS = 82
Written Ex. SS = 66
See goal page: 2
Date: 12/15/03

**Communication (Speech & Language)** (Evaluator)

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**

| | |
|---|---|
| Exp.Lang. | |
| Rec- Lang. | |
| Artic | |
| Voice | |
| Fluency | |
| Exp. Voc. | |
| Rec. Voc. | |
| See goal page: | |
| Date: | |

**Motor/Health** (Evaluator)

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Score(s) /Results When Available**

See goal page:
Date:

**Social Emotional Behavioral Areas:** (Evaluator) School Psych., D. Alexander

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**

VIQ =
PIQ =
FSIQ =

See goal page:
Date:

**Cognitive/Adaptive Behavior:** (Evaluator)

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**

See goal page:
Date:

**Prevocational Skills:** (Evaluator)

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**

See goal page:
Date:

District of Columbia Public Schools     07-02-2001     Division of Special Education     Appendix - A     IEP Page 2 of 4

205

| Student Name | T_____ B_____ | Managing School | Brent Elementary | DCPS - IEP |
|---|---|---|---|---|
| Student ID Number | 9051948  DOB 04/03/1995 | Attending School | Brent Elementary | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**   Additional Comments: ☐    Goal Number: ☐ 1

Area addressed by goal: Academic Areas: Reading

**ANNUAL GOAL:** (including mastery criteria.)

The student will improve in the area of Reading Comprehension to the 80% accuracy level on short term objectives.

Provider(s): Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| a  The student will define, identify and use vocabulary on the 2/3 grade level. | | Weekly |
| a  The student will make predictions and inferences of text. | | Weekly |
| The student will read required text and answer corresponding how, who, what, when and where questions | | Weekly |
| The student will identify basic Dolch sight words for the 1st grade level. | | Weekly |
| The student will identify and use phonetics (blends, short/long vowels + prefixes and suffixes) | | Weekly |
| The student will use word attack and decoding skills | | Weekly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools     07-02-2001     Division of Special Education     Appendix - A     IEP Page 3 of 4

(DRAFT)

| Student Name | ...T...... B...... | Managing School | Brent Elementary | DCPS - IEP |
| Student ID Number 9051948 | DOB 04/03/1995 | Attending School | Brent Elementary | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: ☐

Area addressed by goal: Academic Areas _Language Arts_    Goal Number: 1

**ANNUAL GOAL:** (including mastery criteria.)

The student will improve in the area of Language Arts to the 80% accuracy level on short term objectives

Provider(s): Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| The student will identify nouns, verbs, adjectives and prepositional phases. | | Weekly |
| The student will write simple sentences based upon the intended topic | | Weekly |
| The student will write a summary of 2/3 sentences based upon a story. | | Monthly |
| The student will identify and use antonyms and synonyms. | | Monthly |
| The student will define and spell words from 2/3 Grade spelling lists | | monthly |
| The student will write using appropriate grammer (capatilization, punctuation) | | Weekly |

**EVALUATION PROCEDURE(S)**

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

| Student Name ~~TERRANCE~~ B~~ROWN~~ | Managing School Brent Elementary | DCPS - IEP |
|---|---|---|
| Student ID Number 9051948    DOB 04/03/1995 | Attending School Brent Elementary | Page 3 of 4 |

| VIII. SPECIALIZED SERVICES | Additional Comments: ☐ | Goal Number: ☐ 1 |
|---|---|---|

Area addressed by goal: Academic Areas: ~~Reading~~  Math

**ANNUAL GOAL:** (including mastery criteria.)

The Student will improve in the
area of mathematical computation
and reasoning to the 80% accuracy
level.

Provider(s): Special Education Teacher/Resource Room Teacher

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| a  The student will compute (3 to 4) x (3 to 4) digit addition and subtraction w/ - w/o regrouping | | Weekly |
| a  The student will complete elapsed time problems. | | Weekly |
| The student will identify place values from 1 to 100,000. | | Monthly |
| The student will learn 2x to 12x tables | | weekly |
| The student will evaluate tables, graphs, charts | | monthly |
| The student will identify the appropriate order of operation need for word problems. | | Weekly |

## EVALUATION PROCEDURE(S)

☒ Portfolio  ☐ Log  ☐ Chart  ☒ Test  ☒ Documented Observation  ☐ Report  ☐ Other _____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 3 of 4

02/09/2004

| Student Name | T B | Managing School | Brent Elementary | DCPS - IEP |
| Student ID Number 9051948 | | DOB  04/03/1995 | Attending School  Brent Elementary | Page 4 of 4 |

**Additional Comments:** ☐

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
### SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in <u>general education</u>? ☐ Yes ☒ No

Explanation for removal out of regular education classroom.

Student requires small structured environment to accommodate disabilities

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| N/a | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for <u>testing</u>:   ☐ None needed

Timing/Scheduling: Extended time, Breaks, varied activities, opportunity to move
Setting: Special seating/proximity to monitor
Presentation: Clarification of directions
Response: repetition of response
Equipment:

## XI. STATE AND DISTRICT ASSESSMENTS:

☐ Level I   Tested with non-disabled peers under standard conditions without accommodations.

☒ Level III   (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V   Portfolio: _____

☐ Level II   (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV   (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:

☒ Reading         ☐ Physical/Sensory      ☐ Transition
☒ Mathematics     ☐ Social Emotional      ☐ Vocational
☐ Written Expression ☐ Physical Development ☐ Independent Living
☐ Other:          _____ ☐ Speech/Language

**Modifications:**
☒ Language Arts/English
☐ Social Sciences
☐ Biological & Physical Sciences
☐ Fine Arts

☐ None     Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| In General Education Classroom Setting | Rejected | Continued school failure |
| Combination General Education and Resource Classro | Accepted | Impact on self-esteem |
| Out of General Education Classroom | Rejected | Exposure to general education curriculum |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

Participation in non-academic subjects with non-disabled peers

District of Columbia Public Schools      07-02-2001      Division of Special Education      Appendix - A      IEP Page 4 of 4

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**INDIVIDUALIZED EDUCATION PROGRAM**

**MEETING NOTES**

STUDENT _T_____ B_____     SCHOOL Brent Elementary     DATE: ~~03/03/2004~~ 5/3/04

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Terri Bland | Terri Bland | Parent |
| _____ Jno | Demetria Cardor | Special Ed Teacher |
| John Mingan | John Mingan | General Ed Teacher |
| Jacqueline Belton-Pharr | Jacqueline Belton-Pharr | LEA Representative |
| Dudra Alexander | Cydra Alexander | School Psychologist |
| Cheron Sotten-Brock | Che Sotten-Brock | Advocate |

The MDT met to discuss:
o review and revise the hours of service from 10:00 hrs.
o The parent was provided a copy of
the procedural safeguards. The parent 12:00 hrs.
signed the receipt.
o Progress on the IEP
o Special Educator — I have noted progress
in T_____'s ability to review proofread and
correct his errors on classwork.

Parent — The parent requested an observation/
behavior checklist to give to the doctor by
Friday, May 7th 2004. The parent noted that
T_____ does not think he should ask for
assistance if an assignment was missed.

o We will examine the need for comp Ed
+ the number of hours needed to
accommodate for changes loss of service
hours since 5/1/04.

210

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**INDIVIDUALIZED EDUCATION PROGRAM**

**MEETING NOTES**

STUDENT ████████    ████    SCHOOL Brent Elementary    DATE: 9/3/04

| PARTICIPANTS: | PARTICIPANTS: (Sign Name) | DISCIPLINE |
|---|---|---|
| Terri Bland | _Ken Bland_ | Parent |
| Chenn Sutton Brad | _Chris Sutton Brad_ | ~~Special Ed Teacher~~ Advocate |
| John Mingri | _John Mining_ | General Ed Teacher |
| Jacqueline Betton-Pharr | _Jacquel Betta-Phar_ | LEA Representative |

The MDT met to disuss:

o An updated assessment by a neurologist was provided by the parent and faxed to Dr. Taylor Davis for review

DISTRICT OF COLUMBIA PUBLIC SCHOOLS    07-02-2001    DIVISION OF SPECIAL EDUCATION    IEP MEETING NOTES

211

# Exhibit 23



# Memorandum

**To:**    Christina Busso and file

**From:** C. Sutton-Brock

**Date:** 2/10/2004

**Re:**    T█████ B████ MDT meeting notes

---

I attended the eligibility meeting for T█████ on 2/9/04 at Brent ES. All relevant team members attended. The team reviewed the Ψ-ed and speech/ language reports. The social history was also reviewed. The team determined that T█████ was eligible for special education services as a student with a learning disability. He is slated to receive 10hrs/wk of specialized instruction in a combination setting. The parent and Advocate were in agreement.


_**Issues and Concerns**_:

- **The Coordinator attempted to give T█████ only one hour a day of services (already pre-printed on IEP). The Advocate strongly disagreed based on the fact that T█████ is deficient in three academic areas. The teacher and rest of the team agreed.**

- **The team recommended that an OT evaluation be completed.**



# Exhibit 24



## Memorandum

To:   Christina Busso and file
From: C. Sutton-Brock
Date: 5/11/2004
Re:   T██████ B████, Eligibility meeting notes

---

I attended the MDT meeting for T██████ at Brent ES on 5/3/04. T██████ is currently a 3rd grader. The purpose of the meeting was to review the OT eval and a neurological report provided by the parent. All relevant team members were **not** in attendance. The Occupational Therapist should have been present but was not because the report was not complete. After a review of the neurological, the school agreed to increase T██████'s hours from 10hrs/wk of specialized instruction to 12hrs/wk. The parent and Advocate were in partial agreement.

### _Issues and Concerns:_

• **It appears as though T██████ is owed compensatory education for services missed during the month of April. When the team reconvenes to review the OT report, we will determine the number of comp ed hours to award T██████.**

• **The neurological report has been forwarded to Dr. Taylor-Davis for OHI consideration.**

• **The parent and Advocate are unsure if a 2hr/wk increase is enough. This is in light of the fact that it doesn't appear as though the special education and regular education teachers work in concert to provide services to T██████. However, we decided to bring this up at the next meeting. If he receives related services _and_ is found to be OHI, we will expect an increase in his hours.**

1

215

# Exhibit 25

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## DIVISION OF SPECIAL EDUCATION

## Social Work Evaluation Report

Student's Name: ~~Terrance Bland~~  
Parent/Guardian: Willie and Terry Bland  
Address: 5412 C Street, SE, Washington, DC 20019  
Home Phone: 584-0959  
Local School: Brent ES  
Interviewer: Denise O. Keeling, LICSW  
Reason for Referral: Complete Assessment  
Primary language: (Child) English     (Parent): English  

DOB: 4-3-95  
Student ID # 9051943  

Work phone: 584-3093  
Attending school: Brent ES  
Date of Interview: 1-23-04  

Is any one in the immediate family presently receiving psychological Services? No  
If yes, include diagnosis, frequency, duration and any medication prescribed  


Does student currently receive school social work services? No  
If yes include location, frequency and providers name  


Are any other related services presently being received? No  
If so please specify

# DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## DIVISION OF SPECIAL EDUCATION

## SOCIAL WORK EVALUATION SUMMARY

T████ B███ was born at 36 weeks gestation on 4-3-95 at Holy Cross Hospital. He weighed 6 pounds 2 ounces. As he was in distress at the time of his birth, forceps were used to deliver him and his head was shaped as a cone for a period of time. He did not crawl but was walking by the time he was 8 months old.

T████ has been wearing glasses since he was 18 months old as he is nearsighted. He is showing signs of glaucoma in his left eye, which is being closely monitored by his doctor.

T████ has attended Way Of The Cross School from pre-k to kindergarten. He then went to Holy Temple Christian Academy for the 1st and 2nd grades. T████ began attending Brent ES in September 2003.

T████ enjoys school but is aware of his reading difficulties. He does not like to be teased and does not understand what the problem is. He is determined to learn how to reading like his peers.

*[signature]* LICSW
**Social Worker's Signature/License**

1-23-04
**Date**

Do you feel that your child is making progress?   YES   ☐NO

T████ is really trying his best and he wants to learn.  He is very sensitive to criticism regarding his reading difficulties.

Is your family currently involved with any community agencies or programs?  YES

Is there any additional information that you feel will help us to understand your child better?  No

I understand that this information will be used to help determine whether my child continues to have a disability and will be used by DCPS professionals only. This material will be kept in my child's confidential folder.

_Denise A. Keely, LICSW_ (School Social Worker's Signature/License)

_1-22-04_ (Date)

_____ (Parent/Guardian's signature)

_____ (Date)

☐ Enjoys Reading  X Difficulty understanding questions and directions ☐ Frequently talks to self

☐ Difficulty using numbers    X Concentration difficulties    ☐Creative

☐ Frequent changes in mood    ☐ Thumb sucking    ☐ Daydreams    X Nail biting

☐ Fantasies ☐ Under active    Avoids reading   Artistic  X Self-confident

X Avoids Homework  ☐ Frequently late   ☐ Uncooperative  ☐ Sleepwalking

☐ Lacks motivation   Difficulty making and keeping friends    X Difficulty with organization

X Gets along with peers  X Prefers to watch TV/Video games    Athletic

☐ Prefers to play alone    X Demanding    ☐ Likes to be in control

Comment on any of these behaviors or any other behaviors that are of concern to you:

Mrs. Bland stated that there are times when T_____ looses control when he is having difficulty reading. He would rather be read to or take turns than have to read an entire passage by himself. When he was 5 years old, he had few bedwetting incidents because he would not get out of bed to use the bathroom. T_____ is concerned about whom would take care of him if something happened to his parents. He has some problems when he has to transition from one activity to another.

Has your child had any of the following evaluations that the school may be unaware of?

X Educational    ☐ Psychological    ☐ Medical    ☐ Other

**Explain (what, when, by whom):**

In February 2003, T_____ was tested at the Sylvan Learning Center. He was found to be reading on the 1st grade 7-month level.

What are your child's interests?

T_____ has a very active life. He takes Tae Kwon Do 4 days a week. He also enjoy playing basketball, video games, going to the video arcade and attending their church's, Ebenezar Baptist Church, children's bible class.

What does your child do well?

T_____ is able to master a video game without reading the directions.

What do you like best about your child?

Mrs. Bland stated that she likes her son's personality. He is described as a compassionate person who will give you his last so you will be happy.

How do you think the school can help your child?

The school can best help T_____ by finding the "lost step" in T_____'s learning and working with his parents. T_____ needs to be challenged in Reading, Math and phonics.

Does your child enjoy school?  Yes

Age at time: ____1 years old____ _____

Reasons: asthma attack
Is the child under treatment or medication at present?

Describe:

Dosage: _____ _____

How long has the child been taking the medication?

How would you rate your child's general health?

☐ Excellent          X Good              ☐Fair                    ☐ Poor

Date of last physical: _June 03_____    Dr.'s Name_____

Dr.'s Address: _Unity Health Clinic_____    Next appointment(s): __June 04____

Has your child's vision ever been tested? X Yes    ☐ No
Dr.'s Name_____    Dr.'s Address: __Unity Health Clinic_____

Has your child's hearing ever been tested? X Yes   No
Dr.'s Name_____    Dr.'s Address: __Unity Health Clinic_____

Do we have permission to get further information from your child's medical doctor? Yes
Release of information obtained?      ☐ NO

# PART 111
# Social/Behavioral Characteristics

Please check any of the following behaviors that describe your child:

X Flexible          X Lacks self control          X Bedwetting

X Consistently short attention span     ☐ Excessive inconsistency in behavior

☐ Usually aggressive towards others   X Cooperative    ☐ Nightmares

X Difficulty completing jobs/activities    ☐ Temper tantrums

X Difficulty with changes in routine   ☐ Unreasonable fears   Gets ideas quickly

☐ Unusually shy or withdrawn    X  Difficulty telling time  ☐ Frequently tells lies

**Part1**

## FAMILY DATA

| Name/Relationship to child | AGE | Education | Occupation |
|---|---|---|---|
| Willie Bland – Father | 7-4-61 | 12th grad | Maintenance Worker |
| Terry Bland – Mother | 5-1-62 | 2 yrs College | Home Day Care Provider |
| | | | |
| | | | |
| | | | |
| | | | |

Do you have any serious concerns about your child?    Yes
If yes, please explain in detail.

Mrs. Bland is concerned about Terrance's reading and comprehension.  He has demonstrated some phonic awareness difficulties and gets confused when sounding out words.  Terrance also has difficulty with writing and retaining information from one week to the next.

## PART 11
## MEDICAL HISTORY

Please check below any illnesses or problems the child has had in the past:

☐ Physical Defect          ☐ Speech problems          ☐ Frequent Colds

  Allergies               ☐ Frequent Sore Throats    X Asthma

☐ Headaches               ☐ Epilepsy                 ☐ Heart Disease

X Diabetes                ☐ Temperature above 104    ☐ Ear Infections

  Dietary Problems        ☐ Operations               ☐ Serious Accidents or
                                                        injuries

Other Illnesses (specify)

Mrs. Bland stated that she was on bed rest during her pregnancy with Terrance and was prescribed medication to cease contractions. At the time of delivery at 36 weeks, Terrance became stressed and forceps were used to deliver him.  For a short period of time, Terrance had a cone shaped head.

Describe in detail any of the problems checked above:

Mrs. Bland has diabetes and Terrance is showing signs of glaucoma in his left eye. He has been wearing glasses since the age of 18 months.  Terrance had asthma from 8 weeks old to 1 1/2 years of age.

Has the child been any hospitalisations?  Yes
If yes complete the following:

# Exhibit 26



# Parent Weekly Communication Note

Student **T̶̶̶̶ B̶̶̶̶**                    Week of __October 2, 2006__

Teacher __Ms. De Graffinreidte__

Reading          /                    Spelling          /
Writing                                Mathematics
Science         /                      Social Studies    /

☐ Poor tests performance      ☐ Needs to study more     ☐ Needs to take notes

A= Advanced   B=Proficient   C=Basic   D=Needs Improvement   F=Failure/Below Basic

---

Behavior        /          ☐ Inappropriate language    ☑ Cant' follows class rules

☐ Disrespectful       ☒ Fighting/hitting/playing    ☐ Uses Beatitudes

☒ Cannot remain silent *seated* in the cafeteria   ☒ Eating/chewing gum/throwing food *paper*

☐ Not prepared for class          ☒ Cannot follow line rules inside/outside

Homework        w/4

☐ Does none to little homework      ☐ Does some homework

☐ Does most homework                ☐ Does all homework

Class work        |

☒ Peer interaction (talking)   ☒ Misuse of class time (not on task)   ☐ Assists peers

☐ Focused and on task          ☒ Incomplete class work    ☐ Completes class work

---

DCPS Truancy Policy: Your child is truant if s/he is absent from school without a written excuse. Thus, 3 tardies equals 1 unexcused absence; 5 unexcused absences will warrant a parent/teacher conference; 10 unexcused absences during an advisory will warrant immediate referral to Child and Family Services and failure of the advisory; 15 unexcused absences will warrant a court referral, and 40 unexcused absences equals failure of grade.)

Attendance        3         3=Excellent      2=Very good     1=Satisfactory     0=Unsatisfactory

__O__ Tardiness                                          O Absences

Please sign and return the __back page__ on Tuesday, Thank you!

©DDG

224

# Exhibit 27




Week of October 2, 2006-TB

Dear Parents or Guardians:

Your child will be required to bring this form home every week so that you are kept up-to-date on his/her progress. I will send this report home on Monday and it is to be signed by you and returned by the student on Tuesday. Please review the report and if you have any questions or concerns, please indicate that you would like to have a conference. I want this year to be as successful as possible for your child and I appreciate any comments that you think would help me in accomplishing this goal.

Educationally yours,

**Ms. De Graffinreidte**

Teacher Comments The curriculum will be adjusted to reflect T_____ IEP goals since I've seen his IEP this week. Also, I'll be working with Ms. Younger, the special education teacher. Please work with _____ in his (country.)

Comments from Parents/Guardians _____

_____

Perri Sand 10/10/06

©DDG

226

# Exhibit 28

# PROGRESS REPORT

Mary McLeod Bethune Day Academy PCS
1404 Jackson St., N.E.
Washington, DC 20019
(202) 373-3044 • (202) 723-3860

**STUDENT NAME:** _____ B_____

**DATE** 10.3.06

**COUNSELOR** _____

**GRADE** 5

**STUDENT INSTRUCTIONS:** Form is to be completed by each teacher in all subjects.

**NOTICE TO PARENT/GUARDIAN:** This report is used to assess present progress, present grade standing, and provide recommendations to help promote continued progressive development.

---

**SUBJECT** Language Arts    **TEACHER** Ms. DeGraffenreidt

| RECENT PROGRESS: | ☐ Good | ☐ Satisfactory | ☐ Inconsistent | ☒ Poor |
| PRESENT STATUS: | ☐ Passing | ☐ Borderline | ☒ Failing | |
| RECOMMENDATION: | ☐ Continue Good Work | | ☐ Increase Study Preparation | |
| | ☐ Increase Classroom Involvement | | ☒ Tutoring/Extra Help | |

**COMMENTS** _____ is working below grade level.
_____ work will be adjusted to reflect
my IEP goals.

---

**SUBJECT** Mathematics    **TEACHER** Ms. D.

| RECENT PROGRESS: | ☐ Good | ☐ Satisfactory | ☐ Inconsistent | ☒ Poor |
| PRESENT STATUS: | ☐ Passing | ☐ Borderline | ☒ Failing | |
| RECOMMENDATION: | ☐ Continue Good Work | | ☐ Increase Study Preparation | |
| | ☐ Increase Classroom Involvement | | ☒ Tutoring/Extra Help | |

**COMMENTS** same as above

---

**SUBJECT** Social Studies    **TEACHER** Ms. D.

| RECENT PROGRESS: | ☐ Good | ☐ Satisfactory | ☐ Inconsistent | ☒ Poor |
| PRESENT STATUS: | ☐ Passing | ☐ Borderline | ☒ Failing | |
| RECOMMENDATION: | ☐ Continue Good Work | | ☐ Increase Study Preparation | |
| | ☐ Increase Classroom Involvement | | ☒ Tutoring/Extra Help | |

**COMMENTS** same as above

---

**SUBJECT** Science    **TEACHER** Ms. D.

| RECENT PROGRESS: | ☐ Good | ☒ Satisfactory | ☐ Inconsistent | ☐ Poor |
| PRESENT STATUS: | ☒ Passing | ☐ Borderline | ☐ Failing | |
| RECOMMENDATION: | ☐ Continue Good Work | | ☒ Increase Study Preparation | |
| | ☐ Increase Classroom Involvement | | ☐ Tutoring/Extra Help | |

**COMMENTS** Good solar system project

---

**SUBJECT** Physical Education/Health Ed    **TEACHER** Mr. Thomas

| RECENT PROGRESS: | ☒ Good | ☐ Satisfactory | ☐ Inconsistent | ☐ Poor |
| PRESENT STATUS: | ☒ Passing | ☐ Borderline | ☐ Failing | |
| RECOMMENDATION: | ☐ Continue Good Work | | ☐ Increase Study Preparation | |
| | ☐ Increase Classroom Involvement | | ☐ Tutoring/Extra Help | |

**COMMENTS** Student enjoys participating in
Physical Education class

---

**SUBJECT** Spanish    **TEACHER** Sr. Nguema

| RECENT PROGRESS: | ☐ Good | ☒ Satisfactory | ☐ Inconsistent | ☐ Poor |
| PRESENT STATUS: | ☐ Passing | ☒ Borderline | ☐ Failing | |
| RECOMMENDATION: | ☐ Continue Good Work | | ☐ Increase Study Preparation | |
| | ☐ Increase Classroom Involvement | | ☐ Tutoring/Extra Help | |

**COMMENTS** _____ has improved academically
this year however his behavior remains
belligerent.

---

**SUBJECT** Music    **TEACHER** Ms. Harris

| RECENT PROGRESS: | ☐ Good | ☐ Satisfactory | ☐ Inconsistent | ☐ Poor |
| PRESENT STATUS: | ☐ Passing | ☐ Borderline | ☐ Failing | |
| RECOMMENDATION: | ☐ Continue Good Work | | ☐ Increase Study Preparation | |
| | ☐ Increase Classroom Involvement | | ☐ Tutoring/Extra Help | |

**COMMENTS** _____

---

**SUBJECT** _____    **TEACHER** _____

| RECENT PROGRESS: | ☐ Good | ☐ Satisfactory | ☐ Inconsistent | ☐ Poor |
| PRESENT STATUS: | ☐ Passing | ☐ Borderline | ☐ Failing | |
| RECOMMENDATION: | ☐ Continue Good Work | | ☐ Increase Study Preparation | |
| | ☐ Increase Classroom Involvement | | ☐ Tutoring/Extra Help | |

**COMMENTS** _____

228

# Exhibit 29

PAGE   02/02



**Mary McLeod Bethune Day Academy**
**Public Charter School**

253 42ⁿᵈ St. N.E.
Washington, DC 20019
(202) 397-3044 fax (202) 397-3046

5413 16ᵗʰ St., N.W.
Washington, DC 20011
(202) 723-5800 fax (202) 723-5820

11/7/06

Dear Ms. Roberta L. Gambale,

Mary McLeod Bethune Day Academy Public Charter School would like to invite you to attend the Resolution Meeting for T██████ B████, scheduled on November 13, 2006 at 1p.m.  The meeting will be held at the school campus located at 253 42ⁿᵈ Street, N.E. If you have any questions regarding this matter please contact me at (202) 747-8330.

Sincerely,

*Golnar Abedin*
Special Education Coordinator

230

**Mary McLeod Bethune Day Academy**
**Public Charter School**
**5413 16th St., N.W.**
**Washington, DC 20011**
**Tel. 202.723-5800 Fax 202.723-5820**

Fax Transmittal

**To:** Roberta L. Gambale

**Date:** 11-7-06

**Number of pages including cover:** 2

**Business phone:** 202-742-2000

**Fax number:** 202-742-2098

**Sent By:** Golnar Abedin - Special Education Coordinator

**Comments:** _____

_____

_____

# Exhibit 30



## DISTRICT OF COLUMBIA PUBLIC SCHOOLS
## 3RD GRADE REPORT CARD SY 03 - 04
(Page one of three)

Student Name: T_____ B_____

ID#: 9051948

School: Robert Brent Elementary

Teacher: Ms. Mingari

--------------------------------

| INSTRUCTIONAL LEVEL | above level | on level | below level |
|---|---|---|---|
| **Reading** | | | |
| 1st Advisory | — | — | ✓ |
| 2nd Advisory | — | — | — |
| 3rd Advisory | — | — | — |
| 4th Advisory | — | — | — |
| **Mathematics** | | | |
| 1st Advisory | — | — | ✓ |
| 2nd Advisory | — | — | — |
| 3rd Advisory | — | — | — |
| 4th Advisory | — | — | — |

| Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **READING** | 1 | — | — | — |
| Uses word attack skills & vocabulary building strategies | — | — | — | — |
| Reads and comprehends 25 books | ✓ | — | — | — |
| Identifies main idea and supporting details | — | — | — | — |
| Reads aloud with accuracy and fluency | — | — | — | — |
| Determines cause and effect relationships in text | — | — | — | — |
| **WRITING** | 2 | — | — | — |
| Writes a personal letter | ✓ | — | — | — |
| Writes a personal narrative | ✓- | — | — | — |
| Writes a brief report | ✓ | — | — | — |
| Uses technology to create, revise and publish work | NI | — | — | — |
| Uses correct grammar, capitalization & spelling | — | — | — | — |
| Uses writing process | ◄ | — | — | — |
| **LISTENING SKILLS** | 1 | — | — | — |
| Exhibits appropriate audience behavior | — | — | — | — |
| Comprehends oral presentations | — | — | — | — |
| **SPEAKING SKILLS** | 1 | — | — | — |
| ... & understands oral directions | ✓ | — | — | — |
| ...pates in group discussions | — | — | — | — |
| ...es oral presentations | — | — | — | — |

| Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **MATHEMATICS** | 1 | — | — | — |
| Adds & subtracts whole numbers with regrouping | ✓ | — | — | — |
| Applies place value concepts | — | — | — | — |
| Models concepts of multiplication and division | NI | — | — | — |
| Applies estimation and rounding strategies | — | — | — | — |
| Counts money & makes change | — | — | — | — |
| Classifies three-dimensional shapes | NI | — | — | — |
| Identifies geometric figures | NI | — | — | — |
| Interprets data from charts, graphs and tables | NI | — | — | — |
| Models & solves problems | — | — | — | — |

### Reporting Key:
**For overall grade in subject area:**
**4 = Exceeds the standard (Advanced)**
Student takes initiative to exceed the standard; consistently produces excellent work, applying skills/concepts correctly; shows creativity and insight.
**3 = Meets the standard (Proficient)**
Student produces work that meets the standard; frequently produces very good work of high quality; applies skills/concepts correctly.
**2 = Approaches the standard (Basic)**
Student shows a basic working knowledge of skills/concepts; produces satisfactory work; usually applies skills/concepts correctly.
**1 = Does not meet the standard (Below Basic)**
Student does not show basic working knowledge of skills/concepts; seldom produces work of satisfactory quality.

**For skills/expectations within subject area:**

| + = Excellent | -- = Unsatisfactory |
|---|---|
| √ = Satisfactory | NI = Not Introduced |



**DISTRICT OF COLUMBIA PUBLIC SCHOOLS**
**3RD GRADE REPORT CARD** SY 03 - 04
(Page two of three)
Student Name: _To____ B____

| Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|

| SOCIAL STUDIES | 2 | — | — | — |
|---|---|---|---|---|

| | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Identifies historical landmarks & key geographical features of the nation's capital | NI | — | — | — |
| Recognizes significant persons, documents & events shaping Washington, D.C. | NI | — | — | — |
| Describes the contributions of diverse groups to Washington, D.C. society | NI | — | — | — |
| Demonstrates recognition of names of other large cities & capitals | ✓- | — | — | — |
| Demonstrates map & globe skills | ✓- | — | — | — |

| SCIENCE | 2 | — | — | — |
|---|---|---|---|---|
| Uses scientific methods to ask & answer questions about the natural world | — | — | — | — |
| Describes how structures of living things adapt to function | ✓ | — | — | — |
| Describes physical features of local environment | NI | — | — | — |
| Describes how vibrating objects produce sound | NI | — | — | — |
| Describes how matter changes | NI | — | — | — |
| Explains seasonal changes | ✓- | — | — | — |

| MUSIC | — | — | — | — |
|---|---|---|---|---|
| Identifies music of various cultures and styles | — | — | — | — |
| Interprets music through singing, listening, performing, creating, reading & writing | — | — | — | — |

| ART | — | — | — | — |
|---|---|---|---|---|
| Applies different media, techniques & processes in artworks | — | — | — | — |
| Uses symbols & images in communicating | — | — | — | — |

| HEALTH & PHYSICAL EDUCATION | 3 | — | — | — |
|---|---|---|---|---|
| Explains consequences of negative & positive behaviors in conflict | — | — | — | — |
| Scores in acceptable levels for physical fitness; e.g. sit & reach, running | — | — | — | — |
| Displays increased motor skills in individual & team sports | — | — | — | — |

**For the section on WORK HABITS, PERSONAL & SOCIAL SKILLS, the following key is used:**
+ = Excellent
√ = Satisfactory
-- = Unsatisfactory

| Advisory | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| **WORK HABITS** | | | | |
| Follows directions | — | — | — | — |
| Completes classwork on time | ✓- | — | — | — |
| Works well with others/cooperates | — | — | — | — |
| Uses time wisely | — | — | — | — |
| Completes and returns homework | + | — | — | — |
| Participates in class discussions | ✓- | — | — | — |
| Makes an effort | ✓- | — | — | — |
| **PERSONAL & SOCIAL SKILLS** | | | | |
| Follows classroom rules | — | — | — | — |
| Follows playground/school rules | — | — | — | — |
| Respects the rights/property of others | — | — | — | — |
| Listens while others speak | — | — | — | — |
| Practices self-control | — | — | — | — |

| ATTENDANCE | 1st | 2nd | 3rd | 4th |
|---|---|---|---|---|
| Days of Instruction | 46 | — | — | — |
| Days Absent | 0 | — | — | — |
| Days Tardy | 0 | — | — | — |

**SUPPORT SERVICES** Check where applicable.
Additional comments from support staff attached.

| | | | | |
|---|---|---|---|---|
| Resource: Reading | — | — | — | — |
| Resource: Mathematics | — | — | — | — |
| Special Education | — | — | — | — |
| Bilingual/ESL | — | — | — | — |

234

# Exhibit 31



### District of Columbia Public Schools Report Card
SY 03 - 04 (Page three of three)
### TEACHER COMMENTS

Student Name: T████ B█████                Grade: 3

**First Advisory**

T████ would be more academically successful if he paid attention during instruction. He lacks focus and talks frequently during instruction. He needs improvement in his spelling, writing, word recognition, mathematics, and reading comprehension. He is below grade level in both language arts and mathematics.

Ms. Morgan

Teacher Signature                    11.7.03
                                     Date

**Second Advisory**

Teacher Signature                    Date

**Third Advisory**

Teacher Signature                    Date

**Fourth Advisory**

Teacher Signature                    Date

236

# Exhibit 32

**ATTENDANCE RECORD CARD** 20

TEACHER _Migaci_ STUDENT I.D. NO. _9051948_

M ☒ F ☐ DATE ENTERED _____ SECTION OR GRADE _3_

MIDDLE

PHONE NO. _(202) 584-0959_ DATE OF BIRTH _4/3/95_

BUSINESS ADDRESS _____ PHONE NO. _____

BUSINESS ADDRESS _____ PHONE NO. _____

☒ ALL DAY   ☒ TARDY A.M.   ☒ P.M.   ☒ A.M. AND P.M.   ☒

| 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | TOTAL DAYS ABSENT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | | | | | | |
| | | | H | | X | | | | | | | | | | | | | | | | | |
| | H | | | | | | | | | | | | | | | | H | H | | | | |
| | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | | | | | | | | | |

# Exhibit 33

# JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine

**January 9, 2007**

<u>**Via Facsimile Only  (202) 723-8416**</u>
Ms. Abedin, Special Education Coordinator
Mary Mcleod Bethune Day Academy
7600 Georgia Avenue, N.W. # 204
Washington, D.C. 20011

**Re:   Student- T██████ B███, DOB: 4/3/95**
**Attending School: Mary McLeod Bethune**

Dear Ms. Abedin:

I am in receipt of the draft IEP developed 12/11/06. While parent authorizes the Charter School to implement the IEP, she is not in agreement that the IEP is appropriate and/or complete. She maintains the same concerns about the proposed 12/06 IEP that had about the prior IEP. Furthermore, all of the testing has testing has yet to be completed.

Please feel free to call me if you have any questions or concerns. I may be reached at 202-742-2000 (ext. 2021).

Yours truly,

Roberta L. Gambale, Esq.

CC:    Parent

240

```
************************
***   TX REPORT   ***
************************


TRANSMISSION OK

TX/RX NO                1186
RECIPIENT ADDRESS       97238416
DESTINATION ID
ST. TIME                01/09 15:13
TIME USE                00'33
PAGES SENT              1
RESULT                  OK
```

# JAMES E. BROWN & ASSOCIATES, PLLC

### *A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez!+ |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Roxanne D. Neloms |
| Christopher L. West | Telephone: (202) 742-2000 | Omar Karram |
| | Facsimile: (202) 742-2098 | Christie Fontaine |

**January 9, 2007**

**Via Facsimile Only  (202) 723-8416**
Ms. Abedin, Special Education Coordinator
Mary Mcleod Bethune Day Academy
7600 Georgia Avenue, N.W. # 204
Washington, D.C. 20011

Re:    Student- T██████ B███, DOB: 4/3/95
Attending School: Mary McLeod Bethune

Dear Ms. Abedin:

    I am in receipt of the draft IEP developed 12/11/06.  While parent authorizes the Charter School to implement the IEP, she is not in agreement that the IEP is appropriate and/or complete.  She maintains the same concerns about the proposed 12/06 IEP that had about the prior IEP.  Furthermore, all of the testing has testing has yet to be completed.

    Please feel free to call me if you have any questions or concerns.  I may be reached at 202-742-2000 (ext. 2021).

Yours truly,

Roberta L. Gambale, Esq.

CC:    Parent

241

# Exhibit 34

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

**DCPS - IEP Page 1 of 4**

Additional Comments: ☐

## I. IDENTIFICATION INFORMATION

### II. CURRENT INFORMATION

Date of IEP Meeting: 12-11-06
Date of Last IEP Meeting:

Student Name: Last B_____ First X_____ MI

Date of Most Recent Eligibility Decision:

Student ID 905 1948 Soc. Sec. No. _____ Age: 11 Grade 5

Gender ☑M ☐F Date of Birth 4-3-95 Ethnic Group African American

Purpose of IEP Conference:
☐ Initial IEP ☐ Review of IEP
☑ Requested Eval. ☐ 3yr ReEval.

Address 5412 C Street, S.E.
House No. / Street Name / Quadrant / Apartment #
Washington, DC 20019
City / State / Zip Code

☐ Non-attending

Attending School Mary Mcleod Bethune Home School

Indicate Level of Standardized Assessment: III

☑ Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent Ms Terri Bland

Address of (If different from student):
☐ Parent ☐ Guardian ☐ Surrogate

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
|---|---|
| ESY | TRANSITION |

House No. / Street Name / Quad / Apt. No. / City / State / Zip Code

Telephone: Home 202-584-0959 Work

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | | | Oral |
| Parent | " | " | | | Rdg./ Written |
| Home | " | " | | | Instrument: |
| | | | | | Date: |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING | | | FREQUENCY | | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION | |
|---|---|---|---|---|---|---|---|---|---|
| | GenEd | SpEd | Total | Hr./ Min | D/W/M. | | | # | wks./mos |
| Specialized Instruction | ✓ | ✓ | 15 | Hrs. | W | Regular and Special Ed. Teacher (1 hax individualized tutoring In reading) | 12/12/2006 | 10 | wks |
| Occupational Therapy | | ✓ | 1 | hr. | W | Occupational Thrpst | 12/12/2006 | 10 | mos |
| TOTAL | | | 16 | Hours Per Week | 16 hrs. | | | | |

### V. Disability(ies)
Multiple Disabled
LD/OHI (ADHD)

☑ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20% ☑ 21-60% ☐ 61-100%

Percent of time NOT in a Regular Education Setting

### VI. IEP TEAM (Participants in the development of the IEP)

Terri Bland
Golvar Abad__
Corey Hamilton
Thomas P. Fleitas
Kathryn McAnl__

Print and sign your name below.

Parent
Special Ed. Coordinator
Advocate
Clinical Evaluator
School Atty

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.
Parent/Guardian Signature _____ Date _____

District of Columbia Public Schools   07-02-2001   Division of Special Education   Appendix - A   IEP Page 1 of 4

| Student Name  Te____ B___ | Managing School  Mary McLeod Bethune | DCPS - IEP |
|---|---|---|
| Student ID Number 9051948        DOB  4/3/95 | Attending School  Mary McLeod Bethune | Page 2 of 4 |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

**Additional Comments:**

**Academic Areas: (Evaluator)**

**Math Strengths:**

Basic math concepts and basic calculation.

**Impact of disability on educational performance in general education curriculum:**

Difficulty with long multiplication and division which will affect understanding and performance on fractions.

**Reading Strengths:**

Reading is a difficulty area for T____.

**Impact of disability on educational performance in general education curriculum:**

Difficulty in decoding, vocabulary and comprehension affect all areas of learning that require reading skills.

**Score(s) When Available**

| | | |
|---|---|---|
| Math Cal. | 3-4th | GE |
| Math Rea. | 2.5 | GE |
| See goal page: | | |
| Date: | 12/11/06 | |
| | | |
| Rdg. Com | 2.5-3 | GE |
| Rdg. Basic | 2.5-3 | GE |
| Written Ex. | 2.5-3 | GE |
| See goal page: | | |
| Date: | 12/11/06 | |

**Communication (Speech & Language) (Evaluator)**

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**

| | | |
|---|---|---|
| Exp. Lang. | | |
| Rec- Lang. | | |
| Artic | | |
| Voice | | |
| Fluency | | |
| Exp. Voc. | | |
| Rec. Voc. | | |
| See goal page: | | |
| Date: | | |

**Motor/Health (Evaluator)**

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

Visual-motor integration ability is in the low-average range and requires occupational therapy services.

**Score(s) /Results When Available**

| | |
|---|---|
| low- | |
| average | |
| See goal page: | |
| Date: | 11/17/05 |

**Social Emotional Behavioral Areas: (Evaluator)** Dr. Richard P. Fleitas

**Strengths:**

Positive emotional attitude.

**Impact of disability on educational performance in general education curriculum:**

Some concern regarding academic difficulties and teasing by peers in the past.

**Score(s) When Available**

| | |
|---|---|
| average | |
| See goal page: | |
| Date: | 12/1/06 |

**Cognitive/Adaptive Behavior: (Evaluator)** Dr. Richard P. Fleitas

**Strengths:**

Motivated to learn. Participates in the classroom. Does not have behavioral problems.

**Impact of disability on educational performance in general education curriculum:**

ADHD produces inattention especially when presented with multiple-directions and multiple-stimuli (visual and auditory).

**Score(s) When Available**

| | |
|---|---|
| See goal page: | |
| Date: | 12/1/06 |

**Prevocational Skills: (Evaluator)**

**Strengths:**

**Impact of disability on educational performance in general education curriculum:**

**Score(s) When Available**

| | |
|---|---|
| See goal page: | |
| Date: | |

| Student Name | T̶e̶m̶p̶o̶r̶e̶ B̶ | | Managing School | Mary McLeod Bethune | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9051948 | DOB 4/3/95 | Attending School | Mary McLeod Bethune | Page 3 of 4 |

| **VIII. SPECIALIZED SERVICES** | **Additional Comments:** | | **Goal Number:** |
|---|---|---|---|

**Area addressed by goal:** Reading

**ANNUAL GOAL: (including mastery criteria.)**

T̶e̶m̶p̶o̶r̶e̶ will improve reading skills in the areas of decoding, comprehension and vocabulary to meet 50% of 5th grade level standards.

**Provider(s):** Regular and Special Education Teachers

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| T̶e̶m̶p̶o̶r̶e̶ will improve decoding skills by identifying 3 out of 5 words at the 5th grade level. | | Weekly |
| T̶e̶m̶p̶o̶r̶e̶ will improve vocabulary by learning new weekly vocabulary words and understanding the meaning of at least 50% of words used in the regular education classroom at a 5th grade level. | | Weekly |
| T̶e̶m̶p̶o̶r̶e̶ will improve comprehension of material read by summarizing each paragraph he reads either verbally or in written form in order to communicate his understanding at least 50% of the time. | | Weekly |
| T̶e̶m̶p̶o̶r̶e̶ will improve comprehension and vocabulary knowledge by making a list of words he could not understand and asking the teacher at least 50% of the time. | | Weekly |
| | | |
| | | |

| **EVALUATION PROCEDURE(S)** | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☐ Portfolio | ☐ Log | ☐ Chart | ☐ Test | ☐ Documented Observation | ☐ Report | Other | _____ |

District of Columbia Public Schools       07-02-2001       Division of Special Education       Appendix - A       IEP Page 3 of 4

| Student Name | T█████ B█████ | | Managing School | Mary McLeod Bethune | DCPS - IEP |
|---|---|---|---|---|---|
| Student ID Number | 9051948 | DOB 4/3/95 | Attending School | Mary McLeod Bethune | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments: [                    ]    Goal Number: [    ]

Area addressed by goal:  Math

**ANNUAL GOAL: (including mastery criteria.)**

T█████ will improve math skills in the areas of multiplication, division, fractions, and comprehension of word problems in order to meet 70% of 5th grade level standards.

Provider(s): Regular and Special Education Teachers

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| T█████ will learn how to do long multiplication involving multi-digit numbers to reach 70% of 5th grade level expectation. | | Weekly |
| T█████ will learn how to do long division involving multi-digit numbers to reach 70% of 5th grade level expectation | | Weekly |
| T█████ will apply knowledge from multiplication and division in order to understand and perform calculations involving fractions in order to meet at least 70% of grade level expectations. | | Weekly or monthly |
| T█████ will improve comprehension of word problems by breaking down each problem into steps and asking the teacher questions regarding the steps as they come up at least 50% of the time. | | Weekly |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☒ Portfolio    ☐ Log    ☐ Chart    ☒ Test    ☒ Documented Observation    ☐ Report    Other _____

246

| Student Name | ~~T___~~ ~~B___~~ | Managing School | MARY McLEOD BETHUNE | DCPS IEP |
|---|---|---|---|---|
| Student ID Number | | DOB 04/8/95 | Attending School | Page 3 of 4 |

**VIII. SPECIALIZED SERVICES**    Additional Comments:                                                    Goal Number: [blank]

Area addressed by goal: VISUAL – PERCEPTUAL MOTOR SKILLS

**ANNUAL GOAL: (including mastery criteria.)**

1. T_____ WILL INCREASE HIS VISUAL-PERCEPTUAL MOTOR SKILLS TO AN AGE APPROPRIATE LEVEL FOR GREATER SUCCESS IN THE CLASSROOM.

2. T_____ WILL ↑ HIS HANDWRITING SKILLS TO AN AGE APPROPRIATE LEVELS 80%.

Provider(s): OCCUPATIONAL THERAPIST

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1.1 T_____ WILL COMPLETE VISUAL MOTOR ACTIVITIES (I.E. WORKSHEETS, PUZZLES, STRUCTURED THINKING GAMES, ETC) AT AN AGE APPROPRIATE LEVEL 80% OF TRIALS. | | QUARTERLY |
| 1.2 T_____ WILL BE ABLE TO PROCESS AND IDENTIFY VISUAL PATTERNS WITH IMPROVED ACCURACY 80% OF TRIALS | | QUARTERLY |
| 2.1 T_____ WILL BE ABLE TO WRITE SHORT SENTENCES WITH GREATER ACCURACY. 80% OF TRIALS | | QUARTERLY |
| 2.2 T_____ WILL BE ABLE TO WRITE WORDS AND SENTENCES USING PROPER SIZING, SPACING, AND BASELINE ORIENTATION. 80% OF TRIALS | | QUARTERLY |
| 2.3 T_____ WILL FORM CURSIVE LETTERS AND WORDS WITH IMPROVED ACCURACY. 80% OF TRIALS. | | QUARTERLY |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

Portfolio      Log      Chart      Text      (Documented Observation)      Report      Other _____

District of Columbia Public Schools        07-02-2001        Division of Special Education        Appendix - A        IEP Page

Jan 8 2007 4.37PM  Dalton, Dalton,& Houston     NO.9931  P. 9

| Student Name | T████ B███ | | Managing School | Mary McLeod Bethune | DCPS - IEP |
| Student ID Number | 9051948 | DOB 4/3/95 | Attending School | Mary McLeod Bethune | Page 4 of 4 |

**Additional Comments:**

**IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION SERVICE ALTERNATIVES**

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in regular education?   ☒Yes  ☐No

Explanation for removal out of regular education classroom.

**X. Supplementary Aids and Services**

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SpEd | Total | FREQUENCY Hr./Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| Specialized Instruction | x | | 10 | hrs | W | Regular and Special Ed. Teachers | 12/12/06 |
| Individualized Tutoring in Reading | | x | 5 | hrs. | W | Regular or Special Ed. Teachers | 12/12/06 |
| Occupational Therapy | | x | 1 | hr. | W | Occupational Therapist | 12/12/06 |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations for testing:     None needed

Timing/Scheduling: Extended Time
Setting: Small group/Separate location
Presentation: Repeat directions/ Read directions and questions if requested by student
Response:
Equipment:

**XI. STATE AND DISTRICT ASSESSMENTS:**

☐ Level I  Tested with non-disabled peers under standard conditions without accommodations.

☒ Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐ Level V  Portfolio:

☐ Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐ Level IV  (Describe the alternative assessment)

**XII. Areas Requiring Specialized Instruction and Related Services:**          **Modifications:**

Reading                    ☐ Physical/Sensory        ☐ Transition          ☒ Language Arts/English
☒ Mathematics              ☐ Social Emotional         ☐ Vocational          ☐ Social Sciences
☐ Written Expression / ✔   ☐ Physical                 ☐ Independent Living  ☐ Biological & Physical Sciences
Other:  handwriting/O.T.                               ☐ Speech/Language     ☐ Fine Arts
☐ None   Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.

**XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION**

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Regular education with supplemental services | Accept- appropriate LRE | None |
| | | |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

| Locat... ...r Services | Regular education with pull-out services |

248

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES**

| MDT |
|-----|

MDT REFERRAL DATE: _____

STUDENT: T██████ B██    SCHOOL: _____    DATE: 12/11/06

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

(Testing information for this meeting was reported by Dr. Fleitas who had conducted recent evaluations and summarized evaluations from last school year (2005-2006); questions and concerns were brought up by team members.):

For the classroom observation Terrance was not on medication. He was attentive despite noise in the background. Got up from his desk 3 times out of the chair in the 45 min. , an arrangement that the teacher had agreed upon to help with his need to move around. No behavior problems; got along well with teacher and assistant. Raised his hand to answer questions in class. Was comfortable in the testing sessions, however after some time he got fidgity which Terrance reported happens even when he takes medication as it wears off.

On the computer test he would look away often, he did poorly on the visual part since it was both visual and auditory.

In Nov. of 2005 was tested and perceptual reasoning score brought the overall IQ down from low average to borderline.

Last year he was in the 1st-2nd grade range in reading, 4th grade range in expressing himself, 3rd and 4th grade range in math. Reading is the main difficulty.

In terms of behavior, no oppositional symptoms, hyperactivity mild, overall----Based on the teacher's report no severe behavior issues, other than ADHD symptoms. His behavior has improved since last year.

Visual scores on the ADHD test were very low because he couldn't do the visual and auditory at the same time; he has the profile of a child with ADHD.

He has no significant emotional problems, is well adapted. He had some identity concerns on a personality tests. On the projective drawing he was optimistic. Another projective test- he was very creative on it and talked about children overcoming problems.

Diagnostic impression: by history he has a learning disability based on reading difficulty, but he has ADHD so we need to change disability to MD: learning disability and OHI (ADHD).

His classroom has 11 students; he should move away from the divider to reduce distraction.

He is on medication consistently now and mom agreed she will notify the teacher when he is not on medication if that ever comes up for health reasons.

Organizational problems can be addressed if parent help him organize his backpack and have his materials ready a website with informationwas recommended for mom to look at.

Specialized instruction should continue with tutoring in reading (decoding and comprehension as a result); mom should try to find books that he would be interested in. Reading material should be around 2nd-3rd grade level.

Going over the social history: he was teased for reading; we should address reading problem rather than implement psychological counseling because that would address secondary problem.-

Mom raised questions regarding the inclusion model and how that would address his reading problems- mom wants a one on one tutoring help. The team has agreed to include 1 hr. of individualized tutoring in reading in order to compensate for his additional needs. Continue O.T. services.

Modification: directions should be repeated in all subject areas. Extra time for testing, repeat directions, small setting, read directions and questions (implement as a choice).

Needs help with multiplication, division and fractions, needs help with vocabulary and comprehension

Math specilaized instruction for a half hour a day, 1.5 hours of specialized instruction in language arts, and 1 hour individualized reading instruction.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

MULTIDISCIPLINARY TEAM
(MDT)
MEETING NOTES

MDT REFERRAL DATE: _____

STUDENT: ▓▓▓▓▓▓▓▓    SCHOOL: Mary McLeod Bethune    DATE: 12-11-06

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Golnar Abedin | [signature] | Special Education Coordinate |
| Mr. Rawles | (phone conference) | Principal |
| Kathryn McAuliffe | [signature] | School Atty. |
| TERRi BLAND | [signature] | Parent |
| Corey Hamilton | Corey Hamilton | Advocate |
| Richard P. Fleetas, Psy.D. | [signature] Psy.D. | Clinical Evaluator |
| Ms. DeGraffinreidt | (phone conference) | Regular Ed. Teacher |

Law Offices
## DALTON, DALTON & HOUSTON, P.C.

1008 Pendleton Street
Alexandria, Virginia 22314-1837
Telephone: (703)-739-4300
Facsimile: (703)-739-2323
e-mail: p.dalton@daltonlaw.com

Paul S. Dalton 1 • •
Ellen Douglass Dalton 1 • •
William E. Houston ^ • •
Laura E. Duos ¯ •
Jessica M. Smith 1 •
Kathryn T. McAuliffe ¥

Washington DC. Office:
601 Pennsylvania Avenue, NW
South Building, Suite 900
Washington, DC 20004
Telephone: (202)-393-0060
Facsimile: (202)-393-1555

• ADMITTED IN W. VA
• ADMITTED IN D.C.
^ ADMITTED IN PA
¥ ADMITTED IN CT

¯ ADMITTED IN MD
• ADMITTED TO THE U.S. SUPREME COURT
¶ ADMITTED IN VA

January 9, 2007

**VIA FACSIMILE**  202-742-5098

Roberta Gambale, Esq.
1220 L St., NW, Suite 700
Washington, DC 20005

RE:  T▅▅▅ B▅▅
5 Day Disclosure Notice

Dear Ms. Gambale:

A Due Process Hearing has been scheduled for T▅▅▅ B▅▅ on January 17, 2007. The purpose of this letter is to provide you with the following list of witnesses and documents we may rely on in the hearing.

### WITNESSES:

1. Golnar Abedin, Special Education Coordinator, Mary McLeod Bethune
2. Maurice Rawles, Principal, Mary McLeod Bethune
3. Ms. DeGraffinreidte, General Education Teacher, Mary McLeod Bethune
4. Richard P. Fleitas, Psy.D., Clinical Evaluator, Psychological Assessment Solutions, LLC

Some of the above witnesses may testify by telephone or use a designee.

### DOCUMENTS FOR 5 DAY

| | | |
|---|---|---|
| MM - 01 | Psycho-Educational Evaluation | 11/17/05 |
| MM - 02 | Occupational Therapy Evaluation | 12/16/05 |
| MM - 03 | Answer | 11/08/06 |
| MM - 04 | Resolution Meeting Notes | 11/15/06 |

251

| MM - 05 | Social History Report | 12/06/06 |
| MM - 06 | Clinical/ADHD Evaluation/Classroom Observation | 12/07/06 |
| MM - 07 | MDT Meeting Notes | 12/11/06 |
| MM - 08 | IEP | 12/11/06 |
| MM - 09 | Email to Advocate | 12/14/06 |
| MM - 10 | Email to Advocate | 12/19/06 |
| MM - 11 | Email to Advocate | 01/08/07 |
| MM - 12 | Letter to Parent Attorney | 01/09/07 |
| MM - 13 | Email to Parent Attorney | 01/09/07 |

\* We reserve the right to examine any witnesses disclosed by DCPS or the PARENT as if they were witnesses for our client and the right to rely on all other documents previously filed or filed in a 5 Day Disclosure filed by the District of Columbia Public Schools (DCPS) or the PARENT.

Sincerely,

Paul S. Dalton, Esq.

cc: Student Hearing Office

NOV. 8. 2006 11:57AM    GWU LEGAL CLINICS                    NO. 4...



interdynamics, inc.

Evaluations and Therapy

## PSYCHOEDUCATIONAL EVALUATION

Name:        T██████ B█████        DOB: 04/08/95        Age: 10-6
Date of Evaluation: 11/03/05        Date of Report:        11/17/05
Examiner:    Gerald Augustin, Psy.D.        Title:        Licensed Psychologist

### REASON FOR REFERRAL:

T█████was referred for a psychoeducational evaluation to assess his cognitive ability
and academic achievement to assist in the determination of appropriate academic
intervention.

### RELEVANT BACKGROUND INFORMATION:

T█████ is a 10 year old boy who attends the fourth grade at Mary Mcleod Elementary
School. T█████does not present with significant behavior problems in school.
Academically, he reported that he finds reading to be harder for him than mathematics.
His IEP reveals that he is receiving specialized instructions for ten hours weekly.
T█████ related that he lives at home with his mother and father. He related that he gets
along well with them.. He reported that he takes medication in the morning to help "make
me focus," however, he admitted that the medication wears off around lunch time.  There
is no available report to suggest that T█████has had a history of significant mental
health difficulty.

### SOURCES OF DATA:

    Wechsler Individual Achievement Test – Second Edition (WIAT-II)
    Wechsler Intelligence Test for Children:  Fourth Edition (WISC-IV)
    The Beery-Buktenica Developmental Test of Visual Motor Integration (VMI)
    Interview with Terrance
    Review of Records

### TESTING OBSERVATIONS:

T█████ is a 10 year old boy who appeared his stated age. He was appropriately
groomed and dressed for his age. T█████s mood was reported as "good" and his affect
was appropriate. T█████ made spontaneous conversations and responded to questions
appropriately. He did not appear to have any difficulty understanding questions and
directions. He wore glasses and reported that he did not have any difficulty seeing the
test items. T█████did not demonstrate any restlessness, hyperactivity or inattention
during the evaluation. He made adequate eye contact with the examiner. T█████

253

MM–1

10001 Derekwood Lane, Suite #120, Lanham, Maryland 20706  Phone: 301.306.4590  Fax: 301.306.4591  Web: www.interdynamics.com

NOV. 8. 2006 11:57AM    GWU LEGAL CLINICS    NO. 40

T█████ B████ Psychoeducational Evaluation

attempted all tasks presented to him. T███████ denied hallucinations and delusions and there were no indications that he was responding to internal stimuli. The results of this evaluation are considered valid and indicate his current level of functioning.

**TESTS RESULTS:**
### Wechsler Intelligence Test for Children:  Fourth Edition (WISC-IV)

SUBTESTS
(Subtest scores have a mean of 10 and a Standard Deviation of 3.)

**Composite Scores Summary**

| Scale | Composite Score | Percentile Rank | Confidence Interval | Qualitative Description |
|---|---|---|---|---|
| Verbal Comprehension (VCI) | 83 | 13 | 77-91 | Low Average |
| Perceptual Reasoning (PRI) | 77 | 6 | 71-86 | Borderline |
| Working Memory (WMI) | 83 | 13 | 77-92 | Low Average |
| Processing Speed (PSI) | 85 | 16 | 78-96 | Low Average |
| Full Scale (FSIQ) | 77 | 6 | 73-83 | Borderline |

**Verbal Comprehension Subtest Scores Summary**

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Similarities | 14 | 7 | 8:2 | 16 |
| Vocabulary | 23 | 6 | 7:10 | 9 |
| Comprehension | 18 | 8 | 8:6 | 25 |

**Perceptual Reasoning Subtest Scores Summary**

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Block Design | 14 | 5 | 6:6 | 5 |
| Picture Concepts | 14 | 7 | 7:10 | 16 |
| Matrix Reasoning | 17 | 7 | 8:6 | 16 |

**Working Memory Subtest Scores Summary**

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Digit Span | 14 | 9 | 8:10 | 37 |
| Letter-Number Sequencing | 10 | 5 | 6:10 | 5 |

**Processing Speed Subtest Scores Summary**

| Subtests | Raw Score | Scaled Score | Test Age Equiv. | Percentile Rank |
|---|---|---|---|---|
| Coding | 24 | 7 | 8:2 | 16 |
| Symbol Search | 18 | 8 | 8:6 | 25 |

254

## WISC-IV Results

T████'s general cognitive ability as tested by the WISC-IV is within the Borderline range of intellectual functioning. His overall thinking and reasoning abilities exceed those of approximately 6% of children his age (FSIQ = 77; 95% confidence interval = 73-83). T████ may experience difficulty in keeping up with his peers in a wide variety of situations that require age-appropriate thinking and reasoning abilities. He performed slightly better on verbal than on nonverbal reasoning tasks, but there is no significant meaningful difference between T████'s ability to reason with and without the use of words.

T████'s verbal reasoning abilities as measured by the Verbal Comprehension Index are in the Low Average range and above those of only 13% of his peers (VCI = 83; 95% confidence interval = 77-91). The Verbal Comprehension Index is designed to measure verbal reasoning and concept formation. T████ performed comparably on the verbal subtests contributing to the VCI, suggesting that these verbal cognitive abilities are similarly developed. He obtained a low average score in his understanding of social norms and mores; a borderline score in his word knowledge (Vocabulary) and abilitiy to understand the relationship between two related objects or ideas (Similarities)

T████'s nonverbal reasoning abilities as measured by the Perceptual Reasoning Index are in the Borderline range and above those of only 6% of his peers (PRI = 77; 95% confidence interval = 71-86). The Perceptual Reasoning Index is designed to measure fluid reasoning in the perceptual domain with tasks that primarily assess nonverbal fluid reasoning and perceptual organization abilities. T████ performed within the borderline range on tasks that tapped visual-spatial abilities.

T████'s ability to sustain attention, concentrate, and exert mental control is in the Low Average range. He performed better than approximately 13% of his age-mates in this area (Working Memory Index = 83; 95% confidence interval 77-92). T████ performed much better on the Digit Span subtest (Scaled Score = 9) than on the Letter-Number Sequencing subtest (Scaled Score = 5). A direct assessment of T████'s short-term auditory memory, performance on the Letter–Number Sequencing subtest requires attention, concentration, and mental control and can be influenced by the ability to correctly sequence information. Mental control is the ability to attend to and hold information in short-term memory while performing some operation or manipulation with it and then to correctly produce the transformed information. T████ difficulty in recalling long spans of digits backward is evidence of weak mental control likely associated with his difficulty with attention. This weakness may impede the processing of complex information for him and slow new learning.

T████ ability in processing simple or routine visual material without making errors is in the Low Average range when compared to his peers. He performed better than approximately 16% of his peers on the processing speed tasks (Processing Speed Index = 85; 95% confidence interval 78-96). He performed within the borderline to low average range on tasks requiring visual scanning ability and hand-eye coordination and fine-motor control.



T█████ B███ Psychoeducational Evaluation

## ACADEMIC TEST ADMINISTERED

The Wechsler Individual Achievement Test-2nd Edition (WIAT-II) was administered to evaluate Te█████'s academic skills and knowledge. Scores on the WIAT-II are compared with grade-level norms. T██████'s performance fell within the Extremely Low to the Low Average range of academic functioning.

**Summary of WIAT-II Composite and Total Scores**

| COMPOSITES | STD | 95% INTERVAL | PR |
|---|---|---|---|
| Reading | 66 | 63- 69 | 1 |
| Mathematics | 79 | 72- 86 | 8 |
| Written Language | 69 | 61- 77 | 2 |
| Oral Language | 82 | 71- 93 | 12 |
| Total | 71 | 67- 75 | 3 |

**Summary of WIAT-II Subtest Scores**

| SUBTESTS | STD | 95% INTERVAL | PR | AGE EQU | GRADE EQU |
|---|---|---|---|---|---|
| Word Reading | 66 | 62- 70 | 1 | 7:4 | 1:9 |
| Reading Comprehension | 65 | 59- 71 | 1 | 6:8 | 1:5 |
| Pseudoword Decoding | 78 | 74- 82 | 7 | 6:4 | 1:7 |
| Numerical Operations | 87 | 76- 98 | 19 | 9:4 | 3:8 |
| Math Reasoning | 75 | 68- 82 | 5 | 8:0 | 2:6 |
| Spelling | 69 | 62- 76 | 2 | 7:0 | 1:8 |
| Written Expression | 74 | 61- 87 | 4 | 7:8 | 2:6 |
| Listening Comprehension | 76 | 62- 90 | 5 | 7:0 | 1:8 |
| Oral Expression | 96 | 84- 108 | 39 | 9:0 | 4:2 |

**Reading**

T██████ performed much better on tasks that assessed his capability to correctly apply phonetic decoding rules when reading a series of nonsense words (Pseudoword Decoding standard score = 78), than on tasks that required him to correctly read a series of printed words (Word Reading standard score = 66) and read sentences and paragraphs and answer questions about what was read (Reading Comprehension standard score = 65). His Pseudoword Decoding subtest score is higher than only approximately 7% of his peers, placing these skills in the Borderline range. T██████'s performance in Reading Comprehension and Word Reading are within the Extremely Low range and exceed approximately 1% and 1%, respectively, of children his age. T██████ demonstrated difficulty reading words such as "know, wrong and enough." He substituted other words at times, for example, reading "during" as "drinking" and "wrong" as "*Wright*." Due to his difficulty with simple words, he was not able to understand what he read in a series of short passages.

NOV. 8. 2006 11:58AM    GWU LEGAL CLINICS    NO.

T██████ B████ Psychoeducational Evaluation

## Mathematics

In overall mathematics skills T██████ performed in the Borderline range, as indicated by his Mathematics Composite standard score (79). His skills in this area exceed that of only approximately 8% of students his age. T██████ performance on tasks that required him to add and subtract one- to three-digit numbers and multiply and divide two-digit numbers (Numerical Operations standard score = 87) is comparable to his performance on tasks that requires him to understand number, consumer math concepts, geometric measurement, basic graphs, and solve one-step word problems (Math Reasoning standard score = 75). Solving mathematical problems without pencil and paper requires mental control and as previously mentioned, T██████ has difficulty with mental control. During the math reasoning tasks, he attempted to solve all the problems mentally and never used the scratch paper provided to him. As a result, he performed significantly worse on than on the numerical operations section.

## Oral Language

T██████ performed much better on tasks that assessed his capability to generate words within a category, describe scenes, and give directions (Oral Expression standard score = 96) than on tasks that required him to identify the picture that best represents an orally presented descriptor or generate a word that matches the picture (Listening Comprehension standard score = 76). His Listening Comprehension subtest score is higher than only approximately 5% of his peers, placing these skills in the Borderline range. Terrance's skills in Oral Expression are within the Average range, and exceeds that of approximately 39% of children his age.

## Written Language

In overall written language skills, T██████ performed in the Extremely Low range, as indicated by his Written Language Composite standard score (69). His achievement in this area is better than of only approximately 2% of students his age. Terrance's performance on tasks that required him to generate words within a category, generate sentences to describe visual cues, combine sentences, and compose an organized paragraph (Written Expression standard score = 74) is comparable to his performance on tasks that required him to correctly spell verbally presented words (Spelling standard score = 69). He was not able to spell words such as "too" which he spelled "to" and "charge" which he spelled "chareg."

## PERCEPTUAL MOTOR FUNCTIONING:

To assess his visual/motor abilities T██████ was administered the Berry-Buktenica Development Test of Visual-Motor Development (VMI). This instrument is a developmental sequence of geometric forms to be copied with paper-and-pencil. T██████ was required to copy increasingly complex designs, thus evaluating both fine-motor control and motor planning skills. His drawn replications are scored for precision and accuracy. On the VMI, T██████ obtained a standard score of 85 which corresponds to a percentile rank of 16. He committed both errors of distortion and integration. T██████ performance on the VMI is within the Low Average range and above his performance on

NOV. 9. 2006 11:59AM     GWU LEGAL CLINICS                                          NO. 4

T█████B████ Psychoeducational Evaluation

the WISC-IV Perceptual Reasoning (SS = 77). His overall performance is basically commensurate with perceptual-motor ability.

**SUMMARY:**

T█████ is a 10-year-old child who completed the WISC-IV and the WIAT-II. His general cognitive ability, as estimated by the WISC-IV, is in the Borderline range. T█████ general verbal comprehension abilities were in the Low Average range (VCI = 83), and general perceptual reasoning abilities were in the Borderline range (PRI = 77). Perceptual motor skills were noted to be within the Low Average range but generally commensurage with WISC-IV perceptual reasoning index.

T█████ academic proficiency as tested by the WIAT-II, places him in the Extremely Low to the Low Average range. His scores in reading and written expression are within the extremely low range and suggest that he needs significant academic help in those areas. His mathematics abilities are a relative strength, but are within the borderline range. The multidisciplinary team should consider this report in determining the appropriate services to help T█████ succeed.

**RECOMMENDATIONS:**

T█████ would benefit from intensive individualized instruction daily in reading, spelling, writing and math. It is critical that work with reading and spelling be integrated so that he is learning to read and spell the same phonetic concept simultaneously. Each new phonetic concept should be introduced individually while continuing to reinforce the old one. He should also be introduced to syllable patterns. Spelling rules and generalizations should also be introduced individually and with much reinforcement. Flash cards can be used to learn new words. Have T█████ look at the word, say the word, then spell the word aloud while he is looking at it.

Work with written expression should begin with sentence writing and move on to sentence expansion. The application of appropriate mechanics including capitalization and punctuation should be incorporated. T█████ should have a daily log, expressing his thoughts in complete sentences. Have him write step-by-step directions (e.g., steps to make a cake) so he can practice sequencing events. The more he writes, the easier such tasks are likely to become for him.

Directions need to be read aloud and repeated/restated so that T█████ has clarity of directions and instructions that are given for each assignment.

Gerald Augustin, Psy.D
VA, DC, MD Licensed Clinical Psychologist

NOV. 8. 2006 11:59AM    GWU LEGAL CLINICS                                    NO. 1



# interdynamics, inc.

Evaluations and Therapy

### Occupational Therapy Evaluation Report

### Student Identifying Information:

| | |
|---|---|
| **Student Name:** | T████ B███ |
| **D. O. B.:** | 4/3/1995 |
| **C.A.:** | 10 years, 8 months |
| **School Name:** | Mary McLeod Bethune Public Charter School |
| **Therapist Name:** | Marchelle Putney, OTR/L |
| **Date of Evaluation:** | 12/16/2005 |

### Reason For Referral

T████ B███ is a 10-year-old male student in the 4th grade at Mary McLeod Bethune Public Charter School. He was recommended to be evaluated for School-Based Occupational Therapy services to determine if services are indicated.

### Background/History

T██████ current Individualized Educational Plan (IEP) dated 9/27/05 states that he has a disability category of Learning Disabled and he is receiving Specialized Instructions for 10 hours per week. Per record review, T██████ was recommended to receive a Psycho-educational and Occupational Therapy evaluation. There were no further indications of the goals and objectives that are being addressed by special education to improve Terrance's academic performance. Lastly, per record review, T██████ does not have history of receiving any School-Based Occupational Therapy services.

### Behavioral Observations

T██████ approached the testing room accompanied by this OT without hesitation. He cooperatively engaged in conversation during rapport establishment and gave good eye contact. T██████ worked diligently to complete all tasks that were presented to him and did not demonstrate any signs of poor attention or focus to table top tasks for completion during this evaluation. When offered a break, he would politely refuse and request to continue working. Overall, it is felt that this testing and observations are an accurate reflection of T██████ current skill level in the areas tested.

### Assessments Administered

- Beery Developmental Test of Visual Motor Integration- (VMI) with the Visual Perception and Motor Coordination supplemental tests
- Evaluation Tool of Children's Handwriting-Cursive (ETCH-C)
- Motor-Free Visual Perception Test- 3rd Edition (MVPT-3)
- Teacher Consultation
- Clinical Observations

259

MM-2

NOV. 8. 2006 11:59AM    GWU LEGAL CLINICS    NO. 4

**Page 2-** Occupational Therapy Report
T███████ B██

## Assessment Results

**It should be noted that the numerical scores for these tests are based on children without developmental delays. The Age Equivalents, although easily understood, are often not the best measure of a child's growth from year to year. The standardized score, which is not dependent on age, but the number of correct responses given out of all the possible answers, may be more accurately used for comparison purposes.

**Beery Developmental Test of Visual Motor Integration (VMI)-** The VMI is a test that measures a child's motor, perceptual and visual skills by having them copy a series of increasingly complex lines, shapes, and designs. There are 30 items in which there are a "one point" or "no point" score given. On the Visual Perceptual subtest, the child is asked to match different lines and shapes without the motor component. On the Motor Coordination subtest, the child is asked to reproduce various lines and shapes within 1/4th and 1/8th inch borders. T███████ performance scores are recorded at the top of the next page.

|  | VMI | Visual | Motor Coordination |
|---|---|---|---|
| **Raw Scores** | 23 | 24 | 9 |
| **Standard Scores** | 96 | 94 | Too Low to Scale |
| **Age Equivalents** | 9-8 | 9-6 | 3-0 |
| **Verbal Descriptions** | Average | Average | Very Low |

On the VMI, T███████ demonstrated average performance. He demonstrated the ability to reproduce simple pre-handwriting strokes such as horizontal/vertical lines, a circle, cross, an X, and other intersecting and overlapping shapes and lines. He, however, had some difficulty with accurately reproducing age appropriate intersecting and overlapping lines and shapes such as a cross with directional arrows, an eight-dot circle, overlapping circles and other 2- and 3-dimensional shapes. On the Visual Perception supplemental test, T███████ also demonstrated average performance by accurately matching shapes with like characteristics and details when presented with up to 7 similar shapes for answer choices. On the Motor Coordination subtest, T███████ demonstrated a lot of difficulty due to demonstrating very low performance. He omitted a lot of line strokes within the test items as well as demonstrated unsmooth and uncoordinated line strokes within 1/4 and 1/8 borders. Overall, T███████ scattered scores on the this test indicates that while he has average ability to process and perceive letters, numbers and symbols presented to him, he has low ability to produce his pencil to motorically produce them. Even though he demonstrated average scores on the VMI and Visual Perception tests, they are still 1 year to 1 year 2 months below his age range which is 10 years, 8 months. With that said T███████ may still have some difficulty with accurately accessing and producing his work that is presented to him in class.

**Motor-Free Visual Perception Test-3rd Edition (MVPT-3) –** The MVPT-3 is a 65 item (items 1-40 are assessed to children 4 to 11 years of age) multiple choice test that assesses an individual's visual (their ability to see) and perceptual (their interpretation of the material presented) skills without the motor component. The examinee is required to either point or verbally indicate the letter of the four alternatives that he or she feels is the correct response.

The five areas in the test are:

1- **Visual Discrimination** – being able to tell the dominant features in objects: i.e., shapes, colors, letter-like forms.

NOV. 8. 2006 12:00PM    GWU LEGAL CLINICS    NO. 1

**Page 3- Occupational Therapy Report**
T██████ B████

2- **Figure Ground** – being able to distinguish the object from the background, i.e., find the "hidden" object.

3- **Visual Memory** – the ability to recall the dominant features of one object, or remember the sequence of several items.

4- **Visual Closure**- the ability to identify figures when fragments of the figure are presented.

5- **Spatial Relationships** – how objects are perceived in relation to one another or oneself: i.e., which one is "different"?

Scoring for the MVPT-3 is based on the number of correct responses (raw score). T██████'s scores are as listed below.

| | |
|---|---|
| **Raw Score** | 27 |
| **Standard Score** | 69 |
| **Perceptual Age** | 6-2 |
| **Verbal Descrip.** | Very Low |

T██████ demonstrates visual perceptual skills that are equivalent to a child who is 6 years, 2 months old, which is very low for his age. Overall, T██████ demonstrated strength in the area of visual discrimination (identifying the differences between 2 similar items). On the other hand, T██████ has difficulties in all the other assessed perceptual areas of form constancy for shapes that are presented in different ways (i.e., smaller, larger, darker or turned on its side); figure-ground (i.e., identifying hidden items from the background), visual memory; and visual closure of identifying incompletely revealed shapes. While T██████'s performance on this assessment is inconsistent with the VMI- Visual Perception supplemental test he demonstrated performance that is 1 year and 2 months below his age range. Moreover, T██████'s performance the MVPT-3 indicates that he inaccurately perceives processes and interprets what is presented to him in the book and/or on the chalkboard thus impacting his ability to access this educational program.

**Evaluation Tool of Children's Handwriting (ETCH)**- The Evaluation Tool of Children's Handwriting is designed to evaluate manuscript and cursive handwriting skills of children in grades 1 through 6 who are experiencing difficulty with written communication. The primary focus of the ETCH is to assess a child's legibility and speed of handwriting in writing tasks that are similar to those required of students in the classroom.

The seven tasks that assessed T██████'s cursive performance are listed as the following:

**Task I Writing Alphabet from Memory:** This task measures the child's ability to write the letters of the alphabet in sequencing memory involving both the lower-case and upper-case cursive.

**Task II Writing Numerals from Memory:** This task measures the child's ability to produce numerals 1 through 20 written from memory.

**Task III Near-Point Copying:** This task measures the child's ability to copy a short sentence from a nearby cursive model.

**Task IV Far-Point Copying:** This task assess the child's capacity to copy another short sentence from a distant cursive model.

**Task V Manuscript to Cursive Transition:** This task involves having the child write one sentence in cursive from a nearby manuscript model.

NOV. 8. 2006 12:00PM    GWU LEGAL CLINICS    NO. 411

**Page 4-** Occupational Therapy Report
T██████ B█████

**Task VI Dictation:** Three nonsense words and one zip code dictated to the child are evaluated in this task.
**Task VII Sentence Composition:** This task measures the child's ability to generate a written sentence.

Overall, T██████'s total cursive legibility scores were: words 41% accuracy; letters 56%; and numerals 80%. Most children T██████'s age are writing between 75 to 80% accuracy, which indicates that he has a deficit with his ability to accurately produce cursive letters and words. In writing the lowercase cursive alphabet letters from memory, T██████ had a lot of difficulty, scoring 50% accuracy for lower-case cursive letters and 46% for upper-case cursive letters. He demonstrated 50% case substitution while producing the uppercase cursive alphabet and required a lot of time on average 2 and a half minutes to produce each the upper- and the lowercase cursive alphabet. In other tasks, T██████'s word legibility ranged from 0% to 60% with far-point copying and near-point copying. In contrast, his letter legibility ranged from as low as 30% on the Dictation to as high as 69% for far-point copying. His low scores for word legibility are primarily due to inadequate spacing between the letters as well as letter formation and sizing. In addition, T██████ demonstrates writing speed that ranges from as high as 24 letters per minute to as low as 16 letters per minute, this is low when compared to peers his age which is on average 28 letters per minute. T██████ used his right hand for writing and regularly demonstrated a lateral tripod pencil grasp with shifting his thumb from being opposed to over his index finger on the pencil. He also demonstrated an open web space in his hand while writing with his fingers in mid-range while holding the pencil and writing. He consistently stabilized his paper. When observing in-hand manipulation tasks (movements performed within one hand), T██████ demonstrated the ability to perform simple and complex rotation as evidenced by his ability to rotate his pencil in order to erase. In addition, he was able to shift his pencil proficiently (walk his fingers up and down the pencil). Overall, T██████ demonstrated average hand skills with pencil use and low cursive handwriting skills that are usually well-developed in children his age and may be contributing to his inability to write efficiently and successfully in school.

### Teacher Consultation
T██████'s classroom teacher, Ms. Sessoms reported that T██████ is a very good student. He does not demonstrate any behavior or attention problems in class, however she has to give him a lot of one on one and small group time to understand and complete his work. In addition, she uses cursive handwriting within her class program and he demonstrates difficulty with accessing and completing his work in cursive with subsequent additional assistance and extra time given by her. Overall, Ms. Sessoms believes that he will benefit from receiving the necessary support services to optimize his ability to access his daily educational program.

### Clinical Observations
**Upper Extremity Function:** T██████ demonstrated appropriate muscle strength in his arms and legs for his age. His range of motion (degree of movement in his joints) was normal.

**Visual Skills/Sensory Processing:** This skill area focuses on the student's ability to organize and interpret sensory input needed for an appropriate adaptive response and interaction with the environment. T██████ was noted to have some smooth eye movement to locate objects either stationary or moving (tracking). His eyes were noted to come together appropriately (convergence) as needed for near and far point copying (up close and board

NOV. 3. 2006 12:01PM    GWU LEGAL CLINICS                      NO. 4

**Page 5-** Occupational Therapy Report
T▬▬ B▬▬

work tasks). T▬▬ was noted to wear eyeglasses. Additionally, he was noted to adapt to the environment with appropriate sensory processing abilities by not under-/over responding to the textures and colors of the test protocol papers, pencils, table top, walls, floor, and distractions (i.e., a person entering and exiting the testing room and children walking in the hallways and talking).

**Handwriting Skills:** Clinical observations were made of T▬▬'s hand dominance, grasp pattern, writing pressure, alphabet and number reproduction, spacing/alignment, directionality/reversals, and stabilization of written work. T▬▬ is right handed and used a standard size pencil. He demonstrated a lateral tripod pencil grasp on his writing utensils and was noted to apply appropriate pressure during handwriting. As stated earlier in the report, T▬▬ demonstrated illegible production of age-appropriate cursive letters and words per the ETCH-C. He, however, demonstrated good ability to write his name in cursive onto a line stimulus. In addition, T▬▬ demonstrated average performance with number production of 80% per the ETCH-C. Overall, T▬▬ demonstrates low cursive handwriting skills when compared to peers his age which is impacting on his ability to accurately access his daily educational program.

**Self-Care Skills:** T▬▬ demonstrated that he can tie his shoelaces independently. Additionally, he and his teacher reported that he is independent with performing the Activities of Daily Living- ADL/Self-care skills necessary for him to perform in the school environment (e.g., going to the bathroom, putting on/taking off her shoes, coat and book bag, as well as eating/feeding lunch). Overall, T▬▬ demonstrates independence with his self-care performance in the school environment.

## SUMMARY
T▬▬ is a 10-year-old male student in the 4th grade at Mary McLeod Bethune Public Charter School. He was evaluated for School-Based Occupational Therapy services with the Test of Visual Motor Integration (VMI) and the two supplemental tests: Visual Perception and Motor Coordination tests, the Motor-Free Visual Perceptual Test- 3rd Edition (MVPT-3), the Evaluation Tool of Children's Handwriting-Cursive (ETCH-C), as well as, clinical observations. Although he demonstrated average performance on the VMI and Visual Perception supplemental test his performance is still 1 year to 1 year and 2 months below age range. Additionally, his scores on the Motor Coordination supplemental test were very low which is consistent with his low performance of demonstrating illegible cursive handwriting on the ETCH-C. Moreover, T▬▬ demonstrated very low visual perception skills in 4 out of 5 assessed perception skill areas. Furthermore, T▬▬'s teacher reports that his low cursive performance is impacting on his ability to access his work in class. Overall, T▬▬ was a very pleasant and cooperative student during this evaluation session.

## RECOMMENDATIONS
It is my professional opinion that T▬▬ will benefit from Direct School-Based Occupational Therapy services for 1 time a week for 45 minutes in conjunction with his daily educational program to improve his fine motor coordination, perception and cursive handwriting skills. Occupational Therapy should include the following:
1) Consultation with classroom staff as needed.
2) Provide T▬▬ with daily opportunities to practice copying and producing cursive lowercase and uppercase alphabet onto line paper with visual prompts to appropriately size, form and space his letters.

NOV. 9. 2006 12:01PM    GWU LEGAL CLINICS    NO.

**Page 6**– Occupational Therapy Report
T██████ B████

3) Explore using the Handwriting Without Tears (HWT) program that has a simplistic and multisensory approach to cursive handwriting development.

4) Engage T██████ in various functional perceptual activities such as locating and identifying hidden letters, numbers, and items within a picture or text, identifying handwriting errors within a text.

5) Engage T██████ in various motor coordination tasks and games such as Operation, timing him while stringing small beads and copying letters and words to improve his speed and dexterity.

6) Allow T██████ extra time and give him up-close models (whenever possible) when copying board work to promote increased accuracy of letter/word sizing, spacing, and formation.

Engaging T██████ in the above mentioned therapeutic approaches will promote improvement of his motor coordination, perception and cursive writing for integration and carry-over of skills. The teachers and family working with T██████ are more than welcome to contact this OT for further information, as needed. The number is (301) 306-4590. Thank you.

Marchelle Putney, OTR/L
Occupational Therapist

264

STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA STATE
ENFORCEMENT AND INVESTIGATION DIVISION (SEID)
SPECIAL EDUCATION PROGRAMS

Terri Bland                             )
on behalf of                            )
T██████ B██████                         )
                                        )
                                        )          November 3, 2006
v.                                      )
                                        )
Mary McLeod Bethune Academy             )
                                        )

## Answer to Due Process Complaint

General Denial/Answer

Mary McLeod Bethune Day Academy PCS ("MMBDA") hereby submits its

answer to the due process complaint filed by Ms. Bland on behalf of her son.  MMBDA

denies all allegations not subsequently admitted or otherwise answered.  MMBDA

admits no allegations unless clearly so stated below.  MMBDA states the following

pursuant to Individuals with Disabilities Education Improvement Act of 2004, Pub. L.

No. 108-446, Sec. 101 §615(c)(2)(B):

**Allegations:**

The parent alleges a denial of FAPE based on MMBDA's alleged failure to

convene a meeting to revise the student's IEP, alleged failure to fully implement the

student's IEP, alleged failure to provide comprehensive evaluations, alleged failure to

develop an appropriate IEP, and alleged failure to convene an appropriate IEP team.

MMBDA believes that the student has been adequately evaluated and provided

services based on an appropriate IEP.  However, MMBDA is prepared to discuss these

issues in greater detail at the Resolution Meeting.

1

**Relief:**

The parent requests that MMBDA convene a meeting to review and revise the student's IEP, and conduct and/or fund any additional evaluations required by the student. The parent also reserves the right to address compensatory education.

MMBDA denies any allegation that it has failed to comprehensively evaluate this student, nor did it fail to write an appropriate IEP or implement the services on that IEP. Furthermore, the hearing request is the first notice MMBDA received regarding additional evaluations. As stated above, MMBDA looks forward to discussing these allegations at the Resolution Meeting.

Respectfully submitted,

Paul S. Dalton, Esq.
Dalton, Dalton, & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
703-739-4300
703-642-2323 – fax

2

Certificate of Service

I certify that a copy of this document was faxed to Roberta Gambale, Esq. at 202-742-2098.

*Paul Dalton*  (KTM)

Paul S. Dalton, Esq.

3

FAX TRANSMISSION COVER SHEET
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300
FAX (703) 739-2323

**DATE:**    November 8, 2006

**TO:**    Roberta Gambale, Esq.

**AT FAX:**    202-742-2098

**FROM:**    Paul Dalton, Esq.

**RE:**    T. B█████ - Answer

**NUMBER OF PAGES INCLUDING THIS PAGE:**    4

**ADDITIONAL INFORMATION:**

**PLEASE DELIVER ASAP.**

**************************************************************************
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNI-
CATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELE-
PHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE
ABOVE ADDRESS.
**************************************************************************

```
*  *  *  Transmission Result Report (Memory TX)  ( Nov. 8. 2006  4:40)

Date/Time: Nov. 8. 2006  4:40PM

File
No. Mode          Destination              Pg(s)    Result      Not Sent
------------------------------------------------------------------------------
8536 Memory TX    2027422098               P.  4    OK
```

Reason for error
E.1) Hang up or line fail                          E.2) Busy
E.3) No answer                                     E.4) No facsimile connection

**FAX TRANSMISSION COVER SHEET**
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300
FAX (703) 739-2323

DATE:      November 8, 2006

TO:        Roberta Gambale, Esq.

AT FAX:    202-742-2098

FROM:      Paul Dalton, Esq.

RE:        T. Blu~~ Answer

NUMBER OF PAGES INCLUDING THIS PAGE:  4

ADDITIONAL INFORMATION:

PLEASE DELIVER ASAP.

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNI-
CATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELE-
PHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE
ABOVE ADDRESS.

# FAX TRANSMISSION COVER SHEET
**Dalton, Dalton & Houston P.C.**
**Attorneys at Law**
**1008 Pendleton Street**
**Alexandria, Virginia 22314**
**(703) 739-4300**
**FAX (703) 739-2323**

DATE:        November 8, 2006

TO:          Sharon Newsome

AT FAX:      202-442-5556

FROM:        Paul Dalton, Esq.

RE:          T. B█████ Answer

NUMBER OF PAGES INCLUDING THIS PAGE:        4

ADDITIONAL INFORMATION:

**PLEASE DELIVER ASAP.**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
**THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE**
**PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND**
**ATTORNEY WORK PRODUCT DOCTRINE.**

**IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-**
**PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,**
**DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS**
**STRICTLY PROHIBITED.   IF YOU HAVE RECEIVED THIS COMMUNI-**
**CATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELE-**
**PHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE**
**ABOVE ADDRESS.**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

```
*   *   *   Transmission Result Report (Memory TX)    Nov. 8, 2006   4:41PM
                                                        p  Dalton  Dal
```

Date/Time: Nov. 8, 2006  4:41PM

| File No. Mode | Destination | Pg(s) | Result | |
|---------------|-------------|-------|--------|--|
| 8537 Memory TX | SHO 202-442-5556 | P. 4 | OK | |

```
--------------------------------------------------------------------------------
Reason for error
      E.1) Hang up or line fail                    E.2) Busy
      E.3) No answer                               E.4) No facsimile connection
```

**FAX TRANSMISSION COVER SHEET**
Dalton, Dalton & Houston P.C.
Attorneys at Law
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300
FAX (703) 739-2323

DATE:     November 8, 2006

TO:       Sharon Newsome

AT FAX:   202-442-5556

FROM:     Paul Dalton, Esq.

RE:       T. B▒▒▒ Answer

NUMBER OF PAGES INCLUDING THIS PAGE:    4

ADDITIONAL INFORMATION:

---

PLEASE DELIVER ASAP.
*************************************************************
THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE
PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND
ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECI-
PIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION,
DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS
STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNI-
CATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELE-
PHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE
ABOVE ADDRESS.
*************************************************************

11-15-06

Resolution Meeting for T▆▆▆ B▆▆

Ms. Abedin:
    After reviewing the complaint, the school offers to do all the evaluations requested as the first step. Upon the completion we will convene a meeting to discuss T▆▆▆'s current performance and what is needed to put in place.

Mr. Hamilton: Read through the complaint:

    1. School failed to convene an IEP meeting in time.

(Pause-)

Dr. McKay:
    Ms. Bland, isn't it true that you had pulled him out of special education in 2004-05?

Ms. Bland:
    He received it at Brent but in 2004-05 he attended a Christian school where he did not get services. I was told by Ms. Brok at DCPS that T▆▆▆ did not get special education services at Brent or Mary McLeod Bethune. I spoke to Dr. McKay about getting services when he came to MMB.

Dr. McKay:
    Mom asked for evaluations to clarify where he is. We did do evaluations and conduct meeting in a timely manner and provided O.T. services.

Ms. Bland:
    I know he got O.T. I just think that he is still behind and I just want to know where he stands.

The team decided to go ahead and do new evaluations and convene another meeting to discuss what needs to be put in place for T▆▆▆ to meet his educational needs.



Phone: 202.327.5452
Fax: 202.327.5453
http://www.dcpas.com

Psychological
Assessment
Solutions, LLC

1025 Connecticut Ave. NW
Suite 1000
Washington, DC 20036

## SOCIAL HISTORY REPORT

**Date of Interview:**   12/6/06
**Person Interviewed:** Terri Bland
**Relationship to Child:** Biological Mother

**Interviewer:** Dawn Bryant, LICSW

**Child's Name:** T████ B████
**Date of Birth:** 4/13/95
**Age:** 11
**Grade:** 5th
**Address:** 5412 C Street, SE, Washington, DC 20019
**Home Phone Number:** 202-584-0959
**Emergency Contact Person:** Terri Bland

**Father's Name:** Willie E. Bland
**Mother's Name:** Terri Bland

**Family/Household Composition:**

| Name | Age | Relationship | Occupation |
|------|-----|--------------|------------|
| Terri Bland | 44 | Mother | Licensed Child Care Provider |
| Willie E. Bland | 45 | Father | Landscaping |
| Terrance Bland | 11 | Self | Student |

### Reason for Referral
Terri Bland is requesting testing and assessment for her son, T████ B████ to determine appropriate placement and service delivery. She reported that the social history is one of several assessments tools to assist in finding out what is challenging her son academically.

### Background Information
According to Mrs. Bland, Terrance is currently experiencing academic frustrations as he appears to be unable to keep up with his peers. T████ suffers from learning difficulties and was reportedly diagnosed as Learning Disabled by a neurologist at the end of the 2nd grade. Moreover, Mrs. Bland reported that though T████ is currently in the 5th grade, his academic functioning is that of a 2nd grader.

### Family History
T████ is the only child of Willie E. and Terri Bland. He and his parents have lived at their current home since T████ was 8 months old, where Mrs. Bland reported that the neighborhood is pleasant.

Mrs. Bland reportedly worked for Georgetown Hospital as a billing specialist until T████ was 3 years old. At which time, she began her in home day care services. She reported that T████'s grandmother assisted in taking care of him until Mrs. Bland left the hospital position.

MM– 5

Dawn                              301-559-5465

Student Name: T█████ B████                              Report Date: 12/7/06
Page 2 of 5

T█████ has a male cousin who is nine months older than he. Mrs. Bland reported that the two get along very well and communicate frequently. She also, described how T█████ enjoys spending time with his parents but he is at the age where he increasingly desires to spend more time with his age appropriate peers.

## Developmental and Medical History

According to Mrs. Bland, she had a high risk pregnancy and required assistance while delivering T█████. She reported T█████ had an increased heart rate and initially required a vacuum for the first 45 minutes of delivery. However, the vacuum was not helpful so the doctors used forceps to successfully deliver him. T█████ had fluid drained from his head as a result of the complicated delivery. Also, Mrs. Bland reported that T█████ developed asthma from 8 weeks old to 3 years of age.

Most developmental milestones were met within normal limits. T█████ reportedly walked by his first birthday and was potty trained by 18 months. He talked and made age appropriate sentences by 2 years of age. However, Mrs. Bland reported that T█████ was crossed eyed at birth and by 18 months he was given a vision test. T█████ has worn glasses since he was 2 years old.

Mrs. Bland also reported that T█████ was "babified" as a toddler, requesting to be carried around significantly more than typical children his age. She believed that his behavior was a result of having older parents and being around his grandmother who cared for him.

T█████ was enrolled in a head start program when he was 3 years old. However, Mrs. Bland reported that that environment was too fast so she took him out and placed him in a family day care program. He reportedly did well in this environment.

Mrs. Bland reported that T█████ has no current medical problems.

## Trauma History

Mrs. Bland reported that T█████'s maternal grandfather passed away in May 2006. Though T█████ was very close to his grandfather, he chose not to attend the funeral services. Mrs. Bland also reported that T█████'s cousin has been instrumental in assisting him with the grieving process.

## Legal History

The Bland family is currently receiving legal services in order to assist them with obtaining proper placement and services for T█████'s education.

## Psychiatric History

T█████ reportedly received individual and group counseling at Mary McLeod Bethune as a part of a volunteer program the school offered.

No individual or family history of psychiatric evaluations or hospitalization.

## Educational History

As previously stated, T█████ is experiencing academic challenges. Consequently, he is reportedly getting discouraged with the educational process and is experiencing teasing by his peers.

Student Name: T██████ B████    Report Date: 12/7/0o
Page 3 of 5

Mrs. Bland reported that T██████'s educational placements were as follows: The Way of
the Cross (PreK); Holy Temple Christian Academy (K-2 Grade); Robert Brent Elementary
School (3rd Grade); God Christian International Church (4th Grade); and Mary McLeod
Bethune (4th Grade-Present).

The Way of the Cross was reportedly a "learn through play" program. Mrs. Bland stated
that T██████ was slow with recognizing his alphabet, confused with his colors and
wanted to play too frequently. While at Holy Temple Christian Academy, it appeared that
T██████ was getting on track academically. He learned his basic sight words, colors, and
shapes. However, Mrs. Bland began to notice that T██████ had difficulty with his fine
motor skills. She admitted that T██████ appeared to be a natural left handed student but
she made him use his right hand. No physical or occupational therapy assessments were
made at that time.

Also, Mrs. Bland reportedly expressed her concern to T██████'s teacher that he
appeared to have lost most of the information he'd learned in 1st grade over the summer
before beginning 2nd grade. Mrs. Bland stated that the teacher assured her that that was
typical, especially with male students. Despite maintaining an honor roll status, by the
middle of the 2nd grade, Mrs. Bland reported that T██████ did not appear to catch up
academically. The teachers continued to tell her that he would catch up in his own time.

By the end of the 2nd grade, Mrs. Bland reportedly spoke with T██████'s pediatrician
regarding her concerns for his academic challenges and particularly about the type of
curriculum (Abeca and Pace) at the two previous schools and the fact that T██████ could
not retain the information he had previously learned. The pediatrician referred Mrs. Bland
to a neurologist who reportedly assessed and diagnosed T██████ as Learning Disabled.

T██████ was removed from the private schools due to Mrs. Bland's concerns for how the
school handled T██████'s challenges. She and her husband decided to place T██████ in
a public school (Robert Brent E.S.) for the 3rd grade. While at this school, Mrs. Bland
reported that T██████ continued to have difficulty specifically because he wasn't used to
the new style of teaching/learning. Mrs. Bland reportedly informed the school of her
concerns and requested testing. The teachers gathered information and determined that
T██████ would better benefit from special services. It was at this point that Mrs. Bland
contacted her legal team to get help for services she believed should have been identified
several years prior. Her attorneys were reportedly successful in getting T██████ into a
special education program. However, Mrs. Bland reported that this is when T██████
began to get teased by his peers for his reading challenges.

Mrs. Bland took T██████'s IEP to the God Christian International Church and explained to
them his educational history. However, as he matriculated through the school year, Mrs.
Bland failed to see the academic results she desired. Consequently, the schools principal
suggested that T██████ would benefit from a small public charter school.

Lastly, Mrs. Bland identified a public charter school she thought would be a good fit for
T██████ (Mary McLeod Bethune). T██████ attended Mary McLeod Bethune's summer
program but when the school year came around, Mrs. Bland decided to retain T██████ in
the 4th grade as she felt he wasn't ready for promotion and the previous schools
erroneously passed him along.

Student Name: T████ B████        Report Date: 12/██/██
Page 4 of 5

However, Mrs. Bland expressed her concern because, she reports, according to DCPS, Mary McLeod Bethune does not have any documented services provided to T████ on file. Furthermore, Mrs. Bland reported that the teacher who was supposed to provide special education services quit working for the school. At the time of this report, Mrs. Bland reported that T████ has not yet received any special education services at Mary McLeod Bethune.

Mrs. Bland expressed her frustrations with T████'s academic experiences. She and her husband have reportedly had T████ assessed at Sylvan Learning Center and she is reportedly contemplating paying for services to get him back on track.

## Social and Behavioral Characteristics
The following is a list of characteristics Mrs. Bland identified that best describes T████:

__x__Flexible
_____Lacks self-control
_____Bed wetting
__x__Consistent Short attention span
__x__Excessive inconsistency in behavior
_____Usually aggressive towards others
_____Cooperative
_____Nightmares
__x__Difficulty completing jobs and activities
__x__Temper tantrums
_____Difficulty with changes in routine
_____Unreasonable fears
__x__Gets ideas quickly
_____Unusually shy and withdrawn
__x__Difficulty telling time
__x__Frequently tells lies
_____Enjoys reading (being read to)
__x__Difficulty understanding
       questions/directions
_____Frequently talks to self
_____Difficulty using numbers
__x__Concentration difficulties
_____Difficulty making and keeping friends
__x__Difficulty with organization
__x__Gets along with peers
__x__Prefers to watch television/ video games

__x__Creative
__x__Outgoing
_____Frequent changes in mood
_____Thumb sucking
__x__Day dreaming
__x__Nail biting
_____Mechanical
__x__Overactive
__x__Athletic
__x__Musical
_____Rocking
_____Fantasies
_____Under active
__x__Avoids reading
_____Artistic
__x__Self-confident (in sports)
__x__Avoids homework

_____Frequently late
_____Uncooperative
_____Sleep walking
__x__Lacks motivation
_____Prefers to play alone
__x__Demanding
__x__Likes to be in control
__x__Other: Chews on object
(pencils, straws, etc)

## Strengths and Interests
According to Mrs. Bland, T████ is a pleasant and respectful child who exhibits appropriate manners. He loves sports and always puts his best foot forward.

## Personal Functioning
T████ is able to complete age-appropriate personal care activities without monitoring and supervision. He is independent and self-sufficient in getting ready for school and daily activities.

Dawn                                301-559-5465

Student Name: T█████ B████                    Report Date: 12/7/06
Page 5 of 5

## Assessment and Recommendations

T█████ B████ is an 11 year old, African American male, who resides with his mother and father in South East Washington, DC. He is a 5th grade student at Mary McLeod Bethune Public Charter School. He has a long history of academic difficulties that have been diagnosed by a neurologist as a Learning Disability. Mr. and Mrs. Bland are eager to obtain assistance as it relates to T█████'s academic challenges.

It is recommended that:

1. The Bland family continues to pursue an academic placement that has the resources to implement the services necessary to execute T█████'s IEP goals.

2. T█████ receive an Occupational therapy assessment to rule out ongoing fine motor challenges.

3. T█████ resume individual counseling to allow him to process his thoughts and feelings associated with his academic challenges as well as the subsequent teasing that he has endured.

Dawn N Bryant, LICSW
Licensed Independent Clinical Social Worker

12/7/06
Date



Phone: 202.327.5452
Fax: 202.327.5453
http://www.dcpas.com

**Psychological Assessment Solutions, LLC**

1025 Connecticut Ave
Suite
Washington, DC 20

## CONFIDENTIAL

## CLINICAL/ADHD EVALUATION/CLASSROOM OBSERVATION

**Student Name:** T██████ B████
**Student Id #:** 9051948
**Age at Assessment:** 11 years, 7 months
**Date(s) of Evaluation:** 11/30/06, 12/1/06
**School:** Mary McLeod Bethune Day Academy PCS

**DOB:** April 3, 1995
**Gender:** Male
**Examiner:** Richard P. Fleitas, Psy.D.
**Date of Report:** 12/07/06

### REASON FOR REFERRAL

T██████ B████, an 11-year-old boy, was referred for a clinical evaluation, a classroom observation, and the Vineland Adaptive Behavior Scales. Based on a review of previous assessments, interviews with the student's teacher and his mother, and this evaluator's own observation and interaction with T██████, it was decided that the Vineland-II is not an appropriate or necessary measure for the evaluation. There was no indication that T██████ has ever had noteworthy difficulty in either communication or in functions of daily living. Given T██████'s past diagnosis of Attention Deficit Hyperactivity Disorder, additional measures were added to specifically evaluate for the symptoms of ADHD. The purpose of the assessment is to determine whether T██████ meet's the eligibility criteria under IDEA as a student with an emotional disturbance and/or Other Health Impaired in addition to the Learning Disabled classification that he currently holds.

### TESTS ADMINISTERED & COLLATORAL DATA SOURCES

Student Interview with T██████ B████
Children's Depression Inventory (CDI)
Millon Pre-Adolescent Clinical Inventory (M-PACI)
Conners' Teacher Rating Scales Revised (S)
Behavior Assessment System for Children - 2 (BASC-2), Teacher-Report Scales
Behavior Assessment System for Children - 2 (BASC-2), Parent-Report Scales
Integrated Visual and Auditory (IVA) Continuous Performance Test
Incomplete Sentences
Projective Drawings
Roberts Apperception Test for Children: 2 (Roberts-2)
Psychoeducational Evaluation (DCPS, Deidra Alexander), dated 12/19/03
Psychoeducational Evaluation (Interdynamics, Gerald Augustin, Psy.D.), dated 11/17/05
Children's National Medical Center, Neurodevelopmental Pediatric Eval, 5/28/03
Howard University Hospital Neurology Note, 3/5/04
Interview with teacher, Ms. DeGraffinreidte, 12/1/06
Interview with student's mother, Ms. Bland, 12/5/06, 12/6/06
School Records



T█████ B████
Page 2 of 9

12/0‾ ·∙

## CLASSROOM OBSERVATION

T██████ was observed on 11/30/06 for 45 minutes during his first class of the day which was a reading class with his teacher Ms. DeGraffinreidte and her assistant, Mr. Rivera. T██████ was not made unaware that he was being observed. Prior to the start of the class, Ms. DeGraffinreidte reported to this examiner that T██████'s mother had told her that morning that T██████ had run out of his stimulant medication and that he might be more hyperactive than normal. During the class, T██████ was appropriate with his teachers and the other students in the class. T█████ was seated on the side of the class adjacent to the room divider that separates his class from the next one over. Despite the noise coming from the other class, T██████ appeared attentive to his own class and engaged in the assignment of reading a news story from the morning paper. T██████ raised his hand to answer questions and he gave the right answers when called on.

While seated at his desk, T██████ was observed to sit still and remain focused on the task at hand. He was, however, observed to get up from his desk on multiple occasions throughout the class and walk across the room to retrieve items from his cubbyhole where student's personal materials are stored. When an assignment was completed, T██████ was given the responsibility of going around the room with a stamp to mark his classmates finished work. He completed the task without incident. There were eleven students in the classroom including T██████.

## BEHAVIORAL OBSERVATIONS/STUDENT INTERVIEW

T██████ B████ is an 11-year-old boy, currently in the 5th grade at Mary McLeod Bethune Day Academy Public Charter School. It is his second year at the school. T██████ appeared his age and he was casually dressed and appropriately groomed on both mornings of the evaluation. T██████ is right handed and he wears eyeglasses. He walked with a normal gait and no unusual mannerisms were observed. T██████ maintained appropriate eye-contact throughout the interview and the assessment. He appeared to be relaxed during the testing and rapport was easily established. As the assessment went on the first day of testing, T██████ became more and more fidgety. He remained attentive to the task at hand, but he kicked his legs around frequently and moved about in his chair. He also became noticeably more silly, often answering questions in a sing-song voice. His drawings were rather rushed and sloppy and picture features were immature for his age.

T██████ was fully oriented and his thought content was observed to be normal. In general, T██████ appeared very open and comfortable talking about things that bother him. His mood during the testing and interview appeared euthymic and his affect was appropriate to content. He denied any suicidal or homicidal ideation. T██████ also denied ever having experienced physical or sexual abuse and he reported that he has never used alcohol, cigarettes, or drugs.

During the second morning of the assessment, while taking the continuous performance test on the computer, it was observed that T██████ often became distracted, e.g., taking his eyes off the screen for moments at a time. This was despite having affirmed that he understood the directions and the need to remain focused on both the auditory and visual components of the measure.

This examiner informed T███████ of the limits of confidentiality and he affirmed that he understood. He was fully cooperative throughout the testing and the results of this evaluation are considered to be a valid assessment of his current emotional functioning.

## HISTORY/BACKGROUND INFORMATION

*The following background information was obtained from review of earlier assessments, school records, IEP meeting notes, and through parent, student, and teacher interviews. Additional background information can be found on the social history report.*

T█████ was born weighing 6 pounds, 2 ounces at 37 weeks gestation. Records indicate that Ms. Bland had a complicated pregnancy, with fibroids and a prolapsing uterus. T██████ had asthma from eight weeks of age until he was 5-years old. His mother reported that he not had any subsequent medical conditions. She reported that he met all developmental milestones in an appropriate timeframe.

T███████ lives at home with his mother and his father. He is an only child. The Bland's have a tight-knit extended family, many of whom live in their same neighborhood, including a grandmother, aunts, and cousins. T███████ frequently spends time with family members and his mother reported that he has many friends who spend a good deal of time at their house. When asked about his social relationships outside of school, Ms. Bland reported that her son is "well loved" by his peers.

At home, Ms. Bland reported that her son can be lazy at times but that she is strict with him and he follows her rules in the home. He is responsible for a number of chores at home, including: cleaning the bathroom, cleaning his room, making his bed, taking out the trash, and he also helps his father mow the lawn. T████████'s father works in construction and landscaping and his mother runs a daycare out of the home. T███████ said that he enjoys his homelife and especially likes playing with his dog and following the Redskins on TV with his parents. Terrance reported that he goes to his father when he needs help and that he also feels closest with his mother. Ms. Bland reported that, emotionally, her son appears to be normal with typical issues for a boy his age.

Ms. Bland reported that T███████ was doing well in school up until the 2nd grade, when she observed that he was falling behind, especially in reading. She said that that he could read individual words by sight, but was unable to read complete sentences. The school at the time was utilizing a *PACE* system where the students were taught to be self-motivated through independent learning. Despite being on the honor roll at the time, Ms. Bland advocated for her son by illustrating to the school staff that her could not read at grade level and that he was compensating by reading questions first and then searching throughout a paragraph for an answer without real comprehension of the material. T███████ was brought for evaluation to both Children's National Medical Center and Howard University Hospital for evaluation. T████████ was diagnosed with ADHD and he was placed on Concerta, a stimulant medication. Through subsequent school based evaluation, he was also diagnosed a learning disability. A neurology note from Howard also commented that T███████ was observed to have "motor clumsiness and a mild congenital right hemiparesis which interferes with his handwriting skills but does not need

T████ B████                                                      12/0█ 0█
Page 4 of 9

therapeutic intervention." Later occupational therapy testing indicated that he did, in fact, need help and T█████ currently receives occupational therapy services weekly.

Ms. DeGraffinreidte, T█████'s classroom teacher, explained that his teacher last year had reported that he had a number of disruptive problems in the classroom and would often distract other students. This year, however, she indicated that T█████ is very appropriate in the class with the exception of sometimes answers questions in a silly voice. She noted that he has trouble sitting still and explained how he needs to get up from his desk and frequently move around. It was for this reason that she decided to give T█████ responsibilities in the classroom like stamping students completed work, so as to give him the opportunity to move around in a socially acceptable and productive manner. Ms. DeGraffinreidte explained that, although a special education teacher had been unavailable this year, she adjusts the books that T█████ reads and gives him lower level reading in accordance with his abilities. She said that he completes all his homework and appears to try hard in the classroom. She indicated that math is T█████'s stronger area and reading his weakest.

T█████ is involved in athletic extracurricular activities, both at school and at the Boys and Girls Club. T█████ explained that he especially likes football and that he most named Most Valuable Player (MVP) on the team this year.

Previous Testing

*12/19/03 Psychoeducational Evaluation (DCPS, Deidra Alexander)*

While in the 3rd grade at Brent Elementary School, T█████ was given a psychoeducational assessment. At this time he was given the WISC-III, WIAT-II, and a VMI. He received a Full Scale IQ of 71, in the Borderline range, with no significant differences between his Verbal IQ (SS=76) and his Performance IQ (SS=71).

On the WIAT-II Test of Achievement, T█████ scored in the Low Average range in Word Reading (SS=82), and in the Deficient range in both Reading Comprehension (SS=54) and in Written Expression (SS=66). His Math Calculation (78) was in the Borderline range and Math Reasoning (SS=80) was in the lower bounds of the Low Average range. His VMI score (SS=81) found his visual-motor integration abilities in the Low Average range.

*11/17/05 Psychoeducational Evaluation (Interdynamics, Gerald Augustin, Psy.D.)*

During his first year at Mary McLeod Bethune, T█████ had another psychoeducational assessment. He was given the WISC-IV, WIAT-II, and a VMI. He received a Full Scale IQ of 77, in the Borderline range. His Verbal Comprehension Composite (SS=83), Working Memory (SS=83), and his Processing Speed (SS=85) were all in the Low Average Range. His Perceptual Reasoning Composite score (SS=77) was in the Borderline range.

On the WIAT-II Test of Achievement, T█████ scored in the Extremely Low range in Reading (SS=66) and Written Language Composite scores (SS=82), the upper bounds of the Borderline

T████ B████
Page 8 of 9

12.07

As far as his strengths, T██████ has a good sense of humor and a pleasant demeanor. He reportedly maintains a substantial number of friendships with peers and he gets along well with his family members. He is involved in extracurricular activities and earned the honor of MVP for his football team this year.

## Diagnostic Impression:

Axis I:    315.9    Learning Disorder, Not Otherwise Specified (By History)
           314.01   Attention-Deficit/ Hyperactivity Disorder, Combined Type
Axis II:   V71.09  No diagnosis
Axis III:  None reported
Axis IV:  Academic Problems
Axis V:   Current GAF: 60

It is the determination of this evaluation is that T██████ does not meet the eligibility criteria under IDEA as a student with an emotional disturbance. His diagnosis of ADHD does qualify for him to receive classification as Multiply Disabled with a Learning Disability and Other Health Impaired (OHI). The final determination as to his eligibility for Special Education services is, however, a decision to be made by the multidisciplinary team, after considering data from all sources.

## RECOMMENDATIONS
Based on the results of this evaluation, the following recommendations are suggested:

1. A multi-disciplinary conference will be held to evaluate T██████'s current level of functioning and to plan appropriate educational placement.

2. T██████ appears to attend well in a classroom with a small class size. Given his symptoms of ADHD, it is advised that more effective seating arrangement for him would one that is away from the classroom divider so that he would be less likely to be distracted by the adjacent class.

3. T██████ appears to be accustomed to his medication, but as with any psychopharmacologic treatment, he should be carefully monitored and, were things to change, he should be referred to a psychiatrist for a reevaluation.

4. During the classroom observation it was clear that T██████ has some degree of difficulty with organization, as seen by his frequent to his cubbyhole. This is a common symptom of children with ADHD. It will be important for both his mother and his teachers to monitor him and assist him in making sure he has the required materials that he needs for his school work easily accessible so that he will have less distraction.

5. T██████'s parents might benefit by exploring the wealth of information available online for families of children with ADHD, i.e., www.CHADD.org (Children and Adults with Attention Deficit/Hyperactivity Disorder)

6. Specialized instruction and tutoring in reading should remain in T██████'s IEP so that he can be assisted in his work towards age and grade equivalent academic abilities.

range in Mathematics (SS=79), and in the Low Average range in Oral Language. His VMI score (SS=85) found his visual-motor integration abilities in the Low Average range.

## TEST RESULTS AND INTERPRETATION

### Behavior Rating Scales & ADHD Measures

The Behavior Assessment System for Children - 2 (BASC-2) is a set of rating scales for describing the behaviors and emotions of children and adolescents that was filled out Ms. Bland and by T████'s teacher, Ms. DeGraffinreidte. Ms. Bland, T█████'s mother, rated him as having clinically significant problems on only one scale - Hyperactivity (T=72). In the "At Risk" range were the scales of Aggression (T=64), Conduct Problems (T=65), and Attention Problems (T=69). Ms.    . Bland's responses indicated that T██████ sometimes has problems with acting out and aggression but that these symptoms are not pervasive. Ms. DeGraffinreidte's ratings on the BASC-2 revealed no symptoms in the clinical range and in the "At Risk" range were: Hyperactivity (T=63), Attention Problems (T=61), and School Problems (T=60).

Ms. DeGraffinreidte also filled out the Conners' Teacher Rating Scales Revised (S), a checklist used to identify symptoms of oppositionality, hyperactivity, and inattention. On the Oppositionality scale (T=45), no symptoms were endorsed. Cognitive Problems/Inattention (T=63), Hyperactivity (T=64), and The Conners' ADHD Index (T=66), were all in "Mildly Atypical" range. It is important to note that the majority of Ms. DeGraffinreidte's experience with T██████ has been while he has been taking a prescription of stimulant medication.

The Integrated Visual and Auditory (IVA) Continuous Performance Test (CPT) was administered to further assess T██████'s symptoms of Attention-Deficit/Hyperactivity Disorder (ADHD). The IVA/CPT is a computerized, standardized test developed for the assessment of response inhibition and attention problems. This test is unique in that it tests for auditory as well as visual distractibility. It is important to note that T██████ had not had his stimulant medication on the morning of this measure nor the day before.

T█████'s Full Scale Response Control Quotient and his Full Scale Attention Quotient could not be computed. T██████'s responses to the visual stimuli were such that a valid score could not be made for this domain. As noted in the behavioral observations, T██████ was frequently seen looking away from the computer screen, at the wall or towards his lap, unable to determine when the visual stimulus was being presented. He appeared more focused on just the auditory component of the test. As this measure integrates Auditory and Visual, his approach to the test resulted in incomplete scores.

There was a significant discrepancy between T██████'s auditory scores in that his Response Control Auditory Quotient score (SS=91) was in the Average range and his Auditory Attention Quotient (SS=49) was in the Extremely Low range. This indicates that although T██████ was able to inhibit responding to inappropriate stimulus (i.e., he would inhibit appropriately when he was supposed to), he often missed stimulus cues (failed to respond when he should have). T██████'s highest score among the scales was on the Auditory Stamina Scale (SS=102) in the Average range, indicating that T██████, on the auditory portion of the measure, was able to sustain a consistent effort over time.


His lowest score among the scales was on the Auditory Vigilance Scale (SS=17), indic███ ██ ███ high number of omissions under low-demand conditions which is indicative of inattent██ ████ on the auditory instead of the visual can possibly be attributed to his attempt to be selec██ ███ attentive to only one sensory input in an effort to perform better on that component of th█ ███. However, even his auditory response scores were in the clinical range for inattention. T█████ commented that he tends to be more hyperactive in the afternoon, "when my medicine wears off."

## Emotional Functioning

Throughout T██████'s past evaluations and during the current assessment, he did not display a significant number of behavior or emotional difficulties. Throughout the testing and clinical interview, T██████ seemed upbeat and positive. When he was asked about his mood he reported that he is "happy most of the time." He responded that he sometimes gets angry when he does not get his way and he is sad when he loses his privileges. T██████ had an unusual way of responding to various aspects of the clinical evaluation. He would endorse significant symptoms that would require further inquiry and then, on follow-up questioning, he would reveal that he had misinterpreted the question. For example: when asked if he had ever had thoughts of self-harm or had ever tried to hurt himself he responded affirmatively. He later went on to explain that he was angry about making a mistake during a football play and hit himself once with his fist on the head. During the M-PACI, T██████ endorsed that he hears voices. Later follow-up explained that he meant that he hears a voice inside his head, "my thoughts - when I am choosing to do something good or bad," i.e., his conscience.

T██████ reported that he has difficulty controlling his anger and that he frequently has temper tantrums. This was not supported by reports from his teacher who said that when T██████ does get upset, he "just as quickly calms himself down." Ms. Bland also reported that T██████ does not have frequent behavior problems and that he tends to abide by her strict house rules. When T██████ was asked what he does when he gets frustrated with other students, he reported that he uses humor, tells jokes or pokes fun, i.e. "joning." He said that people think he is funny and then he stops being angry. T██████ said that most of the trouble he had behaviorally occurred last year when he would get into trouble for cursing or fighting.

T██████'s score on the CDI, a depression index, was in the average range (Total T=50) and only one scale, Anhedonia, was mildly elevated yet still not to a clinical range (T=60). His responses to the incomplete sentence measure were unremarkable and typical for a boy his age. He did remark that the "The worst thing about me is...*my attitude*." He later explained that he gets easily frustrated when things do not go his way. When T██████ was asked to draw pictures of a house, a tree, and some people (projective drawings that often represent an individual's view of themselves and their relationship with parental figures), he seemed to rush through his work. His drawings were immature for his age and the faces he drew seemed distorted. During the inquiry portion of the test he described his drawings in optimistic and upbeat ways. His characters were described as "happy" and his drawing of his family depicted him and his parents enjoying watching a football game together.

On the Roberts Apperception Test for Children, T██████ was asked to tell stories based on pictures that are ambiguous to some extent and portray emotion and thought without specifying

details. His approach to the stories was rather unique and he spoke for the characters ██ ██ ██ ███ acting out their parts. His stories tended to discuss people having difficulties, yet usual!█ overcoming then. His last story was connected to his first one creatively and was resolved with a happy ending.

On the M-PACI, it seemed as though T██████ responded to the measure in a consistent pattern depicting a child experiencing significant identity concerns. He responded to many of the questions with a bravado and toughness that does not appear, by anyone's report, to actually be the way he presents to adults and peers. The profile was one of an unpredictable, volatile, and impulsive child with pre-delinquent traits. The fact that this appears to be far from his reality seems to speak to a degree of conflict or ambiguity he feels with his situation. He seemed to be especially hard on himself for past mistakes and behavior problems that he had last year. It appears that the context in which he answered many questions was one that represents his worst case scenario, i.e., those times when he has behaved the worst.

## SUMMARY

T██████ B████ is an 11-year-old boy in the 5th grade at Mary McLeod Bethune Day Academy Public Charter School. This is his second year at the school. He is an only child who lives with both parents. He also has frequent interaction with his extended family who live in his same neighborhood. He is currently classified as Learning Disabled and his current IEP states that he should receive 15 hours of specialized instruction and 45 minutes of Occupational Therapy weekly. T██████'s difficulties in reading first became apparent when he was in the second grade. He continues to be reading below grade level and his latest psychoeducational evaluation indicated that there continues to be a discrepancy between his cognitive abilities and current academic achievement.

T██████ was diagnosed with ADHD in 2003. This current assessment reaffirms that this disorder is still present. Both parent and teacher reports indicate both significant hyperactive and inattentive symptoms which continue to occur while he is taking his prescribed stimulant medication. The results of the IVA-CPT were not complete due to an unusually high number of inconsistent responding to the visual stimuli. This pattern can be found in individuals who have difficulty attending to both stimuli and attempt to overcome this by focusing on just one component of the test. However, the fact that even his auditory response scores were in the clinical range for inattention suggests that he more resembles a clinical population for the disorder.

The behavior problems that T██████ had the previous year appear to be absent this school year. He is said to have many friends and both at home and at school he behaves appropriately with his peers. He seems to be struggling with identity issues and in response to certain parts of the evaluation he displayed a style of bravado and toughness that is absent in his actual interpersonal dealings with family and friends. His scores and responses on the behavior and emotional portions of the test indicate that he is a relatively well adjusted boy who continues to struggle with his academics, most notably in reading. His symptoms of ADHD continue to present in the classroom and at home and may likely be interfering with his making adequate progress.

T███ B███
Page 9 of 9

12/0▇

7. Given his difficulty with reading, whenever possible, T█████ should be provided reading material geared to his reading level as well as his interests. His mother and father should try as much as possible, to establish a time at home for "fun reading" about topics that would be engaging for T████████

_____

Richard P. Fleitas, Psy.D.
Resident in Psychology

_____

Paul D. Frey, Ph.D.
Supervisor D.C. License #0170

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES**

MDT REFERRAL DATE: _____

STUDENT: ▬▬▬▬▬▬▬   SCHOOL: Mary McLead Bethune   DATE: 12-11-06

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| Golnar Abedin | | Special Education Coor |
| Mr. Rowles | (phone conference) | Principal |
| Kathryn McAuliffe | Kathryn McAuliffe | School Atty |
| Terri Bland | | Parent |
| Corey Hamilton | Corey Hamilton | Advocate |
| Richard P. Fleitas, Psy.D. | Psy.D. | Clinical Evaluator |
| Ms. DeGraffinreidte | (phone conference) | Registered Teacher |

287

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.

**MULTIDISCIPLINARY TEAM**
**(MDT)**
**MEETING NOTES**

MDT REFERRAL DATE: _____

$\boxed{\text{MDT}}$

STUDENT: T▮▮▮▮ B▮▮▮        SCHOOL: _____    DATE: 12/11/06

| PARTICIPANTS: (Print Name) | PARTICIPANTS: (Sign Name) | POSITION |
|---|---|---|
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

(Testing information for this meeting was reported by Dr. Fleitas who had conducted recent evaluations and summarized evaluations from last school year (2005-2006); questions and concerns were brought up by team members.):

For the classroom observation T▮▮▮▮ was not on medication. He was attentive despite noise in the background. Got up from his desk 3 times out of the chair in the 45 min. , an arrangement that the teacher had agreed upon to help with his need to move around. No behavior problems; got along well with teacher and assistant. Raised his hand to answer questions in class. Was comfortable in the testing sessions, however after some time he got fidgity which T▮▮▮▮ reported happens even when he takes medication as it wears off.
On the computer test he would look away often, he did poorly on the visual part since it was both visual and auditory.
In Nov. of 2005 was tested and perceptual reasoning score brought the overall IQ down from low average to borderline.
Last year he was in the 1st-2nd grade range in reading, 4th grade range in expressing himself, 3rd and 4th grade range in math.
Reading is the main difficulty.
In terms of behavior, no oppositional symptoms, hyperactivity mild, overall----Based on the teacher's report no severe behavior issues, other than ADHD symptoms. His behavior has improved since last year.
Visual scores on the ADHD test were very low because he couldn't do the visual and auditory at the same time; he has the profile of a child with ADHD.
He has no significant emotional problems, is well adapted. He had some identity concerns on a personality tests. On the projective drawing he was optimistic. Another projective test- he was very creative on it and talked about children overcoming problems.
Diagnostic impression: by history he has a learning disability based on reading difficulty, but he has ADHD so we need to change disability to MD: learning disability and OHI (ADHD).
His classroom has 11 students; he should move away from the divider to reduce distraction.
He is on medication consistently now and mom agreed she will notify the teacher when he is not on medication if that ever comes up for health reasons.
Organizational problems can be addressed if parent help him organize his backpack and have his materials ready a website with informationwas recommended for mom to look at.
Specialized instruction should continue with tutoring in reading (decoding and comprehension as a result); mom should try to find books that he would be interested in. Reading material should be around 2nd-3rd grade level.
Going over the social history: he was teased for reading; we should address reading problem rather than implement psychological counseling because that would address secondary problem.-
Mom raised questions regarding the inclusion model and how that would address his reading problems- mom wants a one on one tutoring help. The team has agreed to include 1 hr. of individualized tutoring in reading in order to compensate for his additional needs. Continue O.T. services.
Modification: directions should be repeated in all subject areas. Extra time for testing, repeat directions, small setting, read directions and questions (implement as a choice).
Needs help with multiplication, division and fractions, needs help with vocabulary and comprehension
Math specialized instruction for a half hour a day, 1.5 hours of specialized instruction in language arts, and 1 hour individualized reading instruction.

288

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
WASHINGTON, D.C.
INDIVIDUALIZED EDUCATIONAL PROGRAM

DCPS

Additional ____

## I. IDENTIFICATION INFORMATION

## II. CURRENT INFORMATION

Student Name: Last ▨▨▨▨    First ▨▨▨▨    MI ____

Student ID 905 1948    Soc. Sec. No. ____    Age: 11    Grade 5

Gender ☑M ☐F    Date of Birth 4-3-95    Ethnic Group African American

Address 5412 C Street, S.E.
House No.    Street Name    Quadrant    Apartment #

Washington, DC 20019
City    State    Zip Code

☐ Non-attending

Attending School Mary Mcleod Bethune    Home School ____

☑Elem. ☐ Mid/JHS ☐ SHS ☐ CWS /

Parent Ms Terri Bland

Address of (if different from student):    ☐ Parent  ☐ Guardian  ☐ Surrogate

Date of IEP Meeting: 12
Date of Last
  IEP Meeting: ____

Date of Most Recent
  Eligibility Decision: ____

Purpose of IEP Conference:
☐ Initial IEP          ☐ Review of IEP
☑ Requested Eval.    ☐ 3yr ReEval.

Indicate Level of Standardized Assessment: ____III____

ADDENDA TO BE ATTACHED AS NEEDED
Check the appropriate box(es)

| BEHAVIOR | TRANSPORTATION |
|---|---|
| ESY | TRANSITION |

House No.    Street Name    Quad    Apt. No.    City    State    Zip Code
Telephone: Home 202-584-0959    Work ____

| III. LANGUAGE | Language | Language Used for Evaluation | Language Used In Conference | Communication Requirements | To be completed by Office of Bilingual Education English and Math Proficiency Assessment |
|---|---|---|---|---|---|
| Student | English | English | | | Oral ____ |
| Parent | " | " | | | Rdg./ Written ____ |
| Home | " | " | | | Instrument: ____  Date: ____ |

## IV. SPECIAL EDUCATION AND RELATED SERVICES SUMMARY

| SERVICES | SETTING GenEd | SpEd | Total | FREQUENCY Hr./ Min | D/W/M. | PROVIDER (by discipline) | BEGINNING DATE mm/dd/yyyy | DURATION # wks./mos |
|---|---|---|---|---|---|---|---|---|
| Specialized Instruction | ✓ | ✓ | 15 | Hrs. | W | Regular and Special Ed. Teacher (1 hour individualized tutoring in reading) | 12/12/2006 | 10 wks |
| Occupational Therapy | | ✓ | 1 | hr. | W | Occupational Thrpst | 12/12/2006 | 10 mos. |
| | | | | | | | | |
| | | | | | | | | |
| TOTAL | | | 16 | Hours Per Week | 16 hrs. | | | |

## V. Disability(ies)

Multiple Disabled
LD/OHI (ADHD)

____
☑ (Check if setting is general Ed.)

Percent of time in Specialized Instruction and Related Services
☐ 0-20%   ☑ 21-60%   ☐ 61-100%

Percent of time NOT in a Regular Education Setting

## VI. IEP TEAM (Participants in the development of the IEP)

Print and sign your name below.

Terri Bland    Parent
Galvan Pheeler    Special Ed. Coordinator
Corey Hamilton    Advocate
Thomas P. Fleitas    Clinical Evaluator
Kathryn McArdle    School Atty

*I AGREE* with the contents of this IEP. I have had an opportunity to be involved in the development of this IEP. I have received a copy of this IEP and consent to the implementation of the services in the IEP. I have received a copy of the procedural safeguards and parent rights pertaining to special education.

Parent/Guardian Signature ____    Date ____

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page 1 of 4

| Student Name | T█████ B████ | | Managing School | Mary McLeod Bethune |
| Student ID Number | 9051948 | DOB 4/3/95 | Attending School | Mary McLeod Bethune |

## VII. Present Educational Performance Levels in Areas Affected by the Disability

**Additional Comment.**

**Score(s) When Available**

### Academic Areas: (Evaluator)

**Math Strengths:**

Basic math concepts and basic calculation.

*Math Cal.* 3-4

Math Rea. 2.5

Impact of disability on educational performance in general education curriculum:

Difficulty with long multiplication and division which will affect understandin and performance on fractions.

See goal page:

Date: 12/11/06

**Reading Strengths:**

Reading is a difficulty area for T█████.

Rdg. Com 2.5-3 GE

Rdg. Basic 2.5-3 GE

Written Ex. 2.5-3 GE

Impact of disability on educational performance in general education curriculum:

Difficulty in decoding, vocabulary and comprehension affect all areas of learning that require reading skills.

See goal page:

Date: 12/11/06

### Communication (Speech & Language) (Evaluator)

**Strengths:**

**Score(s) When Available**

Exp. Lang.

Rec- Lang.

Artic

Voice

Impact of disability on educational performance in general education curriculum:

Fluency

Exp. Voc.

Rec. Voc.

See goal page:

Date:

### Motor/Health (Evaluator)

**Strengths:**

**Score(s) /Results When Available**

low-

average

Impact of disability on educational performance in general education curriculum:

Visual-motor integration ability is in the low-average range and requires occupational therapy services.

See goal page:

Date: 11/17/05

### Social Emotional Behavioral Areas: (Evaluator) Dr. Richard P. Fleitas

**Score(s) When Available**

average

**Strengths:**

Positive emotional attitude.

Impact of disability on educational performance in general education curriculum:

Some concern regarding academic difficulties and teasing by peers in the past.

See goal page:

Date: 12/1/06

### Cognitive/Adaptive Behavior: (Evaluator) Dr. Richard P. Fleitas

**Score(s) When Available**

**Strengths:**

Motivated to learn. Paricipates in the classroom. Does not have behavioral problems.

Impact of disability on educational performance in general education curriculum:

ADHD produces inattention especially when presented with multiple-directions and multiple-stimuli (visual and auditory).

See goal page:

Date: 12/1/06

### Prevocational Skills: (Evaluator)

**Score(s) When Available**

**Strengths:**

Impact of disability on educational performance in general education curriculum:

See goal page:

Date:

| Student Name | T____ B____ | | Managing School | Mary McLeod Bethune |
| Student ID Number | 9051948 | DOB 4/3/95 | Attending School | Mary McLeod Bethune |

| VIII. SPECIALIZED SERVICES | Additional Comments: | | Goal # |

Area addressed by goal:   Reading

**ANNUAL GOAL:** (including mastery criteria.)

Terrance will improve reading skills in the areas of decoding, comprehension and vocabulary to meet 50% of 5th grade level standards.

Provider(s): Regular and Special Education Teachers

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| T____ will improve decoding skills by identifying 3 out of 5 words at the 5th grade level. | | Weekly |
| T____ will improve vocabulary by learning new weekly vocabulary words and understanding the meaning of at least 50% of words used in the regular education classroom at a 5th grade level. | | Weekly |
| T____ will improve comprehension of material read by summarizing each paragraph he reads either verbally or in written form in order to communicate his understanding at least 50% of the time. | | Weekly |
| T____ will improve comprehension and vocabulary knowledge by making a list of words he could not understand and asking the teacher at least 50% of the time. | | Weekly |
| | | |
| | | |

**EVALUATION PROCEDURE(S)**

☐ Portfolio    ☐ Log    ☐ Chart    ☐ Test    ☐ Documented Observation    ☐ Report    Other _____

District of Columbia Public Schools        07-02-2001        Division of Special Education        Appendix - A        IEP Page 3 of 4

| | | |
|---|---|---|
| Student Name  T▓▓▓▓ B▓▓▓▓ | | Managing School  Mary McLeod Bethune |
| Student ID Number  9051948 | DOB  4/3/95 | Attending School  Mary McLeod Bethune |

| VIII. SPECIALIZED SERVICES | Additional Comments: | | Goal Number |
|---|---|---|---|

Area addressed by goal:  Math

**ANNUAL GOAL:** (including mastery criteria.)

Terrance will improve math skills in the areas of multiplication, division, fractions, and comprehension of word problems in order to meet 70% of 5th grade level standards.

Provider(s):  Regular and Special Education Teachers

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| T▓▓▓▓ will learn how to do long multiplication involving multi-digit numbers to reach 70% of 5th grade level expectation. | | Weekly |
| T▓▓▓▓ will learn how to do long division involving multi-digit numbers to reach 70% of 5th grade level expectation | | Weekly |
| T▓▓▓▓ will apply knowledge from multiplication and division in order to understand and perform calculations involving fractions in order to meet at least 70% of grade level expectations. | | Weekly or monthly |
| T▓▓▓▓ will improve comprehension of word problems by breaking down each problem into steps and asking the teacher questions regarding the steps as they come up at least 50% of the time. | | Weekly |
| | | |
| | | |

| **EVALUATION PROCEDURE(S)** | | | | | | |
|---|---|---|---|---|---|---|
| ☒ Portfolio | ☐ Log | ☐ Chart | ☒ Test | ☒ Documented Observation | ☐ Report | Other _____ |

NOV. 8. 2006 11:55AM    GWU LEGAL CLINICS                              NO.

Student Name: ▓▓▓▓▓▓ ▓▓▓▓▓▓    Managing School MARY McCLOUD BETHUNE

Student ID Number ▓▓▓▓▓▓    DOB 04/8/95    Attending School

| VIII. SPECIALIZED SERVICES | Additional Comments: | Goal No. |

Area addressed by goal: VISUAL - PERCEPTUAL MOTOR - SKILLS

ANNUAL GOAL: (including mastery criteria.)

1. T▓▓▓▓▓▓ WILL INCREASE HIS VISUAL-PERCEPTUAL MOTOR SKILLS TO AND AGE APPROPRIATE LEVEL FOR GREATER SUCCESS IN THE CLASSROOM.

2. T▓▓▓▓▓ WILL ↑ HIS HANDWRITTING SKILLS TO AN AGE APPROPRIATE LEVELS 80%.

Provider(s): OCCUPATIONAL THERAPIST

Consider audience, behavior, condition, degree and evaluation.

| SHORT-TERM OBJECTIVES (include mastery criteria or benchmarks) | Date Mastered | Evaluation Schedule |
|---|---|---|
| 1.1 T▓▓▓▓ WILL COMPLETE VISUAL MOTOR ALTIVITIES (IE WORKSHEETS, PUZZLES, STRUCTURED THINKING GAMES, ETC) AT AND AGE APPROPRIATE LEVEL 80% OF TRIALS. | | QUARTERLY |
| 1.2 T▓▓▓▓ WILL BE ABLE TO PROCESS AND IDENTIFY VISUAL PATTERNS WITH IMPROVED ACCURACY 80% OF TRIALS | | QUARTERLY |
| 2.1 T▓▓▓▓ WILL BE ABLE TO WRITE SHORT SENTENCES WITH GREATER ACCURACY. 80% OF TRIALS. | | QUARTERLY |
| 2.2 T▓▓▓▓ WILL BE ABLE TO WRITE WORDS AND SENTENCES USING PROPER SIZING, SPACING, AND BASELINE ORIENTATION. 80% OF TRIALS | | QUARTERLY |
| 2.3 T▓▓▓▓ WILL FORM CURSIVE LETTERS AND WORDS WITH IMPROVED ACCURACY. 80% OF TRIALS. | | QUARTERLY |
| | | |
| | | |

EVALUATION PROCEDURE(S)

Portfolio    Log    Chart    Test    (Documented Observation)    Report    Other

District of Columbia Public Schools    07-02-2001    Division of Special Education    Appendix - A    IEP Page

| Student Name | T̶e̶r̶r̶a̶n̶c̶e̶ B̶r̶o̶w̶n̶ | | Managing School | Mary McLeod Bethune |
|---|---|---|---|---|
| Student ID Number | 9051948 | DOB 4/3/95 | Attending School | Mary McLeod Bethune |

**Additional Comments:**

## IX. LEAST RESTRICTIVE ENVIRONMENT (LRE) DETERMINATION
SERVICE ALTERNATIVES

Can curricular modification, accommodation and/or supplemental aids and services be used for a LRE setting in <u>regular education</u>? ☒Yes  ☐No

Explanation for removal out of regular education classroom.

## X. Supplementary Aids and Services

| Classroom Needs (Do not name products or companies.) | SETTING GenEd | SETTING SpEd | Total | FREQUENCY Hr./ Min | FREQUENCY D/W/M. | PROVIDER (by discipline) | BEGINNING DATE (mm/dd/yyyy) |
|---|---|---|---|---|---|---|---|
| Specialized Instruction | x | | 10 | hrs | W | Regular and Special Ed. Teachers | 12/12/06 |
| Individualized Tutoring in Reading | | x | 5 | hrs. | W | Regular or Special Ed. Teachers | 12/12/06 |
| Occupational Therapy | | x | 1 | hr. | W | Occupational Therapist | 12/12/06 |
| | | | | | | | |
| | | | | | | | |

Check and list modifications and/or accommodations  for <u>testing</u>:     **None needed**

Timing/Scheduling: Extended Time

Setting: Small group/Separate location

Presentation: Repeat directions/ Read directions and questions if requested by student

Response:

Equipment:

## XI. STATE AND DISTRICT ASSESSMENTS:

☐Level I  Tested with non-disabled peers under standard conditions without accommodations.

☒Level III (Describe non-uniform conditions for level III) Tested under non-standard conditions with permissible accommodations

☐Level V  Portfolio:

☐Level II  (Describe accommodations for level II) Tested under standard conditions with special accommodations.

☐Level IV  (Describe the alternative assessment)

## XII. Areas Requiring Specialized Instruction and Related Services:     Modifications:

Reading                           ☐Physical/Sensory          ☐Transition          ☒Language Arts/English

☒Mathematics                 ☐Social Emotional           ☐Vocational          ☐Social Sciences

☐Written Expression         ☐Physical                         ☐Independent Living ☐Biological & Physical Sciences

Other:  handwriting/O.T.                                         ☐Speech/Language   ☐Fine Arts

☐None     **Apply annual goal(s), objectives and/or modifications to address barriers in each area checked above.**

## XIII. PLACEMENT CONSIDERATIONS AND JUSTIFICATION

| DESCRIBE CONSIDERATIONS | ACCEPT/REJECT REASONS | POTENTIAL HARMFUL EFFECTS |
|---|---|---|
| Regular education with supplemental services | Accept- appropriate LRE | None |
| | | |
| | | |
| | | |
| | | |

Modification(s)/Accommodation(s) to address the harmful effects:

294

Location for Services  Regular education with pull-out services

---

**TRANSMISSION VERIFICATION REPORT**

```
                                      TIME  : 12/04/2006  14:05
                                      NAME  :
                                      FAX   :
                                      TEL   :
                                      SER.# : BROE6J471573
```

| | |
|---|---|
| DATE,TIME | 12/04  14:05 |
| FAX NO./NAME | 97422097 |
| DURATION | 00:00:17 |
| PAGE(S) | 01 |
| RESULT | OK |
| MODE | STANDARD |
| | ECM |

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



X REVISED COPY

HEARING NOTICE

| MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:    Parent (or Representative): *R. GAMBALE / P. DALTON*    Fax No.: *742 -2098*

     LEA Legal Counsel: *OGC*      *(703) 739-2323*

RE:   B▓▓▓ T▓▓▓▓▓       and (LEA) DOB: _____
     Student's Name

FROM:   **SHARON NEWSOME**
     Special Education Student Hearing Office Coordinator

DATE SENT:   *12/4/06*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

      DATE:   *1/17/07*

      TIME:   *9:00 Am*

*Con't f*
*12/21/06*

295

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 12/04/2006 14:04
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : BROE6J471573
```

```
        DATE,TIME               12/04  14:04
        FAX NO./NAME            97037392323
        DURATION               00:00:18
        PAGE(S)                01
        RESULT                 OK
        MODE                   STANDARD
                               ECM
```

# District of Columbia Public Schools
## State Enforcement & Investigation Division
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



X REVISED COPY

HEARING NOTICE

| MEMORANDUM VIA: [✓] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:    Parent (or Representative): *R. GAMBALE / P. DALTON*   Fax No.: *742 -2098*

LEA Legal Counsel: *OGC*                                        *(703) 739-2323*

RE: B███ T███████                        and (LEA)  DOB: _____
       Student's Name

FROM:  **SHARON NEWSOME**
       Special Education Student Hearing Office Coordinator

DATE SENT: *12/4/06*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_____. Please be advised that the hearing has been scheduled for:

DATE: *1/17/07*                                        *Con'tf*

TIME: *9:00 Am*                    296              *12/21/06*

AT: _825 North Capitol_

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 11/29/2006 13:59
                                    NAME  :
                                    FAX   :
                                    TEL   :
                                    SER.# : BROE6J471573
```

```
DATE,TIME            11/29  13:59
FAX NO./NAME         97037392323
DURATION             00:00:19
PAGE(S)              01
RESULT               OK
MODE                 STANDARD
                     ECM
```

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
### STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C. 20002
PHONE: (202) 442-5432
FAX: (202) 442-5556



## HEARING NOTICE

| MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:    Parent (or Representative): _R. GAMBALE / P. DALTON_   Fax No.: _742 - 2098_

      LEA Legal Counsel: _OGC_                        _(703) 739-2323_

RE:    B████, T██████ ____ and (LEA) DOB: _4/3/95_
          Student's Name

FROM:  __SHARON NEWSOME__
          Special Education Student Hearing Office Coordinator

DATE SENT: ___11/29/06___

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
_10/30/06_. Please be advised that the hearing has been scheduled for:

      DATE: ___12/21/06___

      TIME: ___9:00 Am___

297

```
TRANSMISSION VERIFICATION REPORT
```

```
                                TIME  : 11/29/2006 13:58
                                NAME  :
                                FAX   :
                                TEL   :
                                SER.# : BROE6J471573
```

```
DATE,TIME              11/29  13:58
FAX NO./NAME           97422097
DURATION               00:00:17
PAGE(S)                01
RESULT                 OK
MODE                   STANDARD
                       ECM
```

# District of Columbia Public Schools
## *State Enforcement & Investigation Division*
## STUDENT HEARING OFFICE
825 North Capitol Street, N.E.
8TH Floor
Washington, D.C.  20002
PHONE: (202) 442-5432
FAX:  (202) 442-5556



### HEARING NOTICE

| MEMORANDUM VIA: [X] FACSIMILE [ ] MAIL [ ] HAND DELIVERY |
|---|

TO:    Parent (or Representative): *R. GAMBALE / P. DALTON*    Fax No.: 742-2098
(703) 739-2323

LEA Legal Counsel: *OGC*

RE:    B____ T_____    and (LEA)  DOB: 4/3/95
       Student's Name

FROM:    SHARON NEWSOME
         Special Education Student Hearing Office Coordinator

DATE SENT:    11/29/06

The Student Hearing Office received your Request for Due Process Hearing or Mediation for the above named student on
10/30/06 . Please be advised that the hearing has been scheduled for:

    DATE:    12/21/06

    TIME:    9:00 Am

298

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez †† |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Roxanne D. Neloms |
| Christopher L. West | Telephone: (202) 742-2000 | Omar Karram |
| | Facsimile: (202) 742-2098 | Christie Fontaine |

**November 17, 2006**

**Via Facsimile Only**
Ms. Abedin, Special Education Coordinator
Mary Mcleod Bethune Day Academy
7600 Georgia Avenue, N.W. # 204
Washington, D.C. 20011

> **Re: Request for Hearing Date**
> **Student- Te~~rrance Bl~~and, DOB: 4/3/95**
> **Attending School: Mary McLeod Bethune**

Dear Ms. Abedin:

I have recently had an opportunity to speak with my client, Ms. Teri Bland, regarding the outcome of the resolution meeting that was held the other day. While no resolution was reached, Ms. Bland still invites the school to move forward with the testing that was deemed to be warranted. She is also fully willing to participate in a Multidisciplinary Team meeting for her child should one be scheduled by the school.

However, since the matter has not been resolved to parent's satisfaction, the parent is requesting that her case proceed to hearing and a date be set.

Please feel free to call me if you have any questions or concerns. I may be reached at 202-742-2000 (ext. 2021).

Yours truly,

Roberta L. Gambale, Esq.

CC:    Parent
       Student Hearing Office
       Advocate

* Admitted Only in Virginia. Practicing Pursuant to Rule 49(c) (8): Supervision by Tilman L. Gerald and John Straus, Members of the D.C. Bar.

11/17/2006 17:27 FAX 2027422098    James E Brown & Assoc.    Page 50 of 50

Case 1:07-cv-01223-AK    Document 9-6    Filed 10/15/2007    Page 50 of 50

# JAMES E. BROWN & ASSOCIATES, PLLC

*A Professional Limited Liability Company*

James E. Brown
Domiento C.R. Hill
Roberta Gambale
Miguel A. Hull
Christopher L. West

----------------------

Attorneys at Law
1220 L Street, NW
Suite 700
Washington, DC 20005
Telephone: (202) 742-2000
Facsimile: (202) 742-2098
e-mail: Admin@Jeblaw.biz

Juan J. Fernandez!+
Tilman L. Gerald
John A. Straus
Roxanne D. Neloms
Omar Karram
Christie Fontaine

----------------------

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# FAX COVER SHEET

DATE:          **November 17, 2006**

TO:            **Ms. Sharon Newsome, DCPS Student Hearing Office Coordinator**

FAX NO.:       **(202)442-5556**

FROM:          **Roberta L. Gambale, Esq.**

SUBJECT:       **Request for Hearing Date- T██████ B████, DOB: 4/3/95**

NUMBER OF PAGES INCLUDING COVER SHEET:

COMMENTS:      ***No Resolution was reached and parent is requesting that a hearing date be set.***

The attached information is **CONFIDENTIAL** and is intended only for the use of the addressee(s) named above. If the reader of this message is not the intended recipient(s) or the employee or agent responsible for delivering the message to the intended recipient(s). Please note that any dissemination, distributions or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us at the above address via the U.S. Mail.

## STATE EDUCATION AGENCY FOR THE DISTRICT OF COLUMBIA STATE ENFORCEMENT AND INVESTIGATION DIVISION (SEID) SPECIAL EDUCATION PROGRAMS

Terri Bland                                    )
on behalf of                                   )
~~Terrence Bland~~                             )
                                               )
v.                                             )      November 3, 2006
                                               )
Mary McLeod Bethune Academy                    )
                                               )

### Answer to Due Process Complaint

General Denial/Answer

Mary McLeod Bethune Day Academy PCS ("MMBDA") hereby submits its answer to the due process complaint filed by Ms. Bland on behalf of her son. MMBDA denies all allegations not subsequently admitted or otherwise answered. MMBDA admits no allegations unless clearly so stated below. MMBDA states the following pursuant to Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101 §615(c)(2)(B):

**Allegations:**

The parent alleges a denial of FAPE based on MMBDA's alleged failure to convene a meeting to revise the student's IEP, alleged failure to fully implement the student's IEP, alleged failure to provide comprehensive evaluations, alleged failure to develop an appropriate IEP, and alleged failure to convene an appropriate IEP team.

MMBDA believes that the student has been adequately evaluated and provided services based on an appropriate IEP. However, MMBDA is prepared to discuss these issues in greater detail at the Resolution Meeting.

1

**Relief:**

The parent requests that MMBDA convene a meeting to review and revise the student's IEP, and conduct and/or fund any additional evaluations required by the student. The parent also reserves the right to address compensatory education.

MMBDA denies any allegation that it has failed to comprehensively evaluate this student, nor did it fail to write an appropriate IEP or implement the services on that IEP. Furthermore, the hearing request is the first notice MMBDA received regarding additional evaluations. As stated above, MMBDA looks forward to discussing these allegations at the Resolution Meeting

Respectfully submitted,

*Paul Dalton* (KTH)

Paul S. Dalton, Esq.
Dalton, Dalton, & Houston, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
703-739-4300
703-642-2323 – fax

2

## Certificate of Service

I certify that a copy of this document was faxed to Roberta Gambale, Esq. at 202-742-2098.

Paul Dalton (KTM)

Paul S. Dalton, Esq.

3

# FAX TRANSMISSION COVER SHEET
## Dalton, Dalton & Houston P.C.
### Attorneys at Law
### 1008 Pendleton Street
### Alexandria, Virginia 22314
### (703) 739-4300
### FAX (703) 739-2323

DATE:      November 8, 2006

TO:        Sharon Newsome

AT FAX:    202-442-5556

FROM:      Paul Dalton, Esq.

RE:        T. Bl⬛⬛ Answer

NUMBER OF PAGES INCLUDING THIS PAGE:          4

ADDITIONAL INFORMATION:

---

### PLEASE DELIVER ASAP.
**********************************************************************

THIS COMMUNICATION IS CONFIDENTIAL AND IS INTENDED TO BE PRIVILEGED PURSUANT TO THE ATTORNEY CLIENT PRIVILEGE AND ATTORNEY WORK PRODUCT DOCTRINE.

IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS.
**********************************************************************

# STATE EDUCATION AGENCY
## DISTRICT OF COLUMBIA PUBLIC SCHOOLS

| | | |
|---|---|---|
| In the Matter of: | ) | BEFORE A SPECIAL EDUCATION |
| | ) | |
| **B____, T.**          Petitioner | ) | |
| | ) | HEARING OFFICER |
| Vs. | ) | |
| | ) | |
| **DCPS** | ) | |
| **Attending Mary McLeod Bethune Academy** | ) | DISTRICT OF COLUMBIA |
| | | |
| Respondent | ) | PUBLIC SCHOOLS |

# SCHEDULING MEMORANDUM

1.  A due process complaint notice and request for due process hearing has been received by the Student Hearing Office in the State Enforcement & Investigation Division. Pursuant to 20 U.S.C. § 1415(f)(1)(B), prior to the opportunity for an impartial due process hearing, the Local Educational Agency shall convene a resolution meeting with the parent(s) and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint <u>within 15 calendar days of receiving notice of the parents' complaint</u>. The meeting shall include a representative of the Local Educational Agency who has decision-making authority. The Local Education Agency is responsible for scheduling the resolution meeting in consultation with the parent. **The Student Hearing Office does not schedule or participate in resolution meetings**.

2.  The complaint notice was filed on **October 31, 2006**

3.  The deadline for the resolution meeting is **November 15, 2006** unless the parent and Local Educational Agency agree in writing to waive such meeting, or agree to refer the case to a mediator for mediation.

## RESPONSE TO THE COMPLAINT

A.  ***Prior Written Notice Not Issued by the Local Educational Agency***.  If the Local Educational Agency has not sent a prior written notice to the parent regarding the subject matter contained in the parent's due process complaint notice, the Local Educational Agency shall, <u>within 10 days of receiving the complaint</u>, send to the parent a response that shall include:

1.  An explanation why the Local Educational Agency proposed or refused to take action raised in the complaint;
2.  A description of other options that the IEP Team considered and the reasons why those options were rejected;
3.  A description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and
4.  A description of the factors that is relevant to the agency's proposal or refusal.

B.  Prior written notice, if not already provided to the parent, must be sent by the Local Educational Agency to the complaining party no later than **November 10, 2006**.

C.  ***Deficiency Notice***.  A complaint notice shall be deemed sufficient unless the party receiving the notice notifies the Student Hearing Office and the complaining party in writing, <u>within 15 days of receiving the notice of the complaint</u>, that the complaint does not satisfy the notice requirements specified in 20 U.S.C. 1415(b)(7)(A).

D.  The deadline for filing a deficiency notice is **November 15, 2006**.

## DUE PROCESS HEARING

Pursuant to 20 U.S.C. § 1415(f)(1)(B)(ii) if the Local Educational Agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint, the due process hearing may occur, and all applicable time lines for scheduling a due process hearing will commence.  A final hearing officer's decision must be issued within 45 days from the expiration of the 30-day resolution period.

## QUESTIONS AND INFORMATION

The staff with the Student Hearing Office does not provide legal advice.  The parties should consult with legal counsel or other representative to answer any legal questions about your rights, duties, and responsibilities under the law.  The school or the Local Education Agency responsible for scheduling the meeting will provide information about the time, date, and location of the resolution meeting.

**Complaint Intake Unit**
**825 North Capitol Street, NE- 8th Fl.**
**Washington, DC 20002**
**(202) 442-5693**



# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Principal/Administrator**
**Special Education Coordinator**

Telephone Number: **(202) 723-5800**          Pages: **13**
       Fax Number: ~~(202) 397-3046~~          Date: **October 31, 2006**
                    *2/723 - 8416*

**Please find attached a copy of a Scheduling Memorandum and a copy of the Due Process Complaint Notice regarding:**

Student: **T~~erren~~ce Bl~~ount~~**

School:  **Attending Mary McLeod Bethune Academy**

**The complaint Intake Unit is responsible for only providing parties with information notice that a Due Process Complaint has been filed with the Student Hearing Office.  If you have questions about the attached Notice, regarding any fax errors or discrepancies, please contact the Complaint Intake Unit @ (202) 724-6556.**

                              **Thank You,**
                              **Marica P. Brown**
                              **Staff Assistant**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged.  The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556

DISTRICT OF COLUMBIA PUCLIC SCHOOLS
State Enforcement & Investigation Division
For Special Education Programs

# Fax

# Time Sensitive Materials Attached

**Prompt Attention: Attorney:Roberta Gambale, Esq.**
**Parent: Terri Bland**

Telephone Number: **(202) 742-2000**
Fax Number: **(202) 742-2098**

Pages: **3**
Date: **October 31, 2006**

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: **T██████ B████**
School:  **Attending Mary McLeod Bethune Academy**

The Complaint Intake Unit is responsible for providing parties with
information notice that a Due Process Complaint has been filed with the
Student Hearing Office.  If you have questions about the attached Notice,
please contact the Complaint Intake Unit at (202) 724-6556.  Otherwise, if
you have questions about the content of the compliant you should contact
your legal counsel for further advice.

**Thank You**
**Marica Brown**

The document(s) accompanying this telecopy transmission contains confidential information that Is legally privileged.  The information is intended only for use of the individual or entity named Above, if you are not the intended recipient you are hereby notified that any disclosure, copying, Distribution or the taking of any action in reliance of the contents of this copied information is Strictly prohibited.  If you receive this telecopy in error, please immediately notify us by telephone For return of the original document to us.

```
*********************
***  TX REPORT  ***
*********************

TRANSMISSION OK

TX/RX NO             0192
RECIPIENT ADDRESS    92027422098
DESTINATION ID
ST. TIME             10/31 17:04
TIME USE             00'30
PAGES SENT             3
RESULT               OK
```

Complaint Intake Unit
825 North Capitol Street, NE- 8th Fl.
Washington, DC 20002
(202) 724-6556



# Fax

## Time Sensitive Materials Attached

**Prompt Attention: Attorney:Roberta Gambale, Esq.**
**Parent: Terri Bland**

Telephone Number: **(202) 742-2000**          Pages: **3**
Fax Number: **(202) 742-2098**                 Date: **October 31, 2006**

**Please find attached a copy of a Scheduling Memorandum regarding:**

Student: **T██████ B████**
School:  **Attending Mary McLeod Bethune Academy**

The Complaint Intake Unit is responsible for providing parties with
information notice that a Due Process Complaint has been filed with the
Student Hearing Office.  If you have questions about the attached Notice,
please contact the Complaint Intake Unit at (202) 724-6556.  Otherwise, if
you have questions about the content of the compliant you should contact
your legal counsel for further advice.

**Thank You**
**Marica Brown**

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

TX/RX NO                0205
RECIPIENT ADDRESS       97238416
DESTINATION ID
ST. TIME                11/01 09:06
TIME USE                07'28
PAGES SENT               13
RESULT                  OK
```

**Complaint Intake Unit**
**825 North Capitol Street, NE- 8th Fl.**
**Washington, DC 20002**
**(202) 442-5693**



# Fax

# Time Sensitive Materials Attached

**Prompt Attention: Principal/Administrator**
**                    Special Education Coordinator**

Telephone Number: **(202) 723-5800**                 Pages: **13**
        Fax Number: ~~(202) 397-3046~~                 Date: **October 31, 2006**
                    *2/723 - 8416*

**Please find attached a copy of a Scheduling Memorandum and a copy of the Due
Process Complaint Notice regarding:**

Student: **T████ Bl███**

School:  **Attending Mary McLeod Bethune Academy**

**The complaint Intake Unit is responsible for only providing parties with
information notice that a Due Process Complaint has been filed with the Student
Hearing Office. If you have questions about the attached Notice, regarding any
fax errors or discrepancies, please contact the Complaint Intake Unit @ (202) 724-
6556.**

310

*State Education Agency for the District of Columbia*
*State Enforcement and Investigation Division (SEID)*
*Special Education Programs*



### *Due Process Complaint Notice*

- The form is used to give notice of a due process complaint to the **District of Columbia Public Schools, District of Columbia Public Charter Schools (DCPS or LEA) and/or parents** with respect to any matter relating to the identification, evaluation, or educational placement of a child with a disability, or the provision of a free appropriate public education to that child. <u>**A party may not have a due process hearing until the party, or the attorney representing the party, files a notice that meets the requirements of the Individuals with Disabilities Education Act**</u>

- The due process complaint must describe an alleged violation that occurred not more than two (2) years before the date that the parent or school system knew or should have known about the alleged action that is the basis of the complaint.

- Notice must be provided to the Student Hearing Office for the DC Public Schools, 825 North Capitol Street, NE, 8th Floor, Washington, DC 20002; fax number 202/442-5556.

- <u>Unless the other party agrees, the party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that are not raised in this Due Process Complaint Notice</u>. Therefore, please be thorough in providing the information requested.

- Prior to the opportunity for an impartial due process hearing, the Local Educational Agency (LEA) shall convene a meeting **(called a "Resolution Session")** with the parent(s) unless the parent(s) and the Local Educational Agency agree in writing to waive this meeting. You will be contacted by a representative of the Local Educational Agency to schedule the meeting. **The Student Hearing Office does NOT schedule resolution meetings**.

- Mediation is also available to all parties as an alternative to a resolution meeting or a Due Process Hearing.

A. <u>**INFORMATION ABOUT THE STUDENT:**</u>

Name of the Student: <u>Terrence D. Bl███</u>    Date of Birth <u>4/3/95</u>
Address: <u>5412 C Street SE, Washington, D.C. 20019</u>
Home School: <u>Mary McLeod Bethune Academy</u>
Present School of Attendance: <u>Same</u>

1

Is this a charter school? _Yes_          (If yes, you must also provide a copy of the notice to the charter school principal or director)

Parent/Guardian of the Student: **Ms. Terri D. Bland**
Address (if different from the student's above): same

B.    **Legal Representative/Attorney:**

Name: **Roberta L. Gambale, Esq. ( James Brown and Associates, PLLC)**
Address: 1220 "L" Street, Suite 700, Washington, DC 20005
Phone: (w) (202)742-2000 (ext. 2021) (Fax) (202) 742-2098      (e-mail)
Rgambale@jeblaw.biz

Will attorney / legal representative attend the resolution session?  **X** Yes          ◻ No

C.    **Complaint Made Against (check all that apply):**

**X** Mary McLeod Bethune Academy

D.    **Resolution Session Meeting Between Parent/Representative and LEA:**

I understand that it is my right to have a resolution meeting to resolve this complaint. I also understand that I may voluntarily waive this right if I choose. (Note: All parties must agree to waive the resolution meeting to avoid having this meeting.)

The parent, by and through counsel, wishes to waive the Resolution Session Meeting for this process.

E.    **Mediation Process:**

IDEIA requires that any time a party requests a due process hearing, mediation should be offered at no cost to the parent. Both parties can request mediation as an alternative to the Resolution Session Meeting or as an alternative to a Due Process Hearing. Please check all that apply:

**I am requesting an administrative due process hearing only.**

F.    **Facts and Reasons for the Complaint:**

In accordance with the Individuals with Disabilities Education Improvement Act (IDEIA), please complete the following questions (attach additional pages if needed):

2

## I. <u>Nature of the problem.</u>

## <u>Background</u>

Terrence D. Bland  ( Hereinafter "T.B.")is an eleven (11) year old  student who currently attends the Mary McLeod Bethune Academy, a Charter School in the District of Columbia. He was first evaluated for Special Education Services during the 2003/2004 school year while attending Robert Brent Elementary School and an initial Individualized Educational Program ("IEP") was developed for the student on or about February 9, 2004.   Due to Robert Brent's failure to implement the IEP, the parent enrolled T.B. in a Christian School for the 2004/2005 school year and then in Mary McLeod Bethune Public Charter School for the 2005/2006 school year.  The parent provided a copy of the IEP to the school upon registration.

Terrence was partially re-evaluated during the 2005/2006 school year when a psycho-educational evaluation and an occupational therapy evaluation were completed.  According to the psycho-educational evaluation completed this student has made limited progress since he was evaluated in 2003.  His IQ scores were in the borderline range of academic functioning.

## <u>Issues</u>

1. <u>Mary McLeod Bethune Day Academy ("MMBDA") failed to convene a meeting to revise the student's 2/9/04 Individualized Educational Program ("IEP") in a timely manner.</u>

Mary McLeod Bethune Day Academy ("MMBDA") a Public Charter School located within the District of Columbia,  failed to convene a meeting to review and revise this student's  Individualized Educational Program ("IEP") in a timely manner.   The student was enrolled in MMBDA from the commencement of the 2005/2006 school year.  When the student began attending, his IEP had already expired. MMBDA did not convene a meeting until March 2006 to review and revise this student's program and a full team was not present at the March 2006 meeting.

According to the Individuals with Disabilities Education Improvement [1]the local education agency, which in this case would be the charter school, is required to identify students with a disability in need of services, convene a meeting to address eligibility,  develop an Individualized Educational Program ("IEP") that contains : 1) a statement of the child's present level of academic achievement and functional performance, 2) a statement of the student's measurable annual goals, 3) a description of how the child's progress toward meeting the annual goals described in paragraph (2) of this subsection will be measured, and 4) any statement of the special education needs and related services and supplementary aides for a student and begin implementation of that program as soon as possible and ensure that the student's IEP is revised annually.  The Charter School, as the LEA, has the obligation to ensure that

---

[1] See  34 C.F.R.  § 300.111, 300.306, 300.308, 300. 320

3

the SEA is promptly notified in the event that they are unable to meet the student's needs.[2] See 20 U.S.C. 1412(a)(1), 1412(a)(12)(A)(i), 1414(d)(3), (4)(B) and (7) and 1414(e).[3] Because the IEP is the mechanism through which a free and appropriate public education ("FAPE") is delivered to disabled students, failure to develop an appropriate IEP amounts to a denial of FAPE. See <u>Board of Education of the Hendrick Hudson Central School District v. Westchester County, et al v. Rowley,</u> 458 U.S. 276,102 S .Ct. 3034 (1982)[4]

By failing to convene a meeting to revise the student's IEP, the charter school has denied this student a Free and Appropriate Public Education ("FAPE").

### 2.    <u>Mary McLeod Bethune Day Academy ("MMBDA") failed to fully implement either the 2/9/04 and/or the 310/06 Individualized Educational Program ("IEP")</u>

Mary McLeod Bethune Day Academy ("MMBDA") a Public Charter School located within the District of Columbia,  failed to fully implement this student's Individualized Educational Program ("IEP") dated February 9, 2004 and/or the IEP developed in March 2006

The student was enrolled in MMBDA from the commencement of the 2005/2006 school year. Between the commencement of the 2005/2006 school year and April 2006 the student received no services and was enrolled in a regular education program.

After the March 10, 2006 IEP was developed, the only services that were provided were occupational therapy services and reading instruction from the school's reading specialist on a weekly basis. Services in other academic areas were not received.

The student was re-enrolled in MMBDA for the 2006/2007 school year. Parent was instructed by T.B.'s classroom teacher that he was not receiving specialized instruction due to a staffing problem at the school.

. The Charter School, as the LEA, has the obligation to ensure that the student's educational program is being implemented and if they are unable to implement the IEP that the SEA is promptly notified in the event that they are unable to meet the student's needs.[5] See 20 U.S.C. 1412(a)(1), 1412(a)(12)(A)(i), 1414(d)(3), (4)(B) and (7) and 1414(c).[6] Since the IEP is the mechanism through which a free and appropriate public education ("FAPE") is delivered to disabled students, failure to develop an appropriate IEP amounts to a denial of FAPE. See <u>Board of Education of</u>

---

[2] <u>See</u>  D.C. MUN. REGS. tit. 5, § 3011 (2003).

[3] Section 300.324
[4] Id at 182  " *"The free appropriate public education required by the Act is tailored to the unique needs of the handicapped child by means of an Individualized Educational Program ("IEP")* "
[5] <u>See</u>  D.C. MUN. REGS. tit. 5, § 3011 (2003).

[6] Section 300.324

4

the Hendrick Hudson Central School District v. Westchester County, et al v. Rowley
458 U.S. 276,102 S. Ct. 3034 (1982)[7]

### 3.    Mary McLeod Bethune Day Academy ("MMBDA") failed to provide comprehensive evaluations for this student

Mary McLeod Bethune Day Academy ("MMBDA") a Public Charter School located within the District of Columbia, failed to provide comprehensive evaluations for this student. T.B. was enrolled in MMBDA at the commencement of the 2005/2006 school year. Re-evaluations were conducted for T.B. on or about November 2005 and indicate that the student was performing significantly below level in reading, language arts, written expression, math and spelling. His scores fell within the borderline range of academic functioning. When compared with prior testing completed in 2003, no academic progress could be demonstrated. Despite this, further testing was not conducted as would be appropriate such as a Vineland Adaptive Scale, a Speech and Language Assessment, a Social History and/or any testing to follow up on the prior ADHD diagnosis Pursuant to 20 U.S.C. 1414(b)(1)-(3), 1412(a)(6)(B)[8] the public agency has an obligation to ensure that s student is comprehensively evaluated in all areas of suspected disability and so as to identify all instructional and/or related service needs. .   As a result, this student has been denied a Free and Appropriate Public Education ("FAPE").

### 4.    Mary McLeod Bethune Day Academy ("MMBDA") failed to develop an appropriate Individualized Educational Program ("IEP") for this student on or about March 10, 2006.

Mary McLeod Bethune Day Academy ("MMBDA") a Public Charter School located within the District of Columbia, failed to develop an appropriate Individualized Educational Program ("IEP") for this student on or about March 10, 2006. The public agency has an obligation to ensure that the Individualized Educational Program ("IEP") for each student is revised not less than annually pursuant to 20 U.S.C 1412 (a)(1), 1412 (a)(12)(A)(i), 1414(d)(3), (4)(B) and (7) and 1414(e)).[9]  In the case at hand, DCPS has failed to develop an appropriate IEP for this student. According to   20 U.S.C 1412 (a)(1), 1412 (a)(12)(A)(i), 1414(d)(3), (4)(B) and (7) and 1414(e)).[10]

> The local  education agency, is to make certain that each IEP for each student must contain a statement of the child's present level of academic achievement and functional performance, 1)) a statement of the student's measurable annual goals, 2) a description of how the child's progress toward meeting the annual goals described in paragraph (2) of this subsection will be measured, and 3) any statement of the

---

[7] Id at 182  " *"The free appropriate public education required by the Act is tailored to the unique needs of the handicapped child by means of an Individualized Educational Program ("IEP") "*
[8] Section 300.303
[9] See 300.324
[10] See 300.324

5

315

special education needs and related services and supplementary aids for a student to advance properly toward attaining the annual goals.

The IEP for T.B. is inappropriate because it fails to provide him with the level of services that he requires based upon his academic functioning and fails to address the impact of a prior ADHD diagnosis and/or is based upon incomplete evaluations and/or drafted by an incomplete IEP team.[11]

### 5.    Mary McLeod Bethune Day Academy ("MMBDA") failed to convene an appropriate Individualized Educational Program ("IEP") team on or about March 10, 2006.

Mary McLeod Bethune Day Academy ("MMBDA") a Public Charter School located within the District of Columbia, failed to convene a complete and/or appropriate Individualized Educational Program ("IEP") team for this student on or about March 10, 2006. The public agency has an obligation to ensure that the Individualized Educational Program ("IEP") for each student is revised not less than annually pursuant to 20 U.S.C 1412 (a)(1), 1412 (a)(12)(A)(i), 1414(d)(3), (4)(B) and (7) and 1414(e)).[12] The IEP team was incomplete due to the lack of a special education teacher. The only teacher participating on the team was the student's regular education teacher.

## II. **Issues presented.**

1.  Whether Mary McLeod Bethune Day Academy  failed to convene a meeting to review and revise the student's expired IEP in a timely manner?

2.  Whether Mary McLeod Bethune Day Academy  failed to fully implement either the 2004 IEP and/or the 2006 IEP for this student?

3.  Whether Mary McLeod Bethune Day Academy  failed to develop an appropriate IEP on or about March 10, 2006?

4.  Whether Mary McLeod Bethune Day Academy  failed to comprehensively evaluate the student so as to identify all areas of suspected disability and all related service and/or instructional needs?

5.  Whether Mary McLeod Bethune Day Academy  failed to  convene an appropriate Individualized Educational Program ("IEP") team on or about March 10, 2006?

6.  Whether  this student has been denied a Free and Appropriate Education ("FAPE")?

---

[11] Furthermore, the IEP indicates that it is an initial IEP, despite the fact that the student came to MMBDA with a program dated 2004 and provided a copy of the program to the school upon enrollment.
[12] See 300.324

6

III. **To the extent known to you at this time, how can this problem be resolved?**

WHEREFORE, the guardian, by and through counsel, requests the following relief:

1. A finding that the Charter School denied T.B. a FAPE ;

2. That the Charter School shall immediately convene a meeting review and revise the student's Individualized Educational Program ("IEP") as appropriate

3. That the Charter School shall conduct and/or fund any additional evaluations required by this student on an expedited basis such as a Vineland Adaptive Scale, a Social History, a Speech and Language Evaluation and a Clinical Evaluation, as well as a Classroom Observation;

4. That Charter School shall promptly notify District of Columbia Public Schools ("DCPS") of any inability on the part of the Charter School to provide services as set forth for this student in his program and/or a setting conducive to provision of FAPE;

5. The parent's right to address compensatory education for denials of FAPE is reserved;

6. That the Charter School agrees to pay counsel for the parent's reasonable attorney's fees in an amount not to exceed Four Thousand Dollars and Zero Cents ($4,000.00), as full payment of attorneys' fees and related costs incurred in the matter;

7. All meetings shall be scheduled through counsel for the parent, Roberta L. Gambale, Esq., in writing, via facsimile, at 202-742-2097 or 202-742-2098;

8. Provide the student with a due process hearing within 20 calendar days of a request on any issue arising out of the noncompliance with the Charter Schools' obligation hereunder, or any disagreement with the assessment, programming or placement the parent may have;

9. Provide counsel for the parent with copies, pursuant to 5 DCMR 3021.8, of all evaluation reports and all educational records on the student no later than sixteen (16) business hours prior to the convening of any meeting;

10. 19.. The Charter School shall ensure that this student has available a Free and Appropriate Public Education including special education, transportation (5 DCMR 3000.3), and Other related services as are defined at 34 C.F.R. 300.24, designed to meet this student's unique needs and preparation for employment and independent living;

11. That Charter School within ten (10) calendar days of the filing of this complaint, pursuant to the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, Sec. 101, § 615(c)(2)(B), provide the parent's representative, Roberta L. Gambale, Esq., via facsimile, at 202-742-2097 or 202-

7

SEID DPCN Rev'd. 7/01/05

742-2098, the following: i) an explanation of why Charter School proposed or refused to take the action raised in the complaint; ii) a description of other options that the IEP team considered and the reasons why those options were rejected, iii) a description of each evaluation procedure, assessment, record, or report the agency used as the basis for the proposed or refused action, and iv) a description of the other factors that are relevant to the agency's proposed or refused action;

12. That Charter School, in the event they fail to answer/respond to the issues alleged in the parent's administrative due process hearing complaint, within ten (10) calendar days, the arguments and facts as averred by the parent will be deemed true and accurate and act as a waiver, on the part of Charter School, for their desire to have a Resolution Session Meeting, and the guardian's administrative due process hearing will be scheduled pursuant to the applicable timelines contained in the IDEIA;

13. That Charter School's failure to comply with the Individuals with Disabilities Education Improvement Act of 2004  and allege any insufficiency of the administrative due process complaint, will constitute waiver on the part of Charter School to make such argument at any later date and time.

14. That Charter School, pursuant to 20 U.S.C. 1415(f)(1)(B)[13] within fifteen (15) calendar days of receiving the parent's administrative due process complaint, shall contact the parent's representative, in writing, via facsimile, at 202-742-2097 or 202-742-2098, to schedule and convene a Resolution Session Meeting;

15. That Charter School convene the Resolution Session Meeting, with the parent, the parent's representative, and all necessary/relevant members of the student's MDT/IEP Team that have specific knowledge about the child and the facts contained in the complaint.  That the relevant members of the MDT/IEP Team that shall be present at the Resolution Session Meeting for the student shall include the following persons:  1) the student's special education teacher, 2) the student's regular education teacher, if applicable, 3) a representative of the local education agency with decision making authority, 4) a person who can interpret the data, 5) any person(s) who conducted any assessments on the student and/or would be qualified to conduct the  evaluations requested in the parent's complaint.

16. That Charter School's failure to timely schedule and convene the Resolution Session Meeting within the timeframe identified in 20 U.S.C. !415(f)(1)(B) constitute joint waiver between DCPS and the guardian to have such meeting and the forty-five (45) days timeline to schedule the student's administrative due process hearing and receive a timely decision will begin to run upon written notice, via facsimile, at 202-442-5556, to the DCPS Office of Student Hearings, by the parent's counsel; and

17. A finding that the parent is the prevailing party in this action.

---

[13] 300.510

8

G.     **Accommodations and Assistance Needed**:

  • N/A

Dated this 31st Day of October, 2006

Roberta L. Gambale, Esq.,
James E. Brown & Associates, PLLC
1220 L Street, NW Suite 700
Washington, DC 20005
202-742-2021

**Mail, fax or deliver this complaint notices to:**
**State Enforcement and Investigation Division**
**For Special Education Programs (SEID)**
**Student Hearing Office (SHO)**
**825 North Capitol Street, NE, 8th Floor**
**Washington, DC  20002**
**Fax number: 202/442-5556**

9

SEID DPCN Rev'd. 7/01/05

319

## JAMES E. BROWN & ASSOCIATES, PLLC
*A Professional Limited Liability Company*

| | | |
|---|---|---|
| James E. Brown | Attorneys at Law | Juan J. Fernandez! |
| Domiento C.R. Hill | 1220 L Street, NW | Tilman L. Gerald |
| Roberta Gambale | Suite 700 | John A. Straus |
| Miguel A. Hull | Washington, DC 20005 | Roxanne D. Neloms |
| Christopher L. West | Telephone: (202) 742-2000 | Omar Karram |
| | Facsimile: (202) 742-2098 | Christie Fontaine |
| | e-mail: Admin@Jeblaw.biz | |

! DC Bar Special Legal Consultant
+ Admitted in Bolivia

# FAX COVER SHEET

DATE:          **October 31, 2006**

TO:            **Ms. Sharon Newsome, DCPS Student Hearing Office Coordinator**

FAX NO.:       **(202)442-5556**

FROM:          **Roberta L. Gambale, Esq.**

SUBJECT:       **Due Process Hearing Complaint for T━━━━━━ ━━━━, DOB: 4/3/95**

NUMBER OF PAGES INCLUDING COVER SHEET:  10

COMMENTS:

The attached information is CONFIDENTIAL and is intended only for the use of the addressee(s) named above. If the reader of this message is not the intended recipient(s) or the employee or agent responsible for delivering the message to the intended recipient(s). Please note that any dissemination, distributions or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us at the above address via the U.S. Mail.

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
STUDENT HEARING OFFICE

IN THE MATTER OF
T█████ B█████
DATE OF BIRTH:  APRIL 3, 1995

HEARING DATE:  JANUARY 17, 2007

TRANSCRIBED BY
LEGAL PERSONNEL, INC.  (301) 277-5711

APPEARANCES

HEARING OFFICER:                          Sy Dubow

ATTORNEY ADVISOR FOR
      DISTRICT OF COLUMBIA
      PUBLIC SCHOOLS                      RASHEEDA WILSON

ATTORNEY FOR PARENT                       MS. GAMBOLI

Charter school                            PAUL DALTON

PARENT OF T▮▮▮▮▮ B▮▮▮▮                     TERRY BLAND

FAMILY EDUCATIONAL ADVOCATE               TERRY HAMILTON

EDUCATOR CHARTER SCHOOL                   MS. DEGRAFENREIDT

1    HEARING OFFICER:  Good Morning, we're on the record.  Today

2  is January 17th, 2007.  This is an Administrative Hearing for

3  T_____ B_____ who was born on April 3rd, 1995.  The parties

4  would introduce themselves for the record.

5    MS. WILSON: Rasheeda Wilson, Attorney Advisor DCPS.

6    MR. DALTON: Paul Dalton on behalf Mary McLeod Bethune

7  Public Charter School.

8    MS. DANIEL: Good Morning, Abbey Daniel Special-ed

9  Coordinator for Mary McLeod Bethune Charter School.

10    MS. DEGRAFENREIDT:  Darlene DeGrafenreidt Educator, at Mary

11  McLeod Bethune.

12    MS. MCAULIFFE  Katherine McAuliffe, counsel for Mary McLeod

13  Bethune.

14    MS. GAMBOLI: Roberta Gamboli, I'm the attorney for the

15  parent.

16    MS. BLAND:  I'm Terry Bland, the parent of T_____ B_____.

17    MR. HAMILTON:  And I'm Corey Hamilton, the family's

18  Educational Advocate.

19    MR. DUBOW:  Thank you all very much.  This is an

20  Administrative Hearing for T_____ B_____ is being held pursuant

21  to the Individual With Disabilities Education Act of 2004 and

22  1997 and DCPS Regulations to determine whether or not DCPS acted

23  in accordance with these applicable Special-ed laws with regard

1    to T██████ B████.   I'm Sy Dubow, I am an impartial hearing

2    officer.   I am not an employee of DCPS nor am I related to or a

3    close acquaintance of the parent other than through the hearing

4    process.   I will hear both sides and act on the evidence

5    presented.   Is the formal reading of the rights waived?

6         MS. GAMBOLI: The formal reading of the rights are waived.

7         MR. DUBOW:   The formal reading of the rights are waived and

8    my decision will be within ten days.   All matters discussed

9    today are confidential and the hearing is being recorded.

10   Either party may request a copy of the CD or written

11   transcription by writing to the Student Hearing Office.   Now as

12   a preliminary matter, I have documents of the parent labeled, is

13   it one through thirty-four?

14        MS. GAMBOLI:   One through thirty-four.

15        MR. DUBOW: One through thirty-four. And documents from the

16   Charter School that are labeled marked somewhere – one through

17   thirteen.

18        MS. WILSON:   DCPS has a witness list.

19        MR. DUBOW:   And DCPS has disclosure letter.

20        MS. WILSON:   Right.   There is a disclosure letter.   We've

21   submitted documents, too, but that's okay. It was the same

22   documents; you have to submit a copy request for that.   That was

23   done in 05.

1    MS. WILSON: ʼ I didn't send it so I didn't --.

2    MR. DALTON: All I have is this.

3    MR. DUBOW: Is there any other preliminary matter?

4    MS. WILSON:  DCPS does have a preliminary matter that we be

5    dismissed out of this case pursuant to DC law 3019.  We believe

6    that the Charter School with its own LEA and the relief that is

7    requested, DCPS does not have the ability to reach the student

8    pursuant to the 3019 the LEA Charter School (inaudible)

9    educational programming of the student.

10    MR. DUBOW:  Response.

11    MS: GAMBOLI:  We're not opposing that.

12    MR. DUBOW: Goodbye, you're dismissed.

13    MS. WILSON:  Thank you.

14    MR. DUBOW:  I hope you feel better.

15    MR. DALTON: I have a preliminary matter also.

16    MR. DUBOW: Yes.

17    MR. DALTON:  The relief requested was to convene a meeting

18    through to do and revise the IEP, conducted to fund additional

19    evaluations.  I promptly notified DCPS for anybody to provide

20    services and addressed comp-ed.  The resolution meeting was held

21    on November 15th, 2006.  At that time we agreed to do new testing

22    and convene and review and revise the IEP.  Subsequent to

23    November 15th resolution meeting on December 11th we did exactly

1    that.  We reviewed the clinical and the HD evaluation, classroom

2    observations (inaudible) social history and we the revised the

3    IEP.  All members of the team agreed.  We also indicated that we

4    would provide one-on-one tutoring--.

5        MR. DUBOW: As Comp-ed?

6        MR. DALTON: As Comp-ed.  So, all the issues in this

7    Complaint and all the relief that has been requested have been

8    complied with.  We are seeking a dismissal and we are seeking a

9    ruling by this hearing officer that this matter was

10   unnecessarily delayed and extended by counsel for DCPS.

11       MR. DUBOW:  Response.

12       MS. GAMBOLI:  Well first of all, if the - if there was a

13   meeting in December 11th, there wasn't a full team available and

14   that was suppose to be an issue that was initially raised.

15   There wasn't a special-education teacher.

16       MR. DUBOW:  Can you speak a little louder please?

17       MS. GAMBOLI:  There wasn't a special-education teacher—

18       MR. DUBOW:  Can you speak a little louder please?

19       MS. GAMBOLI: There wasn't a special-education teacher for

20   the student at that last meeting.  Nor have all the re-

21   evaluations been completed for this child. We're still waiting

22   for a speech and language evaluation.  And also, there is a

23   Vineland evaluation that's pending.  Neither of those have been

1   conducted.  So he hasn't been fully evaluated.  It was the

2   parent's understanding that the tutoring was provided as part of

3   his IEP.  What they have done to date is that they did two

4   additional evaluations.  They did social history and a clinical

5   ADHD evaluation, which in fact resulted in the change in his

6   disability classification.

7       MR. DUBOW:  What is his disability classification?

8       MS. GAMBOLI:  It was LD, and now they have MD for the LD,

9   ADHD, OHI.

10      MR. DUBOW:  Why do they need to Vineland him, if it's LD.

11      MS. GAMBOLI:  Well the student first of all the student has

12  a history of developmental delays.  His initial --.

13      MR. DUBOW:  How old is the student?

14      MS. BLAND:  Eleven.

15      Ms. GAMBOLI: He is, he is, he's eleven.

16      MR. DUBOW:  And why do you need to Vineland him?

17      MS. GAMBOLI: Because his initial, his (inaudible) both in

18  93 and 95 are falling in the MR range, the borderline range, and

19  he has a history of developmental delays.  He has IQ scores that

20  are in the borderline range, and he's from what we have been

21  able to observe, he's not making academic progress, and so we

22  have concerns.

23      MR. DUBOW: All right.  Let me look at these, your

5

1  Complaint.

2      MS. GAMBOLI:  But there's also not been a speech and

3  language -.

4      MR. DUBOW:  Wait - wait --. Let me look at your Complaint,

5  the relief you request.  So, let me just go through this briefly

6  with you in terms.  I am in the relief section.  Okay.  A social

7  history has been done right?

8      MS. GAMBOLI:  Yes.

9      MR. DUBOW:  A speech and language has been done?

10     MS. GAMBOLI:  No.

11     MR. DALTON:  Right.  First of all let me address the -

12     MR. DUBOW:  You said that relief has been granted?

13     MR. DALTON: Yes.

14     MR. DUBOW:  That you've given him what they requested so I

15  am just trying to determine if there is anything outstanding or

16  everything has been given.

17     MR. DALTON:  Where are you reading from?

18     MR. DUBOW:  On number three on her Complaint.

19     MR. DALTON: Yeah, but where is her Complaint?

20     MR. DUBOW:  Her Complaint is listed, it usually number two,

21  isn't it?

22     MR. DALTON:  Mine's not tabbed so let me just figure it

23  out.   What page are we on sir?

1          MR. DUBOW:  Page seven on the bottom.

2          MR. DALTON:  Paragraph three?

3          MR. DUBOW:  Yeah, three.  Okay, that talks about

4     evaluations.

5          MR. DALTON:  Okay, even though this is the complained of,

6     when we had the resolution meeting, and we when we had the

7     evaluation meeting --.

8          MR. DUBOW:  Yes.

9          MR. DALTON: It was not raised as being required.

10         MR. DUBOW:  I am not saying that - okay.  Now, you're -

11    there was an SEP meeting?

12         MR. DALTON:  Yes.

13         MR. DUBOW:  And, where is that here?

14         MR. DALTON: Well there was --.

15         MR. DUBOW: Or was that discussed in the --.

16         MR. DALTON:  That was discussed--.

17         MR. DUBOW:  Is that discussed in the resolution meeting?

18         MR. DALTON: It was discussed in the resolution meeting and

19    it was discussed at the IEP and the - neither the clinical nor

20    the psycho-educational we recommended to student.  Okay.  And

21    there was nothing in either one of them to suggest a speech --.

22         MR. DUBOW: Well - that's - okay, so.  The last IEP is

23    where?

1      MR. DALTON: The last IEP is our Exhibit number 8.  And the

2  meeting notes are preceding that at number seven.

3      MR. DUBOW:  Okay so the meeting - the IEP of 12/11/06

4  provided for fifteen hours of specialized instruction and the

5  only related services was occupational therapy?

6      MR. DALTON: Right.  Okay.

7      MR. DUBOW: Right.

8      MR. DALTON: Speech was never raised.

9      MR. DUBOW:  Okay. Then we go to the MDT notes, you say are

10  right behind it?

11      MR. DALTON: No.  Right in front of it at seven.

12      MR. DUBOW: Right in front of it, seven.  Now let me look at

13  that.  Okay.  The resolution meeting notes are right here.  Four

14  right?

15      MR. DALTON: Yep.

16      MR. DUBOW: Let me look at those Okay that doesn't, MN4

17  doesn't tell me which evaluations --.

18      MR. DALTON:  I know.

19      MR. DUBOW: You were going to do.

20      MR. DALTON: During a series of emails betweens Mr. Hamilton

21  and (inaudible) concerning the testing, and the advocate

22  indicated that the all the testing had been done they had

23  requested and were satisfied with the evaluations, and we would

8

1    like a rebuttal to (inaudible) requested (inaudible) Friday, so

2    we can supplement (inaudible).

3        MR. DUBOW:  I looked over the MDT notes for the IEP, which

4    was just done recently and that indicates that the team agreed

5    that the student is learning disabled.

6        MR. DALTON: Right.

7        MR. DUBOW:  And had ADHD issues and should be multi-

8    disabled, LD/OHI.

9        MR. DALTON: Right.

10       MR. DUBOW: Okay.  There is no indication in those notes,

11   pointed out if I missed it that he has speech impairment or

12   needs speech.  There is no indication in that notes that his

13   cognitive ability requires a Vineland.

14       MR. DALTON: In fact there was a discussion between the

15   parent and Dr. Flightus about the Vineland, and Dr. Flightus

16   said based on his testing, he did not see her son as MR he saw

17   him as LD and therefore indicated -.

18       MR. DUBOW: Where is that?

19       MR. DALTON: Well unfortunately he is not available to

20   testify --.

21       MR. DUBOW: Okay, his report or whatever is not in the

22   record?

23       MR. DALTON: Well, his report's in the record but his report

9

1    does not indicate that a Vineland is needed.

2        MR. DUBOW:  A Vineland is only needed to determine MR.

3        MR. DALTON: Right. And he determined the child is LD.

4        MR. DUBOW: Right.

5        MR. DALTON: So that is why I think we are entitled to a

6    directive finding in this case.  Because all of these issues

7    were resolved and we're still at a hearing.

8        MR. DUBOW: All right.  One issue is the evaluation. Okay.

9    Right. So all evaluations have been done except a speech and

10   language and a Vineland?

11       MS. DANIEL:  That is correct.

12       MR. DUBOW: The question then arise, whether those two

13   evaluations - whether he has a suspected disability in those

14   areas that necessitate an evaluation.

15       MS. GAMBOLI:  First of all there was no resolution that was

16   reached at the November 15th meeting and he did make some mis-

17   statements, because he is saying that there -.

18       MR. DUBOW:  Well let's at that.  I'm looking at that, that

19   is number four, right.

20       MS. GAMBOLI: And then second, one of the issue that we have

21   for the student is that the fact that his IEP hasn't been

22   implemented.  His IEP has not been implemented since during the

23   2005-2006 school year or for the 2006- 2007 school year to

10

1    present.

2        MR. DUBOW: What I am trying to determine Ms. Gamboli is to

3    narrow the – what issues have been resolved, first.  Okay.  If

4    we can get those off the table, then we can focus on what and

5    try to clarify what issue remains, if any.  So, as to the

6    evaluations, the only two are the speech and language and the

7    Vineland, according to you, okay?

8        MS. GAMBOLI:  That's what I said.

9        MR. DUBOW:  Those two have not been done, but according to

10   counsel for the charter school they are not necessary because

11   they are not, they are not the areas of suspected disability.

12   You have the burden of proof.  So if you want to present

13   evidence as to why those things are unnecessary, I'm not going

14   to --- I'll hold that.  Now the issue you are saying is that the

15   IEP was not implemented, is that correct?

16       MS. GAMBOLI: The IEP was not implemented--.

17       MR. DUBOW:  Which IEP are we talking about.

18       MS. GAMBOLI: None of these IEP's have been implemented at

19   the charter school. But, he arrived at the charter school, at

20   the commencement of the 2005- 2006 school year. At the time of

21   his enrollment, he had an IEP that was developed in February of

22   2004, had expired at that time. The charter school had the IEP,

23   they never convened a meeting to revise the IEP, they never

11

1  implemented the IEP. In March, on March 20, 2006 they finally

2  have a meeting to review and revise the IEP.

3      MR. DUBOW: So the issue of - the issue of - you're saying

4  that they didn't hold a meeting.  They have held a meeting

5  right?

6      MS. GAMBOLI: They -.

7      MR. DUBCW:  They held a meeting - I'm just trying to

8  identify the issues - they have held a meeting and they've

9  reviewed and revised the IEP. Is that correct?

10      MS. GAMBOLI: No.

11      MR. DALTON:  Okay. Now first of all, she's only plead on

12  page six.

13      MR. DUBOW:  Page six, yes.

14      MR. DALTON:  That current IEP on six.

15      MR. DUBOW: Okay, number—number one issue presented was

16  whether the charter school failed to convene a meeting to review

17  and revise student's expired IEP in a timely manner.  You have

18  had that meeting.

19      MR. DALTON:  We have had that meeting.

20      MR. DUBOW: And there is a new IEP, is that correct?

21      MS. GAMBOLI: The issue was done in a timely manner?

22      MR. DUBOW: But they've have held it, they've cured it.

23  They held a resolution and they cured it.

1     MS. GAMBOLI: The child went without an IEP between

2   September of 2005 to March of 2006.  So convened in March of

3   2006, revised the IEP, the IEP that they revised was not

4   appropriate.  But they did have a meeting in March of 2006.  The

5   only issues with the meetings, they didn't have a full team at

6   that meeting, there was no special-education teacher at that

7   meeting, and second, they didn't, they didn't, they haven't

8   resolved it because they haven't made up to the student the harm

9   as a result of not having an IEP in place.

10     MR. DUBOW:  They didn't do it in a timely manner, the issue

11  being is raising is that the student be entitled to some comp-

12  ed?

13     MS. GAMBOLI: The child - well.

14     MR. DUBOW: Well the failure to --.

15     MS. GAMBOLI: Part of time to a remedy.

16     MR. DUBOW:  Can you please not over talk me?  If they would

17  have done it in a timely manner, then you're saying the services

18  would have been delivered earlier?  The failure to do it in a

19  timely manner has resulted - is my question to you - has

20  resulted to provide certain services, is that what you're

21  saying?

22     MS. GAMBOLI: Well the child has received no services.  The

23  child has not received educational services and has only

13

1   received limited amounts of OT services in the past year and a

2   half.

3       MR. DUBOW: Now – the second – so that goes to number two

4   issue.  That they didn't fully implement the IEP's. Is that

5   right?

6       MS. GAMBOLI: Yes.

7       MR. DUBOW: Okay.  Now.  And then your number three issue is

8   your challenging this IEP that was developed in March 10, 06,

9   you're saying is not appropriate?

10      MS. GAMBOLI:  Yes.

11      MR. DUBOW:  And then you're saying that the team wasn't

12  appropriate?

13      MS. GAMBOLI: Yes.

14      MR. DUBOW:  Let's hear this.

15      MS. GAMBOLI:  Those are the issues, and then the

16  evaluations.

17      MR. DUBOW: Now, counsel for charter school indicates that

18  comp-ed in some form has been provided?

19      MR. DALTON: One-on-one tutoring.

20      MR. DUBROW:  Huh?

21      MR. DALTON: One-on-one tutoring.

22      MR. DUBOW: One-on-one tutoring has been provided. Okay,

23  does that address sufficiently the issue of failure to promptly

14

1    implement the IEP?

2       MR. DALTON: Yes because there was an agreement at the

3    resolution meeting with representation of the advocate, Mr.

4    Hamilton that the parent and he were in agreement with the

5    proposed resolution of the issues.

6       MR. DUBOW: Where's that?

7       MR. DALTON:  Well, we have to put on testimony.

8       MR. DUBOW:  All right. Then we have to put on testimony.

9       MR. DALTON:  Well, with regard to the issue of the

10   evaluations, unless parent's counsel has an expert, I think

11   those issues are resolved on the pleadings.  Because she can't

12   proffer that their needed when she doesn't have a witness that

13   can testify.

14      MR. DUBOW: Well I don't know what she's got.  All I am

15   saying, she has the burden of proof.

16      MR. DALTON:  Right.

17      MR. DUBOW: Okay. So.  You're saying that these two

18   evaluations were not done, then you have the burden to show me

19   why this is in the area of the suspected disability.

20      MR. DALTON: Right.

21      MR. DUBOW.  So, I think, All right.

22      MS. GAMBOLI:  The other issue is that he has made some

23   statements that there was - that they have provided tutoring as

1    compensatory education?  That was not our understanding at the

2    IEP meeting.  I was our understanding that they were providing -

3    that he needed the one-on-one tutoring to meet his educational

4    needs, not as compensation as to what he wasn't provided

5    previously.

6        MR. DUBOW:  I have to take some evidence here, so, we will

7    proceed and you wish to make a brief opening statement, you can.

8        MS. GAMBOLI: I do have another preliminary matter.

9        MR. DUBOW: Yes.

10       MS. GAMBOLI:  And my preliminary issue is that we have

11   filed a Motion to Compel this special-education teacher of the

12   student, and we don't see that person present here today.

13       MR. DUBOW:  No. I don't know.

14       MS. GAMBOLI:  And the motion that we filed.

15       MR. DUBOW: Maybe the person is available by phone or

16   whether she is here?

17       MR. DALTON:  She is not available.

18       MR. DUBOW: Okay, she is unavailable.  I don't know what --.

19       MS. GAMBOLI:  We had filed a Motion to Compel.  We had

20   filed it through the Student Hearing Office, and their forms and

21   it was signed off and provided and so what we would ask is the

22   ability to proffer what we believe she would have testified to.

23       MR. DUBOW:  Well I'll take that up when the issues comes up

1    in the presentation.  Okay.  Do you have anything further at

2    this time?  Do you wish to make a short opening?

3         MR. GAMBOLI:  I do.  I do.  Some of the statements we've

4    already addressed.  The bottom line for T██████ is that he was

5    enrolled Mary McLeod Bethune at the commencement of the 05 - 06

6    school year.  At the time of enrollment, he did have an IEP that

7    was developed in February 9, 2004 that provided him with ten

8    hours of instruction per week. That IEP had expired at the time

9    that he was enrolled in the school, but the charter school never

10   made any effort to revise the IEP in a timely manner to

11   implement the IEP and they never comprehensively re-evaluated

12   the student.  There a meeting on March 10, 2006.  At that

13   meeting they didn't have a special-education teacher, which is a

14   requirement under the law and so the team was not appropriate.

15   Not only that, but the IEP that they developed was not

16   appropriate.  And he has, the student has never been

17   comprehensively evaluated and we are concerned about the fact

18   that he doesn't have a speech and language based on the fact

19   that reading and comprehension and spelling and expression has

20   all been his major areas of weakness. He struggles and he

21   continues to struggle in those areas.  He is performing

22   significantly below level, four to five years below level and he

23   doesn't seem to be making progress in those areas.  And that was

1   one of the things that a special-education teacher could testify
2   to because it is something that the parent, and something that
3   the parent has observed as well that that is his area of
4   weakness.  They have done some of the testing but they haven't
5   done all of the testing that is required for this child to make
6   his evaluation comprehensive and its his right to have
7   comprehensive evaluation so that all areas of suspected
8   disability are addressed.  While they convened a meeting in
9   December of 06 in response to the hearing request, they did not
10  a full team present, even at that meeting.  And that's a
11  concern.  Especially because it has resulted in the fact that a
12  number of the parents concerns cannot be fully addressed, such
13  as his need for counseling which was recommended and isn't a
14  part of his IEP, and the behavior issues that were raised by his
15  teacher as well.  Those have never really been addressed by a
16  team because you haven't had a full team and you haven't had his
17  special-education teacher in particular.  Now, it is our
18  understanding that since T█████ enrolled, as the parents
19  understand this, since he enrolled at Mary McLeod Bethune, he
20  has not the received the specialized instruction that he was
21  supposed to be receiving.  He has not, he was supposed to be
22  receiving ten hours a week from – ten hours a week of special-ed
23  instruction which he hasn't receive any of that in 05 –06 school

18

1   years.  In addition, they – even though they did make some

2   changes, the parent authorized implementation but did not agree

3   to the IEP.  They never put into place any of the accommodations

4   of the modifications with regards to the ADHD.  And he still the

5   getting the … the… instruction that he is supposed to be getting

6   at his school.  And bottom line, he is not receiving a free and

7   appropriate public education.  There are not implementing his

8   IEP, they are not doing things in a timely manner.  He had a

9   right at the commencement of the school year for them to have a

10  current program in place for him.  And so he has to wait until

11  the school year is almost over before they address it? His

12  progress as you see shall indicate that the teachers saying that

13  they will modify his work to address IEP goals, and this is the

14  midway and this was done in October and November.  So obviously

15  they aren't implementing the IEP goals, if they, simply that

16  they are going to that in the future. And the sad thing is for

17  T█████ is that he is struggling.  He is struggling

18  academically particularly in the area of reading. He is being

19  teased by his peers.  His self-esteem is plummeting because he

20  can't do that work.  And that's why we are here today.

21      MR. DUBOW:  Mr. Dalton.

22      MR. DALTON:  Exhibits nine was sent to Mr. Hamilton on

23  December 14th.  In that email to Mr. Hamilton and Ms. Gamboli

19

1    indicates that she assumes that the Complaint will be withdrawn.

2    She told me the issues had been addressed and no other issues

3    were raised at the meeting.  Mr. Hamilton is did not respond to

4    that email to day no, you're incorrect, we have other issues, we

5    need to address those issues. Nothing like that.  No

6    communication with Mr. Hamilton that the statement might

7    (inaudible) is untrue.  That's Exhibit number ten.  Here is

8    another email, indicating that we want you to check over

9    everything to be sure that nothing was missed.  Have the parents

10   sign the IEP, contact me directly if there are any problems.

11   Again, the assumption that the Complaint will be withdrawn

12   because all issues have been resolved.  This is now the second

13   email.

14        MR. DUBOW.  Okay.

15        MR. DALTON: Again, no contradictions by Mr. Hamilton.

16        MR. DUBOW:  No response.

17   .  .. MR. DALTON: No response.  Number eleven.  Another email.

18   Per their conversation, again, they have acknowledgement that

19   the hearing is still set for next Wednesday, since all the

20   issues have been addressed, I expected the Complaint to be

21   withdrawn.

22        MR. DUBOW:  Yep.

23        MR. DALTON:  Again, no contradiction of that email.

1    Finally since we don't hear from Mr. Hamilton, we write Ms.

2    Gamboli.

3        MR. DUBOW: Is that number twelve?

4        MR. DALTON:  That is correct. Saying we would like to know

5    why we are still going to a hearing.  Finally Ms Gamboli is

6    saying, the same thing she is saying in the hearing today.  Ms.

7    Gamboli did not attend the resolution meeting, Mr. Hamilton did.

8    Now with the implementation of the IEP, since Gamboli did not

9    have her client sign the IEP, we cannot implement it.  Ms

10   Gamboli (inaudible) by writing out the - even though we don't

11   agree, we would like you to implement it.  The fact of the

12   matter is school districts don't implement IEP's, that are not

13   authorized by the parent.  Counsel know that, yet she wants us

14   to implement this and not implement, regardless of what the

15   parent says, (inaudible), yet at the meeting the parent was in

16   agreement and was very happy that we were going to provide one-

17   on-one tutoring to make up for past issues.  That's the whole

18   purpose of the new law.  The whole purpose of the new law is to

19   resolve issues so that we don't have to have hearings. Yet the

20   practice over and over and over again, that this counsel to

21   ignore resolution meetings and to proceed with hearings.  That

22   is what we are objecting to.  And I don't think we could have

23   documented the situation any better than three evenings. Not

1  one, not two, but three.

2      MR. DUBOW: Well, as to the 11-06 IEP, Okay.  So that's new

3  IEP that just currently went into effect.

4      MR. DALTON: Right.

5      MR. DUBOW: I understand from Ms. Gamboli which she is

6  complaining about is the previous IEPs.

7      MR. DALTON:  Yes I understand that.

8      MR. DUBOW:  Is that correct?

9      MS. GAMBOLI:  The 3/10 IEP is what was raised in our

10  Complaint.

11      MR. DUBOW: The previous IEP's were not implemented, is that

12  your Complaint?

13      MS. GAMBOLI: This all occurred –

14      MR. DUBOW:  It's simply yes or no.

15      MS. GAMBOLI:  This all occurred after the Complaint, so

16  yes.

17      MR. DUBOW:  So yes, they were provided.

18      MR. DALTON: That's the purpose of the one-on-one.  Now she

19  says its part of the IEP, it is not part of the IEP.  I mean it

20  is part of the IEP, but that's not the reason we offered it up.

21  The reason we offered it up was to resolve all the issues.

22      MR. DUBOW:  So the one-on-one is the form of comp-ed for

23  failure to fully implement the previous IEP or whatever?

22

1      MR. DALTON:  To resolve all the issues.

2      MR. DUBOW: Does it indicate the extent or how long it's

3   going to go.  Now it says one-on-one in the notes right?

4      MR. DALTON:  It says it in the IEP front cover page, so

5   there would be no mistake about it.  Right underneath one-on-one

6   tutoring for reading.

7      MR. DUBOW:  Where do you have it?

8      MR. DALTON:  Right here.

9      MR. DUBOW:  One-on-one (inaudible) student reading.

10     MR. DALTON:  Just in case the student moved or something,

11  we wanted it to be --.

12     MR. DUBOW:  So that's in addition the fifteen hours.

13     MR. DALTON:  Ahhh—I wasn't at the meeting.

14     MR. DUBOW: So.  Okay.

15     MR. DALTON: But it was a very specific point, it was

16  something that we were trying to address, it was something that

17  the parent was really concerned about, the low reading scores of

18  the child and given the test scores I can understand that

19  concern. But again, the objective of the meeting was to resolve

20  the issues and we were under apparently the mistaken belief that

21  the goal was not achieved. Yet all the affirmations at the

22  meeting and three subsequent IEPS are emails all confirm that

23  understanding.  Now all of the sudden, we have a total different

1    reality when we come to the hearing.  And that is what I am

2    objecting to. If you are saying to us, No, you're wrong. You are

3    incorrect.  You have an obligation to something.  You can't sit

4    back and ambush, which is exactly apparently what, has happened.

5    The rules don't provide for that.  The whole reason congress

6    changed this was to stop, this type of behavior. Yet it

7    continues, and the reason it continues is because it is not

8    being punished.

9        MR. DUBOW:  Let me ask you this question. The two types it

10   seems you are requesting is one question on these two

11   evaluations, which we'll get some information about as to their

12   necessity, and the other issue is whether or not this one hour

13   of tutoring is the comp-ed that would satisfy any of the failure

14   to implement it.  Because if that what you are requesting, then

15   that is what they are offering.  And there is no basis for me to

16   be involved with this. There is no basis for a hearing on that

17   issue.

18       MR. GAMBOLI:  Well there is also the issue about the IEP.

19       MR. DUBOW:  I'm going back - I just want to deal with the

20   comp-ed issue.  You are saying IEP was not implemented, correct?

21       MS. GAMBOLI:  Yes.

22       MR. DUBOW:  As a result of that, you are requesting comp-

23   ed.  He is saying that I am offering, and he is posing to the

24

1  first page of the IEP, that we are offering one hour a week of

2  tutoring individualized tutoring in the form, and that's their

3  form of comp-ed.  Does that resolve that issue or are you

4  requesting more, and if you are requesting something more, you

5  have the burden of proof to come forward and show me how much

6  more it is necessary.  So, we'll put on your witnesses, but you

7  better have something more than what he is offering, because the

8  law indicates that if he grants you relief, and you come into

9  this hearing and I don't grant you anymore than he asked you,

10  I'll cut you off at the fees.

11      MR. DALTON:  The other issue is.

12      MR. DUBOW:  I want to know the answer to that question. Is

13  the one hour of tutoring that is in the IEP satisfy, meets the -

14  resolves that issue of the failure to implement.

15      MS. GAMBOLI:  No.

16      MR. DUBOW:  If you have proof then, call your witness.

17  Call your witness to address that issue.

18      MS. GAMBOLI:  I intend to call my witness.

19      MR. DUBOW:  Call now.

20      MS. GAMBOLI:  I would like a chance to present my case in

21  the fashion --.

22      MR. DUBOW:  Well but the only issue, the only two issues

23  that I have before me is the issue of the Vineland and the

25

1    speech and language and whether if the   -- he's admitting that

2    there's a failure - they're saying—they're basically saying okay

3    if we failed to fully implement the IEP, we offering you one

4    hour of tutoring individualized as a comp-ed.  So you have - and

5    you're saying that doesn't do it.  Well, call you witness and

6    tell me why that doesn't do it.

7        MS. GAMBOLI:  Part of the problems that well -.

8        MR. DUBOW: Well call your witness--.  I need evidence, I

9    don't need discussion.

10       MR. GAMBOLI:  First of all the issue is whether or not the

11   student has been denied FAPE, and I don't want -.

12       MR. DUBOW - Not. Not. Not. Not.  Let's --. This issue Ms.

13   Gamboli.  Don't dance around me.  I asked you to put on a

14   witness to --. That is why I started in the beginning. I want to

15   focus on what the issue --.  You give me boilerplate a bunch of

16   issues; I want to know exactly what the issues you want me to

17   decide.  I have two issues here.  So call the witness and

18   address those issues.

19       MS. GAMBOLI:  Part of the problem is -.

20       MR. DUBOW:  Your opening statements are done.  Call your

21   witness.

22       MS. GAMBOLI: Part of the problem is that the witnesses that

23   we filed a Motion to Compel that was signed off by a hearing

1  officer isn't present today and apparently is unavailable.

2     MR. DUBOW:  Do you have any other witnesses.  He said that

3  that witness is unavailable.  Do you have any witness to call to

4  address these two issues?  If you do, please call the witness.

5     MR. GAMBOLI:  The witness that we have, we filed a motion

6  to compel that was signed by a hearing witness officer.

7     MR. DUBOW:  You're not answering my question.

8     MS. GAMBOLI: If we had the opportunity--.

9     MR. DUBOW:  You're not answering my question.

10     MS. GAMBOLI: If she were here, we believe she would

11  testify.

12     MR. DUBOW:  You're not answering my question; you're over

13  talking me again. I just asked you today.  You said that witness

14  is not available.  I can make an inference from that maybe.  But

15  the question now is you have some people sitting here, are they

16  to be called as witnesses to address these two outstanding

17  issues?  Whether or not a Vineland in speech and language is

18  necessary, and whether they need to be ordered, and whether or

19  not additional comp-ed, the one hour of week of tutoring is

20  required. So call your witness.

21     MS. GAMBOLI:  I would like to call my witness. I would like

22  to invoke the rule on witnesses.

23     MR. DUBOW:  All right. Fine.


27

1    MR. DALTON:  (inaudible).

2    MR. DUBOW:  All right.  So one of your people can stay, the

3  other one --

4    MR. DALTON:  Just go, go, go to the lounge area and wait

5  there.

6    MR. DUBOW:  Okay.  Are you calling Mr. Hamilton first?

7    MR. GAMBOLI:  I am going to call Mr. Hamilton.

8    MR. DUBOW:  All right then he can stay.  Call him now.

9  Please raise your right hand.  Do you swear or affirm that the

10  testimony you are about to give in this case is the truth?

11    MR. HAMILTON: I do.

12    MR. DUBOW:  State your name for the record.

13    MR. HAMILTON:  Corey Hamilton.

14    MR. DUBOW: Your position?

15    MR. HAMILTON:  Educational Advocate.

16    MR. DUBOW:  Your witness.

17    MS. GAMBOLI:  Mr. Hamilton where are you employed?

18    MR. HAMILTON:  I work as an educational advocate at James

19  Brown & Associates.

20    MS. GAMBOLI:  And how long have you been employed at James

21  Brown & Associates?

22    MR. HAMILTON: For ten months.

23    MS. GAMBOLI:  And what is your position?

1     MR. HAMILTON:   I work as an educational advocate.

2     MS. GAMBOLI:   And what qualifies you for that position?

3     MR. HAMILTON: I have a Bachelor of Science in early

4     childhood development education, Masters in special-education in

5     emotional and behavior disorders and I'm currently (inaudible)

6     in school psychology.   I work as an elementary and high school

7     special-education teacher and as a high school special-education

8     coordinator.

9     MS. GAMBOLI:   And where did you work as a special-education

10    coordinator?

11    MR. HAMILTON:   In D.C.

12    MS. GAMBOLI:   Are --.

13    MR. DALTON: The witness does not qualify under the decision

14    in the Court of Appeals for Reid, to express opinions, and

15    required of him (inaudible).

16    MS. GAMBOLI:   There was not an opinion asked for by this

17    student as of yet.   There is nothing --.

18    MR. DALTON:   He is not going to give opinion, because he is

19    unqualified, that is why I raise the objection, if you have

20    another witness who would qualify under the Reid standard and

21    that's fine.   This witness is not qualified.

22    MS. GAMBOLI:   Counselor's objection of the interruption of

23    cross-examination is inappropriate as this time he is not the

29

1    Hearing Officer, and it's appropriate.  I should be allowed to

2    continue calling my witness.

3        MR. DUBOW:  Can you proceed.  At this time he hasn't given

4    any opinion on - I don't have any basis to know, I'll hear it.

5    You can proceed.  But he is not qualified as an expert witness.

6        MS. GAMBOLI:  He is testifying as his role as an

7    educational advocate. He participated in meetings and have

8    knowledge on this case.

9        MR. DUBOW:  All right.  All right. You can call him and

10   I'll determine what weight, if any to give to what he says.

11       MR. DALTON:   (Inaudible).

12       MR. DUBOW: The objecting. Yeah, and he cannot give an

13   expert opinion as to - he is not qualified, as to - she is not

14   qualifying him as an expert witness.  I understand that.

15       MR. DALTON: Yeah, but she can't (inaudible).  This - Reid

16   has stated you need an expert and parent's counsel has been

17   trying unsuccessfully to bypass that because there is another

18   problem.  And the other problem is that the Supreme Court has

19   now said that experts and expenses for which cannot be

20   reimbursed.  And while as a previous insurance attorney, I can

21   fully appreciate that dilemma.  And I personally do not agree

22   with the opinion. Because with the shifting of the burden of

23   proof, and the denial of reimbursement for experts, the parents

1    who cannot afford experts are being treated differently under

2    the law than parents who can't.

3        MR. DUBOW:  I understand that counselor, but.  But if he

4    has some factual information, factual – on the issue of comp-ed,

5    I can hear it.  If he has made some observations to indicate

6    that the often the IEP – I don't know what he is going to say.

7    But factually, I can hear that.  But I am not taking any expert

8    opinion from him, sir.

9        MR. DALTON:  I understand that.  Here's my problem.

10       MR. DUBOW:  I don't know what he is going to say.

11       MR. DALTON: But it doesn't really matter what he says

12   because, that is why I am making the objection.  I waited till

13   she effectively, it would have been my voir dire, she went

14   through his qualifications, and she went through his employment.

15   As to the issue as to whether or not the evaluations are

16   necessary, he clearly cannot provide evidence.  Now with regard

17   to the issue of whether or not our comp-ed plan is sufficient,

18   again, either the team can't determine that until after we given

19   it to him, had a measurable amount of time to measure his

20   progress, and then determine whether it needs to be increased or

21   dropped. He cannot, no matter what our past sins were, make a

22   determination that this is the correct amount. Because no one

23   can unless--.

1    MR. DUBOW:  I understand that.  And I'm not disagreeing,

2    I'm not disagreeing with that point.  I just want to hear if he

3    has any factual information as to on the comp-ed issue. I'll

4    hear it.  I don't know what it is.

5    MR. GAMBOLI: In a brief response, counsel is

6    misinterpreting the Reid case.  The Reid case does not require

7    expert testimony, and also I just want to point out to, that

8    precisely the reason why the parent reserve the right to address

9    the compensatory education, is that, this piece is about whether

10   the student has been denied FAPE as far as compensatory

11   education and not – that's another issue that's a remedy.

12   That's not the issue as in terms of whether the school system

13   has done what they were obligated to do for the child.  May I

14   proceed?  So Mr. Hamilton are you familiar with the student by

15   the name of T██████ B████?

16   MR. HAMILTON:  Yes I am.

17   MS. GAMBOLI:  And how are you familiar with T██████?

18   MR. HAMILTON:  I worked as his family education advocate.

19   MS. GAMBOLI:  And what documents have you reviewed in

20   connection with T██████ B████?

21   MR. HAMILTON:  His previous IEP's, psycho-ed evaluations,

22   clinical, ADHD evaluations, social history and neuro-

23   psychological.

1    MS. GAMBOLI:  And what meetings have you attended on behalf

2  of the student?

3    MR. DUBOW:  I'm sorry what was the question?

4    MS. GAMBOLI:  What meetings have you attended on behalf of

5  the student?

6    MR. HAMILTON:  Resolution meeting and an IEP meeting in

7  December of 06.

8    MS. GAMBOLI:  At the resolution meeting, was there a

9  resolution meeting?

10    MR. HAMILTON: No there wasn't.

11    MR. DALTON:  Objection. Not relevant to the hearing

12  officer, (inaudible) as what he testifies to. (Inaudible)

13  whether or not Mr. Hamilton has factual information in regard to

14  whether (inaudible) offered by the school and (inaudible).

15    MR. DUBOW:  I'll sustain the objection. Go ahead.

16    MS. GAMBOLI:  Well I'd like to respond to that to make a

17  proper record.  Parent has a right to establish a proper record

18  through testimony.  These were allegations that he made from the

19  beginning that there was a resolution meeting, and there was no

20  resolution.

21    MR. DUBOW:  Go ahead.  You can proceed now, go ahead.

22  You are saying there was no resolution at this meeting. Go

23  Ahead.

1      MS. GAMBOLI:  And, were evaluations discussed at the

2   meeting.

3      MR. HAMILTON:  Yes there were.

4      MS. GAMBOLI:  What evaluations were discussed?

5      MR. HAMILTON: In the request was the OT, the psychological,

6   clinical the Vineland, ADHD and his speech and language.

7      MS. GAMBOLI:  And why was the speech and language

8   evaluation requested?

9      MR. HAMILTON:  Because of the student's past history of low

10   scores from reading, and different areas of reading including

11   spelling, verbal comprehension, reading comprehension, those

12   concerns of his perception of being able to receive information

13   and put information out.  So that's why the concern with speech

14   and language was raised.

15      MS. GAMBOLI:  And what was the suspected disability?

16      MR. HAMILTON:  If the disability is LD, it's multiple

17   disabilities.  LD and LHI.

18      MS. GAMBOLI:  But what was the suspected disability for the

19   speech and language evaluation?

20      MR. HAMILTON:  Because of the low scores on the psycho-ed,

21   previous and the one that was done in 05, they were so low that

22   what one could conclude that they may be in borderline mild MR

23   range.

34

1      MS. GAMBOLI:  And why was the Vineland requested?

2      MR. HAMILTON:  The Vineland was requested because of the

3  continued low scoring from comparing the two psychologicals--.

4      MR. DUBOW:  So, Ah---.  Is the psycho-ed in the record?

5      MS. GAMBOLI:  On both the 2003?

6      MR. DUBOW: Is that the MM1.

7      MS. GAMBOLI: The psycho-educational evaluation is in

8  Exhibit -- I think you are looking at counsel Exhibits.  There

9  are several.  There is Exhibit number 5; there is a 2003 psycho-

10  educational evaluation--.

11      MR. DUBOW: 2003 is a little old.  So - what do you have

12  that--- I have one from November 17, 05.  Is that the most

13  recent one?

14      MS. GAMBOLI: Yes.

15      MR. DUBOW:  All right. Okay so I can look at that to

16  determine what the professional evaluator said relating to this

17  issue. I haven't had an opportunity, but I will.

18      MS. GAMBOLI:  Well there were four evaluations that go to

19  that issue, and it was the psycho-educational that was done in

20  2003, the neuro psychological evaluation was done in 2003, and

21  2004, and the neuro developmental pediatric that was done in

22  2003, all of those speak to the student's need.

23      MR. DUBOW: That was over three years ago.

1      MS. GAMBOLI:  Well that's problem the student has not been

2   comprehensively evaluated so all of his needs have never been

3   fully addressed.  Irregardless of when the evals are there, he

4   has a pattern.

5      MR. DUBOW:  I can look at these documents and make a

6   determination whether or not they indicate that the speech and

7   language or Vineland are necessary.  This witness can't. He's

8   not an expert in these areas.

9      MS. GAMBOLI:  And actually I have nothing further of this

10  witness, -- well actually I do. I'm sorry I do have something

11  further.  Did you participate in a meeting in December of 2006?

12     MR. HAMILTON:  Yes.

13     MR. DUBOW: Which meeting is this?

14     MS. GAMBOLI:  In December 2006.

15     MR. DUBOW:  Is this the resolution meeting?

16     MR. HAMILTON:  No, this is the IEP meeting. Yes.

17     MS. GAMBOLI:  And was a full team present at that meeting?

18     MR. HAMILTON:  No there wasn't.

19     MS. GAMBOLI:  Who was not available at the meeting?

20     MR. HAMILTON:  There wasn't - his special-education teacher

21  present?

22     MR. DUBOW:  Is that in the record?  Where in the record is

23  that?

1        MS. GAMBOLI:  That is in the MBT meeting notes?

2        MR. DUBOW:  Where is that document?

3        MS. GAMBOLI:  Parent's Exhibit Number 34.

4        MR. DUBOW:  All right.

5        MS. GAMBOLI:  I didn't get to his IEP, what issues still

6   need to be resolved?

7        MR. HAMILTON:  Well because there were some concerns about

8   the speech and language, that wasn't addressed.  As far as the

9   social history support, the counseling, that still needs to be

10  addressed, hopefully at the up-coming meeting.  There was some

11  discussion about the counseling, however, there were no

12  definitive decisions made upon the implementation of counseling

13  services that were recommended in the social history evaluation?

14       MS. GAMBOLI:  Was counseling recommended for the student?

15       MR. HAMILTON:  Yes.

16       MS. GAMBOLI:  And who recommended it?

17       MR. HAMILTON:  It was recommended by the team, in the

18  social history report it was recommended and Ms — Dr. Flightus

19  was also at the meeting and he was in agreement that the student

20  needed counseling also.

21       MS. GAMBOLI:  So the clinical evaluator and the social

22  worker - was the social worker present at the meeting?

23       MR. HAMILTON:  No, the social worker was not present.


                              37

1        MS. GAMBOLI:  How did she make the recommendation?

2        MR. HAMILTON:  It was in the report.

3        MS. GAMBOLI:  And that has not yet been addressed yet for

4   the student?

5        MR. HAMILTON:  No.

6        MS. GAMBOLI:  In terms of the compensatory education, was

7   compensatory education addressed at the IEP meeting?

8        MR. HAMILTON:  Comp-ed was never discussed at the December

9   06 meeting.

10       MS. GAMBOLI:  And was one-on-one tutoring discussed?

11       MR. HAMILTON:  One-on-one tutoring was discussed as an

12  additional service to the IEP, but not comp-ed.  If there were

13  to be comp-ed I would have received a formal comp-ed plan, or

14  there would have been some discussion of hours, but that was

15  never discussed.  And the notes clearly state, I am reading the

16  meeting notes from the 12/11/06 meeting, and it clearly states

17  that the team agreed to include one hour of individualized

18  tutoring in reading in order to compensate for his additional

19  needs, not additional services lost.  And it says included, not

20  compensated for.  So come ed was never discussed at meeting.

21  And on the front page of the IEP, it's listed as one hour of

22  individualized tutoring in reading.  He hadn't received services

23  in other areas also, so, why, if there was comp-ed, it would

1    have addressed the math, the reading and any other services that

2    were missed, it only discussed reading because the team was in

3    agreement that the student needed extra help in reading, that is

4    why it was added to the IEP, not for comp-ed.

5        MS. GAMBOLI:  I have nothing further.

6        MR. DALTON:  Mr. Hamilton, let me recap your testimony

7    under direct, If I am incorrect, please correct me.  I

8    understand that your testimony is that the team discussed

9    counseling that was recommended by the social worker on her

10   report and Dr. Flightus concurred and that's why counseling was

11   given to the student.  Is that the correct interpretation of

12   your testimony?

13       MR. HAMILTON:  No. Where are you reading this from?

14       MR. DALTON: I'm not reading anything, I am recapping your

15   testimony?  Did I correctly recap it?

16       MR. HAMILTON:  There was discussion about counseling at

17   source.

18       MR. DALTON:  Please explain to me why then the notes

19   reflect something different from your testimony?  The note say

20   that we should address the reading problem rather than implement

21   psychological counseling because that would address the

22   secondary problem.  That is in direct contravention to your

23   testimony, sir.

1    MR. HAMILTON:  The notes don't capture the entire

2    conversation.  There was conversation of the students low self-

3    esteem and confidence.  And in the report it actually states

4    that counseling services should resume.

5    MR. DALTON:  Is this like your response to the three

6    emails? Sir, that until today, you don't reflect?

7    MS. GAMBOLI:  Objection. Objection. Argumentative, it

8    doesn't, it exceeds the scope of the direct.

9    MR. DUBOW: It's allowed, go ahead.

10   MR. DALTON: Why is it that you read over the notes,

11   correct.

12   MR. HAMILTON: Yes.

13   MR. DALTON: Why didn't' you correct them at that time, why

14   didn't you raise this issue on the three occasions that you were

15   given an opportunity to do so, through the emails to you, but no

16   these notes are incorrect?

17   MR. HAMILTON:  The notes and the discussion we had, first

18   of all the notes don't cover the entire conversation counseling,

19   however, the team was in agreement that the student needed

20   counseling.

21   MR. DALTON:  Why sir did you not correct these notes on the

22   four occasions you were given an opportunity to do so?

23   MR. HAMILTON:  First of all, I did receive emails and I did

1  speak with Ms. McCall over the phone.  I didn't receive the

2  actual IEP until last week.  We didn't get the document until

3  last week.  The meeting was in December.  It wasn't completed

4  the date of the meeting and they were supposed to forwarded over

5  to our office and we only got it last week.

6      MR. DALTON:  Do you recall a conversation with Mr. McCall

7  and you acknowledge receiving the emails?

8      MR. HAMILTON:  Yes, last week.

9      MR. DALTON: While it may be true that you did not receive

10  the IEP, you certainly did receive the emails.

11      MR. HAMILTON:  Yes and spoke over the phone before the

12  Christmas Holiday.

13      MR. DALTON:  And you did not refute her contention that all

14  the issues were resolved, did you?

15      MR. HAMILTON:  I didn't have the document to look at.

16      MR. DALTON:  Why do you need the document sir, when she

17  contending that the issues are resolved, and you're saying they

18  are not resolved.

19      MR. DALTON:  All you have to say to us just that --.

20      MS. GAMBOLI:  And again I would object to him, he is being

21  argumentative.

22      MR. HAMILTON:  I don't see the documents so I won't make

23  decisions without the evidence my hands?

1      MR. DALTON: What you're saying is when someone comes back

2   to you --.

3      MS. GAMBOLI:  Again, I would object.

4      MR. DUBOW:  Overruled.

5      MS. GAMBOLI:  I have a right to object.

6      MR. DALTON:  You do not have a right to interrupt my

7   testimony.

8      MS. GAMBOLI:  I have a right to raise a valid objection.

9      MR. DUBOW: All right.  One second.  What is the basis of

10   your objection?

11      MS. GAMBOLI:  My objection is that the counsel is being

12   argumentative with this witness.

13      MR. DUBOW:  I have overruled it.

14      MR. DALTON: When someone likes you and says to you, we have

15   resolved all these issues.  I don't know why we are going to a

16   hearing, is it your testimony that you cannot tell them without

17   the documents if that is not true?

18      MR. HAMILTON: I'm not going to -.

19      MR. DALTON: YES OR NO!

20      MR. HAMILTON: If I--.

21      MR. DALTON:  YES OR NO SIR!

22      MR. HAMILTON:  Ask the question again.

23      MR. DALTON: Is it your contention that when someone

1    repeatedly states to you that there are no issues that you need

2    documentation to say to them, No M'ame, that is not the case,

3    yes or no?

4        MR. HAMILTON: I would need documentation.

5        MR. DALTON:  No further questions to this witness.

6        MR. GAMBOLI: Mr. Hamilton, did you take the meeting notes

7    at the meeting?

8        MR. HAMILTON:  Meeting notes were taken at the meeting,

9    yes.

10       MS. GAMBOLI: Who took the meeting notes?

11       MR. HAMILTON:  I'm sorry Miss --, the Special-education

12   Coordinator.

13       MS. GAMBOLI:  I have nothing further.

14       MR. DUBOW: Thank you very much.  Call your next witness.

15       MS. GAMBOLI: The next witness I have present is the parent.

16   There is the issue with regards to the teacher that is missing.

17   I would like the chance to proffer what I think the teacher

18   would have testified to, because it does go to the issue of the

19   compensatory education, so that's a remedy, but it does go to

20   the harm and the denial of FAPE and the harm that has resulted

21   as resulted as a denial of FAPE.

22       MR. DALTON:  Those issues are not relevant, we've already

23   agreed that the student services were not provided, that's why

43

1  we offered the one-on-one. So you know, the issue comes down to

2  the clerical case the issue that the Hearing Officer must

3  clarify.  As the petitioner who has the burden of proof, has the

4  petitioner provided any evidence that the comp-ed plan that we

5  have provided is not adequate.

6      MR. GAMBOLI:  (inaudible) provided.  There has not been a

7  comp-ed plan provided. So that's --.

8      MR. DUBOW: --Well.  Wait a minute.  Wait a minute. Ms.

9  Gamboli, you indicated that you'd call a witness, to address the

10 issue to address the two issues.  So I've given you that

11 opportunity. So call your next witness.

12     MS. GAMBOLI:  The next witness I have is the parent.

13     MR. DUBOW:      Hold the microphone in front of you.  Good

14 Morning.  How are you? Please raise your right hand.  Do you

15 swear or affirm that the testimony you are about to give is the

16 truth?

17     MS. BLAND:  Yes.

18     MR. DUBOW: State your name for the record?

19     MS. BLAND: Terry Denise Bland.

20     MS. DUBOW:  Now your counsel will ask you some questions.

21     MS. GAMBOLI: What is your relationship to T██████ B███.

22     MS. BLAND:  I am his mother.

23     MS. GAMBOLI:  And where does T█████ currently attend

1    school?

2        MS. BLAND:  Mary McLeod Bethune Public Charter School.

3        MS. GAMBOLI: And how long has he been in attendance at Mary

4    McLeod Bethune?

5        MS. BLAND: This is his second school year.

6        MS. GAMBOLI:  And, so he started in 2004 -2005?

7        MS. BLAND:  That is correct.

8        MS. GAMBOLI: Or 2005 -2006?

9        MS. BLAND:  2005, yeah.

10       MS. GAMBOLI:  Where he did attend in 2004 - 2005?

11       MS. BLAND:  God's Universal Church.

12       MS. GAMBOLI: And has he ever been identified as being

13   eligible for special education?

14       MS. BLAND:  Yes he has.

15       MS. GAMBOLI:  And when was identified?

16       MS. BLAND:  I believe it was 2003.

17       MS. GAMBOLI: And where was he identified?

18       MS. BLAND:  At Robert Britt Elementary.

19       MS. GAMBOLI:  And where is that located?

20       MS. BLAND:  Here in Washington, DC.

21       MS. GAMBOLI: And do you currently reside in Washington,

22   D.C.?

23       MS. BLAND:  Yes I do.

1      MS. GAMBOLI:  And how long have you resided in Washington,

2  D.C.?

3      MS. BLAND:  All of my life.

4      MS. GAMBOLI: And was an IEP developed for T███████?

5      MS. BLAND:  Yes it was.

6      MS. GAMBOLI:  Did he have an IEP prior to attending Mary

7  McLeod?

8      MS. BLAND:  Yes he did.

9      MR. DUBOW:  Ms. Gamboli, I can't really hear you when you

10  turn away, so can you speak up louder.

11      MS. GAMBOLI: Was Mary McLeod provided a copy of the IEP?

12      MS. BLAND:  Yes they were.

13      MR. DALTON: Excuse me, I sort of let this go, but this all

14  non-relevant testimony.

15      MR. DUBOW: I'll give leeway to the mother to say what she

16  wants to say.

17      MS. GAMBOLI:  And, did you attend any meetings during the

18  2005- 2006 school year on behalf of T████████?

19      MS. BLAND:  Yes, March of 2006.

20      MS. GAMBOLI: And what happened at that meeting?

21      MS. BLAND:  What happened, prior to I had been telling the

22  principal of the school that T███████ needed his IEP, you know

23  implemented and so, in March 2006 Dr. McKay, who was the

46

1    Executive Director, Mr. Ross was the principal and myself went

2    into a meeting to set up an IEP for T▮▮▮▮.   To review the one

3    that he had and to try work one, a new one for T▮▮▮▮.

4        MS. GAMBOLI:   Were any of T▮▮▮▮'s teachers included in

5    that meeting?

6        MS. BLAND:   No.   No teachers at all.

7        MS. GAMBOLI: And were you ever advised that that was a

8    requirement for the law for the teachers to participate?

9        MS. BLAND:   No.

10       MS. GAMBOLI:   And did you have representation at time?

11       MS. BLAND:   No.

12       MS. GAMBOLI: Now, I just want to back up a minute, just a

13   little bit.   Did you say that you were meeting because he needed

14   the IEP implemented.   Was his IEP being implemented through that

15   date?

16       MS. BLAND:   No.   It wasn't.

17       MS. GAMBOLI:   And how do you know the IEP--.

18       MR. DUBOW:   I can't hear you.

19       MS. GAMBOLI: And how do you know this?

20       MS. BLAND:   How do I know?   Because he was not working up

21   to you know, the IEP that I had given them, and he was so far

22   behind and still falling behind in I started collected data.

23   And I started going to his teacher, and saying look, he's here,

1  can you help me this.  Going to the principal, asking for help,

2  asking for extra – you know – tutoring.  Ask them to show me

3  techniques to use and you find out what I can do.  You know, and

4  who was available to help me.  And so, the teachers word to me

5  was, we have to get documents together to show that the IEP

6  needs to be implemented.  And so, after a period of time Dr. –

7  not Dr.— Ms. Sessions, when to Dr. Ross and said, the mom is

8  making a valid point.  And that is when the March 6th meeting

9  came about for an IEP.  I had to keep asking them.  Month after

10  month to help me get an IEP set up and to get him in the right

11  direction.

12      MS. GAMBOLI:  And after the March 06 meeting, was the IEP

13  implemented.

14      MS. BLAND:  It was not implemented.  I never saw a special-

15  ed teacher, I – you know, I constantly called Dr. McKay, I spoke

16  with Mr. Ross--.

17      MR. DUBOW:  Are you talking about the recent IEP?

18      MS. GAMBOLI: The March 06.

19      MR. DUBOW:  March?  Not the --.

20      MS. GAMBOLI:  The December IEP came after the hearing

21  request was (inaudible).

22      MR. DUBOW:  Please tell me the month of the IEP?

23      MS. BLAND:  March 06. And so that is when I kept going to

48

1    Mr. Ross and, finally they said, this was like March, so about

2    the end of April, beginning of May, they pulled him and had one

3    teacher who would just read with for a slight second, you know

4    it was like an half an hour and that's when we also started

5    talking about the OT, and I kept pushing about the OT and wind

6    up having an OT guy to come in and help him.  So I had to keep

7    calling and asking where are we with this process.  You know

8    because we were coming to the end of the school year.  I also

9    asked them how can I get additional help through the summer?

10   Would these programs be set up for him for the summer, so that

11   when the school year started back in September 06, he would not

12   be behind, he would still have an even flow.  And it didn't take

13   place, so that's why I was on them when school started in

14   September to please, please, because we've had so much time to

15   fall in-between to keep him abreast.  To help me keep him on

16   track, because you know like I said, it was towards the end of

17   the school year before they getting him the help.  So the summer

18   came and I asked for him to have that additional help during the

19   summer to pick up at the beginning in the school year.

20       MS. GAMBOLI: Now in terms of this school year, were you

21   ever introduced to the special-education teacher?

22       MS. BLAND:  I was introduced to a teacher who identified

23   herself as Mrs. Younger, the special-ed teacher.  I guess it

1   might have been two weeks into the school year. And she

2   introduced herself and told me she would be her special-

3   education teacher that she was going to be sending me a letter

4   home identifying her background. She was going to be setting up

5   a profile for my son, after doing some evaluations with him.

6   She would let me know where they were going to start with him,

7   she was going to get a hold of the IEP, that she was going to

8   talk to - I don't know the young lady's name sitting in front of

9   me - Sabadine.  She was going to get the IEP from the 06 and

10  they were going to get together and work on it. And, another

11  week went by, I didn't get a letter from her.  Another week went

12  by and I went and re-introduced myself to her and she informed

13  that they had pulled her out of - ALL — special-ed teaching to

14  put her in a replacement spot for another teacher.  And I asked

15  at that time what's going to happen with my son?  She told me

16  she did not know.  I came back another week later, and I asked

17  again, and I was told she was no longer with the school.  I have

18  not seen a special-ed teacher since I was introduced to this

19  young lady and I am constantly asking who is the special-ed

20  teacher. And after not hearing from her, I made a call to this

21  young lady by the name of Mrs. Abidene, again requesting that my

22  son's IEP be sent to his teacher Mrs. DeGrafenreidt since the

23  other person was identified to me as a special education was

1  told that she was no longer with the school.  I left messages on

2  the young lady's voicemail and constantly asking Mrs.

3  DeGrafenreidt had she received the IEP?  She had not received

4  it, she had not received it, and finally I believe it was

5  October, and a progress note came home stating that she had sent

6  the request over for his IEP and that someone would be getting

7  back with her.  She didn't say if it was the principal or the

8  executive director, or the special-ed coordinator, about his

9  IEP.  And so here we are now. And that's was at ease for a

10 minute. Everything like just slowed a crawl.  And then I got a

11 call from DC Public Schools asking me where was my son enrolled,

12 what school was he enrolled in?  I told them Mary McLeod Bethune

13 Special-ed program, and that is when I was informed that.  No he

14 was still listed at Robert Brent Elementary and I said.  And I

15 said, No, he is at Mary McLeod Bethune.  They should have

16 documentation.  I have an IEP.  And she stated to me No.  And

17 this is when I began seek some..some counseling to find out what

18 is going with my son and his education.  Where was he listed?

19 How can I get him on track because that's when I began to see

20 that things were not falling in place.  I mean, I'm being told

21 he's listed at one school.  It was actually October.  I called

22 to the school to say that, I get a call from D.C. Public School

23 and I want to know who has my son listed as special-ed and how

1   can I find out where he's at. Where his hours are documented and

2   ..and.. and that is when I contacted Brown and Associates.

3        MS. GAMBOLI:  Mr. Grafton.

4        MR. DUBOW: What's your question?

5        MS. GAMBOLI: I am asking her who Mr. Grafton is?

6        MS. BLAND:  Mr. DeGrafenreidt is his fifth grade teacher?

7        MS. GAMBOLI:  Is this his regular classroom teacher.

8        MS. BLAND:  She is not special-ed to my knowledge. She has

9   not been introduced to me as a special-education teacher, just

10  his regular classroom teacher.

11       MS. GAMBOLI: And have you ever taken, have you ever taken

12  Terrence for any outside consultation or services?

13       MS. BLAND:  Yes I have.  In the midst of trying to find

14  out, after getting this alarming call, constantly asking about

15  his IEP, who is going to help me? Who is his special-education

16  teacher? I—decided to take my son out for some outside tutoring

17  and I called Sylvan Learning Center.  I made an appointment.

18  And I paid fees out of my pocket to have my son evaluated

19  because at that time I getting so frustrated.  No one could give

20  me answers as to where he's listed, how are we going to get on

21  top of this IEP and so yes M'ame I did.  Not only that, I've

22  hired people in the neighborhood to help me, tap in.  I've tried

23  everything I humanly know possible. So maybe if I try outside

1  people, that somebody could help me tap in.  And..and.. This is

2  where I am it.

3     MS. GAMBOLI:  And what was the result of Sylvan Learning

4  Center?

5     MS. BLAND:  Once I had him tested at Sylvan, they called me

6  in for an evaluation meeting to let me know the results.  They

7  informed me that he was so far behind, which I knew in my heart

8  that he was behind, but when they really showed me the level

9  that he was, you know.  It just made me want to get out there

10 and see what I could do to help my son.  Then I called Mr. Ross

11 again, after going to Sylvan to find out what else could be

12 done. Was there any outside programs.  I told them what I had

13 saw down at DHS, that Sylvan had a program that if you are a

14 low-income family and you are receiving you know Tantum sp? Or

15 health insurance that you could qualify for a reduced program in

16 tutoring.  I asked Mr. Ross to check with Dr. McKay and I was

17 told that my son did not qualify for any of that. So- again

18 that's why I called Brown and Associates. Everything that I

19 asked, I was not getting any answers.

20    MS. GAMBOLI: Now, (inaudible) did they recommend that you

21 receive tutoring?

22    MS. BLAND:  Yes they did.

23    MS. GAMBOLI: And that report is in our documents.

1     MS. BLAND:  Yes.

2     MS. GAMBOLI: And how much tutoring did they recommend?

3     MS. BLAND:  If I am not mistaken, I think he needed a 102

4  hours in reading and after then they would come back and re-

5  evaluated and see if he needed any additional, not only reading,

6  but they said he was behind in his math as well.

7     MS. GAMBOLI:  And, after, first of all you attended the

8  resolution meeting with the school?

9     MS. BLAND:  I went to a meeting but I don't feel like

10  anything was resolved.

11     MS. GAMBOLI: And you went to - you participated in the

12  meeting that was supposed to have been an IEP meeting in

13  December?

14     MS. BLAND:  In December I was told it was an IEP meeting,

15  yes.

16     MS. GAMBOLI:  After the December meeting, was there a

17  special-education teacher available?

18     MS. BLAND:  I have not seen a special-education teacher

19  since I was introduced to Ms. Younger.

20     MS. GAMBOLI: And okay.  And was comp-ed talked about at the

21  December 11th meeting?

22     MS. BLAND:  What was talked about was T██████ would

23  receive his IEP services.  I asked them, I said, My son is still

1  behind in reading, how are we going to tap into the things that

2  he's missing.  Outside of that, they said they would give him

3  tutoring after school for one hour.  Okay.  It had nothing to do

4  with what he is to receive on his inside.

5      MS. GAMBOLI:  Were you told that this was supposed to make

6  up for what they didn't provide him before?

7      MS. BLAND:  No.

8      MS. GAMBOLI: This is just something that he needed?

9      MS. BLAND:  Something that we agreed that he needed.

10     MS. GAMBOLI:  And how – how is T████████ performing

11 academically now?

12     MS. BLAND:  T███████ is still struggling. He is trying his

13 best. I mean every single day I give him a pep talk. Go in and

14 do your best.  Do your best.  He is still struggling he is

15 trying. You know I can say that he is really, really trying.

16     MS. GAMBOLI: And how often do you work with T███████?

17     MS. BLAND:  Every single day I work with T████████. But here

18 lately, just to see where he's at, I've been letting him just,

19 feel his way.  I just want to see what he is doing.  What he's

20 doing in school, if he can bring it from school and bring it at

21 home. And I've been watching him work. And I'm always asking

22 him, when you do your homework, when you turn it back in, who's

23 grading it.  Is anybody checking?  And you know a lot of this

1  stuff is coming back and it's not checked, you know.  And I am

2  giving hi the freedom to see what he is learning, you know what

3  I am saying.  I'm - cause I'm trying to find out exactly where

4  he is at.  You know, if he's really getting help.  You know what

5  I mean.  You know, I take him to school everyday.  I pick him

6  up, and I want to see what you've learned in that time. Show me

7  what you've learned. Show me what you can really do. What did -

8  how much have you retained?  And I work with him. Like I said,

9  over the couple of weeks before school let out and since school

10  has been out, I just wanted to see. What he's learning.  Is

11  anybody correcting—is anybody really working with him.  Is he

12  really getting the service that he is supposed to be getting?

13  I'm trying to see you know.

14      MS. GAMBOLI:  Are you seeing him get the services?

15      MS. BLAND:  No.  There are some things I think he is still

16  lacking in.  I really, really do.  I'm asking him T██████,

17  throughout your day, when your assignments are going on—who is

18  working with you?  When you run into a problem, who are you able

19  to turn to - to get that one-on-one help.  He says to me "Mommy,

20  well you know Mr. Raviera is there but all the kids holler, ooh

21  Mr. Raviera, Mr. Raviera, Mr. Raviera, so by the time Mr.

22  Raviera gets to me, I've either forgot what I want to ask or I

23  just say never mind and I go on and do what I think is right.

1    But I was told in the IEP meeting that there was going to be a

2    special-education teacher as of this IEP meeting that I would be

3    told who it is and that person would be sitting near my son,

4    that if any given time he needs to turn around and ask for help,

5    that he would have someone.  It was discussed that Mr. Raviera

6    had too many, I was that Mr. Raviera was a teacher's assistant,

7    and that he was there to assist the children, but I said there

8    are going to be times when my son needs to turn around and be

9    able to ask somebody how to do ask, who could he go to?  Who

10   could he ask?  And I was told in the last meeting, that someone

11   would be assigned to the special education that the special-

12   education person was going to be assigned to work with my son.

13   And that he would also get that extra hour or tutoring after

14   school.  And of today I went into the school on last Monday to

15   find out after the holiday, if a special-education person was

16   going to be there and if they did have some of the things that

17   were asked of in the IEP meeting.  One of the things that they

18   asked was that my son be moved away from this partition.  He

19   sits at this desk by himself, at this partition that is between

20   two classrooms.  I went into the schoolhouse last week.  They

21   weren't aware.  Mr. DeGrafenreidt was in the classroom was in

22   the classroom giving the kids instruction.  I overheard another

23   teacher saying that Mr. DeGrafenreidt had been suspended.  I

1    stood there and told my son, I still want you to do what you are

2    supposed to do, watch your behavior and do what you're supposed

3    to do.   Mr. DeGrafenreidt asked me if everything okay and I said

4    yeah.   I just want to come in and make sure that everything is

5    okay and seeing what being assigned and I was going to ask them

6    at that time did you all move my son?   Everything is still the

7    same. I got disgusted and I left.   I was disgusted.

8        MR. DUBOW: Anything further?

9        MS. GAMBOLI: Just a couple of things.   How is this

10   impacting T██████'s self-esteem?

11       MS. BLAND:   You know what?   T██████ is like he said, he is

12   a good kid. He really tries, but I think that given what he

13   really really really really needs, the sky would be the limit.

14   If does have an impact.   He's already behind, why would you put

15   him at a table, at a petition by himself.   He needs to be

16   included, he needs to be in the class, in with the children.

17   Don't single him out. He's already behind.   I don't like that,

18   that upset me.   When I went to a meeting prior to Christmas and

19   I come back and see nothing's changed.   When I walked in that

20   room I expected to see my son up front, if not directly in front

21   of the teacher, at least in the mix of the class, not still

22   against the wall.   Where it was told that he should not be.

23   Which means that they are not doing what they said they were

1  going to do.  The teacher had a whole week, I'm quite sure or a

2  couple of days to come in and move things around, to get things

3  together or prior to leaving. It wasn't done.  It really wasn't

4  done.

5    MS. GAMBOLI: I have just a couple of questions.  Now in

6  terms of the speech and language and evaluation, why are you

7  asking for that evaluation to be done?

8    MS. BLAND:  I think that that would help him.  Something is

9  missing. The way he is pronouncing words, the connection, you

10  know what I mean?. What - something's missing.  I'm not saying

11  that might be the piece, but something is missing.  I don't want

12  to leave no stones unturned.  I need to know what's missing,

13  what would it take.

14    MS. GAMBOLI:  So you suspect that he is having problems

15  articulating?

16    MS. BLAND:  Some things, the sounding.  Something. I just

17  cannot connect at all.  Something's missing and I'm not sure if

18  it is phonetics, at the speech, I don't know.

19    MS. GAMBOLI:  And was there a speech and language

20  pathologist at the meeting?

21    MS. BLAND:  No. No it wasn't.

22    MS. GAMBOLI:  And, I have nothing further?

23    MR. DALTON: Ms. Bland you participated in the resolution

1   meeting on the 15th?

2        MS. BLAND: I went to IEP meeting on the 15th?  I didn't see

3   it as a resolution meeting.

4        MR. DALTON: The December 11th meeting?

5        MS. BLAND: I went to a meeting December 06, I'm not for

6   sure the actual date was prior to school letting out.

7        MR. DALTON: You were at a meeting in November and December.

8        MS. BLAND: I went to a meeting in November and a meeting in

9   December.

10       MR. DALTON: In the November meeting and the December

11  meeting did you specifically say to anyone that you wanted a

12  speech and language --.

13       MS. BLAND: What I said to them is my son is missing and I

14  wanted them to do whatever it takes to get my son where he needs

15  to be.

16       MR. DALTON: So you did not.

17       MS. BLAND: I did not specifically ask because I'm not a

18  aware of all the different types of testings or levels, I just

19  asked the team to help get my son where he needs to be.

20       MR. DALTON: So, basically would it be fair to say that the

21  reason you believe the speech and language is necessary because

22  attorneys telling you its necessary?

23       MS. BLAND: No sir. Again --.

1     MR. DALTON: Dr. Flightus was there, he did a full week of

2     evaluations --.

3          MS. BLAND: He did an evaluation and --.

4          MR. DALTON: And you don't think it was a full-.l

5          MS. BLAND: I really don't.

6          MR. DALTON: And what is the basis for - (inaudible)?

7          MS. BLAND: Like I said sir, something is missing.  I don't

8     know where the -where the connection is.  If it had something to

9     do with the speech and language.  I really don't know what its

10    is.  I want no stones unturned.

11         MR. DALTON: Do you believe Dr. Flightus has something to do

12    with your son?

13         MS. BLAND: Oh no.  I don't know this man.  I can't say

14    that.

15         MR. DALTON:  Do you have a reason from a professional

16    standpoint, he wouldn't recommend an evaluation to (inaudible).

17         MS. GAMBOLI:  Objection. This --.

18         MR. DUBOW:  He is legitimately asking the cross-examiner?

19         MS. BLAND:  Sir, once again, I've been taking my son from

20    the time of him being in school, realizing that there is

21    something wrong with him.  I have no knowledge of Dr. Flightus

22    or any other doctor trying to intentionally miss something

23    education out on my son.  I don't know.

1    MR. DALTON:  Does Dr. Flightus appear to be incompetent to

2    you?

3    MS. BLAND: No, he didn't seem to be incompetent to me at

4    all. But again, he's human.  And if there is something that he

5    could have missed, I need to know.  I take nothing from this

6    man's professionalism, I just need to know if there is something

7    that has been missed that can help my son.

8    MR. DALTON:  Did Mr. Hamilton raise any issues against Dr.

9    Flightus saying sir, we don't agree with the opinions you've

10   expressed here?

11   MS. BLAND: To my recollection no.  I don't remember him

12   saying anything like that.  I just know that he was there and

13   there were certain things that I asked, and I would mention to

14   him like the additional tutoring, outside of his regular hours.

15   MR. DALTON: When you get tutoring outside of your regular

16   hours, what does that mean to you?

17   MS. BLAND:  What does that mean to me.  As I was explaining

18   to them, he's in a group and he's reading.  Okay, he's trying

19   his best to read. But then there is something that is being

20   missed.  I asked can you guys help him go back and kind of like

21   maybe go over the phonic awareness or comprehension you know,

22   just in a whole.  You know what I mean – (exasperated…).

23   MR. DALTON:  I understand your frustration M'ame.  I really

1  do, but isn't kind of make common sense that the reason they are

2  doing it not during the regular day is to compensate him for the

3  past problems?

4      MS. BLAND:  During the day, I'm hoping that they are

5  working with him to keep him flowing.

6      MR. DALTON: I understand that.

7      MS. BLAND: To keep him flowing. And in the evening going

8  back trying to help him catch up on what he might have missed.

9      MR. DALTON: Exactly. Exactly.  Now you sound to me, you're

10  a pretty upset when you found out from Sylvan how far he really

11  was behind.  I mean was that accurate?  My assessment of your

12  being upset, was that accurate?

13      MS. BLAND:  And you know why I am going to tell you that,

14  because the IEP that I sit down with Dr. Ross and Dr. McKay,

15  said he was ten months behind.  Okay?

16      MR. DALTON: Okay?

17      MS. BLAND: And I get with Sylvan, and it seems that he is

18  not ten months behind, he is two to three grades behind.  Yeah,

19  that upset me.

20      MR. DALTON:  I understand that, but I don't understand why

21  in the world you didn't share that with the school?

22      MS. BLAND: I did.  I did.  I did.

23      MR. DALTON: You know the problem I have with that is that

1    the letter is not a report letter, it is a letter, it doesn't

2    say how many hours, it just says we'd like the opportunity to

3    help your son, and it is dated October 2nd, and yet you have a

4    meeting in November.  You have a meeting in November and you

5    have another meeting in December.  Either you nor Mr. Hamilton

6    presents this letter.  The first time the school gets the letter

7    is in the (inaudible).

8        MS. BLAND:  Sir, Sylvan, the young lady at Sylvan was up -

9    had - I want to make sure I am saying this right.  The young

10   lady at Sylvan, when I took him to Sylvan, at Sylvan there was

11   form that they had me to fill out.  Asking me can they contact

12   the school to give the copies of the results, not only that, she

13   had told me she worked under Dr. McKay personally, and that she

14   would speak with Dr. McKay to see what they could do to help

15   out.  Now, I don't know if you all received the letter, but I

16   signed authorizing Sylvan, and you

17       MR. DALTON:  I understand that.

18       MS. BLAND:  To work with the school okay.

19       MR. DALTON: But you don't have any evidence or knowledge

20   that the school ever got it.  And on top of that, on top of

21   that, why in the world wouldn't you raise it at the meeting in

22   November or December meetings or at least tell Mr. Hamilton

23   about it?

1     MS. BLAND:  Mr. Hamilton was aware that I took my son to

2  Sylvan. Okay.  I signed the authorization form.

3     MR. DALTON:  Why didn't Mr. Hamilton raise it?

4     MS. GAMBOLI:  Objection.

5     MS. BLAND:  I..I…I…

6     MR. DUBOW: No, overruled.

7     MS. BLAND:  I cannot tell you why he didn't do that.  But I

8  can tell you as parent, I've done everything humanly possible.

9     MR. DALTON: I don't have any argument with that.

10     MS. BLAND: To get it done.

11     MR. DALTON: I don't have any argument with that.  Now when

12  you – you said you're really not that knowledgeable about who

13  needs to be at meetings right?

14     MS. BLAND: No.  I know that from hearing what is going on

15  now --.

16     MR. DALTON: Right, now you know.

17     MS. BLAND: That, that are people who need to be in place. I

18  know – I know that if I have a representatives and the school

19  have representatives, that they should be there okay?

20     MR. DALTON:  So you know that now?  So when you have the

21  December meeting, and it wasn't a special-ed teacher,

22  unfortunately you didn't know about the special-ed teacher at

23  the meeting needed to be there did you?

1    MS. BLAND: No. They should have known that.  You

2    professional people should have known that.

3        MR. DALTON: Right, we professional people should have known

4    that.  And Mr. Hamilton, you would think would know that?  But

5    he didn't raise that issue did he?

6        MS. BLAND: I don't know if he did or not.

7        MR. DALTON: You don't remember do you?

8        MS. BLAND: I don't.

9        MR. DALTON:  Well, if you had, what we would have told him

10   was that Ms. Abidene is a Certified Special-ed teacher.  And

11   that she was representing the school in both her capacity as

12   certified special-ed teacher.

13       MS. BLAND: Okay.

14       MR. DALTON: And as the Special-Ed Coordinator.

15       MS. BLAND:  Well Ms. Abidene should have been professional

16   enough to let me know that at that particular meeting that Ms.

17   Bland, you know what, we don't have a special-ed teacher here,

18   we know we told you that Mrs. Younger would be here, we would

19   help, you know that you were introduced Ms. Younger as a

20   special-education teacher, but she's not here.  I'm here.  I -

21   mean.

22       MR. DALTON: But M'ame, you've been raising that as issue,

23   and it would seem it was important work to do wasn't there?

1       MS. BLAND: Of course, that's my son.  It is important.

2       MR. DALTON: Yeah it is important.  Now did Mr. Hamilton

3   ever talk about to you about all the emails that we sent him.

4   Saying we don't understand why we are going to the hearing.  We

5   thought all these issues were resolved by our offer of comp-ed?

6   Did he ever discuss that with you?

7       MS. BLAND: I don't remember. I don't remember.

8       MR. DUBOW:  I have a question.  All right, let me redirect?

9       MS. GAMBOLI: Okay, Is Ms. Abidene has she ever taught

10  T▬▬?

11      MS. BLAND: No.  She has no connections with T▬▬ at

12  all?

13      MS. GAMBOLI: No further questions.

14      MS. BLAND: She has not taught him anything. She has not

15  been in class at all. Like I said, the only conversation I've

16  had with her is when I called on the phone to send the IEP over

17  and the two meetings I saw her.  Other than that, I have had no

18  conversation with this lady at all.

19      MR. DALTON:  But you acknowledge that she has had

20  consultations with her (inaudible)?

21      MS. BLAND: With the teacher?

22      MR. DALTON:  No.  But I know she hasn't had any

23  confrontations as far as teaching him is concerned.  Because I

1    ask him every single day.

2        MR. DALTON: All right.

3        MS. BLAND:  Like I've asked him even up to yesterday, who

4    was your teacher, have you seen the special-education person?

5    Did you OT person come?  No Mommy.

6        MR. DUBOW:  I have a few questions.  How often this school

7    year have you gone to the school.

8        MS. BLAND: Every day.

9        MS. DUBOW: I understand you go to pick him up.  How long

10   have you gone into the student's classroom and observed, and if

11   you have for how long?

12       MS. BLAND: I've gone in the classroom quite a bit, and yes.

13       MS. DUBOW: Quite a bit - let's.  Quite a bit I don't

14   understand.  So tell me specifically, let's take November.

15       MS. BLAND: Okay.

16       MS. DUBOW: How often did you go to the school and observe

17   the student in the classroom.

18       MS. BLAND: About two times.  I've gone in the morning, and

19   I watch T██████ in the morning to see what his routine is.

20       MS. DUBOW:  And how long did you stay in the classroom?

21       MS. BLAND: About a good fifteen to twenty minutes.

22       MS. DUBOW: And did you notice a special-ed teacher in the

23   classroom in November.

1    MS. BLAND: Yes, Mr. DeGrafenreidt and the teacher's

2  assistant.

3    MS. DUBOW: And that was only in the morning for fifteen

4  minutes.

5    MS. BLAND: Only in the morning.

6    MS. DUBOW: Okay, that's in November.  You went two times?

7    MS. BLAND: About two times.

8    MS. DUBOW: In December, how often did you go?

9    MS. BLAND: December, I went prior to the holiday.

10    MS. DUBOW: How many times?

11    MS. BLAND: I'll say in the morning, maybe two times, said

12  Hello to Mr. DeGrafenreidt, and ask her how things are going?

13  Prior to the holiday I sat there – I won't say prior to the

14  holiday, after the holiday, I went there to see --.  As as

15  matter of fact, it was the day that they sent her home.  I

16  stayed there when she kept asking me if everything all right,

17  and I felt as though she was trying to rush me off.  But I

18  wanted to see what was going on, what was going intake.

19    MS. DUBOW: I understand.  How long did you stay in the

20  classroom to observe?

21    MS. BLAND: Probably about a good thirty minutes, and then I

22  left, and went home and got his homework package that he had

23  left down my mom's house. And I came back and I observed some

1   more.

2       MS. DUBOW: And at that time there was no special-ed

3   teacher?

4       MS. BLAND: There was Mr. P, and I don't know his name and a

5   Mr. Raveira and in the classroom, the teacher's assistant.

6       MS. DUBOW:  All right.  In October, did you go to the

7   school?

8       MS. BLAND: I October, I'm quite sure I went in but I can't

9   tell you how many times.  Like I said, I'm a parent, I usually

10  go in and say Hi to the teachers, see how things are going, what

11  the environment is like just to see.

12      MS. DUBOW:  So your testimony is you drop off your student,

13  at the school door --.

14      MS. BLAND: Make myself know.

15      MS. DUBOW:  Greet the teacher and just look in and then you

16  leave?

17      MS. BLAND:  I look in I see what's going on.

18      MS. DUBOW: You don't sit in - do you sit in the classroom,

19  do you sit in the classroom and observe what is going on, that

20  is what I am trying to understand?

21      MS. BLAND: Not every single day there are times – usually

22  in the morning.

23      MS. DUBOW:  I didn't ask every single day.  I didn't ask

1    any day.

2        MS. BLAND: Usually in the mornings.  Mornings are easier

3    for me and I usually go in the mornings.  I figure if the

4    teacher is going to be there, and things are in place, they are

5    usually in place in the morning.

6        MS. DUBOW:  And you stay there for about fifteen minutes?

7        MS. BLAND: Yes, fifteen to twenty minutes.  You know sir,

8    you know--.

9        MS. DUBOW:  What about in September?

10       MS. BLAND: September, when the school year started, I was

11   there quite a bit.  Because that is when I was trying to find

12   out who was going to be the special-ed teacher, how many hours,

13   where they were going to sitting him to do his special-ed.  We

14   remember they are not in the school building that they promised

15   us, but they were in this open space with partitions. I wanted

16   to see how things were going to be set up.  And I was there

17   quite a bit in September.  And this was when I was trying to get

18   things lined up for my child.

19       MS. DUBOW:  Is it your testimony that you have not seen a

20   special-ed teacher since the beginning of this school year.

21       MS. BLAND:  I saw her in September only.  I have not seen a

22   special-education teacher since September.

23       MS. DUBOW: But your time is limited to the early time when

1  you go drop off the student.

2      MS. BLAND: Exactly.  If the special-education teacher is in

3  there, she is in there after I'm gone, but am constantly asking

4  my son, who is working with you?  Who is your special-education

5  teacher? Constantly.

6      MR. DALTON: Yes.  Do you realize Ms. Bland that the school

7  cannot implement the IEP without you signing it?  Does that

8  explain to you?

9      MS. BLAND: Yeah.

10     MS. GAMBOLI: Again, objection, relevance.

11     MR. DUBOW:  Overruled. Go head.  Overruled.

12     MS. BLAND:  I signed the first IEP.

13     MR. DALTON:  I'm not talking the one where we sat down and

14  the school was under the impression that we resolved all the

15  issues and you didn't sign it.

16     MR. BLAND:  It wasn't resolved sir.  I was trying to find

17  out --.

18     MR. DALTON:  Did you expect to see a special-ed teacher

19  when you don't sign the IEP?

20     MS. BLAND:  Yeah.  Because I was told the special-education

21  teacher was on staff. I was told she was told she was on staff,

22  so there is a person on staff.

23     MR. DALTON: Nothing further?

1    MS. GAMBOLI:  I do have a few follow-up questions, but I do

2    ask that Mr. Hamilton be excused at this time?

3    MR. DUBOW:  He can be excused.  Fine. Thank you.  Is that

4    it, no further witness.

5    MR. GAMBOLI: I have a few follow up questions for the

6    parent based on your questions.

7    MR. DUBOW:  Just a few.

8    MS. GAMBOLI: First of all, have you ever received any

9    progress notes from the special-education teacher?

10    MS. BLAND:  No progress reports from the special-ed

11    teacher, because – there is no special-ed teacher to my

12    knowledge, only his regular teacher Ms. DeGrafenreidt?

13    MS. GAMBOLI:  Were you ever informed Ms. Younger that she

14    was leaving?

15    MS. BLAND:  No.

16    MS. GAMBOLI:  Did you receive anything in writing notifying

17    you in a change in teachers?

18    MS. BLAND: No.

19    MS. GAMBOLI: Did Ms. DeGrafenreidt after informed you that

20    there was a new special-education teacher.

21    MS. BLAND:  No. Ms. DeGrafenreidt didn't even know – I was

22    constantly asking her when no one could give me documentation

23    who T_____'s special education was.  I was constantly asking

1  Ms. DeGrafenreidt had you received his IEP? Okay, and it wasn't

2  until October that I got a note saying that she received IEP and

3  that she was going to start implementing --.

4      MS. GAMBOLI:  I have nothing further.

5      MS. DALTON:  You were not aware that Ms. Abidene was a

6  special-ed teacher were you?

7      MS. BLAND:  I'd heard she was special-ed coordinator, not a

8  special-education teacher.  You just told me that here in this

9  meeting.

10     MS. DALTON:  So the answer to that question would be?

11     MS. BLAND: No.  I wasn't aware of that.

12     MR. DALTON:  Are you aware of the inclusion program is?

13     MS. BLAND:  It means that my son would be in the class with

14 the other children and learning, as they are learning hopefully

15 with some special help.

16     MR. DALTON: Did you understand that the special-ed teacher

17 doesn't have to go into the room?

18     MS. GAMBOLI:  Again, objection. Objection.

19     MR. DUBOW:  Overruled.

20     MR. DALTON:  Did you understand that?

21     MS. BLAND:  No I didn't understand that but I asked.  What

22 did extra help -?

23     MR. DALTON: I know M'ame.  I asked you what your

1    understanding was and what you've told me now, that you didn't

2    understand the inclusion (inaudible) the special-ed teacher

3    doesn't necessarily have to be in the classroom?

4        MS. BLAND:  Well I was under the impression that she would

5    be in the classroom or somewhere nearby but if my son needs some

6    special help that he could be pulled or given the extra help

7    sir.

8        MR. DUBOW:  Okay, thank you.  Call your next witness.

9        MS. GAMBOLI:  I would but in terms of the teacher, the

10   special-ed teacher, I would proffer that teacher --.

11       MR. DALTON:  Objection to any proffer—Or Proffer is the

12   correct word.  Any proffer of the teacher's testimony.  We have

13   one issue, the issue of whether or not we should have done the

14   speech and language in the (inaudible)---.  The second issue is

15   whether or not the compensation we offered is valid, and there

16   has been on evidence whatsoever on that point, therefore, this

17   (inaudible) and we're entitled (inaudible).

18       MS. BLAND:  Can I ask another question?

19       MR. DUBOW:  All right, at this time, do you have anything

20   further Ms. Gamboli?

21       MS. GAMBOLI: Yes, in terms of the issue of the teacher that

22   we filed a motion and that is not present, we do believe that

23   the teacher would have testified that --.

1        MR. DALTON:  Objection!  I've already objected to this.

2        MR. DUBOW:  I don't understand this I—I don't understand

3    the basis for saying what somebody else is going to say.

4        MS. GAMBOLI:  Well, under, under --.

5        MR. DUBOW:  Do you have any documents that support what she

6    would say or not say?

7        MS. GAMBOLI: I have the parent's testimony -.

8        MR. DUBOW:  We've heard the parent's testimony.

9        MS. GAMBOLI: The parent did speak with her and we also have

10   the fact that this was for at least the first month of school,

11   that she was in process of evaluating the student to see where

12   the student was at, that she - that in terms of the services,

13   that that was provided to the student, she has a first hand

14   knowledge in terms of what he needs in terms of assistance. And

15   then also in regards with the speech and language.

16       MR. DUBOW:  I indicated earlier that I would look at the

17   psycho-educational evaluation the recent one, to see what the

18   evaluator said to determine whether or not there was

19   justification for in the professional opinion of that evaluator

20   for further evaluations that you requested.

21       MS. GAMBOLI: Well, Dr. Flightus was not, well he did the

22   clinical evaluation. He was not a speech and language

23   pathologist, nor would he been competent to make

1   recommendations--.

2        MR. DUBOW:  I understand that, but you presented me no

3   indication, you have no witness to indicate the necessity for

4   this evaluation.  I told you I haven't had an opportunity to

5   review the most recent evaluation.  I would look them over and I

6   will also look at the earlier ones and if the professional

7   evaluators indicate the necessity for these evaluations I'll

8   order them. If not, I won't.  That's it.  Okay, anything

9   further?

10       MS. GAMBOLI:  No.

11       MR. DALTON: Well, we well exceeded our time, on this issue.

12  I would request that the hearing office entertain my motion and

13  if my motion is not granted, that we come back and put our case

14  on.

15       MR. DUBOW: All right.  What I wanted to do is have an

16  opportunity to review the documents, which I have not had.   I

17  have to have time to review the documents and I'll rule on your

18  motion. And if I find that I need to hear from you, I will.

19  Thank you very much.

20

21

22

23

DISTRICT OF COLUMBIA PUBLIC SCHOOLS
STUDENT HEARING OFFICE


IN THE MATTER OF
T██████ B██████
DATE OF BIRTH:  APRIL 3, 1995


HEARING DATE:  March 23, 2007


TRANSCRIBED BY
LEGAL PERSONNEL, INC.  (301) 277-5711

APPEARANCES

HEARING OFFICER:                          Sy Dubow

ATTORNEY ADVISOR FOR
     DISTRICT OF COLUMBIA
     PUBLIC SCHOOLS                       RASHEEDA WILSON

ATTORNEY FOR PARENT                       MS. GAMBOLI

Charter school                            PAUL DALTON

PARENT OF T█████ B█████                    MRS. BLAND

FAMILY EDUCATIONAL ADVOCATE               MR. TERRY HAMILTON

EDUCATOR CHARTER SCHOOL                   MS. DEGRAFENREIDT

1    HEARING OFFICER:  On the record, today is March 23, 2007.

2   This is an Administrative Hearing for T⬛⬛⬛ B⬛⬛ born on 4-

3   3-95.  I'll ask the parties to identify themselves for the

4   record.

5    MS. MCAULIFFE:  Ms. Katherine McAuliffe, Counsel for Mary

6   McLeod Bethune.

7    MS. ABIDENE:  Hi I'm Fulmer Abidene, the Special-Ed

8   Coordinator at Mary McLeod Bethune.

9    MS. GAMBOLI:  I'm Roberta Gamboli, I'm the attorney for the

10   parent and the parent will be speaking by phone, if needed, she

11   is available.

12    MR. DUBOW:  This is a continuation of the previous hearing,

13   hearing held on January 17th and I issued an HOD on January 26th

14   that found that I granted directed verdict motion on the

15   evaluation issue for Bethune.  And on the second issue on Comp-

16   Ed, I denied it.  So we're here on the Comp-ed issue.  Now I'll

17   hear you on that.  The thing is that Bethune had said the child

18   is entitled to Comp-ed, however their argument is that in the

19   new IEP that one of the fifteen hours was for one-on-one

20   tutoring and that was going to be Comp-ed.  And I indicated in

21   my HOD, I did not think - fifteen hours is the same amount of

22   services on the previous IEP and then you are given fifteen

23   hours I don't see how in any way to provided any Comp-ed when

1  the child has been failing in his grades. So if you agree to

2  provide Comp-ed, the question what is this child entitled to.

3  And that's the purpose of this hearing.  It's not an issue of

4  whether he is entitled, but not entitled to Comp-ed, you've

5  already conceded that he is entitled to Comp-ed, the question is

6  how much?  As I understand it. Is that not the issue?

7      MS. MCAULIFFE:  Bethune would contend that, that I

8  understand the Hearing Officer also has some problem

9  understanding that the tutoring was offered as Comp-ed.  Let me

10 clarify something on an hour a week, it is actually one hour per

11 day.  So he's been getting five hours per week.

12     MR. DUBOW:  Oh that was not made clear to me in the

13 previous -- previously.  In the IEP that was previous – where is

14 that – what document is that?  We have the same documents that

15 we had before, what document was that – the IEP?

16     MS. MCAULIFFE:  Our document eight.

17     MR. DUBOW:  The IEP is eight?

18     MS. MCAULIFFE:  Yes.

19     MR. DUBOW: Okay – it says —.

20     MS. MCAULIFFE:  I see that it is marked down.

21     MR. DUBOW:  It says fifteen hours a week.  And then it

22 says, one hour individualized tutoring and reading.  What that

23 means to me is one hour rather than fifteen.

2

1    MS. MCAULIFFE:  Right.

2    MR. DUBOW:  I don't know how else I can read it?

3    MS. MCAULIFFE: I just confirmed with our Special-Ed teacher

4    that it is five hours a week, he's been getting an hour a day.

5    MR. DUBOW:  So he's been getting – well that's a little

6    different.  In addition to the fifteen hours?  Or as – and

7    included in the fifteen hours are the five hours of one-on-one

8    tutoring?  Is that what your witness is going to testify to?

9    MS. GAMBOLI: Yes.  (inaudible).

10   MR. DUBOW: Let me know.  I'll take testimony on it. But I

11   just want to clarify that we agree that that's the issue that is

12   before me.  Is the amount, not the issue is not whether he is

13   entitled to it or not, but you already concede the child is

14   entitled to Comp-ed, the question is the amount. Is that not

15   correct?

16   MS. MCAULIFFE: The parent never showed us how much Comp-ed

17   was needed. At the meeting the parent expressed concern that the

18   child was behind.  We asked the parent what would you need, what

19   do you feel the child needs.  She said he had one-on-one

20   tutoring in the past, that is what I think he needs. So we

21   offered to do that.  Afterwards we contacted counsel several

22   times--.

23   MR. DUBOW: I am aware of all of that argument.  I'm just

3

1    trying to establish the issues.  And then we can get into the

2    facts.  The issue is how much.  Is that not correct?  That you

3    want me to decide how much Comp-ed is appropriate amount for

4    this student?  Isn't that the issue?

5        MS. MCAULIFFE:  Sure.

6        MR. DUBOW:   Okay. Is that right, that is the issue.

7        MS. GAMBOLI:  That's right, that is the issue.

8        MR. DUBOW:  Then as long as that is the issue, then I'll

9    hear opening statements on this one issue, since I denied

10   directed verdict on it so --.  Ms. Gamboli go first.

11       MS. GAMBOLI:  Okay.  And I was a little bit confused, at

12   the last hearing, the parent had testified with regards to the

13   Comp-ed issue and I thought we were re-convening so that the

14   title school could bring a witness to testify in response to -.

15       MR. DUBOW: That is correct.  That is correct. I am asking

16   for an opening statement now, on this issue.  You don't have to

17   do an opening, but just to bring us up to date if you wish, I'm

18   giving you that opportunity, if you don't, you want to waive it,

19   then I'll just hear from the witness.  Do you wish to waive it?

20       MS. GAMBOLI: Well, at this time I'll reserve any comments

21   for the closing.

22       MR. DUBOW: All right.  Do you wish to call your witness?

23       MS. MCAULIFFE: Oh yes, we'll call our witness.

1      MR. DUBOW:  Okay.

2      MS. MCAULIFFE: The first witness that will actually be

3    called, will be calling, will be testifying via phone, Dr.

4    Flitus.

5      MR. DUBOW:  Who are you calling first?

6      MS. MCAULIFFE: Dr. Flitus.

7      MR. DUBOW:  Okay.

8      MS. MCAULIFFE: Dr. Flitus, Hi this is Kate McAuliffe. Would

9    you be prepared to testify at the hearing right now.  I'm about

10   to put you on speakerphone Dr. Flitus.

11     MR. DUBOW:  This is the Hearing Officer, Mr. Dubow how are

12   you doing doctor?

13     DR. FLITUS: I am doing fine, thank you.  How are you?

14     MR. DUBOW:  Good.  I am going to swear you in now.  Please

15   raise your right hand.  Do you swear or affirm that the

16   testimony you are about to give today in this case is the truth?

17     DR. FLITUS: Yes I do.

18     MR. DUBOW:  State your name for the record?

19     DR. FLITUS:  Duke Flitus.

20     MR. DUBOW:  And your position?

21     DR. FLITUS:  Clinical psychologist.

22     MR. DUBOW:  Are you in the room alone?

23     DR. FLITUS:  Yes I am.

1        MR. DUBOW:  Counsel for Bethune will ask you some questions

2   and will be followed by counsel for the parent.

3        DR. FLITUS: Okay.

4        MS. MCAULIFFE: Dr. Flitus could you please explain in what

5   capacity you are associated with Mary McLeod Bethune?

6        DR. FLITUS: Yes, I am one of the owners of the company

7   Psychological Assessments Solutions and we take of the

8   psychological evaluations and social work services at the

9   school.  So (inaudible) evaluations as well.

10       MS. MCAULIFFE: Are you familiar with the student T██████

11   B████?

12       DR. FLITUS:  Yes, in November and December 06, I did a

13   clinical and ADHD evaluation as well as classroom observation of

14   the student.

15       DR. DUBOW: One second. That would be an evaluation in the

16   record?

17       MS. MCAULIFFE: Yes, it's our document six.

18       MR. DUBOW:  Six, okay.

19       MS. MCAULIFFE: Dr. Flitus were you ever able to review

20   these evaluations?

21       DR. FLITUS:  I did (inaudible) the evaluations and I was

22   able to review evaluations on his record and then other

23   evaluations that were faxed to me, by the I guess the parent's

6

1  attorney at that time.

2      MS. MCAULIFFE: Did you participate in any meetings

3  following these evaluations?

4      DR. FLITUS:  Yes I did. I was at the meeting and I reviewed

5  my evaluation at the meeting and was present for the entire

6  meeting.

7      MS. MCAULIFFE: Was there a discussion after the evaluations

8  were reviewed with regards to the IEP?

9      DR. FLITUS:  I'm sorry can you repeat the question?

10     MS. MCAULIFFE: Sure.  At this meeting, after the

11 evaluations were reviewed, did the team discuss the IEP?

12     DR. FLITUS:  We discussed my evaluation. We discussed

13 parents' needs and some other, at the meeting one of the things

14 we discussed and one of the things we had been working was

15 tutoring.  And we decided as a team that parent had issues that

16 didn't really need weekly counseling but the tutoring seemed to

17 be already to be working.  She as going (inaudible) in place.

18     MS. MCAULIFFE: So with regards to the tutoring, what was

19 your understanding of why it was being offered?  Meaning as part

20 of the regular IEP or to catch T█████ up, but --.

21     DR. DUBOW:  No leading of the witness please.

22     DR. FLITUS:  Catch him up because he needed extra work, and

23 (inaudible) and there was still a question of some kind of

1  compensatory education and then the tutoring was already working

2  and seem to fit that bill I thought that was - Its always been a

3  while but I know that that was one of the issues that had come

4  up at the meeting.

5     MS. MCAULIFFE: And was the parent at this meeting?

6     DR. FLITUS:  Yes.

7     MS. MCAULIFFE: And what was her feeling with regard to the

8  tutoring?

9     DR. FLITUS:  Everything that we agreed at the meeting, I

10  know that everybody was in agreement --.

11     MS. GAMBOLI:  Objection.

12     MR. DUBOW:  I overrule your objection. It's in the scope.

13     MS. GAMBOLI:  He would have no personal knowledge of how

14  the parent felt.

15     MR. DUBOW:  Not how she felt, but to indicate there was

16  agreement or not agreement on it.

17     MS. GAMBOLI:  But that was not what was asked.

18     MS. MCAULIFFE: I'll rephrase? Did the parent agree at the

19  meeting with the tutoring.

20     DR. FLITUS:  Yes as I recall. Everybody from the principal

21  to the Special-Ed coordinator, myself and the parent all agreed

22  with the tutoring would be the best course of action going

23  forward.  Because it was something that was really working and

1    something that everybody could see in (inaudible).  So, the

2    meeting concluded with everyone being in agreement on that.

3        MS. MCAULIFFE: Thank you Dr. Flitus, Ms. Gamboli might have

4    some questions now.

5        DR. FLITUS:  Okay.

6        MS. GAMBOLI: Dr. Flitus in your evaluation that you

7    conducted you had recommended that tutoring and reading to

8    remain in T▬▬▬'s IEP?  Is that correct?

9        DR. FLITUS: I heard you recommended, can you repeat the

10   rest of that?

11       MS. GAMBOLI:  On page eight of your evaluation, of your

12   psychological evaluation for T▬▬▬ B▬▬, you had indicated

13   that specialized instruction and tutoring and reading should

14   remain in T▬▬▬'s IEP?

15       MR. DUBOW:  Which number is that?  Okay, number six?

16       MS. GAMBOLI: Number six.

17       DR. FLITUS:  (inaudible) instruction in tutoring and

18   reading to remain in T▬▬▬'s IEP.  Yes.  I have it in front

19   of me. That is correct.

20       MS. GAMBOLI: And, actually, I have nothing further of this

21   witness.

22       MR. DUBOW:  I have a question.  When you say that tutoring

23   was already in place, what do you mean by that and how long had

9

1    it been in place and how much tutoring was being offered?

2    DR. FLITUS: You know actually, I'm not sure.  I don't have

3    that information in front of me.  I know there was something

4    that we discussed as a team in front of the parent at that

5    meeting.  I surely do not recall the specifics at tutoring, but

6    I know that it was something that was ongoing at the time, I am

7    really as sorry I really cannot recall it was.

8    MR. DUBOW:  But you're saying the tutoring was ongoing at

9    the time of the meeting.

10    DR. FLITUS: That was my understanding yes.

11    MR. DUBOW:  Thank you.

12    MS. MCAULIFFE: Thank you Dr. Flitus.

13    DR. FLITUS: Okay, have a good day.

14    MR. DUBOW:  One more question, yes.

15    DR. FLITUS:  Sure.

16    MS. GAMBOLI: Was the meeting the first time you had had any

17    contact with this particular child?

18    DR. FLITUS:  Oh yes it was.

19    MS. GAMBOLI:  You didn't work with him previously?

20    DR. FLITUS: No. No. I was brought on to do classroom

21    observations and clinical evaluations.  And then for my clinical

22    I recognized the need to go further and to look at the ADHD as

23    well.  That was my first interaction with the student.

1       MS. GAMBOLI:  So you have no knowledge of services that he

2   was or was not receiving prior to your introduction to him?

3       DR. FLITUS: Prior to my introduction to the case, no I did

4   not.

5       MS. GAMBOLI: I have nothing further.

6       MR. DUBOW:  Thank you.

7       DR. FLITIS:  Okay, you're welcome. Take care.

8       MR. DUBOW:  Call your next witness.

9       MS. MCAULIFFE:  I will call Ms. Abidene, Special-ed

10  Coordinator at Bethune.

11      MR. DUBOW:  Please raise your right hand. Do you swear or

12  affirm that your testimony

13      MS. ABIDENE. Yes.  I do.

14      MR. DUBOW:  Let me finish.  Today is the truth?

15      MS. ABIDENE:  I do.

16      MR. DUBOW:  State your name for the record.

17      MS. ABIDENE: Gomar Abidene

18      MR. DUBOW:  And your position?

19      MS. ABIDENE: Special-Ed Coordinator at Mary McLeon Bethune.

20      MR. DUBOW:  Your witness.

21      MS. MCAULIFFE: Are you familiar with T█████ B████?

22      MS. ABIDENE: Yes.

23      MS. MCAULIFFE: How so?

11

1    MS. ABIDENE: I consult with his teacher on a weekly basis

2  as the coordinator.  I'm also certified in special-ed and have

3  Master's in Special-Ed, so I support teachers in terms of

4  modifying lessons and instruction.

5    MS. MCAULIFFE: And when was the last meeting at the school

6  that you participated in with regards to T██████?

7    MS. ABIDENE: I believe it was in December.

8    MS. MCAULIFFE: And what was the purpose of that meeting?

9    MS. ABIDENE: That meeting was to review his IEP.  I knew

10  that there was a complaint at some point and we had met in

11  November to have a resolution meeting, where we established that

12  we should do some evaluation and so the December meeting was to

13  review the evaluations that were done, and to speak to the

14  parent and the team about his needs and update his information.

15    MS. MCAULIFFE: And what is your recollection of the

16  conversation about one-on-one tutoring?

17    MS. ABIDENE:  I remember that the parent after reviewing

18  all of the evaluations, when we were summing up basically what

19  T██████ needs, we asked the parent if she was satisfied with

20  the IEP with the hours we talked about.  We talked about 15

21  hours of specialized instruction. And she stated that last year

22  he had received some one-on-one tutoring in reading.  And since

23  reading was established as the main area that he is behind, we

1    were trying to change the old IEP so that it more specific to

2    his needs as opposed to just fifteen hours of specialized

3    instruction. And since reading became an issue, we specified at

4    that point that one hour a day would be one-on-one tutoring to

5    meet his reading needs to catch him up and to compensate on what

6    he is behind on.

7       MS. MCAULIFFE: And do you think there could have been any

8    confusion about this?

9       MS. ABIDENE: No I don't because we specifically summed up

10   the meeting by saying to the parent and the advocate, if this is

11   everything and it looks good, if this is what T_____ needs and

12   everybody agreed to that. Because otherwise it would reflect in

13   the meeting notes if there was any questioning and there wasn't.

14      MR. DUBOW:  Can you hold one minute.  I want to look at

15   those meeting notes, it's number seven.  It's a one page typed

16   meeting notes, right?

17      MS. ABIDENE: Yes.

18      MR. DUBOW:  So, the notes say specialized instruction

19   should continue with tutoring in reading.  It goes on to say

20   that the team to include one-hour of individualized tutoring in

21   reading in order to compensate for his additional needs, right?

22   It doesn't say anything about one hour per day?  It says one-

23   hour right?

13

1      MS. ABIDENE: Right.  That might be a mistake on my part and
2  not specifying that was one hour per day. But that's what's been
3  implemented at the school ever since this IEP was one hour of
4  reading tutoring a day.  Cause our understanding was that this
5  specialized instruction was too general and that we spent some
6  of the time, you can see in the notes that how much math, and
7  since reading was the - the parent brought that up specifically,
8  we made one hour a day of reading, which was not what he got in
9  the past.  He did not get one hour of reading of reading a day
10 in the past.

11     MR. GAMBOLI: At this point I would like the opportunity to
12 have the parent on the line to listen to the testimony.  I do
13 intend to call her as a rebuttal witness.  And I do know, --.

14     MR. DUBOW: Why didn't you have the parent here in the
15 beginning Ms. Gamboli?  You are in the middle of the hearing and
16 you want to interrupt it so you can - why isn't the parent here
17 to begin with?

18     MS. GAMBOLI: I had said I the beginning that she'd be
19 available by phone by hearing.

20     MR. DUBOW: Now why didn't you get around here in the
21 beginning and now you want to get around in the middle of this
22 witness' testimony.  This makes it very difficult.

23     MS. GAMBOLI: I'd like the opportunity to have her so that

1  she can take a listen to the statements.

2      MS. MCAULIFFE: I'd object to her being a rebuttal witness

3  if she didn't hear of the witness testimony.

4      MR. DUBOW:  Whether she - whether she---.  It is in the

5  middle of this witness' testimony.  That's the problem.  The

6  other issue is — whether its' — I'm not sure — pursuant to Reid,

7  is the amount of Comp-ed that should be awarded.  You agreed the

8  child is entitled to Comp-ed.

9      MS. GAMBOLI:  My concern is what I am hearing from the

10 witness is that she is testifying that the providing an hour a

11 day, I know for a fact that that is not correct.  And student is

12 -- not only are they not providing an hour a day, the student

13 hasn't been receiving services because he hasn't had a Special-

14 Education teacher for the majority of this school year.  And the

15 mom will be able to testify to that.

16     MR. DUBOW:  Didn't the mother testify before in this case?

17     MS. GAMBOLI: Yes sir.

18     MR. DUBOW:  If you wish to seek the parent to participate,

19 I'm not going to prevent you from that, you can call her now.

20 But I don't -- if you can call her as a rebuttal witness, if she

21 is already in the middle of the witness' testimony; If she wants

22 to participate to listen to what's going on, I don't have any

23 objection to that.  I assume counsel has no objection to that.

1       MS. MCAULIFFE: No Objection.

2       MR. DUBOW:  Your objection is that she can't be a rebuttal

3   witness if she hasn't heard the testimony of the witness and it

4   that I'll sustain.

5       MS. GAMBOLI:  I would object to that because.

6       MR. DUBOW:  Overruled (laughter)

7       MS. GAMBOLI:  Is this Ms. Bland. At this point in time we

8   are in the Examination of Ms. Abidene.  I am going to go ahead

9   and put you on speakerphone so that you can listen the

10  examination.  Let us know if you have difficulty hearing. – Ms.

11  Bland, can you hear?  Ms. Bland?  All right.

12      MS. BLAND: I can hear you.

13      MS. GAMBOLI:  Okay.

14      MS. MCAULIFFE:  Is one-on-one tutoring typically something

15  that you put on the IEP?

16      MR. DUBOW:  What did you say?

17      MS. MCAULIFFE:  Is one-on-one tutoring typically something

18  that you put on the IEP?

19      MS. ABIDENE:  No we don't.  Specifically not to that

20  extent.

21      MS. MCAULIFFE:  At the end of the meeting, did the parent

22  advocate receive a copy of the IEP and meeting notes?

23      MS. ABIDENE:  Actual I was still typing it, so he said that

1   I could email or fax it to him.

2        MS. MCAULIFFE: Did you do that?

3        MS. ABIDENE:  I think I sent it to you and you forwarded it

4   to me and copied me the email.

5        Mr. DUBOW:  Forwarded to who?

6        MS. ABIDENE:  I sent it to Ms. McAuliffe who forwarded to

7   Mr. Hamilton -

8        MR. DUBOW:  The Educational Advocate?

9        MS. ABIDENE:  Yes.

10        MS. MCAULIFFE: After that did you ever hear from the

11   parent, the advocate or the attorney?

12        MS. ABIDENE:  No and I believe I emailed the advocate to

13   make sure we were complete, the case was complete.  And no I did

14   not hear anything back.

15        MS. MCAULIFFE: And to your knowledge has T██████ been

16   receiving services at your school?

17        MS. ABIDENE:  Yes.

18        MS. MCAULIFFE: No further questions.

19        MR. DUBOW:  Cross.

20        MS. GAMBOLI: There was never a formal comp-ed plan that was

21   developed for the student was there?

22        MS. ABIDENE: I'm not sure I understand what you mean by a

23   formal comp-ed?

17

1    MS. GAMBOLI:  Did the school ever develop a plan that lead

2    forth the compensatory education the student was to receive,

3    that included information about the services and the duration

4    and the type of services, the compensatory education plan?

5    MS. ABIDENE:  Based on my understanding we were

6    compensating what the parent and the advocate were bringing up

7    as what needed to be compensated, based on that yes.  Because

8    the parent and the advocate stated that what he was behind was

9    reading.  Therefore we compensated by giving him one hour of

10   tutoring.

11   MS. GAMBOLI:  That wasn't my question.  Did you ever

12   develop a compensatory education plan?  A written plan?

13   MS. ABIDENE: I'm not familiar with those plans.  If there

14   is a form you are speaking about, that's a formal plan, No

15   because I am not familiar with that.

16   MS. GAMBOLI: And were you aware of the fact that DCPS

17   failed to implement either the 2/9/05 IEP –.

18   MR. DUBOW:  DCPS?

19   MS. GAMBOLI: I'm sorry, the Charter School failed to

20   implement the IEP that was developed on 2/9/05 or 3/10/06, that

21   neither of those plans were implemented – the child received no

22   services whatsoever between September 05 and April 06?

23   MS. AMCAULIFFE:  I object.  Counsel stating her opinion as

1   to the facts.  It is evident that the Special-Ed Coordinator in

2   the fall of 2006, so she was not there last year.

3       MR. DUBOW:  Sustained.

4       MS. GAMBOLI:  I don't understand what the relevance of -.

5       MR. DUBOW:  If she wasn't there, she can't really say what

6   happened before?

7       MS. GAMBOLI: The question, she could still answer the

8   question.

9       MR. DUBCW:  If she wasn't there she can't really say what

10  happened before.

11      MS. GAMBOLI: The question was whether she could still

12  answer the question?

13      MR. DUBOW:  How can she answer the question if she wasn't

14  there.

15      MS. GAMBOLI:  I asked her if she was aware that he didn't

16  receive services.  If her answer is no because she wasn't there,

17  than that's the answer to the question.

18      MS. ABIDENE:  No because I wasn't there.

19      MR. DUBOW:  Excellent answer.  Thank you.

20      MS. GAMBOLI:  And it my understanding that there was a time

21  this year that the student was without a Special-Education

22  teacher, is that correct?

23      MR. DUBOW:  What was your question?

19

1    MS. GAMBOLI:  That there was a time this school year, that

2    the student was without -.

3    MR. DUBOW:  There was a what year?

4    MS. GAMBOLI:  There was a time period this school year that

5    the student was without a Special-Education teacher?

6    MS. ABIDENE:  I am the Special-Education teacher and

7    coordinator but not the person who works with the kids in the

8    classroom.  We have an inclusion model, where I work with the

9    teachers in modifying their instruction.  That is the model that

10   is explained to the parent who bring their children there. So

11   that never stopped.  The teacher met with me on a weekly basis

12   and we modified instruction.  In addition, we had a Special-Ed

13   teacher, who at some point left our school because of a death in

14   the family and we replaced that teacher and now we have a

15   different Special-Ed teacher there.

16   MS. GAMBOLI: And when did you replace that Special-

17   Education teacher?

18   MR. DUBOW:  When did the Special-Education teacher leave,

19   first of all?

20   MS. ABIDENE:  I think it was towards the end of the

21   November when the first one left.

22   MR. DUBOW:  When did the new one start?

23   MS. ABIDENE:  I know it was right when we came back from

1    Christmas break. It was when we came back from Christmas break.

2        MR. DUBOW:  So January?

3        MS. ABIDENE:  January.

4        MS. MCAULIFFE:  And just to clarify the record, and I do

5    what to state that the current Special-Ed teacher was already in

6    play at Bethune was at Bethune, but just did not have the title

7    of Special-Ed teacher.  She acquired that title after Christmas

8    break.

9        MR. DUBOW:  She began as Special-Ed teacher in January,

10   before that she wasn't a Special-Ed teacher is what you are

11   telling me?

12       MS. MCAULIFFE:  Right.  She was a certified Special-Ed

13   teacher but she was not working.

14       MR. DUBOW:  But she wasn't working with the students?

15       MS. MCAULIFFE:  She had been -- it is my understanding.

16       MR. DUBOW:  I don't want you to testify, I am just trying

17   to clarify, so you can get it through a witness, this testimony.

18   All right, go ahead Ms. Gamboli.

19       MS. GAMBOLI:  Actually, I have nothing further of this

20   witness.

21       MS. MCAULIFFE:  I have a follow-up question. Ms. Larsen, a

22   Special-Ed teacher, was she there prior to being hired as a

23   Special-Ed teacher and in what capacity was she working?

1    MS. ABIDENE:  She was there and she also consulted with the

2    teachers because she actually - I work on two campuses and she

3    was always on 42nd Street where T████████ is.  And she also in

4    addition to her teaching the fourth grade at the time she

5    consulted with teachers as well in modifying lessons.

6        MS. MCAULIFFE:  Thank you.

7        MR. DUBOW: All right, I have some questions for

8    clarification purposes.  The second Special-Ed teacher, she was

9    teaching fourth grade?

10       MS. ABIDENE: She used to be our fourth grade teacher

11   before.

12       MR. DUBOW: What class was the student in?

13       MS. ABIDENE: Fifth grade.

14       MR. DUBOW: So she wasn't teaching this student?

15       MS. ABIDENE: No, not directly.

16       MS. BLAND:  Ms. Gamboli are you done speaking because I am

17   not hearing anything.

18       MR. DUBOW:  We're not speaking.

19       MR. DUBOW: Is there anything further of this witness?

20       MS. ABIDENE: No sir.

21       MR. DUBOW: One second.  Is it your testimony that the MDT

22   team agreed that the student will get fifteen hours of week at

23   the 12/11.06 meeting in the IEP - fifteen week to be provided by

1  a regular and Special-Ed teacher?

2      MS. ABIDENE: Yes.

3      MR. DUBOW:  And who provided the instruction to the student

4  for the month of December?

5      MS. ABIDENE:  There is an aide, a teacher's aid that's

6  there --.

7      MR. DUBOW:  She's not a certified Special-Ed teacher is

8  she?

9      MS. ABIDENE: No he's not a Special-Ed teacher.

10     MR. DUBOW: No Special-Ed teacher was available the month of

11 December?

12     MS. ABIDENE: No, that is when we were looking for a

13 teacher, still.

14     MR. DUBOW:  The answer is yes.  There was no Special-Ed

15 teacher in this student's classroom--?

16     MS. ABIDENE: No.

17     MR. DUBOW: For the month of December?

18     MS. ABIDENE:  No there wasn't.

19     MR. DUBOW:  And you're saying when the school resumed in

20 January, that the second Special-Ed teacher began providing

21 instruction to this student?

22     MS. ABIDENE:  Yes.

23     MR. DUBOW:  Now, how much Special-Education instruction did

1    the second Special-Ed teacher provide after January, when she

2    came?  Was she still teaching fourth grade?

3        MS. ABIDENE: No.  She was only Special-Ed --.

4        MR. DUBOW:  Stop.  She was only a Special-Ed teacher.  So

5    how much time did she provide to this student in January when

6    she came aboard, and to the present time?

7        MS. ABIDENE:  I can't tell you the exact amount, I've

8    talked to her and she said she's been providing him the

9    tutoring.  And I know she also works in with the classroom

10   teacher.

11       MR. DUBOW:  So she provides the tutoring?

12       MS. ABIDENE:  Yes.

13       MR. DUBOW: The Special-Ed teacher provides the tutoring?

14       MS. ABIDENE:  She has been.

15       MR. DUBOW: One hour a day?

16       MS. ABIDENE: She has been.  She in conjunction with Mr.

17   McKay has been --.

18       MR. DUBOW:  Who is Mr. McKay?  Is he the teacher?

19       MS. ABIDENE: He is the teacher.  Yes.

20       MR. DUBOW:  He's the teacher's assistant?

21       MS. ABIDENE: Yes.

22       MR. DUBOW: Who's been doing the tutoring?

23       MS. ABIDENE:  Both of them have.

24

1    MR. DUBOW:  So the Special-Ed teacher and the educational

2   Aid have provided the tutoring?

3    MS. ABIDENE: Yes.

4    MR. DUBOW:  What's the certification on the Educational

5   Aide?

6    MS. ABIDENE:  I'm not sure.

7    MR. DUBOW:  So what are the responsibilities – you have how

8   many Special-Ed teachers – yourself and another one?

9    MS. ABIDENE:  Yes.

10    MR. DUBOW: At Bethune?

11    MS. ABIDENE:  Yes.

12    MR. DUBOW: So how many Special-Ed students do have?

13    MS. ABIDENE: We have about twelve to fifteen, I want to

14   say.

15    MR. DUBOW:  You have twelve to fifteen Special-Ed students,

16   right?

17    MS. ABIDENE:  Right.

18    MR. DUBOW: And how many different classes?

19    MS. ABIDENE:  There are grades Kindergarten to sixth grade,

20   and there's – grade one to fifth is where we have Special-Ed

21   students.

22    MR. DUBOW: One through fifth – so five grades?

23    MS. ABIDENE: Yes.

1    MR. DUBOW:  So, and how many classes - so only one class

2  for the first grade, and one class for the second grade?

3    MS. ABIDENE: Yes.

4    MR. DUBOW: It's only one --, there's not two-second grade

5  classes?

6    MS. ABIDENE:  No one class and there are about ten students

7  in each.

8    MR. DUBOW: For each grade?

9    MS. ABIDENE: Yes.  And there's teachers Aide. And teacher

10  and a teacher's aide.

11    MR. DUBOW:  So you split that responsibility with the other

12  Special-Ed teacher?

13    MS. ABIDENE: Yes.  I'm  --.

14    MR. DUBOW:  It's twelve to fifteen Special-Ed students and

15  five grades, with two Special-Ed teachers?  Is that your

16  testimony?

17    MS. ABIDENE: Yes.  I may do the consulting with the teacher

18  while she mostly goes mostly into the classroom for the

19  instructional piece.

20    MR. DUBOW:  Okay.

21    MS. ABIDENE: But it isn't -.

22    MR. DUBCW: But basically it is one Special-Ed teacher who

23  provides direct instruction?

1        MS. ABIDENE: Inside the classroom.

2        MR. DUBOW: Okay. With one Special-Ed teacher for direct

3    instruction?

4        MS. ABIDENE:  Can I also clarify that the school model is

5    an inclusion model where even on the IEP of most children, we

6    specify that the Special-Ed instruction could be provided by

7    regular and Special-Ed teacher.

8        MR. DUBOW: How can it be provided by a regular teacher if

9    the teacher is not certified in Special-Ed?

10       MS. ABIDENE:  It was my understanding from the director had

11   specified that - that they can work - for example when they meet

12   with me, that they - the hours that they spend both in

13   consulting with and in modifying lessons that would count as -

14       MR. DUBOW:  But the direct services are not provided by the

15   Special-Ed teacher, they are provided by the regular teacher.

16   The direct teacher.  You provide consultation?

17       MS. ABIDENE: Yes.

18       MR. DUBOW: And this has been the case for this student

19   throughout from the beginning of the school year?

20       MS. ABIDENE: As far as I know yes.

21       MR. DUBOW:  So how much direct Special-Education has this

22   child gotten from a Special-Ed teacher since the beginning of

23   the school year to your knowledge?

1    MS. ABIDENE:  Are you asking me for hours or - I'm not

2    sure.

3        MR. DUBOW:  Yeah.  A week?

4    MS. ABIDENE:  He's been getting the fifteen hours of

5    specialized instruction where --.

6        MR. DUBOW:  That's not answering my question.  Listen

7    carefully.

8        MS. ABIDENE:  Okay.

9        MR. DUBOW: My question is you have one Special-Ed teacher

10   who provides direct instruction that was your testimony.

11       MS. ABIDENE: Yes.

12       MR. DUBOW: Okay.

13       MS. ABIDENE: Yes.

14       MR. DUBOW:  So my question to you is, how much during one

15   week does this Special-Ed teacher provide direct instruction to

16   this student?

17       MS. ABIDENE: I know that as of this IEP with the

18   individualized tutoring, I know that she says she meets with him

19   for at least three of the five hours of the reading instruction.

20   She works in the classroom for the reading and writing block.

21       MR. DUBOW: In his classroom?

22       MS. ABIDENE: Yes.

23       MR. DUBOW: How much time?

1       MS. ABIDENE: The reading and writing is an hour and a half.

2       MR. DUBOW: So she provides - so she provides — provides

3  three of five hours of individual tutoring to this student,

4  right, that's your testimony?

5       MS. ABIDENE: Yes.

6       MR. DUBOW:  And then she provides ninety minutes - - is it

7  ninety minutes?

8       MS. ABIDENE: Yes.  And I'm not sure how many - I know that

9  that is the reading block, and she is supposed to be in each

10  classroom for at least one of those, and I don't know how much

11  in addition to that she is a week.

12       MR. DUBOW:  Except for a minimum she provides ninety a day

13  for the reading block?

14       MS. ABIDENE: Yes.

15       MR. DUBOW: In this student's class?

16       MS. ABIDENE: Yes.

17       MR. DUBOW:  And what are the qualifications of the regular

18  teacher?

19       MS. ABIDENE: I'm not sure what her qualifications are to be

20  honest.  I don't oversee her in that way.

21       MR. DUBOW:  Is she is Special-Ed teacher certified?

22       MS. ABIDENE: Yes, she is.

23       MR. DUBOW: The student is in fifth grade?

1    MS. ABIDENE: Yes.

2    MR. DUBOW: The IEP that was done on - the IEP that was done

3    on ---- the IEP that done on 12/11/06 showed the student was at

4    a 2.5 reading level, the third.

5    MS. ABIDENE: Yes.

6    MR. DUBOW:  He is two years behind?

7    MS. ABIDENE: Yes.

8    MR. DUBOW: At least two years behind?

9    MS. ABIDENE:  Yes.

10    MR. DUBOW: And these scores are based on what?  The 2.5?

11    It says date of test 12/11/06, is that based on - I don't know

12    what its based on.  Where did these scores come from?  How did

13    you know what the level the student's at?

14    MS. ABIDENE:  I believe actually he might be a little

15    higher because those were done - that was from the psycho-

16    educational that was done before documents -.

17    MR. DUBOW:  11/17/05 is the psycho-ed.  Which one are you

18    referring to?

19    MS. ABIDENE:  I don't have the documents in front of me.

20    Yes. It's 11/17/05.  That was the last psycho-ed.

21    MR. DUBOW: So that was made, the last was made, that was

22    document number one.  Let's see.  Okay so that was based on

23    psycho-ed.

1    MS. ABIDENE: Yes.

2    MR. DUBOW:  On 11/17/05 psycho-ed.  All right.  The

3    question is, that I have for you – is there any recent testing

4    that have been done on this student to determine what reading

5    levels the student has now?

6    MS. ABIDENE:  Not formal testing. Because since that was

7    when we went through what evaluations additionally he needed, it

8    wasn't questioned.  The psycho-ed wasn't questioned in terms of

9    accuracy.  And since that was from just one year before, there a

10   new psycho-ed done, but I think that the teacher—-.

11   MR. DUBOW:  By that time the determine -- .

12   MS. ABIDENE: His grade level.

13   MR. DUBOW: The shortfall.  And I can't determine the

14   shortfall unless I have current testing.

15   MS. ABIDENE:  I don't feel comfortable saying what exact

16   grade level he's at now because --.

17   MR. DUBOW:  The gist of what you're saying is that there

18   hasn't been?

19   MS. ABIDENE:  Another testing.  Another formal test.

20   MR. DUBOW: And the clinical with – that Dr. Flitus did,

21   which is more recent. 12/7/06.  He did not – Did he do any

22   reading tests?

23   MS. ABIDENE:  I believe he didn't do a reading test.  The

31

1    only other test that was done is the standardized test that they

2    do in the beginning of each year.  I think in the middle again.

3    So I know that the teacher would have his exact grade level

4    based on the standardized tests.

5        MR. DUBOW: And the standardized test was done in the

6    beginning of the school year?

7        MS. ABIDENE:  The first one?

8        MR. DUBOW: And is it done again?

9        MS. ABIDENE: I know they did another test but I'm not sure

10    if it included the reading grade level information.  So that

11    information I think his regular teacher would have.

12        MR. DUBOW:  All right.  So but if anything, it would have

13    been, September of 06 and here we are in March.  So still,

14    outdated.  I mean, I don't know.

15        MS. ABIDENE:  Yes.  I would be more comfortable –.

16        MR. DUBOW: I mean what you are saying --.

17        MS. ABIDENE:  I would be more comfortable asking the

18    teacher because she might have done other tests with him that

19    would indicate his exact reading level but I just don't feel ---.

20        MR. DUBOW: But you don't know?

21        MS. ABIDENE: But I don't know.

22        MR. DUBOW: And the person who does the reading tutoring,

23    the Special-Ed teacher, to your knowledge, she hasn't done any

1   testing to determine what level he's at?

2       MS. ABIDENE: I'm not sure if she has done some informal

3   tests or notes.  She might have, but I just don't know.

4       MR. DUBOW: Any questions caused by my questions.

5       MS. GAMBOLI:  According to the IEP, there were tests

6   administered on 12/11/06 that indicated that the student was

7   reading on a 2.5 ---.

8       MR. DUBOW:  No no no no no.  That was based on the psycho-

9   ed of 05.  That is what she just testified to.  That's wrong.

10  What is in the IEP is wrong.  Because that is the date of the

11  IEP meeting.

12      MS. MCAULIFFE:  Correct.

13      MR. DUBOW:  No tests were done then, that is the date of

14  the IEP meeting.  That is obviously wrong.  That is obviously

15  the date of the IEP meeting.  This witness has testified and –

16  those test scores are from 11/17/05 psycho-ed.

17      MS. ABIDENE:  And yes, that was what was reviewed at this

18  meeting, so I think that' where --.

19      MR. DUBOW:  So that is where it came from?

20      MS. ABIDENE: It came from that, yes.

21      MR. DUBOW: All right.  Any other questions?  Okay this

22  witness is excused.  Thank you.  Are there any other witnesses?

23      Okay.  I'm going to ask that you provide me, if there are,

1  any current reading - to determine comp-ed pursuant to Reid.  I

2  need to know the current levels of this child.  I can't

3  determine the current levels.

4      MS. MCAULIFFE:  We would be happy to provide anything the

5  Hearing Officer wants, but I would like to point out that it is

6  the parent's burden to show exactly what deficiency there was

7  and what's the need bring him back.

8      MR. DUBOW:  No. But - it's in your possession, not in the

9  parent's possession, what the current reading level.  And you

10 are providing tutoring the child as a form of comp-ed.  And you

11 should know. I mean I used to do reading tutoring. I want to

12 know the baseline of where I start with the child and where I am

13 now with the child.  Everybody does that. So you need to know

14 that. And obviously the data you have is old. The data I have in

15 the record is that he's 2.5 to 2 years behind, is based on an

16 old psycho-ed, not old, but November 05.  So what I am asking

17 you to provide me is what the current reading levels are of this

18 child.  And if you don't have it, I am going to order testing be

19 done on the child.  In other words, if you have reading tests

20 that were done in September of—of - the start of this school

21 year, that is not recent for me, because that doesn't tell the

22 current levels, it is almost the end of the school year.  So if

23 they have done something recent or about to do something recent,

1   because frequently in April they do testing in the District of

2   Columbia, I don't about charter school do.

3       MS. MCAULIFFE: We are only talking about the time period up

4   until the Complaint was filed. The Complaint was filed in

5   November.

6       MR. DUBOW: Yes.

7       MS. MCAULIFFE: So we would need to determine everything

8   based on that - if what we offered at the resolution meeting was

9   appropriate at that time period.

10      MR. DUBOW: But right now I don't any - I have something

11  from 11/05.  I don't have — I don't have any current information

12  as to what his reading level is.   Ms. Gamboli you want to say

13  something.

14      MS. GAMBOLI:  Well there are a couple of things that I am

15  concerned about for the student, and one is that the Special-Ed

16  Coordinator specified that he is not receiving the amount of

17  hour that are specified in his basic IEP, let alone the

18  compensatory education that he requires.  And I am concerned

19  about with what she has testified to, that that he may not be

20  able to get the hours that he needs.  What I would ask if at

21  least on an interim basis the Hearing Officer would entertain

22  finding independent services because I could get him that

23  independent tutoring that everybody's agreed that he benefits

1   from and that should be a part of his program.

2       MR. DUBOW: I don't know why I have to get independent if he

3   is getting individual tutoring now and he is accustomed to that

4   tutor, maybe increase the hours of that tutor.  Or someone else,

5   you know.  To all of the sudden start from scratch with

6   somebody, is not necessary at this stage. If the charter school

7   can't provide the tutoring, then your argument has some

8   validity.

9       MS. GAMBOLI:  But they've already testified that they have

10  one teacher, for five grades.

11      MR. DUBOW:  I know.  I know exactly what they testified to.

12      MS. GAMBOLI:  I'm concerned that the student isn't getting

13  the basis of what he needs in addition to not getting the

14  compensatory education in everyday, he is falling further and

15  further behind.

16      MR. DUBOW: Yes that is a problem.  Because I will tell you

17  right now what is the problem.  If you have an inclusion model,

18  it's okay to have an inclusion model, but the Special-Ed teacher

19  has to be in the classroom. In other words, you can't have an

20  inclusion model when you place a student whose IEP calls for

21  fifteen hours of specialized instruction.  You can't put him in

22  with a regular education teacher and just say that just because

23  you consulted with that teacher, that that's meeting that needs.

1   That's not meeting the needs.  You have to have that Special-Ed
2   teacher, maybe she is not providing direct instruction to this
3   individual child, but that Special-Ed teacher is in the
4   inclusion class is there when there are problems. And I not
5   hearing that.  There is no way mathematically possible that this
6   teacher, Special-Ed teacher, provides a direct service, which
7   isn't used.  It is the other person can possibly be in those
8   five other classes and still provide fifteen hours to this
9   student.
10      MS. ABIDENE: Can I explain my understanding just to--.
11      MR. DUBOW: I know what your understanding is. But it's
12  wrong.  It's not proper under the IDEA.
13      MS. ABIDENE: Just what was explained to me in terms--.
14      MR. DUBOW: I'm sure that was maybe explained to you, and
15  maybe that's how they run it, but that's wrong.  Because that's
16  not the way the law requires.  If you going to provide
17  specialized instruction it has to be provided by qualified
18  personnel, a Special-Educator.  Okay.  And it says fifteen
19  hours.  And if the child is only getting maybe, maybe at the
20  most three hours of tutoring, plus the ninety minute block a
21  day, the questions whether that comes - I think three a week of
22  tutoring, by the Special-Ed teacher and ninety minutes a day is
23  fall short of the fifteen hours.  Okay.  I'm not faulting you at

1    all --.

2        MS. ABIDENE:  And I know -.

3        MR. DUBOW:  Legally, that you have to have a qualified

4    Special-Ed teacher.  And the fact that you have only one

5    providing the direct services and she has first through fifth

6    grade to attend, means that she can't meet the goals - the

7    problem of this child in the IEP.  And that is a problem to me.

8    And so - you may have to hire another Special-Ed teacher.  I

9    don't know. But you are going to have provide qualified - No

10   Child Left Behind Laws - as well as IDEA requires qualified

11   personnel. Then regular education teacher might be a wonderful

12   person, but she is not a Special-Ed teacher.  So this child

13   needs specialized instruction and it has to be provided by a

14   Special-Ed teacher.  Every IEP that I see that says so many

15   hours, so many hours of week of specialized instruction, always

16   says the provider is a Special-Ed teacher. Yours says regular ed

17   and Special-Ed teacher.  Well, it has to be according to the

18   law, a qualified person.  This is a regular teacher and is not

19   qualified to provide specialize instruction.  This is not their

20   job, so you know. It'd be different if your IEP said, no hours

21   of specialized instruction, consultation.  Well, you would

22   provide that --.

23       MS. ABIDENE:  When you sum up, I can tell you to clarify -.

1    MR. DUBOW: And that would be fine. But when it says fifteen

2    hours a week, if they have a Special-Ed teacher providing that

3    fifteen hours. It's fine to be in a regular classroom, you don't

4    have to pull the child out of the classroom, that's fine,

5    because she has to be in the classroom.  That's what an

6    inclusion model is.

7       MS. ABIDENE:  To clarify the fifteen hours of specialized

8    instruction, you're saying it all has to be provided by a

9    Special-Ed teacher --.

10      MR. DUBOW: She has to be in that --.

11      MS. ABIDENE:  So that the consulting hours don't – don't

12   count towards that?

13      MR. DUBOW: No.  This is not direct service.  It doesn't say

14   consulting.  It says fifteen hours of specialized instruction.

15   That is what you folks agreed to.  That means fifteen hours of

16   direct instruction.

17      MS. ABIDENE:  Then I think that is something we need to

18   keep in mind and clarify on the IEP.

19      MR. DUBOW: That is exactly what you have to do because it's

20   wrong.  There is obviously mis-specialized instruction that the

21   IEP is not being implemented as agreed.  Now that may be your

22   understanding. But it is not being provided appropriate.  And,

23   while we're here on the comp-ed point, it has become obvious

1   that the child is not getting the full services that the IEP

2   requires.

3       MS. GAMBOLI: That is the original issue that we filed on.

4       MR. DUBOW: What?

5       MS. GAMBOLI: That was the original issue that we had filed

6   on.

7       MR. DUBOW: All right. All right.  But I also need to know

8   in terms of determining the comp-ed, since you agreed that the

9   child is entitled to comp-ed, what his current level is. So, I

10  need to know where the child is at.  He may because of the

11  tutoring you're providing really gone up to close level. If that

12  is the case under Reid, he is not entitled to much comp-ed.  Now

13  Ms. Gamboli before you start arguing, it doesn't mean the child

14  is not also entitled to missed services under the IEP. That is

15  separate from the comp-ed issue.  Do you understand?

16      MS. GAMBOLI: HmmmHmm.

17      MR. DUBOW:  All right.  So I understand the issue.  All

18  right.  So, I am going to order that the missed time that this

19  child - cause the child is failing.  The child is failing very

20  bad according to his grades.  Unless you show me something else,

21  I - what's in the record is that this child is not doing very

22  well.  Even - I mean I don't see anything that contradicts that.

23  The child is doing bad.  He is not doing well. D's and F's, is

1    what I have.  If you have something to show me that is

2    different.  I don't have it.

3        MS. ABIDENE:  Maybe we could update all his information,

4    the formal and the - reading level.

5        MR. DUBOW:  The main information that I need is what is his

6    current reading level?  Is the child, the child's in sixth

7    grade, where is he now?

8        MS. ABIDENE: No he's in fifth grade.

9        MR. DUBOW: Okay. Child's in fifth grade. Where is the child

10    now.  As best you can determine.  And that information, your

11    people may already have, because they already may have it.  Or

12    they are about to - maybe they are - because frequently schools

13    test in April.  Maybe they are about to test, I don't know.  I

14    don't know what charter school does. But I know the public

15    schools test in April. So, can you provide me that information?

16    How long would it take to get it to me?

17        MS. ABIDENE: We can call the school now and I can speak to

18    the Special-Ed and the regular-ed teacher and see what is the

19    latest information they have.

20        MS. MCAULIFFE:  We could provide by the close of business

21    this Friday.

22        MR. DUBOW: Today is Friday.

23        MS. MCAULIFFE:  Friday.

41

1    MR. DUBOW: No problem.   That's fine.   Okay.   Provide it to

2  my attention and . . and a copy to Ms. Gamboli.  All right.   And

3  on the basis of that, I'll determine what comp-ed is necessary.

4  And I'm also going to award - there is missed services.   This

5  IEP is not --.

6    MS. MCAULIFFE: But that would be a  separate claim sir.

7    MR. DUBOW: What!  Yes M'ame.

8    MS. MCAULIFFE:  This IEP was written after the complaint

9  was filed.  So any missed services on this would be a separate

10  claim.

11    MR. DUBOW: You said you raised it earlier.

12    MS. GAMBOLI:  We did.  That was the original. But they had

13  went on and implemented the IEP, that was listed at the time.

14    MR. DUBOW:  Which is which document?

15    MS. GAMBOLI:  That was -- that was -- They were not

16  implementing the March 10, 2006 IEP.

17    MR. DUBOW:  Where is that, is that in the document?

18    MS. GAMBOLI:  That is.

19    MR. DUBOW: But it also was fifteen hours.

20    MS. GAMBOLI:  Yes.

21    MR. DUBOW:  Where is that?

22    MS. GAMBOLI: That is in -.

23    MR. DUBOW:  You said sixteen, or seventeen?  I have

1    3/10/06.  Fifteen hours a week specialized instruction to be

2    provided by the teacher slash tutor.  Right?

3         MS. GAMBOLI:  Yes.

4         MS. MCAULIFFE:  So the complaint was the missed services on

5    that and that's what this whole comp-ed is about?

6         MR. DUBOW:  It's not about this recent?

7         MS. MCAULIFFE: No absolutely not.

8         MR. DUBOW: So I won't entertain that.  Even though it is a

9    problem.  But I'm sure --.

10        MS. MCAULIFFE: The whole issue is whether, what we've

11   offered was adequate to compensate any alleged violations before

12   the complaint was filed.

13        MR. DUBOW:  I understand that.

14        MS. MCAULIFFE: Ms. Gamboli has given no evidence to

15   indicate that's that not true, that any more is needed.  There

16   is nothing –

17        MR. DUBOW:  But I don't where the child is at?  You're

18   saying I should stop at the time where the complaint is right?

19   Was filed?

20        MS. MCAULIFFE:  Hmmmhmm.

21        MR. DUBOW: But I don't have that.  Do I?  So how can I

22   determine under Reid, what it should be?

23        MS. MCAULIFFE: It's the burden to prove that what we offer

43

1    is was not adequate.  She hasn't done that.

2        MS. GAMBOLI:  I think part of the issue is that they never

3    actually offered anything, but what was offered was what the

4    team determined was to be part of his program.  As far as the

5    issue of the implementing of the IEP, that was raised, but they

6    weren't implementing the IEP this issue this school year, and

7    that is in our issue number two on page six.

8        MR. DUBOW:  Fail to fully implement the IEP of 3/10/06.

9        MS. GAMBOLI: Now there is on-going, on-going, denials of

10   FAPE that are occurring because they are still not, since the

11   date we filed, they still have continued to deny the student

12   FAPE by now implementing a program for him.  And its ongoing,

13   but certainly, that's addressed that the fact they he didn't

14   have a teacher, they were implementing his program was clearly

15   part of the complaint, but--.

16       MS. MCAULIFFE:  So the timeline stops --.

17       MR. DUBOW:  Let me, let me, let me basically say on the

18   comp-ed issue okay. If you develop an IEP that says a child is

19   entitled to so many hours of instruction, specialized

20   instruction, they have "C" amount of hours that the child is to

21   receive, by a qualified person, we all agree on that, right?

22       MS. MCAULIFFE: HmmmHmmm.

23       MR. DUBOW: Now, then, if you decide, if everybody decides

1    this child needs comp-ed, okay. That has to be above what
2    already in that IEP. It cannot be, you cannot take, you cannot
3    take what you've already promised as part of the specialized
4    instruction and say, okay, that's also going to be comp-ed.  It
5    doesn't work that way.

6       MS. MCAULIFFE:  One-on-one tutoring would be a greater
7    level of services than specialized instruction.

8       MR. DUBOW:  You're on really weak ground, because your
9    people already admitted to me that, you know I have regular ed
10   teacher providing the specialized instruction, which is totally
11   wrong.  So to say that you are providing the tutoring, then I
12   have a tutor who is not, who - I have three a week of the
13   tutor's being Special-Ed teacher, but the other two hours it's
14   no kind of educational assistant.  I don't know what his
15   background is.  It's even less than a teacher.  It's, you know.
16   You need to do some changes at this school, it's not proper,
17   it's not following IDEA, in terms of what specialized
18   instruction is all about. You can't say that we're going, yes
19   the child is entitled to specialize instruction and then we're
20   going to take those hours out of the already committed hours in
21   the IEP for specialized instruction.   That is not comp-ed.
22   Comp-ed would be additional services. In addition, that is the
23   way I understand the law.  People tell me something different,

1    I'll be open to hear it.

2        MS. MCAULIFFE: No, it's just our claim –.

3        MR. DUBOW: You may know more than me. I don't know.

4        MS. MCAULIFFE: No, I mean.  One-on-one tutoring is a

5    greater level of services than specialized instruction.

6        MR. DUBOW: Not --- NECESSARILY.

7        MS. MCAULIFFE: After the meeting when the evaluations –.

8        MR. DUBOW:  Not necessarily. If the one-on-one specialized

9    instruction – if the specialized instruction is provided by a

10   qualified Special-Ed teacher, the level of instruction is better

11   than one-on-one tutoring provided by someone who is not a

12   certified Special-Ed teacher.  I mean it is no way that it can

13   better.  Because the Special-Ed teacher went through a lot of

14   training and got her Master's Degree.  Is in the background,

15   this witness says suffice you have background. You are supposed

16   to know how to teach children with learning disabilities. You're

17   supposed – you are supposed to be aware of the techniques.

18   Whereas, somebody who is just an educational assistant wouldn't

19   have that background and therefore wouldn't be qualified.  So

20   the fact that he is working one-on-one, doesn't mean anything

21   because the Special-Education teacher could probably do a lot

22   better job because they are specifically trained for it.  I mean

23   that the fact, as a lawyer, you know as a lawyer, somebody comes

46

1    to see a lawyer and all of the sudden you send a paralegal in,

2    you say yeah, but you're getting one-on-one with the paralegal.

3    I'm sorry but I came here to see a lawyer.  Same thing. I came

4    here to see a Special-Ed teacher, not an educational assistant –

5    aide.

6         MS. MCAULIFFE:  The bottom line is that the Complaint was

7    filed alleging that the IEP was inappropriate, additional

8    testing needs to be done, and there were services. At the

9    resolution meeting, agreed to testing, came back to the table,

10   reviewed the testing.  Tried to develop an appropriate IEP and

11   discussed what the child needed to get caught up. We discussed

12   it as a team, the parent was there, the parent was represented

13   by an advocate that was there.  They were in agreement. There

14   were several follow-ups after to make sure they were in

15   agreement.  They never raised any claims.

16        MR. DUBOW:  Too late. You're before me now and I have to go

17   by the law. You people can agree to what you want to agree.

18   When you come before me, I have to follow IDEA, the federal law.

19        MS. MCAULIFFE: Right.

20        MR. DUBOW: I have to follow the laws of No Child Left

21   Behind Law.  And so, if I see something that is totally illegal,

22   I am not going along with that agreement.  And so, that

23   agreement, that is not comp-ed.  You cannot tell me that --.  I

47

1  understand what was written in the IEP that you are providing

2  more, that you are providing one hour per day instead of one

3  hour per week, which what you would read the way it was written.

4  But, isn't working, so let's see the current levels.  So tell me

5  tell me where the child is at.  If the child is up to grade

6  level, then obviously it's working and maybe the child is not

7  entitled to comp-ed., beyond what you are providing. So provide

8  me with what I asked me by the close of business on Friday.

9  Anything further Ms. Gamboli?

10      MS. GAMBOLI: No.

11      MR. DUBOW:  Okay, case is submitted.