UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARY McCLEOD BETHUNE DAY ACADEMY PUBLIC CHARTER SCHOOL** | : <br> : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | : CIVIL ACTION NO. 07-1223(AK) <br> : |
| **TERRI BLAND**, as next friend of the minor child, T.B., and T.B., individually, | : <br> : <br> : |
| Defendants. | : <br> : |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

    **COMES NOW**, the Defendants, by and through counsels, Roxanne D. Neloms and Domiento C.R. Hill and James E. Brown & Associates, PLLC and pursuant to Local Rule 7.1 and Rule 56 of the Federal Rules of Civil Procedure, respectfully moves this Honorable Court for entry of summary judgment against the Plaintiff, for the reasons that are more specifically set forth in the attached Memorandum of Points and Authorities filed contemporaneously herewith and incorporated herein by reference as though set forth in its entirety.

                                                                                                          Respectfully submitted,

                                                                                                           /s/
                                                           Roxanne D. Neloms [478157]
                                                           Domiento C.R. Hill [ MD14793]
                                                           Brown & Associates, PLLC
                                                           1220 L. Street, NW, Suite 700
                                                           Washington, DC 20005
                                                           (202)742-2000 (Tele.)
                                                           Counsel for Defendants

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARY McCLEOD BETHUNE DAY ACADEMY PUBLIC CHARTER SCHOOLPlaintiff,v.TERRI BLAND, as next friend of the minor child, T.B., and T.B., individually,Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: CIVIL ACTION NO. 07-1223(AK)<br>:<br>:<br>:<br>:<br>:<br>: |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF ITS OPPOSITION TO THE PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

COMES NOW, the Defendants, by and through their attorneys Roxanne D. Neloms, Domiento C.R. Hill, and James E. Brown & Associates, PLLC, and in their Memorandum of Points and Authorities Submitted in Support of Their Motion for Summary Judgment, represents unto this Honorable Court as follows:

**I. RELEVANT FACTUAL BACKGROUND**

In the October 2006 administrative due process hearing request, counsel for the parent alleged that 1) Bethune Academy failed to revise T.B.'s IEP in a timely manner; 2) Bethune Academy failed to implement the IEP from the 2004-2005 and 2005/2006 school years; 3) Bethune Academy failed to provide comprehensive evaluations; 4) Bethune Academy failed to develop an appropriate IEP at the March 2006 IEP meeting and 5) Bethune Academy failed to convene an appropriate IEP team in March 2006. ***See AR at 65-73.*** As relief counsel, among other things, sought the convening of a proper MDT/IEP meeting; completion of evaluations,

2

namely a vineland, a social history; a speech language, a clinical evaluation and the reservation of compensatory education. *See AR at 71.*

At the November 2006 resolution meeting, the MDT team agreed that it would complete several evaluations on T.B.'s behalf. *See AR at 272.* After the resolution meeting, counsel for the parent, in a November 2006 letter, informed Ms. Abedin, the special education coordinator, and the Student Hearing Office that a hearing date should be issued as the matters in the administrative due process hearing request were unresolved. *See AR at 299.* A review of the meeting notes contain no reference to the parent and Bethune Academy agreeing that the matters in the October 2006 administrative due process were resolved. *See Plaintiff's Motion for Summary Judgment at 2*. Opposing counsel forwarded several emails to the parent's advocate, that upon the parent receiving the meeting notes and IEP, the October 2006 administrative due process hearing request would be withdrawn. *See Supplemental AR at 321-327.* In a second letter dated, January 9, 2007, counsel for the parent informed Ms. Abedin, the special education coordinator, that while the parent received the IEP and authorized its implementation, the parent maintained her concerns as previously indicated. *See AR at 241.* Counsel for the Plaintiff maintains that the parent never expressed a disagreement with the compensatory education plan developed for T.B. *See Plaintiff's Motion for Summary Judgment at 2*. However, no compensatory education plan had been developed on T.B.'s behalf and this was noted in the April 2007 HOD. The hearing officer noted that "[a] reading of the MDT notes stated the one hour of individual tutoring is to 'compensate for his additional needs' . . . .is not the same as a compensatory education award for missed services." *See AR at 25.* Since the Plaintiff appealed the findings in the April 2007 HOD asserting that the defendant failed to meet her burden in

3

accordance with *Reid v. Dist of Columbia*, 401 F. 3d 516 (D.C. Cir. 2005), T.B. has not received any of the compensatory education services ordered, thereby resulting in further harm.

The Plaintiff has failed to set forth any material facts that would support the reversal of the April 2007 HOD that granted T.B. three hundred seventy-five hours in compensatory education services.

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party is entitled to judgment as a matter of law and no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)*; Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable factfinder could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Facts and inferences drawn from those facts must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, summary judgment may still be granted if evidence favoring the non-moving party is merely colorable, or is not significantly probative. *Anderson*, 477 U.S. at 249-50.

Once the movant files a proper summary judgment motion, the burden shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." FED. R.

4

Civ. P. 56(e); *Anderson*, 477 U.S. at 250. For a non-moving party to establish that a genuine issue for trial exists, it must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co.* 475 U.S. at 586. Consequently, when neither party seeks to supplement the administrative record with additional evidence, a motion for summary judgment will operate as a motion for judgment based on the evidence of record. 20 U.S.C. § 1415(i)(2)(B); *Id.* at *Ramirez,* 355 F.Supp. 2d. 63 (D.D.C 2005). As there are no genuine issues of material fact, this Court should grant the Defendants' motion for summary judgment.

### III. ARGUMENT

The Plaintiff maintains that the Defendant had the burden of offering evidence of the actual educational harm was suffered by T.B and in addition, had an obligation to provide the hearing officer with a suitable program to address any alleged deficits. ***See Plaintiff's MSJ at 6***. The Plaintiff alleges that there was no evidence that linked T.B.'s "current level of academic functioning to the period of time the denial of FAPE" occurred at Bethune Academy. The Plaintiff opines that Bethune Academy is not responsible for providing compensatory education services because T.B.'s academic grade level rose by two years. ***See AR at 10.*** To support its position, the Plaintiff compares the results of a March 2007 Qualitative Reading Inventory (QRI) test against the results of two psycho-educational evaluations completed in 2003 and 2005. ***See AR at 10, 253, 256,132, 135.*** The March 2007 QRI indicated that T.B. currently performed on the third grade level. *Id.* Both of the psycho-educational evaluations noted T.B.'s academic performance at first grade, ninth month (1.9). This comparison is faulty, as psycho educational evaluations employ different sets of assessments to measure a child's academic grade level and contains at least several different sub-test to assess one's skills (both of T.B.'s psycho

5

educational utilized Weschler Individual Achievement Test also known as WIAT-II). *See* http://www.sedl.org/reading/rad/chart/html(2007)(*Southwest Educational Development Laboratory* ).

On the other hand the Qualitative Reading Inventory, also known as the QRI, is "an informal reading inventory designed to assess reading ability at emergent through middle school levels. *Id at Southwest Educational Development Laboratory.* Comprehension in this assessment is measured through story retelling and comprehension questions (which are separated into explicit and implicit facts about the story). Before comprehension tests are given, a prior knowledge test is given to assess the child's prior knowledge in the subject area." *Id. at Southwest Educational Development Laboratory.* Each assessment measures wholly different areas, thus, T.B.'s performance on the QRI is relative to that assessment only. Coincidentally the Court does not have the luxury of assessing T.B.'s academic grade level on a WIAT-II because it has not been conducted. Nonetheless, the argument set forth by the Plaintiff would be relevant if the issue regarding indemnification was at issue. Thus, this argument is nothing more than a red herring meant to confuse the Court with regards to the real issue presently before it. That issue is whether the hearing officer's award of compensatory education violated the standards enunciated in *Reid*. See *Reid*, supra. This Court should answer in negative, the hearing officer's determination of compensatory addressed the denial of FAPE that Bethune Academy conceded to when it failed to implement T.B.'s IEP.

### A. THE APRIL 2007 HOD CONTAINS REASONED AND SPECIFIC FINDINGS THAT SHOULD NOT BE REVERSED BY THIS COURT.

In its papers, the Plaintiff claims that the hearing officer's failure to base his order on specific facts or his failure to require qualified expert testimony as to the amount of educational

harm suffered by T.B. amounts to an error and thus warrants reversal by this Court. As previously argued by the Defendant, the hearing officer utilized a fact specific inquiry to make a determination that T.B. warranted compensatory education services.

Here, T.B.'s compensatory education award was based on a fact specific inquiry that took into account T.B.'s specific and unique needs. The hearing officer scheduled, within the scope of his authority, a second administrative hearing to specifically gather facts and information regarding T.B.'s educational deficits. ***See AR at 1-6.*** He also ordered additional testing to understand T.B's current academic level. ***See 2nd TR at 34-35.*** Adrienne Larsen-Silva performed a Qualitative Reading Inventory (QRI-IV) on March 29, 2007 during the last quarter of T.B.'s fifth grade year at Bethune Academy. ***See AR at 10***. The QRI-IV measures a student's ability to read and comprehend short passages on variety of topics. ***Id.*** T.B. apparently was administered passages on the third and fourth grade levels and "from memory, [] was able to recall 18 out 55 main points of the story. He was able to []use the text to answer 7 out of 8 comprehension questions correctly." ***See AR at 10.*** She further added that T.B. scored at the frustration level on the fourth grade passage. ***Id.*** She indicated that she believed that T.B. approximately read on the third grade level. ***Id***. T.B.'s report card revealed that as early as the first quarter, his teachers had concerns in almost every academic area. ***See AR at 28.***

The hearing officer gathered testimony from Ms. Gomar Abidene, the special education coordinator at Bethune Academy. He questioned her about what if any plan had the MDT team members developed on T.B.'s behalf to redress their ***conceded failure*** to provide T.B. with access to a free and appropriate education. ***See 2nd TR at 11-48.*** Her testimony uncovered that while T.B.'s past and current IEPs called for fifteen hours of specialized instruction, he had not received those hours as indicated because on several occasions there was no special education

7

teacher available to provide services. *Id.* She explained that Bethune Academy utilized an inclusion model where the special education teacher only consulted with the regular education teacher and at no time provided direct services to special education students. *Id.* The hearing officer explained that this model clearly supported the parent's contention that both 04/05 and 05/06 IEPs were not being implemented. *Id*. In his decision he noted that the December 2006 IEP showed that T.B. was "at 2.5-3rd grade equivalence on reading comprehension, reading basic, written expression and math reasoning based on testing data. . ." ***See AR at 4.*** He specifically noted the following:

> "[t]he special education coordinator testified that the student only receives five hours a week of specialized instruction I reading from the special education teacher in one-on-one tutoring. The student does not receive any other specialized instruction by a special education teacher even though his IEP calls for 15 hours a week of specialized instruction. The general education teacher provides instruction in math and written expression to the general educate class including this student, There was no special education teacher providing services to this student in December 2006. There are 12-15 special education students at Bethune in five different grades with one special education teacher providing direct instruction to these students.
>
> *Id*.

8

The hearing officer's award of compensatory education was based on information gathered through testimony and evaluation data. This award focused on T.B.'s individualized needs and furthered compensated him for Bethune Academy's past violations of IDEIA. The "fact specific inquiry" is the discretion of the hearing officer and was a valid exercise of such. There is no basis to reverse the April 2007 HOD. The hearing officer's award of compensatory services were not derivative of mathematical calculations and was more importantly, reasonably calculated to provide T.B. with educational benefit.

Second, the award of compensatory education services addressed the denial of FAPE committed by Bethune Academy, so prior acts that may or may not have been committed by schools other than Bethune Academy were irrelevant. For instances, in the case at bar, Bethune Academy had already conceded it had not implemented T.B.'s IEP. *See AR at 21-26.* The April 2007 HOD noted that T.B. was due compensatory education because Bethune Academy had not provided "specialized instruction since March 2006 and [. . .]for the month of December 2006. *See AR at 1-6.* The Plaintiff claimed that the parent had not set forth any type of evidence that would support the hearing officer's award of three hundred seventy five hours of compensatory education, except for the 102 hours noted by Sylvan Learning Centers. However, this statement is wholly untrue as Sylvan Learning Centers recommended that T.B. would require more than 200 hours to compensate for his deficits in reading. *See AR at 180-185.* More importantly this document, administered in October 2006, noted that while T.B. was 11 years and 5 months when assessed, he operated on the age equivalent of 6 years and 6 months. *Id.*

Courts have defined compensatory education awards as equitable remedies which are meant to redress the harm cause by denials of access to a free and appropriate education. Thus

9

an award of compensatory education is to provide a child with services above and beyond what he/she would have normally received.

The fact that a child has been denied access to a free and appropriate education presumes that a child suffered an educational deficit. What the D.C. circuit court sought to do in *Reid*, was enunciate a standard whereby it employed the ideology that some children harmed by a school district's failure to provide access to a free and appropriate education may require more or less remedial assistance based on ***that child's*** specific and unique needs. See *Reid v. Dist of Columbia*, 401 F. 3d 516 (D.C. Cir. 2005). The Court noted, to determine the amount of remedial assistance appropriate for a child, requires an undertaking of fact specific exercises of discretion, by either the district court or a hearing officer. *Id.* The Court noted that these ***types of inquires (exercises of discretions)***, "must be ***fact-specific*** [omit] to accomplish IDEA's purposes, [because] the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Id.*

## V. CONCLUSION

Wherefore, the Defendants pray that this Court respectfully grant the Defendants' Motion for Summary Judgment and deny the Plaintiff's Motion for Summary Judgment. The Defendants request that the Plaintiff be ordered to immediately comply with the award of compensatory education services in the April 2007 HOD so as to not further harm T.B. and the Defendants' further request that the Court confer prevailing party status and award fees at the administrative level and in connection with the defense of this suit.

       Respectfully submitted,

       _____/s/_____
Roxanne D. Neloms [478157]
Domiento C.R. Hill [ MD14793]
Brown & Associates, PLLC
1220 L. Street, NW, Suite 700
Washington, DC 20005
(202)742-2000 (Tele.)
Counsel for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARY McCLEOD BETHUNE DAY ACADEMY PUBLIC CHARTER SCHOOL | : : : : |
| **Plaintiff,** | : : |
| v. | : CIVIL ACTION NO. 07-1223(AK) : |
| TERRI BLAND, as next friend of the minor child, T.B., and T.B., individually, | : : : |
| **Defendants.** | : : : |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
STATEMENT OF MATERIAL FACTS.**

1. Defendant's do not dispute paragraphs 1-10.

Respectfully submitted,
/s/
Roxanne D. Neloms [478157]
Domiento C.R. Hill [ MD14793]
Brown & Associates, PLLC
1220 L. Street, NW, Suite 700
Washington, DC 20005
(202)742-2000 (Tele.)
Counsel for Defendants

1