**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARY MCLEOD BETHUNE DAY ACADEMY PUBLIC CHARTER SCHOOL    Plaintiff           v.  TERRI BLAND et al.    Defendant. | :  :  :  :  :  :  :  :  Civil Action No. 07-1223( AK)  :  :  :  :  :  : |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiff, by and through undersigned counsel, and pursuant to Local Rule 7.1 and Rule 56 of the Federal Rules of Civil Procedure, respectfully moves this Honorable Court for entry of summary judgment against the Defendant, for the reasons that are more specifically set forth in the attached Memorandum of Points and Authorities filed contemporaneously herewith and incorporated herein by reference as though set forth in its entirety.

Respectfully submitted,

_____/s/_____
Paul S. Dalton, Esq
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MARY MCLEOD BETHUNE DAY ACADEMY PUBLIC CHARTER SCHOOL | : : : : |
| Plaintiff | : : |
| vi. | : **Civil Action No. 07-1223( AK)** : |
| TERRI BLAND et al. | : : |
| Defendant. | : : |
| _____ | : |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiff, by and through undersigned counsel, and in their Memorandum of Points and Authorities Submitted in Support of Their Motion for Summary Judgment, represents unto this Honorable Court as follows:

**I.   RELEVANT FACTUAL BACKGROUND**

The defendant, T.B., is a twelve year-old, special education student who currently attends Mary McLeod Bethune Day Academy Public Charter School ("MMB") as a fifth grader.  The parent of T.B. filed a due process complaint October 31, 2006 AR- 311.  MMB convened a resolution meeting in response to the complaint on November 15, 2006.  AR-272.  At the resolution meeting, the parties agreed that new evaluations would be performed and that another meeting would be convened to discuss what needed to be put into place for TB's educational needs.  AR-272.

Subsequently, on December 11, 2006 MMB convened a MDT meeting and agreed to provide one-on-one tutoring for the student for one hour per week to compensate for any missed services in the past. AR-288. The parent and her advocate were in agreement with the one-on-one tutoring, which was then written into the IEP. AR-289. The parties left the resolution meeting with the understanding that the complaint was resolved. However, when counsel for MMB tried to contact counsel for the student regarding withdrawing the hearing request on several occasions, counsel for MMB did not get a response. AR-321; AR-322; AR-323; AR-324; AR-325. It was not until January 9, 2007, that counsel for the student informed counsel for MMB that they were not in agreement with the IEP and that they intended to proceed to hearing. AR-241 This was the first time the parent expressed any disagreement with the compensatory education plan offered by MMB.

     The hearing convened on January 17, 2007 and the parent presented her case. TR-January 17, 2007 pg 1. The only witnesses to testify were the parent and her advocate. The advocate admitted to having received the emails from Counsel for MMB and admitted that he did not respond to the emails. AR-41. At the close of the parent's case in chief, MMB made a motion for directed finding that the parent failed to meet her burden. AR- 77. The case recessed for the hearing officer to decide the motion. AR-77. On January 26, 2007, the hearing officer issued a Hearing Officer's Determination granting the directed verdict motion on the evaluation issue in favor of MMB but, denied it on the compensatory education issue and scheduled a second due process hearing to hear evidence regarding MMB's defense as to the issue of compensatory education.

The due process hearing reconvened on March 23, 2007. TR-March 23, 2007 pg 1. The hearing officer clarified the issue before him as not whether the child was entitled to compensatory education but rather how much as he stated that MMB had already conceded the child was entitled to compensatory education. MMB presented a clinical psychologist, Dr. Richard Fleitas to testify regarding the issues that were discussed at the December 15, 2006 MDT meeting. Dr. Fleitas testified that the purpose of the individual tutoring that was discussed at the meeting was not as part of his regular IEP but instead to "catch him up". TR-March 23, 2007 Pg 7. Dr. Fleitas further testified that the entire team including the parent were in agreement with the IEP and the tutoring being offered.

MMB presented a second witness to testify on the issue of whether the parent had previously agreed prior to the hearing as part of the Resolution Meeting that all issues were resolved. Ms. Abedin, the Special Education Coordinator at MMB testified that one to one tutoring, specifically to the extent agreed to be provided to TB, is not something that is typically added to an IEP. TR- March 23, 2007 Pg 16. Ms. Abedin further testified that she subsequently emailed the advocate to make sure the case was complete and never heard back from him. TR- March 23, 2007 Pg 17. On cross examination, the Parent's attorney asked the witness if the school ever developed a plan that set forth the compensatory education the student was to receive. The witness, Ms. Abedin, responded that it was her understanding at the meeting that they were compensating the student for what the parent and the parent's advocate were raising as the compensatory education the student required. TR- March 23, 2007 Pg 18.

At the end of the second hearing held of March 23, 2007, the hearing officer requested that MMB provide him with T.B.'s current reading level and he would determine the compensatory education needed. TR- March 23, 2007 Pg 41. On March 30, 2007, MMB filed Respondent's Praecipe and Supplemental Disclosure with one exhibit, MM-14 (Results of Educational Testing 3/29/07). AR-7. The testing revealed that the student was reading on approximately a third grade level. AR-10.

On April 9, 2007, an administrative hearing officer issued an Order determining that the parent was the prevailing party on the issue of compensatory education and awarded the student three hundred and seventy-five (375) hours of compensatory education in the form of one to one tutoring. AR -2. As stated previously, the Parent failed to prove what services were necessary to put T.B. in the position he would have been in but for the violation. MMB offered to provide compensatory education in the form of one to one tutoring in reading 5 hours a week during the time that his current IEP was in effect. AR- 16. The hearing officer's determination did not specify in his Order how he arrived at an award of three hundred and seventy-five (375) hours . AR-2.

## II. THE APRIL 2007 HOD WAS NOT A REASONED DECISION AND SHOULD BE REVERSED.

A party aggrieved by the findings and decisions rendered during the administrative due process proceedings is entitled to bring forth a civil action in either state or federal court without regard to the amount in controversy. 20 U.S.C. § 1415 (i)(2). The reviewing court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines to be

appropriate." 20 U.S.C. § 1415 (i)(2); 34 C.F.R. §305.12(b)(3). The applicable standard of review requires that "a party challenging [an] administrative determination must [shoulder] the burden of persuading the court that the hearing officer was wrong, and that a court upsetting the officer's decision must at least explain its basis for doing so." *See Kerkam v. McKenzie*, 862 F.2d 884, (D.C. Cir. 1989)("*Kerham I*"). Thus, an administrative determination "without reasoned and specific findings deserves little deference." *See Kerkam v. Superintendent, D.C. Pub.Schs.*, 931 F.2d 84,87 (D.C.Cir. 1991)(*Kerkam II*)

In interpreting "the preponderance standard of review", the Supreme Court noted in *Rowley*, that it is not a review that equates into an "unfettered de novo review". *See Board of Educ. Hendrick Hudson Central School Dist. Westchester County v. Rowley,* 458 U.S. at 206, 102 S. Ct. 3034; Courts must give administrative proceedings "due weight," (*see also, Simmons v. District of Columbia,* 355 F.Supp. 2d. 12 (D.D.C. 2004).

Counsel for the Defendant while saying the decision below was well reasoned offered no examples. Counsel simply states that Plaintiff has the burden of showing that the Hearing Officer committed error. (Def. MSJ p. 9). While in general this is a true statement, it ignores the specific facts and actions taken by the Hearing Officer in this case. That is because the hearing officer erred in granting relief for the defendant after she failed to meet her burden in proving compensatory education was warranted in accordance with the standard set out in *Reid v. District of Columbia,* 401 F.3d 516 (D.C. Cir. 2005).

Pursuant to *Reid*, "the ultimate award must be reasonably calculated to provide

6

the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place" *Id.* at 524.  At the administrative hearing, the defendant failed to present any evidence as to the actual harm of the denial of FAPE by MMB or that T.B. would have progressed to a certain academic level but for the violation.  Additionally, the defendant failed to present any competent evidence of a program that could place T.B. in the position he would have been in but for the violation.  Consequently, the hearing officer requested that MMB provide him with T.B.'s current level of reading and he determined that the student was entitled to three hundred and seventy-five (375) hours without any specific facts or qualified expert testimony as to the amount of educational harm suffered by T.B. as a result of the denial of FAPE by MMB and what would be required to place T.B. in a position that he would have been in but for the violations by MMB.  In so doing, the hearing officer focused on a quantitative rather that qualitative remedy, a method specifically discouraged in *Reid.  Id.*

     An award of compensatory education must be fact specific and based on evidence of the student's specific deficits and what it would take to place him in the position he would have been in but for the violation.  The Court in *Reid, Id.* held that an award of compensatory education cannot be determined by a cookie cutter approach and what would be required to bring one student up to the level she/he should have been is not necessarily what would be required of another student.   At the due process hearing the defendant offered no evidence of the actual educational harm suffered by T.B. due to the denial of FAPE by MMB nor did she establish the requisite facts necessary to propose a program that would address any deficits.   The defendant did

testify that she had T.B. evaluated at Sylvan Learning Center and that they had advised that he needed 102 hours in reading as well as math and that they would re-evaluate him after that to see whether he needed additional hours.  TR-January 17, 2007 Pg 54.  The defendant received this information sometime after October 2007.  TR-January 17, 2007 Pg 51.

In the instant case, there was no evidence that linked T.B's current level of academic functioning to the period of time of the denial of FAPE by MMB.  T.B. only attended MMB for the 2005/2006 and 2006/2007 school years.  TR-January 17, 2007 Pg 45.  Prior to the 2005/2006 school year, T.B. attended school at God's Universal church.  Prior to that, T.B. attended Robert Britt Elementary, a DCPS school.  AR- 45  He was in the beginning of his 2nd year at MMB at the time that the 10/31/06 Due Process Complaint was filed.  AR-319.  The evidence in the record establishes that when T.B. entered MMB he was already behind approximately two years.  T. B. entered MMB during the school year 2005/2006 as a 4th grade student.  TR-January 17, 2007 Pg. 45.  The Psycho-Educational Evaluation conducted in November 2005 shortly after T.B. began at MMB established that he was in the 4th grade reading at a 1st grade level.  Word reading was a 1st grade 9th month level; Reading Comprehension was a 1st grade 5th month level and Pseudoword decoding was a 1st grade 7th month level.  AR- 253, 256. Testing performed in March 2007 (during the 2006/2007 school year) AR-10 revealed that T.B. was reading at approximately a 3rd grade level.  The documented testing in the record establishes that T.B. made educational progress while he attended MMB and that he was already two years behind academically when he began MMB.  More illuminating of the problem with the Hearing Officer basing his compensatory

education award on the fact that T.B. was two grade levels behind is the fact that between 2003 and 2005 T.B. made little, if any, progress. During this time T.B. was not at MMB but was instead enrolled in a private religious school and a DCPS school. AR-132.

Testing performed prior to T. B. entering MMB revealed the following

| **2003 Psycho-Educational** AR-132;135 | **2005 Psycho-Educational** AR-253:256 |
|---|---|
| Word Reading 1:9 | Word Reading 1:9 |
| Reading Comprehension <1:0 | Reading Comprehension 1:5 |
| Word Decoding 1:6 | Pseudoword Decoding 1:7 |

In the two years between this testing at a time when T.B. did not attend MMB nor was MMB responsible for the provision of FAPE, T.B. made minimal if any progress and was at least two years behind his grade level in the 2005 testing. The 2007 testing conducted by a qualified special education teacher revealed that T.B. was reading on approximately the third grade level. T.B. made approximately 1 ½ years growth in approximately 1 ½ years time in two of the three areas and approximately 1 years growing in the other area. This demonstrates that T.B. made far better progress during the time he was enrolled at MMB than he did in the years prior to entering MMB. Without qualified expert testimony as to the effect if any of the denial of FAPE by MMB, the defendant cannot sustain her burden of proof that MMB is responsible for the student's academic lag.

Without any proof of the effect of the denial of FAPE by MMB on the student's academic progress, the Hearing Officer erred when found the parent had met her burden of proof. The Hearing Officer further erred in considering the two year

academic delay in calculating the compensatory education award.  This is because he did not take into account what effect if any the denial of FAPE by MMB had on T.B.'s educational progress or the fact that T.B. was already two years behind academically when he started at MMB.

### III. THE HEARING OFFICER'S AWARD OF COMPENSATORY WAS BASED ON THE USE OF A MATHEMATICAL FORMULA IN VIOLATION OF THE *REID STANDARD.*

Despite the contentions of counsel for the Defendants in order to prevail on the issue of compensatory education their must be a showing that there was an educational harm suffered by the student.  Additionally, there must be evidence that establishes a causal relationship between the denial of FAPE and the educational deficit. *Reid. Id.* Finally, in order for the defendant to meet her burden, she must prove what it would take to place the T.B. in the position he would have been in but for the denial of services.  The defendant failed to present any evidence on what type of services were required to place the student in the position he would have been in but for the denial with the exception of the testimony from defendant that Sylvan Learning Center evaluated him and thought he needed 102 hours.  There was no causal connection between these hours and any harm caused by MMB.  There was no other testimony on which the hearing officer could base his decision that the student was in need of three hundred and seventy-five hours of one to one tutoring.  Based on the testimony or lack thereof, the hearing officer was not in a position to determine what it would take to place T.B. in the position he would have been in but for the denial of FAPE by MMB.  In his decision, the hearing officer apparently calculated the number of service hours allegedly missed by the student and then came up with the number of 375 hours of

tutoring as compensatory education.  The hearing officer's award of 375 hours was arbitrary and not factually based, in violation of *Reid*.  Moreover, there was no testimony or evidence that services in the form of one to one tutoring as opposed to a specific reading program would provide any benefit to T.B. or place him in the position he should have been in but for the denial of FAPE.

## CONCLUSION

Based on the arguments above the Plaintiff requests that this Court issue a Summary Judgment for the Plaintiff and against the Defendants and reverse the April 9, 2007 Hearing Officer's Decision.

Respectfully submitted,

/s/

Paul S. Dalton, Esq
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document with its attachments was filed electronically on this 17th day of January, 2008.

/s/

Paul S. Dalton, Esq.
Counsel for Plaintiff