**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MARY MCLEOD BETHUNE DAY ACADEMY PUBLIC CHARTER SCHOOL,**<br><br>    Plaintiff,<br><br>    v.<br><br>**TERRI BLAND,** as next friend of the minor child, T.B., **and T.B.**, individually,<br><br>    Defendants. | Civil Action No. 07-1223(AK) |

**MEMORANDUM OPINION**[1]

Pending before the Court are Plaintiff's Motion for Summary Judgment [13], Defendants' Opposition [14], and Plaintiff's Reply [16], as well as Defendants' Motion for Summary Judgment [11] and Plaintiff's Opposition [15].[2] At issue is whether the Hearing Officer erred in awarding T.B. 375 hours of compensatory education in the form of individual tutoring as a remedy for being denied a free and appropriate public education. Having reviewing the submissions of the parties, the Administrative Record, and the relevant case law, the Court issues

---

[1] By consent of the parties, this case was referred to the undersigned Magistrate Judge for all purposes and trial pursuant to 28 U.S.C. § 636(c). (*See* "Consent to Proceed Before a United States Magistrate Judge for All Purposes" [8].)

[2] The Court notes that Plaintiff's Opposition to Defendants' Motion for Summary Judgment was not timely filed. The Minute Scheduling Order issued October 31, 2007 set January 2, 2008 as the deadline for each party to respond to the other party's Motion for Summary Judgment. Plaintiff did not file its Opposition until January 17, 2008. However, the Court further notes that Defendants did not object to this untimeliness, either in a Reply memorandum or other notice to the Court. In light of Defendants' non-objection, the Court will consider Plaintiff's Opposition despite its untimeliness.

the following Memorandum Opinion.

I.    **Background**

T.B. is a twelve year-old special education student at Mary McLeod Bethune Day Academy Public Charter School ("MMB"). (Pl.'s Statement of Material Facts [13-2] ("Pl.'s Statement") ¶ 1.)[3] T.B. began attending MMB during the 2005-2006 school year and was in fifth grade during the 2006-2007 school year. (Def.'s Statement of Material Facts [11-2] ("Def.'s Statement") ¶ 3; Pl.'s Statement ¶ 1.) During the 2004-2005 school year, T.B. attended school at God's Universal Church, and during the 2003-2004 school year, he attended Robert Brent Elementary. (Tr. of 1/17/07 Hr'g ("Tr. I") at 45.)

A.    **T.B.'s IEPs**

An Individualized Educational Program ("IEP") that was prepared on February 9, 2004, while T.B. was a student at Brent Elementary provided that T.B. would receive ten hours of specialized instruction from a special education teacher each week. (Administrative Record ("A.R.") at 195.) The IEP was subsequently revised on May 3, 2004 to provided for twelve hours of specialized instruction per week. (*Id.* at 204.) Upon enrolling her son at MMB, Ms. Bland provided the school with a copy of these IEPs, but MMB never implemented them. (Tr. I at 46, 48.)

In March 2006, a new IEP was developed for T.B. that provided for forty-five minutes of

---

[3] Defendants do not dispute any of the facts set forth in Plaintiff's Statement of Material Facts. (*See* Def.'s Response to Pl.'s Statement of Material Facts [14-2].)

2

occupational therapy and fifteen hours of specialized instruction per week. (A.R. at 157.) As with the earlier IEPs, MMB never implemented the March 2006 IEP. (Tr. I at 48.) According to Ms. Abedin, the Special Education Coordinator at MMB, T.B. did not receive the full fifteen hours per week of specialized instruction and did not receive any services from a special education teacher during December 2006. (Tr. of 3/23/07 Hr'g ("Tr. II") at 20-21, 24. *See also* A.R. at 4.)

A fourth IEP was developed for T.B. on December 11, 2006, after Ms. Bland filed her due process complaint in this case. (A.R. at 243.) This IEP directed that T.B. receive one hour of occupational therapy and fifteen hours of specialized instruction per week. (*Id*.) The specialized instruction was to include one hour of individualized tutoring in reading. (*Id*.) Ms. Abedin clarified that this meant one hour of tutoring per day, for a total of five hours per week. (Tr. II at 14.) Although Ms. Bland did not believe that this IEP was appropriate or complete, she authorized the school to implement it. (A.R. at 243.)

      B.      T.B.'s Grades and Test Scores

In November 2005, shortly after T.B. began attending MMB, he "was referred for a psychoeducational evaluation to assess his cognitive ability and academic achievement to assist in the determination of appropriate academic intervention." (A.R. at 150.) His general cognitive ability, as tested by the Weschsler Intelligence Test for Children, 4th Edition, was "within the Borderline range of intellectual functioning," which means that he might "experience difficulty in keeping up with his peers in a wide variety of situations that require age-appropriate thinking and reasoning abilities." (*Id*. at 152.) T.B. also scored "within the Extremely Low to the Low

3

Average range of academic functioning" on the Wechsler Individual Achievement Test, 2nd Edition. (*Id*. at 153.) The psychologist who performed the tests recommended that T.B. "would benefit from intensive individualized instruction daily in reading, spelling, writing and math." (*Id*. at 155.)

Ms. Bland brought T.B. for testing at Sylvan Learning Center on September 29, 2006 because she was frustrated with MMB's failure to implement T.B.'s IEP. (Tr. I. at 52.) Sylvan found that T.B., who at the time was eleven years and eleven months old, tested at the age equivalent of six years and six months. (A.R. at 180.) Based on T.B.'s test scores, Sylvan recommended a program of 200 or more hours of tutoring in reading, 108 or more hours of tutoring in math, and 100 or more hours of tutoring in writing. (*Id*. at 182, 186, 189.)

A Progress Report from October 3, 2006 noted that T.B. was working below grade level in language arts, mathematics and social studies. (*Id*. at 228.) T.B.'s report card for the fifth grade, first quarter shows that he received a failing grade in reading, language arts, mathematics and science and a "C" in social studies. (*Id*. at 28.)

Finally, on March 29, 2007, the special education teacher at MMB administered the Qualitative Reading Inventory, 4th Edition, ("QRI-IV") to T.B. (*Id*. at 10.) This test "measures a student's ability to read and comprehend short passages on a variety of topics." (*Id*.) The teacher reported that "[o]n the third grade passage, [T.B.] scored at an instructional level," which led her to conclude that T.B., who at the time was in fifth grade, was "reading at approximately a third grade level." (*Id*.)

C. <u>Administrative Proceedings</u>

On October 31, 2006, Defendant Terri Bland, through her attorney, filed a Due Process Complaint Notice and requested an administrative due process hearing pursuant to the Individuals with Disabilities in Education Act ("IDEA"). (A.R. at 65-66.) Ms. Bland alleged that MMB denied her son, T.B., a free and appropriate public education ("FAPE"). (*Id*. at 71.) MMB answered the Due Process Complaint on November 3, 2006, denying all allegations contained therein (*Id*. at 265-66.)

The Administrative Hearing began on January 17, 2007 before Hearing Officer Sy Dubow. (Tr. I at 1-2.) The Hearing Officer heard testimony from Corey Hamilton, an educational advocate who reviewed T.B.'s IEPs, evaluations and test results and attended the IEP meeting in December 2006. (*Id*. at 32-33.) Ms. Bland also testified on January 17. (*Id*. at 44.) She stated that, prior to March 2006, she informed the principal of MMB that T.B.'s prior IEPs needed to be implemented but no action was taken. (*Id*. at 46-47.) She further testified that the March 2006 IEP was never implemented and that she had not seen a special education teacher since early in the 2005-2006 school year. (*Id*. at 48.) Ms. Bland testified that she has not seen T.B. receive the educational services that he was supposed to receive under the March 2006 IEP. (*Id*. at 56.)

On January 26, 2007, the Hearing Officer issued a Hearing Officer's Determination ("HOD") that addressed two issues: first, whether MMB denied T.B. FAPE by failing to conduct a test called the Vineland Speech and Language Evaluation; and second, whether MMB denied T.B. FAPE by not providing sufficient compensatory education. (A.R. at 23.) The Hearing Officer found that Ms. Bland did not meet her burden of proving that the Vineland evaluation

5

was necessary, and accordingly granted a directed verdict for MMB on the first issue. (*Id*. at 25) As to the second issue, the Hearing Officer noted that MMB "concedes that the student is entitled to compensatory education for the failure to provide IEP services, but argues that one hour a week of individualized tutoring provided in the December 11, 2006 IEP is that compensatory education award." (*Id*.) The Hearing Officer disagreed with MMB's characterization of the tutoring as compensatory education, and accordingly denied MMB's motion for directed verdict on this issue. (*Id*.)

A second hearing was held on March 23, 2007 to take testimony on the compensatory education issue so that the Hearing Officer could determine the amount of compensatory education to which T.B. was entitled. (*Id*. at 26; Tr. II at 1-2.) Dr. Duke Fleitas, a clinical psychologist who conducted a clinical and ADHD evaluation and a classroom observation of T.B., testified that he recommended that tutoring should be part of T.B.'s IEP. (Tr. II at 5-6, 8-9.) Golnar Abidene, MMB's Special Education Coordinator, testified that there was no special education teacher at MMB from the end of November 2006 until January 2007 and that T.B.'s specialized instruction during December 2006 was provided by an aide who was not a certified special education teacher. (*Id*. at 20-21, 23.) At the conclusion of the hearing, the Hearing Officer indicated that he needed to know T.B.'s current reading level to determine whether T.B. was entitled to compensatory education and, if so, how much compensatory education should be awarded. (*Id*. at 34, 40, 48.) Although MMB maintained that it did not have the burden of producing this information, it subsequently provided the Hearing Officer with the results of a QRI-IV. (A.R. at 10.)

The Hearing Officer issued an HOD on Compensatory Education on April 9, 2007. (A.R.

at 2.) He ordered that T.B. receive 375 hours of compensatory education in the form of individual tutoring as a remedy for MMB denying T.B. FAPE. (*Id*. at 4.) In reaching this conclusion, the Hearing Officer highlighted, among other things, the following facts: (1) the QRI-IV showed that T.B. was reading at approximately a third grade level as of March 29, 2007; (2) T.B.'s December 11, 2006 IEP stated that he "was at 2.5-3rd grade equivalence on reading comprehension, reading basic, written expression and math reasoning based on testing data available on that date;" (3) T.B. did not receive the specialized instruction that was set forth in the March 10, 2006 and December 11, 2006 IEPs; and (4) T.B.'s fifth grade report card shows that he received failing grades in reading, math, language arts, and science. (*Id*. at 2-4.) Finally, the Hearing Officer declared that Ms. Bland was the prevailing party on the compensatory education issue. (*Id*. at 5.)

      MMB appealed the HOD by filing a Complaint with this Court on July 6, 2007. (*See* Compl. [1].) In Count I, MMB states that "[t]he hearing officer erred in granting relief to the defendant after she failed to meet her burden in proving compensatory education was warranted." (Compl. ¶ 22.) MMB asserts that Ms. Bland had the burden of presenting evidence of the actual harm that T.B. suffered from the alleged denial of FAPE. (*Id*.) In Count II, MMB argues that "[t]he Hearing Officer erred in using a mathematical formula to determine compensatory services" because he "calculated the number of services allegedly missed by the stuednt and then came up with the number of 375 hours of tutoring as compensatory education." (*Id*. ¶ 24.) MMB bases both Counts of their Complaint on the D.C. Circuit's decision in *Reid v. District of Columbia*. (*See id*. ¶¶ 22, 24.)

**II.     Legal Standards**

    A.     Summary Judgment

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party bears the initial burden of identifying those portions of the pleadings or other documents in the record that it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  The adverse party must then "go beyond the pleadings" and "'designate' specific facts showing that there is a genuine issue for trial." *Id*. at 324.  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). Although a Court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

    B.     The Individuals with Disabilities in Education Act

The IDEA provides for judicial review in state or federal court for "[a]ny party aggrieved by the findings and decision" rendered in a due process hearing.  20 U.S.C. § 1415 (i)(2)(A); 34 C.F.R. § 300.512.(b)(3).  The reviewing court "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on

the preponderance of the evidence, shall grant such relief as the court determines is appropriate."
20 U.S.C. § 1415(i)((2)(C); 34 C.F.R. § 300.512(b)(3). The burden is on the party challenging administrative determination to persuade the court that the Hearing Officer was wrong. *Reid v. D.C.*, 401 F.3d 516, 521 (D.C. Cir. 2005). Given the reviewing court's authority to hear additional evidence and base its decision on the preponderance of the evidence, IDEA "plainly suggests less deference than is conventional in administrative proceedings," and little deference is owed to a hearing decision that lacks reasoned and specific findings. *Id*. Finally, "[w]hen no additional evidence is introduced in a civil suit seeking review of an H.O.D., a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record." *Thomas v. D.C.*, 407 F.Supp.2d 102, 109 (D.D.C. 2005).

### C. Compensatory Education

The IDEA guarantees children with disabilities the right to a free and appropriate public education with services designed to meet their individual needs. 20 U.S.C. §§ 1400(d)(1)(A), 1412(a)(1). Where a school system fails to provide special education or related services to a disabled student, the student is entitled to compensatory education. *Walker v. D.C.*, 157 F.Supp.2d 11, 30 (D.D.C. 2001). *See also Reid*, 401 F.3d at 522 ("Under the theory of compensatory education, courts and hearing officers may award educational services to be provided prospectively to compensate for a past deficient program.") (citations omitted).

A compensatory education award is an equitable remedy that "should aim to place disabled children in the same position they would have occupied but for the school district's violations of the IDEA." *Reid*, 401 F.3d at 518, 523. In crafting a compensatory education

award, the Hearing Officer must engage in a fact-intensive analysis that is qualitative rather than quantitative. *Branham v. D.C.*, 427 F.3d 7, 11 (D.C. Cir. 2005); *Reid*, 401 F.3d at 524. In *Reid*, the Court rejected "cookie-cutter" or mechanical remedies, such as awarding one hour of compensatory instruction for each hour that the student was denied FAPE, and stressed that the Hearing Officer must take into account individual assessments of the student and focus on the student's individual needs. *Reid*, 401 F.3d at 523-24. An arbitrary compensatory education award will never pass muster under the *Reid* standard. *See id*. at 525.

### III.  Discussion

#### A.  Hearing Officer's Decision to Award Compensatory Education (Count I)

*Reid* provides that an award of compensatory education "must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Reid*, 401 F.3d at 524. MMB reads into this standard a requirement that a parent present evidence of the actual harm her child has suffered on account of a denial of FAPE before the child is entitled to compensatory education. (Pl.'s Mem. Supp. Mot. S.J. [13] (Pl.'s Mem. at 5.) Ms. Bland responds that "[t]he fact that a child has been denied access to a free and appropriate education presumes that a child suffered an educational deficit." (Def.'s Opp'n [14] at 10.)

Compensatory education is the remedy for a denial of FAPE. *G ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 309 (4th Cir. 2003) ("Compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to

10

provide a FAPE to a student."), *cited in Reid*, 401 F.3d at 522.  Stated differently, if a parent presents evidence that her child has been denied FAPE, she has met her burden of proving that he is entitled to compensatory education.  *C.f. C.G. ex rel. A.S. v. Five Town Cmty School Dist.*, ___ F.3d ___, 2008 WL 162481, at * 9 (1st Cir. Jan 18, 2008) (denying a claim for compensatory education because parents failed to establish that the school district violated its obligations under the IDEA).  As discussed in the following section, the *Reid* standard only applies once a Hearing Officer has determined that compensatory education is warranted and must craft a compensatory award that is reasonably calculated to meet the student's needs.  Therefore the sole issue that this Court must consider with respect to Count I of MMB's Complaint is whether the Hearing Officer had before him sufficient evidence of an IDEA violation when he ordered that T.B. was entitled to compensatory education.

      The Hearing Officer found that MMB denied T.B. FAPE by failing to implement his March 2006 and December 2006 IEPs.  (A.R. at 5.)  T.B.'s March 10, 2006 IEP called for fifteen hours per week of specialized instruction.  (*Id*. at 157.)  His December 11, 2006 IEP called for fifteen hours per week of specialized instruction, including one hour per day of individual tutoring.  (*Id*. at 243; Tr. II at 14.)  Ms. Abedin testified that T.B. never received the full amount of tutoring set forth in the IEPs and that there was no special education teacher on staff during December 2006 to provide specialized instruction.  (Tr. II at 20-21, 24.  *See also* A.R. at 4.) Based on this evidence, the Hearing Officer concluded that "Bethune Academy did not provide the specialized instruction required by his IEPs" and that T.B. was "owed compensatory education for the failure to implement the student's IEPs." (A.R. at 5.)

      Because there was sufficient evidence in the record from which the Hearing Officer could

conclude that MMB violated the IDEA, the Court finds that MMB has not met its burden of demonstrating that the Hearing Officer was wrong when he awarded compensatory education. Accordingly the Court will affirm this portion of the HOD, grant Defendant's Motion for Summary Judgment with respect to Count I and deny Plaintiff's Motion for Summary Judgment with respect to Count I.

      B.      <u>Hearing Officer's Award of 375 Hours of Compensatory Education (Count II)</u>

A compensatory education "award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Reid*, 401 F.3d at 524. This standard "carries a qualitative rather than quantitative focus," and must be applied with "[f]lexibility rather than rigidity." *Id*. at 524. In crafting a remedy for a denial of FAPE, the Hearing Officer must engage in a fact-intensive analysis that includes individualized assessments of the student so that the ultimate award is tailored to the student's unique needs. *Id*. at 524. *See also Branham*, 427 F.3d at 11 (noting that *Reid* requires a "qualitative, fact-intensive analysis"); *Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt*, ___ F.Supp.2d ___, 2008 WL 248450, at *4 (D.D.C. Jan. 31, 2008) ("The crafting of an award of compensatory education under IDEA simply cannot be 'nebulous.'"). As the D.C. Circuit recognized in *Reid*: "Some students may require only short, intensive compensatory programs targeted at specific problems or deficiencies. Others may need extended programs, perhaps even exceeding hour-for-hour replacement of time spent without FAPE." *Reid*, 401 F.3d at 524. *See also Thomas*, 407 F.Supp.2d at 115 (noting that no compensatory education is required for a denial of FAPE if the student would not benefit from

the additional services).

A Hearing Officer cannot determine the amount of compensatory education that a student requires unless the record provides him with "insight about the precise types of education services [the student] needs to progress." *Branham*, 427 F.3d at 12. Relevant evidence includes "the nature and severity of the student's disability, the student's specialized educational needs, the link between those needs and the services offered by the private school, the placement's cost, and the extent to which the placement represents the least restrictive educational environment." *Id*. In *Nesbitt*, the Court found that an "award was not adequately individualized or supported by the record" when the Hearing Officer was not provided with any information about the student's current grade level of functioning. *Nesbitt*, 2008 WL 248450, at *3-4.

*Reid* explicitly rejected "cookie-cutter approach[es]," such as "a presumption that each hour without FAPE entitles the student to one hour of compensatory instruction." *Reid*, 401 F.3d at 523. *See also Parents of Student W v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1497 (9th Cir. 1994) ("There is no obligation to provide a day-for-day compensation for time missed. Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of the IDEA."). In a recent case decided in this District, the Court reviewed an HOD in which "the Hearing Officer used a formula of 27.5 hours per week for forty weeks over three years to calculate the award." *Friendship Edison*, 2008 WL 248450, at *3. The Court noted that "[a] compensatory award constructed with the aid of a formula is not *per se* invalid," and that "[a] formula-based award may in some circumstances be acceptable if it represents an individually-tailored approach to meet the student's unique prospective needs, as opposed to a backwards-looking calculation of educational units denied to a student." *Id*.

The record in this case contains sufficient evidence of T.B.'s unique educational need to allow the Hearing Officer to craft a compensatory education award that is reasonably calculated to place T.B. in the position he would have been in but for the denial of FAPE. First, the Hearing Officer reviewed the results of the March 29, 2007 QRI-IV, which demonstrated that T.B. was reading at a third grade level. (A.R. at 10.) Second, the record contains T.B.'s fifth grade report card, which shows that he received failing grades in reading, language arts, mathematics and science, as well as a October 3, 2006 Progress report, which notes that T.B. was performing below grade level in language arts, mathematics and social studies. (*Id*. at 28, 228.) Fifth, both Dr. Fleitas and Sylvan Learning Center recommended tutoring as the most appropriate course of action for T.B. (Tr. II at 23; A.R. at 182, 186, 189.) Specifically, Sylvan recommended a program of 200 or more hours of tutoring in reading, 108 or more hours of tutoring in math, and 100 or more hours of tutoring in writing. (A.R. at 182, 186, 189.)

Despite the presence of this evidence, MMB argues that the Hearing Officer's decision to award 375 hours of tutoring is arbitrary and in violation of *Reid* because it was the result of a mathematical formula that only took into account the number of service hours that T.B. allegedly missed. (Pl.'s Mem. at 8-9.) This is not a case in which the Hearing Officer explicitly based his award on a mathematical formula. In fact, the Hearing Officer did not provide any explanation for how he arrived at 375 hours, and his Court will not speculate about the method by which the he determined that 375 hours was the amount of compensatory education T.B. should receive. *See Nesbitt*, 2008 WL 248450, at *3 ("Any attempt to decode the award must necessarily involve speculation because the Hearing Officer did not provide any explanation for how she came to use the underlying numbers, nor did she indicate how those numbers would properly serve [the

student's] needs.") Faced with this deficiency in the HOD, this Court cannot determine whether the Hearing Officer's award violates the principles set forth in *Reid*. Accordingly the Court will deny both Motions for Summary Judgment will respect to Count II and the case will be remanded to the Hearing Officer so that he may further explain why 375 hours of tutoring is an appropriate remedy.

    C.    <u>Attorneys' Fees</u>

Ms. Bland asks this Court to confer prevailing party status upon her and award fees in connection with the defense of this suit. (Def.'s Mem. Supp. Mot. S.J. [11] at 13.) The relevant provision of the IDEA provides: "In any action brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(I). Even if Ms. Bland is considered a prevailing party within the meaning of the statute, however, her fee request is premature at this time in light of this Court's decision to remand the matter to the Hearing Officer. *See S.G. v. D.C.*, ___ F.Supp.2d ___, 2008 WL 313780, at * 1 (D.D.C. Feb. 5, 2008). Accordingly her motion for fees is denied without prejudice

**IV.**    <u>Conclusion</u>

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is denied, Defendants' Motion for Summary Judgment is granted-in-part and denied-in-part, and the case is remanded to the Hearing Officer for a further explanation of the compensatory education award. Defendants' request for attorneys' is denied without prejudice and the parties are ordered to

submit a joint status report within six months of this date or thirty days of the date on which a new HOD issues, whichever is earlier. The Court will issue an Order consistent with this Memorandum Opinion.


Dated: February 20, 2008                         /s/
                                                        ALAN KAY
                                                        UNITED STATES MAGISTRATE JUDGE